**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SASHADA MAKTHEPHARAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case. No. 23-2121-DDC-RES** |
| | ) | |
| **LAURA KELLY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>JOINT ANSWER TO AMENDED COMPLAINT</u>**

Defendants Laura Kelly, Jeff Zmuda, Jonathan Ogletree, Jeannie Wark and Mark Keating ("Defendants"), state their answer to the Amended Complaint (Doc. 9):

1. Paragraphs 1, 13-18, 23, 28-40, 42-48, 50-58, 86, 109, 117, 124, and 131 state legal conclusions or comment on the law. These paragraphs do not state factual allegations and therefore do not require responsive pleading. To the extent they state factual allegations, they are denied.

2. Paragraphs 2-3, 72, and 111 are admitted.

3. Paragraphs 4, 11, 27, 41, 49, 59, 68, 76, 87, 96, 105, 116, 123, and 130 merely incorporate other paragraphs and therefore do not require responsive pleading.

4. Paragraphs 60, 62-63, 65, 67, 74-75, 88-90, and 119 are denied.

5. Paragraph 5 is admitted except for the following:

    a. Lansing Correctional Facility is located on East Kansas Avenue, not East Kansas Street.

    b. Makthepharak was convicted of felony murder under K.S.A. 21-3401(b) (1995).

    c. The case was referred from juvenile court to criminal court.[1] Both are part of the Sedgwick County District Court.[2]

    d. Makthepharak was sentenced under K.S.A. 21-4706(c) (2001 Supp.) and K.S.A. 22-3717(b)(2) (2001 Supp.).

6. Paragraph 6 is admitted except for the following:

    a. Governor Kelly did not work under color of state law or in her official capacity regarding any alleged events in this case aside from appointing Secretary of Corrections Zmuda.

    b. The correct statute for the appointment and confirmation process for the Secretary of Corrections is K.S.A. 75-5203.

    c. Defendants clarify that decisions by Governor Kelly regarding executive clemency do not include parole decisions. Governor Kelly does not participate in parole decisions.

7. Paragraph 7 is admitted except for the following:

    a. Secretary Zmuda did not work under color of state law or in his official capacity regarding any alleged events in this case aside from appointing the three members of the Kansas Prisoner Review Board (KPRB).

    b. In sub-paragraph (b):

        i. Defendants clarify that although the KPRB is under the supervision of the Secretary of Corrections, the Secretary of

---

[1] *Makthepharak v. State*, 472 P.3d 1148 (table opinion), 2020 WL 5994108, at *1 (Kan. Ct. App. Oct. 9, 2020).
[2] *See* K.S.A. 38-1604(b) (2000) (district court has jurisdiction over juvenile offender cases); 38-2304(b) (2021) (same).

Corrections does not participate in the parole process.

    ii.  K.S.A. 75-52,152 does not address the vote required to grant parole. The statute that addresses the vote required to grant parole is K.S.A. 22-3709.

  c.  In sub-paragraph (d):

    i.  The agreement process in K.S.A. 75-5210a is not mandatory upon the Secretary of Corrections, but is directory in nature. No such agreement with Makthepharak exists.[3]

    ii.  K.S.A. 22-3713 does not have a subsection (g). The Plaintiff may have meant to cite to K.S.A. 22-3717(g).

    iii.  The existence of an agreement is not required for parole to be granted by the KPRB under K.S.A. 22-3717(g)(1) or (g)(2).

8.  Paragraph 8 is admitted except as follows:

  a.  Jonathan Ogletree was appointed to the Kansas Prisoner Review Board by one of Zmuda's predecessors, but not Zmuda's immediate predecessor.

9.  Paragraph 9 is admitted except as follows:

  a.  Jeannie Wark was appointed to the Kansas Prisoner Review Board by one of Zmuda's predecessors, but not Zmuda's immediate predecessor.

10. Paragraph 10 is admitted except as follows:

  a.  Mark Keating was appointed to the Kansas Prisoner Review Board by one of Zmuda's predecessors, but not Zmuda's immediate predecessor.

---

[3] This is explained in more detail below with regard to paragraphs 77-79, 81-82, and 85.

