Approved __April 8, 1988__
                    Date

MINUTES OF THE __SENATE__ COMMITTEE ON __JUDICIARY__.

The meeting was called to order by __Senator Robert Frey__ at
                                          Chairperson

__10:00__ a.m./p.m. on __April 5, 1988__, 19__ in room __514-S__ of the Capitol.

All members were present except: Senators Frey, Hoferer, Burke, Langworthy, Parrish, Steineger, Talkington, Winter and Yost.

Committee staff present:

   Gordon Self, Office of Revisor of Statutes
   Mike Heim, Legislative Research Department
   Jerry Donaldson, Legislative Research Department

Conferees appearing before the committee:

   Representative Wanda Fuller
   Representative Bob Wunsch
   Roger Endell, Secretary of Corrections
   Steven Robinson, Ombudsman
   Elwaine Pomeroy, Kansas Parole Board
   Jean Wasson, Outside Connection
   Charles Simmons, Department of Corrections


House Bill 3079 - Parole based on completion of programs required by Kansas Parole Board.

Representative Wanda Fuller explained this bill was brought to the revisor by the Corrections Ombudsman Board. She reported Kansas has a greater growth in prison population than any other state in the United States. The bill is cost effective, reduces overcrowding, provides guidance to the parole board and provides for a more cohesive relationship between the parole board and the Department of corrections. She said the chairman of the parole board has been working with us to help address the overcrowding problem. The bill has three major measures that would be a change from current law. The major change is allowing more good time credits. A committee member inquired do you have strong feelings concerning the unanimous vote of the parole board? Representative Fuller replied, I have mixed feelings about that, however, that is the current policy of the board.

Representative Wunsch statedd he would like to echo the remarks of Representative Fuller. He called the committee's attention to the amendment at the end of the bill concerning the electronic survey device, which was in old House Bill 2898. A copy of his handout is attached (See Attachment I). The chairman explained it was felt it would make more sense to have the amendment of the electronic device in this bill.

Roger Endell, Secretary of Corrections, testified the bill gives additional latitude to accomplish a number of things. When an inmate signs the letter of agreement, and when he is ready, we will take him to the parole board. If the parole is denied the board is required to hold another hearing. Good time credit accrued rates will move out 200 inmates in the next two years. He said the select committee on corrections has been meeting regularly. The committee recommended 50 court services officers,

Unless specifically noted, the individual remarks recorded herein have not been transcribed verbatim. Individual remarks as reported herein have not been submitted to the individuals appearing before the committee for editing or corrections.

Page __1__ of __3__

CONTINUATION SHEET

MINUTES OF THE \_\_\_\_SENATE\_\_\_\_ COMMITTEE ON _____JUDICIARY_____,

room \_\_514-S, Statehouse, at \_10:00\_ a.m./p.m. on _____April 5_____, 19 88.

House Bill 3079 continued

32 parole officers and about four million dollars in new programs. Secretary Endell stated this bill is the key to making a great deal of things happen. A committee member inquired about the letter of agreement? The secretary replied this is not a guarantee, this is not a contract, it addresses the right to parole issues. A staff member inquired what if the prisoner refuses to sign this agreement? The secretary replied, word will get around that it is advantageous to sign. For those who refuse to agree, are the people who will do a lot of time. We can't ask inmates to get in programs we don't have. Approximately four million dollars in additional money will allow them to reach a significant group of inmates. Their effort is to get these programs delivered up front and get needs taken care of early in their sentence.

Steven Robinson, Ombudsman, testified the bill changes the authority as to who would assign the level of supervision the inmates would have on parolees. This bill would change that authority from the parole board to secretary of corrections. It allows more flexibility to parole officers. It establishes written agreement between Secretary of Corrections and inmate for required programs. It establishes authority for SOC to place inmates on extended supervised furloughs six months before parole eligibility. It allows the courts and the SOC to use house arrest with electronic monitoring as an alternative to incarceration. Mr. Robinson recommended amending Sections 1 and 2 of Senate Bill 366 into House Bill 3079. He also recommended amending out Section 6 of the bill. He stated we do support a higher threshold for felony theft. A copy of his testimony is attached (See Attachment II)

Elwaine Pomeroy, Kansas Parole Board Chairman, testified the bill will provide better communications. He said sometimes their suggested programs have not been parole requirements. Another lack of communication is they have seen a number of times inmates have told them that they have not been informed as to what those recommendations are. Chairman Pomeroy requested further amendments to can provide greater improvement in the bill. These suggestions are listed in the attached handout (See Attachment III). He stated the board will have to see twice as many hearings with the change in the good time credit. He said he agrees with suggestions to amend Sections 1 and 2 of Senate Bill 366 into this bill.