11. Paragraph 12 is admitted in part, up to the word "juvenile," but the rest is denied.

12. Paragraph 19 and 112 are admitted in part and denied in part as follows:

   a.  Makthepharak and other individuals (but not "many") are serving life
       sentences for offenses committed as juveniles.

   b.  Juveniles in Kansas can only receive life sentences when tried as an adult,
       which is not automatic. The minimum sentence for felony murder for a
       juvenile not tried as an adult was and is 60 months.[4] The minimum
       sentence for felony murder for a juvenile tried as an adult was and is a life
       sentence with eligibility for parole after 20 years.[5]

   c.  Whether adequate consideration of youth was given by the court is a
       mixed issue of law and fact. For convenience of the parties and the Court,
       Defendants respond briefly to the legal aspect here in addition to the
       factual aspect. The Supreme Court has characterized its own holding from
       *Miller v. Alabama*:

> the Court allowed life-without-parole sentences for defendants
> who committed homicide when they were under 18, but only
> *so long as the sentence is not mandatory*—that is, only *so long
> as the sentencer has discretion to "consider the mitigating
> qualities of youth" and impose a lesser punishment.*

   *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021) (emphasis added)

---

[4] K.S.A. 21-3401(b) (1995) (felony murder is an off-grid crime); K.S.A. 21-5402(a)(2), (b) (2022 Supp.) (same); K.S.A. 38-16,129(a)(1) (2000) (minimum sentence for off-grid felonies for juveniles not tried as an adult); K.S.A. 38-2369(a)(1) (2021) (same); K.S.A. 38-1636 (2000) (procedure for prosecuting a juvenile as an adult); K.S.A. 38-2347 (2021) (same).
[5] K.S.A. 21-4706(c) (2001 Supp.) (life sentence for off-grid crimes); K.S.A. 21-6806(c)-(d) (2022 Supp.) (same); K.S.A. 22-3717(b)(2) (2001 Supp.) (parole eligibility for off-grid crimes committed on or after July 1, 1999); K.S.A. 22-3717(b)(3) (2022 Supp.) (same).

(quoting *Miller v. Alabama*, 567 U.S. 460, 476 (2012)). Not only was a life-without-parole sentence not mandatory in Makthepharak's case, but a lesser punishment of life with eligibility for parole after 20 years was actually imposed. In the alternative, when imposing a life-without-parole sentence on a murderer under 18, "a separate factual finding [by the court] of permanent incorrigibility is not required," *Id.* at 1318-19. Further in the alternative, the court made adequate consideration of youth. (Regardless, the court is not a defendant in this case.)

    d.  Makthepharak is serving a life sentence that is truly parole eligible.

13. The first sentence of Paragraph 20 is admitted. The second sentence of Paragraph 20 is denied, as Makthepharak was denied parole due to his disciplinary history in addition to him denying responsibility for his offenses, both of which were valid evidence for the board to consider as showing a lack of rehabilitation. The KPRB provided a written explanation of its decision to Makthepharak clearly stating these pass reasons and providing recommendations to him. This written explanation was received and signed by Makthepharak on April 16, 2021, and is attached as Exhibit 1.

14. Paragraph 21 is denied except as follows:

    a.  The Secretary of Corrections is an appointee of the Governor.

    b.  The members of the KPRB serve at the Secretary of Corrections' pleasure.

    c.  The KPRB has exclusive authority to grant or deny parole. (The Secretary of Corrections does not have that authority.)

    d.  The KPRB makes reports to the Governor regarding all applications for pardon or commutation of sentence, but these reports are not required to

include any recommendations to grant or deny. K.S.A. 22-3701. That said, the KPRB generally does include recommendations to grant or deny in these reports.

e.  Parole decisions are reviewable by the judiciary through a habeas corpus action, although "[j]udicial review of Parole Board decisions is narrow," and the standard of review is simply whether the decision was "arbitrary and capricious." *Peltier v. Booker*, 348 F.3d 888, 892 (10th Cir. 2003); *see also Dimmick v. Bourdon*, 769 F. App'x 616, 619 (10th Cir. 2019) (saying an action seeking to invalidate the denial of parole must be brought through a habeas action rather than § 1983). Further, an inmate can request reconsideration of a parole decision by the KPRB on the basis of new evidence. K.A.R. 45-200-2(b).

15. Paragraph 22 is denied, especially for the following reasons:

a.  As described with regard to paragraph 20, Makthepharak's disciplinary history and denial of responsibility for his offenses were valid evidence for the board to consider as showing a lack of rehabilitation.

b.  From 1979 to 2023, 73% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

c.  From 2018 to 2023, 62% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

d.  The rest of paragraph 22 makes legal conclusions, which do not require a responsive pleading.

16. Paragraph 24 is denied except that Makthepharak is an individual was who sentenced

to life imprisonment for an offense committed as a juvenile who has been incarcerated for two decades.

17. Paragraph 25 is denied except that Defendants are state officials.

18. Paragraph 26 states what Makthepharak seeks in this case, but to the extent factual allegations are made in this paragraph they are denied.