Jean Wasson, Outside Connection, testified her organization is very much in accordance with the director of corrections. She testified we are standing behind all of his recommendations one hundred percent. Concerning the parole hearing each year, that would affect the majority of the minimum security who are at the bottom of the scale anyway. That would help get those people out. We would like that provision to stay in.

Charles Simmons, Department of Corrections, explained the proposed amendments of the secretary of corrections (See Attachment IV). He also proposed the publication date be Publication in the Kansas Register. He stated he concurs with Chairman Pomeroy concerning the formula for good time table. He also concurs in the recommendation Senate Bill 366 be amended into the bill.

Page \_\_2\_\_ of \_\_3\_\_

CONTINUATION SHEET

MINUTES OF THE __SENATE__ COMMITTEE ON __JUDICIARY__,

room __514-S__, Statehouse, at __10:00__ a.m./p.m. on __April 5__, 19__88__.

During committee discussion, a committee member suggested instead of holding hearings every year, would it be practical way to set a summary docket. Chairman Pomeroy replied instead of parole hearing, have a file review. Chairman Pomeroy stated he was concerned with changing the effective date.

The meeting adjourned.

A copy of the guest list is attached (See Attachment V).

# GUEST LIST

COMMITTEE: __SENATE JUDICIARY COMMITTEE__    DATE: __4-5-88__

| NAME (PLEASE PRINT) | ADDRESS | COMPANY/ORGANIZATION |
|---|---|---|
| Dean Meyers | 7225 Ridge KCK | Stony Point Christian |
| Joshua Reasons | 230 S 65th KCKS | |
| Matt Truell | Topeka | AP |
| George Jones | Topeka | KPB |
| Sandy Smith | Topeka | KPB |
| Holly Meyers | K.C. KS 7225 Ridge | |
| Natasha Meyers | 7225 Ridge, KCK | |
| Steven A. Robinson | Topeka | Ombudsman for Corrections |
| Micah A. Ross | " | " " |
| Barb Reinert | " | KPOA |
| Alan E. Sims | Overland Park | City of Overland Park |
| Bernie Hammond | Lawrence, Ks | Intern |
| Frank Henderson | Topeka | Ks. Parole Bd. |
| Robert Warren | 214 N Chestnut | Olathe K. |
| Sophie George | Topeka | Sn. Feleciano |
| Jim R. Warren | Olathe, Ks. | Outside Connections |
| Bob Wunsch | | Leg |
| W. Fuller | | Leg |
| Luanne Pomeroy | Topeka | Parole Board |
| John Conard | " | Governor |
| Jim McBride | Topeka | observer |
| Jack Glaves | Wichita | " |

Att. V

STATE OF KANSAS

ROBERT S. WUNSCH
REPRESENTATIVE, ONE HUNDRED AND FIRST DISTRICT
KINGMAN AND RENO COUNTIES
BOX 473
KINGMAN, KANSAS 67068-0473
(316) 532-3113

COMMITTEE ASSIGNMENTS
CHAIRMAN: JUDICIARY
MEMBER: TAXATION
  CORRECTIONS OMBUDSMAN BOARD
  NATIONAL CONFERENCE OF STATE
    LEGISLATORS COMMITTEE ON LAW
    AND JUSTICE
  EX OFFICIO-KANSAS JUDICIAL
    COUNCIL

HOUSE OF
REPRESENTATIVES

# Breaking Punishment Out of Prison

**SUMMARY: In the face of overcrowded prisons and the rising cost of providing new space, alternative sentences are becoming increasingly attractive. Proponents claim that the sentences, which include restitution, community service and electronic monitoring, are not only less expensive than incarceration but more effective, too.**

A slumlord is condemned to live for a month in one of his buildings. A teenager who mixed drinking and driving, leading to the deaths of 10 people, is sentenced to work with a shock-trauma unit. A child molester is ordered to hang signs that say "Dangerous Sex Offender" on his house and car. The idea that the punishment should fit the crime is as old as crime itself. But today, with prison costs skyrocketing, there is a growing interest in finding alternatives to incarceration.