19. Paragraph 61 is denied, especially for the following reasons:

    a. K.S.A. 21-6627 was not passed until 2010 and by its plain terms it only applies to offenders "18 years of age or older."

    b. The predecessor statute to K.S.A. 21-6627 – K.S.A. 21-4643 (2007) – was not passed until 2006 and by its plain terms it also only applies to offenders "18 years of age or older."

    c. Kansas law does not mandate life sentences in all cases of murder.

        i. Kansas law only mandates life sentences for off-grid crimes (including capital murder and first-degree murder) for offenders tried as adults, not for those tried as juveniles.[6]

        ii. Second-degree murder is not an off-grid crime and, for offenders tried as adults, the presumptive sentence ranges in the sentencing

---

[6] K.S.A. 21-4706(c) (2001 Supp.) (life sentence for off-grid crimes); 21-6806(c)-(d) (2022 Supp.) (same); 21-3401(b) (1995) (first-degree murder is an off-grid crime); 21-5402(a)(2), (b) (2022 Supp.) (same); 21-3439(c) (1995) (capital murder is an off-grid crime); 21-5401(c) (2022 Supp.) (same); K.S.A. 38-16,129(a)(1) (2000) (minimum sentence for off-grid felonies for juveniles not tried as an adult); K.S.A. 38-2369 (2021) (same); K.S.A. 38-1636 (2000) (procedure for prosecuting a juvenile as an adult); K.S.A. 38-2347 (2021) (same).

guidelines apply for this offense, not a life sentence.[7]

    d.  The offenses listed in K.S.A. 21-6627 are off-grid crimes for adults but not for juveniles.[8]

    e.  (The exceptionally rare crimes of illegal use of a weapon of mass destruction, treason, and terrorism, if committed by a juvenile would be off-grid crimes.[9])

20. Paragraph 64 is denied except that the KPRB has exclusive authority to grant or deny parole. (The Secretary of Corrections does not have that authority.)

21. Paragraph 66 is denied for the following reasons:

    a.  Makthepharak and others sentenced to life for homicides have not been categorically barred from security classifications below medium-high.

    b.  Makthepharak has been classified as medium-low in the past while serving his current sentence.

    c.  Because Makthepharak is an active and validated security threat group member (active gang member), his current reclassification score would allow him to be placed on medium-low custody. (*See* response below to paragraphs 94, 99, 101, 108, 120, and 126-27.) But he has been in special management since May 11, 2023, due to a currently pending aggressive infraction for fighting. If finalized, that would make two aggressive

---

[7] K.S.A. 21-3402 (2001 Supp.) (second degree murder is a person felony with severity level 1 or 2); 21-5403(b) (2022 Supp.) (same); 21-4704 (2001 Supp.) (sentencing grid); K.S.A. 21-6804(a) (2022 Supp.) (same).

[8] K.S.A. 21-6806(d); 21-5426(c)(3); 21-5503(b)(2); 21-5504(c)(3); 21-5506(c)(3); 21-5510(b)(2); 21-5514(a)-(b), (c)(3); 21-6422(b)(2); 21-5301(c)(2); 21-5302(d)(2); 21-5303(d)(2).

[9] K.S.A. 21-5421(b); 21-5422(b); 21-5901(b).

infractions in the past two years (the other having occurred in September

2021) and his reclassification score will then require medium-high

custody.

    d.   Maturity and rehabilitation can be demonstrated for purposes of parole

regardless of an inmate's security classification.

22. Paragraph 69 is admitted. However, Defendants add that Makthepharak's life

sentence is not just purported to be parole-eligible, but is genuinely parole eligible.

23. Paragraph 70 is denied.

    a.   The adjective "many" is denied.

    b.   Additionally, life sentences were not mandated for all classifications of

murder crimes, but only capital murder and first-degree murder, and only

for offenders tried as adults, as explained above with regard to Plaintiff's

paragraph 61.

24. Paragraph 71 is denied.

    a.   Although under Makthepharak's life sentence he by definition could spend

the rest of his natural life in prison, the possibility of parole exists, so the

sentence does not "ensure" that result.

    b.   Makthepharak was sentenced under K.S.A. 21-4706(c) (2001 Supp.), not

K.S.A. 21-6806(c).

25. Paragraph 73 is denied.

    a.   As discussed above with regard to Plaintiff's paragraphs 19 and 61, life

imprisonment only applies in Kansas when an offender is convicted of

certain types of murder when tried as an adult, which is not automatic.

b.   In order for a person to be a juvenile tried as an adult, they first have to
     meet the definition of "juvenile," which requires them to be "10 or more
     years of age." K.S.A. 38-1602(a) (2000); 38-2302(n), (s) (2021).

c.   Kansas law currently provides that "[n]o juvenile less than 14 years of age
     shall be prosecuted as an adult." K.S.A. 38-2347(a)(1).

d.   At the time of Makthepharak's offense, when a motion was made to
     prosecute as an adult a juvenile charged with felony murder, a
     presumption existed that the juvenile was not an adult unless the offender
     was at least 14 years of age at the time of the offense, in which case a
     presumption existed that the juvenile was an adult. K.S.A. 38-1636(a)(1)-
     (2) (2000). The presumption could be rebutted. *Id.*

e.   The relevant statutes in effect when Makthepharak was sentenced were
     K.S.A. 21-4608 (1995) and K.S.A. 21-4720 (2001 Supp.), not K.S.A. 21-
     6606(a), and they address some circumstances that limit the discretion of
     the judge – that is, when sentences *must* be served concurrently or
     consecutively.