"The whole system has been hit with an avalanche," says Mark Cunniff, executive director of the National Association of Criminal Justice Planners, a nonprofit organization in Washington, D.C. "People are scrambling around to see what else we can do."

The options being touted include house arrest, electronic monitoring, restitution and community service. These ideas are not necessarily new, but what is new is a willingness to put them into effect in a broad range of felony cases.

"There's a group of offenders for whom prison's not the only choice," says Mark Maurer of the Sentencing Project, a research and consulting organization that has helped set up two dozen alternative sentencing programs. "You can do something else with this group of people. You can set up a community sentencing program that's punitive, rehabilitative, that puts controls over the persons and speaks more directly to the victims and is also much less costly than sending a person to prison." That cost, according to a recent Rand Corp. report, averages $14,000 per year.

"If more time and effort could be put into the sentencing, a large group of people could be handled very well and very safely in the community," says Jerome Miller, director of the National Center on Institutions and Alternatives in Alexandria, Va. Since 1979 the center has worked with some 5,000 criminals in 46 states. Its role begins after the guilty finding, during the period when the parole department traditionally does a presentencing investigation of the offender. The center takes over that investigation, spending as much as 50 hours studying the offender's history, family situation and community ties, then coming up with a community-based alternative to prison. According to Miller, the center "wins" about two-thirds of its cases, meaning that the judge goes along with its recommendation.

There is nothing soft or easy about the sentences his group devises, says Miller. The offender is required to hold a job and do community service. House arrest may also be imposed, monitored by someone from the community or a social agency. "We have no hesitation to build a very stringent proposal," he says. "We've had people who would rather go to prison."



**An electronic monitor tells police whether someone under house arrest stays put.**

The National Center on Institutions and Alternatives is one of about 80 programs nationwide that do what is called defense-based sentencing. Many of these owe their existence to the Edna McConnell Clark Foundation. Over the past six years, the foundation has spent about $15 million on alternative sentencing research and development.

One form of punishment getting a great deal of attention is electronic monitoring, a component of many house arrests. The monitoring equipment comes in two basic forms. One is a transmitter worn by the offender that broadcasts a continuous signal picked up by a receiver-dialer. The receiver reports to a central computer if the signal is interrupted, usually when the wearer strays too far from the receiver. The other is a programmed contact device. A computer calls the offender, who is wearing a wristlet that he must insert into a verifier box. According to Cunniff, there is now a breath analysis device that can be attached to a phone to check an offender's alcohol use.

Such innovations have given rise to concerns about privacy as well as equipment failure. "Electronic monitoring is not a quick-fix answer, and it's not automatically an infringement on people's rights," says Mark Corrigan, director of the National Institute for Sentencing Alternatives, a public policy center at Brandeis University. "We should welcome exploration. If the technology doesn't work well, we ought to keep working on it."

Of course, all of these programs are ultimately judged by whether the offender commits another crime. The recidivism rate for those who serve time in prison is around 70 percent. The reverse is claimed to be the case with alternative sentences. Of those who served alternative sentences fashioned by the NCIA, 75 percent have not been arrested again, according to one follow-up study.

"There's a great myth about how nothing works in corrections: No matter what you do, people will offend at the same rate," says Miller.

"That's simply not true," he says. "I would think that probably about a third or more of our people will tend to get in trouble again. I think about two-thirds won't. If the person does reoffend and it isn't as serious an offense as the original offense, we'll go back and try to put something together. . . . If you get a guy who's assaulting people and he shoplifts a year later, that's progress."