26. Paragraphs 77-79, 81-82, and 85 are denied for the following reasons:

a.   Parole decisions are solely at the discretion of the KPRB.

b.   The Secretary does not participate in the parole process.

c.   The agreement process in K.S.A. 75-5210a is not mandatory upon the
     Secretary of Corrections, but is directory in nature. No such agreement
     with Makthepharak exists.

     i.   Specifically, no agreement was made with Makthepharak that

conditions the granting of parole on the completion of programs.

ii. While the Secretary of Corrections in 2002 entered into a program plan with Makthepharak (Exhibit 2), the program plan acknowledgment signed by Makthepharak stated only the following: "I acknowledge that I have been afforded an opportunity to enter into a program plan. I understand that such a program plan is optional, but that failure to participate in or successfully complete recommended programs shall result in the withholding of good time credits which affect my date of release."

iii. No agreement was made conditioning Makthepharak's parole on the completion of any programs.

d. The existence of an agreement is not required for parole to be granted by the KPRB under K.S.A. 22-3717(g)(1) or (g)(2).

e. Further, any "agreement," by the plain meaning of the word "agreement," would require the consent of the inmate. The statute does not say "written proclamation about the inmate" but rather "written *agreement with the inmate*." K.S.A. 75-5210a (emphasis added); *see also* Exhibit 3 at 2 (minutes and testimony from the Senate Judiciary Committee, Apr. 5, 1988, including the question, "what if the prisoner refuses to sign this agreement?").

f. Any revisions to an agreement would require meeting at least the statutory standard that "the inmate's conduct, employment, attitude or needs require modifications or additions to those programs." K.S.A. 75-5210a.

g.  The report process in K.S.A. 22-3717(h) requires only that the Secretary of Corrections give the KPRB access to up-to-date information on any agreements, program plans, and programs completed or not completed by an inmate.

   i.  The "report" process in K.S.A. 22-3717 was added to the statute in 1988. L. 1988, ch. 115, § 1.

   ii.  At the time, the Kansas Parole Board existed separately from the Department of Corrections (KDOC).

   iii.  The point of the "report" process was so the KPRB would have up-to-date communications from KDOC regarding any agreements, any program plans, and what programs had been completed or not completed by an inmate. A representative of KDOC testified before the Kansas Senate's Judiciary Committee that the new law "[p]rovides for a more cohesive relationship between the parole board and DOC" and a representative of the Kansas Parole Board testified that it would "provide better communications" between them. *See* Exhibit 3 at 2, 7, 10 (minutes and testimony from the Senate Judiciary Committee, Apr. 5, 1988).

   iv.  A reclassification order in 2011 abolished the Kansas Parole Board that existed separately from the Department of Corrections (KDOC) and created as its successor the Kansas Prisoner Review Board under the supervision of the Secretary of Corrections.

   v.  A 2012 law updated references to the "Kansas parole board" to say

"prisoner review board" (and one "will" was changed to "shall") but no other clarifications were made in K.S.A. 22-3717. L. 2012, ch. 16, § 15.

vi. Due to the reclassification order, the Kansas Prisoner Review Board, now under the supervision of the Secretary of Corrections, has direct access to KDOC records, including any agreements, program plans, and programs that have been completed or not completed by an inmate.

vii. The purpose of the "report" process – the transfer of information regarding any agreements, program plans, and programs that have been completed or not completed by an inmate – is now fulfilled without a formal report. Now no *formal* report is needed to *effectively* report the information both efficiently and reliably.

viii. Therefore, the Secretary effectively reports in a passive manner, but no longer submits formal reports, to the KPRB. As a result, the Secretary does not actively participate in the parole process.

h. If the inmate fails to complete programs required under an agreement, the KPRB would learn of that through the Secretary. The KPRB would still hold a parole hearing, and in its parole decision, the KPRB would explain that parole was being denied for failure to complete the required programs in addition to any other reasons for denial. K.S.A. 22-3717(j)(1). If the only reason for denial was failure to complete the required programs, then the inmate would be granted parole upon those programs being completed,

provided no intervening reasons for denying parole arose. *Id.*

    i.  Makthepharak was not denied parole due to failure to complete any programs required under an agreement. Rather, as explained with regard to paragraph 20 above, Makthepharak was denied parole due to his disciplinary history in addition to him denying responsibility for his offenses, both of which were valid evidence for the board to consider as showing a lack of rehabilitation.