— *Deborah Papier*

Att. I

*JEAN-PIERRE LAFFONT / SYGMA*

4-5-88

**CORRECTIONS OMBUDSM. BOARD OFFICERS**

Barbara Owensby, R.N., Chairperson
Shari Caywood, Vice-Chairperson
Floyd Gaunt, Secretary

**BOARD MEMBERS**

James Bolden
Wanda Fuller
Karen L. Griffiths, J.D.
Ann Hebberger
William E. Richards, Sr.
Luella Wolff, Ph.D.
Bob Wunsch

**OFFICE OF THE OMBUDSMAN FOR CORRECTIONS**

717 Kansas Avenue
Topeka, Kansas 66603
(913) 296-5295
KANS-A-N 561-5295

**OMBUDSMAN**

Steven A. Robinson

**OMBUDSMAN ASSOCIATES**

Micah A. Ross
Richard D. Mills
Ron R. Ross



STATE OF KANSAS

TESTIMONY OF STEVEN A. ROBINSON,
OMBUDSMAN FOR CORRECTIONS,
BEFORE THE SENATE JUDICIARY COMMITTEE ON H.B. NO. 3079
April 5, 1988

I. Growth of Kansas inmate population - reasons

   A. Increased Incarceration Rates

   B. Decreased Allocated Good Time Credits

   C. Decreased Numbers of Inmates Paroled

II. What H.B. No. 3079 Addresses -

   A. Provides more liberal allocation of good time credits

      1. allows for earlier parole eligibility and conditional release

      2. reduces length of time parole board has discretion

      3. helps reduce inmate population upon enactment

   B. Set up parole hearing one month before parole eligibility

      1. frees up bed space earlier

      2. allows DOC to anticipate parole releases

   C. Allows SOC to assign level of supervision

      1. provides for level of supervision to be based upon actual needs

      2. provides more flexibility and efficiency in case load management

   D. Establishes written agreement between SOC and inmate for required programs

      1. requirements are set by SOC based upon inmate needs and program availability

att. II

Page Two

        2. puts the responsibility for successful program completion and appropriate adaptive behavior directly with the inmate

        3. allows the agreement to be modified should inmate needs or program availability change

        4. limits length of pass by parole board to one year

        5. allows DOC to anticipate program needs

        6. excludes KPB entirely from making programs recommendations

    E. Establishes authority for SOC to place inmates on extended supervised furloughs six months before parole eligibility

        1. allows the SOC latitude to reduce over-crowding

        2. allows deserving inmates to be slowly reintegrated into their communities under a supervised program

        3. allows for automatic parole of those successfully completing the extended furlough program

    F. Allows the courts and the SOC to use house arrest with electronic monitoring as an alternative to incarceration

        1. provides relative safety to the community

        2. allows participants to remain in or slowly re-integrate into the community while being closely monitored

        3. further allows participants to work, pay taxes, and contribute to the operating costs of the program

        4. can be a self supporting program within a relatively short time

III. Primary Benefits of H.B. 3079

    A. Cost effective

    B. Helps reduce over-crowding

    C. Provides predictability

    D. Provides for a more cohesive relationship between the parole board and DOC

    E. Assists the DOC in complying with the Federal courts order

Page Three

IV.  Enactment of H.B. 3079 creates the need for increased funding to provide more court services and parole offices to adequately monitor those affected by this bill

V.  Amend in Sections 1 & 2 of S.B. No. 366

VI.  Amend out Section 6 of H.B. 3079


APPENDIX I

| Fiscal year | 1980 | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 | 1988 1st Half |
|---|---|---|---|---|---|---|---|---|---|
| Crime Index - incidence per 100,000 population | 52.9 | 54.3 | 50.4 | 46.0 | 43.6 | 43.7 | 47.6 | 44.5 | N/A |
| Number of prisoners in custody of SOC - End of FY | 2406 | 2638 | 2966 | 3353 | 3968 | 4490 | 4934 | 5586 | 5875 |
| Number of state prisoners per 100,000 population | 102 | 118 | 129 | 152 | 173 | 193 | 204 | 229 | N/A |
| Number of Parole Releases | 1234 | 1168 | 1344 | 1399 | 997 | 1063 | 1256 | 1193 | 804 |
| Number of Paroles and Conditional Releases Revoked - technical violations | 160 | 215 | 185 | 202 | 242 | 254 | 334 | 393 | 276 |
| Number of Paroles and Conditional Releases Revoked - new sentence | 148 | 228 | 218 | 240 | 249 | 158 | 162 | 197 | 92 |
| Total Number of Paroles and Conditional Releases Revoked | 308 | 443 | 403 | 442 | 491 | 412 | 496 | 590 | 368 |



Members

Elwaine F. Pomeroy
Chairman

Joan M. Hamilton
Vice-Chairman

Frank S. Henderson, Jr.