27. Paragraph 80 is admitted. Defendants note, however, that K.S.A. 75-5205 appears inapplicable because it only involves the general duties of the Secretary of Corrections.

28. Paragraph 83 is denied for the following reasons:

    a.  The Secretary of Corrections does not participate in and has no discretion over the parole process.

    b.  The KPRB considers the individual's youth at the time of offense in exercising its discretion over the parole process.

    c.  As explained with regard to paragraph 20 above, Makthepharak was denied parole due to his disciplinary history in addition to him denying responsibility for his offenses, both of which were valid evidence for the board to consider as showing a lack of rehabilitation.

29. Paragraph 84 is admitted to the extent it suggests the Secretary of Corrections would not, in cases where an agreement may exist (so other than in Makthepharak's case, where no agreement exists), be legally required to write a detailed written description of his rationale for all of his decisions regarding an agreement in the same mode as a

judicial opinion.[10] Further, it is admitted that no current public guidance regarding agreements with inmates has been promulgated or published, that guidance documents are not binding upon an agency, and that guidance documents can be updated without following the formal notice procedures for rules and regulations. To the extent paragraph 84 suggests anything else, it is denied or is too unclear to require a responsive pleading.

30. The first sentence of paragraph 91 is denied because the statutory factors in K.S.A. 22-3717(h)(2) are introduced with the phrase, "including, but not limited to," which by its plain meaning does not exclude considering other factors, such as youth at the time of the offense. The second sentence of paragraph 91 makes a legal conclusion (regarding whether training sufficiently addresses a particular legal standard), which does not require responsive pleading. To the extent a factual allegation is made, it is denied. KPRB members have received training regarding parole decisions for offenders who committed their offense while a juvenile.

31. Paragraph 92 is admitted in part and denied in part for the following reasons: [11]

    a. Whether the parole process in Kansas meets federal requirements is a legal conclusion, which does not require responsive pleading.

---

[10] *See Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 174 (10th Cir. 1980) (holding that detailed explanations are not required for parole-related decisions).

[11] Defendants note that – unlike parole-revocation hearings – parole hearings involving whether to grant parole do not implicate the due process clause. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-11 (1979). And even parole-revocation hearings, which implicate the due process clause to some degree, would not require many of the features requested by Makthepharak's complaint. *Murphy v. Turner*, 426 F.2d 422, 424 (10th Cir. 1970) ("the due process clause of the fourteenth amendment does not, in parole [revocation] hearings, require the rights to confrontation, cross-examination, compulsory process nor the rights to witnesses under oath and evidence").

b. Prior to a parole hearing, the inmate is provided with the relevant evidence and with notice of what may be considered at the parole hearing.

c. The parole hearing occurs in the presence of the inmate.

    i. Comments by KDOC staff occur at the parole hearing in the presence of the inmate.

    ii. Public comments, such as by a victim or a victim's family, occur separately at a public comment hearing. *See* K.S.A. 22-3717(h).

d. The inmate has an opportunity at the hearing to comment on the evidence.

e. The parole hearing does not follow formal evidentiary rules.

f. The parole hearing is limited in attendance to the inmate and certain KDOC and KPRB staff. A representative from the inmate's unit team or other relevant staff members (who represent the persons most familiar with the inmate's behavior in the prison) attend.

g. Makthepharak did not request any expert assistance or testimony. But inmates are free to reach out to an expert and either ask the expert to submit a written report to the KPRB or to comment at a public comment session per K.S.A. 22-3717(h). The KPRB would take into consideration any such written or oral comments by an expert.

h. Persons who comment at the parole hearing, including the inmate, are given an opportunity to speak. Formal direct and cross-examination are not followed, although the KPRB members may ask questions.

i. The KPRB has the authority to subpoena witnesses and documents "necessary for the investigation of the issues before it." K.S.A. 22-3720.

      i. Subpoenas are used, for example, in the context of parole revocation hearings when an investigation needs to be made of events that occurred outside of the prison system.

      ii. But parole hearings regarding whether to grant parole involve factors (such as institutional history and the offenses for which the inmate has been imprisoned) that do not require investigation, so subpoenas are not used in that context.

      iii. Technically, however, although the inmate does not personally have subpoena authority, the inmate could request that the KPRB issue a subpoena. The KPRB could do so at its sole discretion if it considered the witnesses or documents "necessary for the investigation of the issues before it." *Id.*

j. The right to the assistance of counsel does not apply to a parole hearing.[12] Although counsel is not appointed, the KPRB allows inmates to have an attorney attend the inmate's parole hearing.