**KANSAS PAROLE BOARD**
LANDON STATE OFFICE BUILDING
900 JACKSON STREET, 4TH FLOOR
ROOM 452 S
TOPEKA, KANSAS 66612-1220
(913) 296-3469

George V. Jones
Director

OUTLINE OF REMARKS

By Elwaine F. Pomeroy

Chairman, Kansas Parole Board

Senate Judiciary Committee

April 5, 1988

House Bill 3079

Will provide better communications

Kansas Parole Board program recommendations have been misunderstood

Amendments have greatly improved bill

Kansas Parole Board objected to needless work

Kansas Parole Board does not object to needed work

Bill now provides workable program framework

Programs are important

Programs should not be sole criteria

Bill now makes clear Kansas Parole Board considers other factors

Further amendments can provide greater improvement

Concerned about line 163 "specific reasons"

Lines 191 + 192 "state in detail the specific reasons"

Pending lawsuit

Appreciate guidance, comments in minutes

att. III

House Bill 3079                                                        Page 2

Comments in minutes - line 57 - no change

Very concerned - new parole hearing every year

Try to be realistic in our pass lengths

Request sentence be deleted - lines 192 - 194

Hope Kansas Parole Board input would be considered lines 195 - 204

Section 2 - suggest a statement of formula

Lines 1172 - 1181 - Comment in minutes

Concern about Ex Post Facto law

Administrative authority for chairperson

Selection by governor

Mixed signals - Sections 3, 6 and 8

Do you want Kansas Parole Board to consider prison capacity?

If so, include capacity as a factor

If not, don't hold Kansas Parole Board responsible for overcrowding

Suggest addition of public and victim input as factors

Kansas Parole Board willing to accept burden bill will impose

Kansas Parole Board plan to implement provisions

Kansas Parole Board pledges cooperation

Incorporate Senate Bill 366

5-5-88

DEPARTMENT OF CORRECTIONS
H.B. 3079
Proposed Amendment

(P.16, Lines 1340-1360 and p. 17, Lines 1365-1368.)

That K.S.A. 21-4603(4) be amended to read as follows:

(4) ~~Upon-hearing,~~ The court may ~~reduce-the-minimum-term-of confinement~~ <u>modify the sentence</u> at any time before the expiration thereof when such ~~reduction~~ <u>modification</u> is recommended by the secretary of corrections and the court is satisfied that the best interests of the public will not be jeopardized and that the welfare of the inmate will be served by such ~~reduction~~ <u>modification</u>. ~~The-power-here-conferred-upon-the-court-includes~~ <u>The Court shall have the power to impose a less severe penalty upon the inmate, including</u> the power to reduce the minimum below the statutory limit on the minimum term prescribed for the crime of which the inmate has been convicted. The recommendation of the secretary of corrections, the hearing on the recommendation and the order of ~~reduction~~ <u>modification</u> shall be made in open court. Notice of the recommendation of ~~reduction~~ <u>modification</u> of sentence and the time and place of the hearing thereon shall be given by the inmate, or by the inmate's legal counsel, at least 21 days prior to the hearing to the county or district attorney of the county where the inmate was convicted. After receipt of such notice and at least 14 days prior to the hearing, the county or district attorney shall give notice of the recommendation of ~~reduction~~ <u>modification</u> of sentence and the time and place of the

*att. IV*

hearing thereon to any victim of the inmate's crime who is alive and whose address is known to the county or district attorney or, if the victim is deceased, to the victim's next of kin if the next of kin's address is known to the county or district attorney. Proof of service of each notice required to be given by this subsection shall be filed with the court.