k. The Secretary of Corrections does not participate in and has no discretion over the parole process.

l. As stated above with regard to paragraphs 77-79, 81-82, and 85, the agreement process in K.S.A. 75-5210a is not mandatory upon the Secretary of Corrections, but is directory in nature. No such agreement

---

[12] *Jones v. Rivers*, 338 F.2d 862, 871 (4th Cir. 1964) ("The right of counsel under the Sixth Amendment does not apply to parole hearings; it applies only to trials in court."); *see also Greenholtz*, 442 U.S. at 7 (holding that federal due process rights do not attach to parole hearings).

with Makthepharak exists.

m.  The existence of an agreement is not required for parole to be granted by
    the KPRB under K.S.A. 22-3717(g)(1) or (g)(2).

n.  From 1979 to 2023, 73% of parole hearings in Kansas for inmates who
    committed offenses while juveniles have resulted in a grant of parole.

o.  From 2018 to 2023, 62% of parole hearings in Kansas for inmates who
    committed offenses while juveniles have resulted in a grant of parole.

p.  As explained with regard to paragraph 21, parole decisions are judicially
    reviewable (through a habeas corpus action and with a standard of review
    of whether the parole decision was arbitrary and capricious), and an
    inmate can request reconsideration of a parole decision by the KPRB on
    the basis of new evidence.

32. Paragraph 93 is denied. The KPRB is legally required to notify the inmate in writing
    of any reasons for not granting parole. K.S.A. 22-3717(j)(1). Further, the KPRB
    provided a written explanation of its decision to Makthepharak clearly stating the pass
    reasons and providing recommendations to him. This written explanation was
    received and signed by Makthepharak on April 16, 2021, and is attached as Exhibit 1.

33. Paragraphs 94, 99, 101, 108, 120, and 126-27 are denied.

    a.  The Security Classification Manual linked to by Makthepharak and the
        classification criteria it contains are not used. Rather, the Custody
        Classification Manual for Men located here is used:
        https://www.doc.ks.gov/publications/kdoc-facilities-management; *see also*
        K.S.A. 75-5210(b).

b.  The Custody Classification Manual allows for departure from the general classification criteria. *See, e.g.,* Custody Classification Manual for Men, 5 ("if the criteria do not accurately reflect the level or types of risks presented by the individual, when supported by objective documentation, an exception may raise or lower the scored custody level").

c.  The offender's institutional history and disciplinary reports are considered as part of the general classification criteria. *See, e.g.*, Custody Classification Manual for Men, 20 ("Item 5: Institutional Adjustment").

d.  For purposes of the non-point-based items, *see* Custody Classification Manual for Men, 25, the phrase "years to serve to projected release" is interpreted to mean "years to serve until first parole hearing" for offenders serving indeterminate sentences (like Makthepharak).

34. Paragraph 95 is admitted up to the word "privileged," but the rest is denied.

a.  The information is privileged under K.S.A. 22-3711 and is exempt from disclosure under the Kansas Open Records Act, K.S.A. 45-221, especially subsection (a)(29). *See also Wichita Eagle & Beacon Publ'g Co. v. Simmons*, 274 Kan. 194, 212, 216 (2002) (holding "supervision history" in K.S.A. 22-3711 to include "conversations . . . concerning a particular offender").

b.  The KPRB does not make recommendations for parole or commutation to the Secretary of Corrections.

i.  *The KPRB*, not the Secretary of Corrections, has sole discretion over parole decisions. The KPRB makes those decisions without

participation by the Secretary of Corrections.

    ii.  The KPRB makes reports, which may include recommendations, *to the Governor* regarding all applications for pardon or commutation of sentence. K.S.A. 22-3701.

35. Paragraphs 97, 102-104, 121, and 128 are denied for the following reasons:

    a.  Makthepharak and others sentenced to life, including juveniles, have not been categorically barred from security classifications below medium-high. *See* the reasons for denying paragraphs 94, 99, 101, 108, 120, and 126-27 above.

    b.  Makthepharak has been classified as medium-low in the past while serving his current sentence.

    c.  Because Makthepharak is an active and validated security threat group member (active gang member), his current reclassification score would allow him to be placed on medium-low custody. But he has been in special management since May 11, 2023, due to a currently pending aggressive infraction for fighting. If finalized, that would make two aggressive infractions in the past two years (the other having occurred in September 2021) and his reclassification score will then require medium-high custody.

    d.  Those serving life sentences have not been categorically barred from eligibility for work release and community corrections.

    e.  Maturity and rehabilitation can be demonstrated for purposes of parole regardless of an inmate's security classification or participation in work

release or community corrections.

    f.   When certain inmates are "more susceptible to being assaulted and preyed upon," that may support higher security classifications, not lower, as higher security classifications may help protect an inmate by limiting interactions with other inmates.

    g.   While some juveniles may have greater need for supportive programming and for opportunities that will enable them to be rehabilitated than other inmates, this is not true categorically of all juveniles. Further, the majority of parole hearings in Kansas for inmates who committed offenses while juveniles result in a grant of parole, which demonstrates the sufficiency of existing programming and opportunities for offenders who committed their offenses while juveniles.

36. Paragraph 98 is admitted in part and denied in part. Security classifications affect many aspects of an inmate's conditions of confinement, which include in which institutions the inmate may be housed, the level of restriction upon the inmate's freedom of movement, and some aspects of programmatic eligibility, including access to training and employment. All other parts of paragraph 98 are denied.

37. Paragraph 100 is admitted except that although the classification scheme uses a score-based system as a baseline, it includes some non-point-based items and allows for exceptions as discussed above regarding paragraphs 94, 99, 101, 108, 120, and 126-27.

38. Paragraph 106 is denied, especially because, as explained with regard to paragraph 20 above, Makthepharak was denied parole due to his disciplinary history in addition to

him denying responsibility for his offenses, both of which were valid evidence for the board to consider as showing a lack of rehabilitation.

39. Paragraph 107 is denied.

    a.  Not every inmate within the DOC serving a life sentence for offenses committed as a juvenile has come to regard parole proceedings as futile and meaningless, especially when it is granted to them.

    b.  From 1979 to 2023, 73% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

    c.  From 2018 to 2023, 62% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

    d.  As explained above with regard to paragraphs 97, 102-104, 121, and 128:

        i.  Makthepharak has been housed in medium-low security while serving his sentence.

        ii.  He has not been categorically barred from security classifications below medium-high.

        iii.  Because Makthepharak is an active and validated security threat group member (active gang member), his current reclassification score would allow him to be placed on medium-low custody. But he has been in special management since May 11, 2023, due to a currently pending aggressive infraction for fighting. If finalized, that would make two aggressive infractions in the past two years (the other having occurred in September 2021) and his reclassification score will then require medium-high custody.

        iv. Maturity and rehabilitation can be demonstrated for purposes of parole regardless of an inmate's security classification.

40. Paragraph 110 is admitted in part and denied in part. It is admitted up to the word "life," then is denied up to the word "status," then is admitted up to the word "old," and the rest is denied. Defendants also add that Makthepharak's sentence includes the possibility of parole.

41. Paragraph 113 is denied.

        a. No denial was made at the outset of Makthepharak's parole hearing. To the contrary, Makthepharak was extensively interviewed at his parole hearing and a denial of parole was not made until days later.

        b. As explained with regard to paragraph 20 above, Makthepharak was denied parole due to his disciplinary history in addition to him denying responsibility for his offenses, both of which were valid evidence for the board to consider as showing a lack of rehabilitation.

        c. As stated above with regard to paragraphs 77-79, 81-82, and 85, the agreement process in K.S.A. 75-5210a is not mandatory upon the Secretary of Corrections, but is directory in nature. No such agreement with Makthepharak exists. Nor was a formal report regarding such an agreement made by the Secretary to the KPRB.

42. Paragraph 114 is admitted in part and denied in part.

        a. The first sentence is admitted.

        b. The second sentence is denied. As explained above with regard to paragraphs 97, 102-104, 121, and 128:

      i.  Makthepharak has been housed in medium-low security while serving his sentence.

     ii.  He has not been categorically barred from security classifications below medium-high.

   iii.  Because Makthepharak is an active and validated security threat group member (active gang member), his current reclassification score would allow him to be placed on medium-low custody. But he has been in special management since May 11, 2023, due to a currently pending aggressive infraction for fighting. If finalized, that would make two aggressive infractions in the past two years (the other having occurred in September 2021) and his reclassification score will then require medium-high custody.

43. Paragraph 115 is denied.

   a.  As explained above with regard to paragraphs 97, 102-104, 121, and 128:

      i.  Makthepharak has been housed in medium-low security while serving his sentence.

     ii.  He has not been categorically barred from security classifications below medium-high.

   iii.  Because Makthepharak is an active and validated security threat group member (active gang member), his current reclassification score would allow him to be placed on medium-low custody. But he has been in special management since May 11, 2023, due to a currently pending aggressive infraction for fighting. If finalized,

that would make two aggressive infractions in the past two years (the other having occurred in September 2021) and his reclassification score will then require medium-high custody.

iv. Maturity and rehabilitation can be demonstrated for purposes of parole regardless of an inmate's security classification.

b. As explained above with regard to paragraph 20, the KPRB provided a written explanation of its decision to Makthepharak clearly stating the reasons his parole was denied and providing recommendations to him. Exhibit 1.

c. As explained above with regard to paragraphs 94, 99, 101, 108, 120, and 126-27:

i. The classification manual that Makthepharak cites to is not used.

ii. The classification manual that is used allows for departures from the general classification criteria.

d. As explained below with regard to paragraphs 118 and 125, parole is not clemency.

e. The denial of parole does not penalize an inmate for the inmate's offense, but simply allows the court-imposed penalty of incarceration to continue.[13] This is true even if the KPRB *directly* considers and bases its denial of parole on "the serious nature of the crime [for] which [the inmate] was

---

[13] *Diaz v. Lampela*, 601 F. App'x 670, 676 (10th Cir. 2015) (citing *Mahn v. Gunter*, 978 F.2d 599, 602 n.7 (10th Cir. 1992)) ("Mr. Diaz's incarceration following the discretionary denial of parole is not a new punishment meted out by the parole board. It simply continues the punishment previously imposed by the court that sentenced him for the underlying offense.").

convicted."[14] Similarly, when custody classification criteria takes into consideration the seriousness of an inmate's offense, this does not penalize an inmate for the inmate's offense, even if it may somehow *indirectly* influence the denial of parole.

44. Paragraphs 118 and 125 are denied.

    a.   Parole is not clemency.[15]

    b.   From 1979 to 2023, 73% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

    c.   From 2018 to 2023, 62% of parole hearings in Kansas for inmates who committed offenses while juveniles have resulted in a grant of parole.

    d.   Parole decisions by their very nature are discretionary. But as explained above with regard to paragraphs 92-93 the KPRB notifies the inmate of what may be considered at the parole hearing, so the inmate knows the grounds that a decision may be based on and can comment accordingly. And the KPRB notifies the inmate of the basis for its decision when the parole decision is made. Further, the KPRB members hold themselves to a high standard in making parole decisions prudently.

    e.   As explained with regard to paragraph 21, parole decisions are judicially reviewable (through a habeas corpus action and with a standard of review of whether the parole decision was arbitrary and capricious), and an

---

[14] *Carroll v. Simmons*, 89 F. App'x 658, 663 (10th Cir. 2004); *see also Curtis v. Chester*, 626 F.3d 540, 548-49 (10th Cir. 2010).
[15] K.S.A. 22-3717(g) ("Parole shall not be granted as an award of clemency and shall not be considered a reduction of sentence or a pardon.").

inmate can request reconsideration of a parole decision by the KPRB on the basis of new evidence.

f.  As explained above with regard to paragraphs 92-93, the inmate is provided with the relevant evidence in advance of the parole hearing, attends and participates in the parole hearing, and is provided a written explanation of the parole decision with any pass reasons and providing recommendations to the inmate.

g.  Parole eligibility dates and whether parole has been granted are matters of public record. *See* K.S.A. 45-221(a)(29)(A). The public has the ability to comment at public comment hearings regarding upcoming parole decisions for inmates. K.S.A. 22-3717(h).

45. Paragraphs 122, 129, and 133 state legal conclusions, which do not require a responsive pleading. Defendants deny that Makthepharak's youth at the time of his offense was not considered. As described with regard to paragraph 20, Makthepharak's disciplinary history and denial of responsibility for his offenses were valid evidence for the board to consider as showing a lack of rehabilitation.

46. Paragraph 132 states a legal conclusion, which does not require a responsive pleading. Defendants deny that K.S.A. 22-3717(g)-(h) or 75-5210a mandate exclusive factors and prevent the KPRB from considering the age of the offender at the time of the offense. Defendants further deny that the Secretary of Corrections participates in the parole process.

## OTHER DEFENSES

47. Plaintiff has failed to state a claim upon which relief can be granted in whole or in part.

48. The Court lacks subject-matter jurisdiction in whole or in part. Reasons include but are not limited to: the Eleventh Amendment bars Plaintiff's state law claims as well as Plaintiff's claims for declaratory relief; § 1983 is an inappropriate avenue for post-conviction relief or for contesting a denial of parole; Plaintiff lacks constitutional standing for some claims; Plaintiff may not assert claims for other persons; and some of Plaintiff's claims are moot.

49. Alternatively, the Plaintiff's damages are not of the nature and extent alleged.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Jonathan Sternberg, Attorney, PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108-2607
jonathan@sternberg-law.com
*Attorney for Plaintiff*

*/s/ Matthew L. Shoger*
Matthew L. Shoger
Assistant Attorney General