IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SASHADA MAKTHEPHARAK,            )<br>                                                        )<br>            **Plaintiff,**                         )<br>                                                        )<br>v.                                                      )            Case. No. 23-2121-DDC-RES<br>                                                        )<br>LAURA KELLY, *et al.*,                 )<br>                                                        )<br>            **Defendants.**                    )<br>_____)| |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
### FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants Governor Laura Kelly, Secretary of Corrections Jeff Zmuda, and members of the Kansas Prisoner Review Board (KPRB) Jonathan Ogletree, Jeannie Wark and Mark Keating ("Defendants") submit this memorandum in support of their motion under Fed. R. Civ. P. 12(c). Defendants respectfully request that this motion be granted and the claims addressed be dismissed for lack of subject-matter jurisdiction or for failure to state a claim. Defendants attach one exhibit – Exhibit A (KASPER Information Sheet) – and state the following in support.

### NATURE OF THE CASE

Plaintiff Sashada Makthepharak, an inmate currently incarcerated at Lansing Correctional Facility (LCF), alleges that he, after being convicted of homicide while a juvenile, has been effectively sentenced to life without parole in violation of the prohibitions on cruel and unusual punishment in the Eighth Amendment and in Section 9 of the Kansas Bill of Rights.

In 2001, at 16 years of age, he was convicted by a jury of first-degree murder, aggravated burglary, and criminal possession of a firearm. (Doc. 9 at ¶ 5). He has contested this conviction through direct appeal, through a motion to correct illegal sentence under K.S.A. 22-3504 in

2010, and through a habeas corpus action in 2019, all of which were denied.[1] About two years ago, in 2021, he was denied parole. (*See* Doc. 9 at ¶ 5 (the offenses occurred in May 2001, parole eligibility after 20 years), ¶ 83 (denied parole), ¶ 111 (has been in prison for 22 years)).

Makthepharak filed this lawsuit on March 21, 2023, and filed an Amended Complaint ("Complaint") on April 12, 2023. (Docs. 1, 9.) Makthepharak brings this action under 42 U.S.C. § 1983 (Doc. 9 at ¶ 1) and the Kansas Constitution (Doc. 9 at ¶ 1, pgs. 27-28) and requests declaratory and injunctive relief. (Doc. 9 at ¶¶ 29-32.) Makthepharak named as defendants the Governor, the Secretary of Corrections, and the three members of the Kansas Prisoner Review Board (KPRB), all in their official capacities. (Doc. 9 at ¶¶ 6-10.) Makthepharak says his claims support three broad counts: (1) violations of the Eighth Amendment for denying him "a meaningful opportunity for release," (2) violations of the Kansas Bill of Rights for the same, and (3) an assertion that certain Kansas statutes are unconstitutional as applied to him. (Doc. 9 at 26-29.) Yet Defendants more granularly note the following claims in Makthepharak's Complaint:[2]

1. That the sentencing court unconstitutionally sentenced him to life without parole (Doc. 9 at ¶¶ 12, 18-19, 69-71, 73-75, 110, 112, 131);

2. That the parole process is effectively arbitrary clemency and not parole because it is rarely granted, has no substantive or enforceable standards or constraints; has no mechanisms for review; vests unilateral authority in the Secretary of Corrections; and has no transparency or explanation of next steps to be recommended for parole (Doc. 9 at ¶¶ 21-22, 25, 63-64,

---

[1] *State v. Makthepharak*, 276 Kan. 563, 563, 573 (2003) (appeal); *Makthepharak v. State*, 298 Kan. 573, 574 (2013) (motion to correct illegal sentence); *Makthepharak v. State*, 472 P.3d 1148 (table opinion), 2020 WL 5994108, at *1 (Kan. Ct. App. Oct. 9, 2020) (habeas action).
[2] These claims are intermingled in Makthepharak's Complaint, but Defendants parse them out here to enable a more organized response to these claims.

67, 77-82, 84-85, 88, 92, 107, 115, 118-19, 125, prayers for relief 2-4, 7);

3. That he was denied parole solely because he did not take responsibility for the offense and therefore was not given an opportunity to demonstrate rehabilitation. (Doc. 9 at ¶¶ 20, 24, 62, 83, 106, 113, 117, 122, 124, 129, 133);

4. That he was denied due process rights under federal law due to a lack of evidentiary rules, ability to obtain expert assistance or testimony, cross-examination, compulsory process, assistance of counsel, written explanation of the decision, and mechanisms for review (Doc. 9 at ¶ 72, 92-93, prayer for relief 7);

5. That the statutory factors considered by the KPRB are unconstitutional as applied to offenders convicted while juveniles because they do not allow for considering his juvenile status at the time of the offense (Doc. 9 at ¶¶ 64-65, 89-91, 132-33, prayer for relief 4);

6. That the Secretary and KPRB did not consider Makthepharak's juvenile status at the time of the offense (but should have) (Doc. 9 at ¶¶ 64-65, 83, 89-91, prayer for relief 7);

7. That the "risk assessment tools" of the Kansas Department of Corrections (KDOC) and KPRB discriminate against youth (Doc. 9 at ¶¶ 21, 65, 94, 108, 115, 120, 126-27, prayer for relief 5);

8. That the "risk assessment tools" and/or parole process of KDOC and the KPRB penalize Makthepharak for his offense (Doc. 9 at ¶ 115, prayer for relief 7);

9. That the practices of KDOC foreclose rehabilitation opportunities from him by setting a minimum of medium-high security because of his age and offense, which thwarts his ability to obtain parole (Doc. 9 at ¶¶ 66, 97-104, 107, 114-15, 121, 128, prayer for relief 6);

10. That the practices of KDOC foreclose rehabilitation opportunities from him by preventing him from engaging in work release or community corrections programs, and this thwarts

his ability to obtain parole (Doc. 9 at ¶ 97); and

11. That "older institutional disciplinary history" is considered during the parole process (prayer for relief 7).

Most of the claims should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity, using an inappropriate legal avenue for post-conviction relief, and lack of standing. Alternatively, these claims should be dismissed for failure to state a claim. This motion does not address claims 2 and 3 above except with regard to Governor Kelly.

## QUESTIONS PRESENTED

I. Does the Eleventh Amendment bar Makthepharak's state law claims in their entirety?

II. Does the Eleventh Amendment bar Makthepharak's claims for declaratory relief?

III. Is a § 1983 claim an inappropriate avenue for post-conviction relief?

IV. Does Makthepharak lack standing to contest alleged aspects of the parole process when he does not allege any injury from those alleged aspects of the process?

V. Does Makthepharak lack constitutional standing to pursue a claim against Governor Kelly when he does not allege causation of any injuries by her?

VI. Does Makthepharak lack constitutional standing to pursue some of his requested injunctive relief when it would not redress his alleged injuries?

VII. Is Governor Kelly entitled to dismissal due to lack of personal participation?

VIII. Do most of Makthepharak's claims – specifically, claims 1 and 4-11 as enumerated by Defendants above – fail to state a plausible Eighth Amendment claim?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for lack of subject-matter jurisdiction and failure to state a claim is treated as a motion to dismiss

under Rule 12(b)(1) and 12(b)(6). 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed., Apr. 2023 update); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101-02 (10th Cir. 2017).

Under Rule 12(b)(1), the party invoking the Court's subject-matter jurisdiction bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

Under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

I. **Many of Makthepharak's claims should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity, using an inappropriate legal avenue for post-conviction relief, and lack of constitutional standing.**

A. **The Eleventh Amendment bars Makthepharak's state law claims in their entirety and bars his § 1983 claims for declaratory relief.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This immunity extends to

5

arms of the state and to state officials who are sued for damages in their official capacity." *Id.* As such, employees of KDOC share the state's immunity from suits against them in their official capacities for money damages or declaratory relief. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

A narrow exception to sovereign immunity allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of *federal* law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). But the Eleventh Amendment bars claims for "retrospective declaratory relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). The Declaratory Judgment Act does not abrogate Eleventh Amendment immunity,[3] so it does not change that "retrospective declaratory relief" is barred. And Eleventh Amendment immunity still bars claims for prospective injunctive relief for ongoing violations of *state* law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Here, Makthepharak requests prospective injunctive relief (Doc. 9 at 31-32), and this particular remedy is exempt from Eleventh Amendment immunity with regard to alleged violations of *federal* law. But Makthepharak also requests prospective injunctive relief for alleged violations of *state* law, which is barred. He also requests several declaratory judgments. (Doc. 9 at 29-31.) To the extent such declaratory judgments stand as independent remedies apart

---

[3] *United States v. Dillard*, 884 F. Supp. 2d 1177, 1183 (D. Kan. 2012); *Thomas v. Pierce*, 662 F. Supp. 519, 524 (D. Kan. 1987); *see also Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (holding abrogation only occurs if Congress "makes its intention to abrogate unmistakably clear" and acts "under § 5 of the Fourteenth Amendment"); Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

from injunctive relief, they are barred. Therefore, Makthepharak's state law claims (including Makthepharak's Count Two (Doc. 9 at 27-28)) and his claims for declaratory relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

**B. Section 1983 is an inappropriate legal avenue for post-conviction relief.**

Although § 1983 "broadly authorizes suit against state officials for the 'deprivation of any rights' secured by the Constitution," it "contains an implicit exception for actions that lie within the core of habeas corpus." *Nance v. Ward*, 142 S. Ct. 2214, 2221 (2022). Accordingly, "habeas corpus, and not a civil rights action, 'is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement.'" *Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 173 n.1 (10th Cir. 1980) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)). This is true "no matter the relief sought (damages or equitable relief)" and "no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). "In contrast, a prisoner who challenges the *conditions of his confinement*" in federal court "must do so through a civil rights action." *Dimmick v. Bourdon*, 769 F. App'x 616, 618 (10th Cir. 2019) (emphasis added).[4]

What is more, unlike habeas corpus actions, section 1983 actions are bound by the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine is a jurisdictional prohibition based on 28 U.S.C. § 1257 which holds that, with the exception of habeas corpus, federal review of state court judgments can be obtained only in the United States Supreme Court." *Kanth v. Lubeck*, 123 F. App'x 921, 923 (10th Cir. 2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 & n.8 (2005). Therefore, federal district courts lack subject-matter jurisdiction to consider a challenge to a state-court criminal sentence through § 1983.

---

[4] And contesting a denial of parole must be done through habeas. *Dimmick*, 769 F. App'x at 619.

Here, Makthepharak claims that he was unlawfully sentenced to life in prison without parole (Doc. 9 at ¶¶ 69-71, 73-75, 112, 131). But he cannot contest his sentence (the fact or length of his confinement) in a § 1983 action. Therefore, Makthepharak's claim that he was unlawfully sentenced should be dismissed for lack of subject-matter jurisdiction.[5]

**C. Makthepharak lacks constitutional standing for some his claims against Defendants because of lack of injury, causation, or redressability.**

Article III of the Constitution requires standing to bring a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of three requirements: injury in fact, causation, and redressability. *Id.* at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04.

1. *Lack of injury in fact*

The first element of the standing analysis requires that a plaintiff allege and ultimately prove "an 'injury in fact'—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 103. Here, Makthepharak alleges he "was denied parole solely because he did not take responsibility for the offense." (Doc. 9 at ¶ 83.) He further alleges that "no matter the level of maturity or rehabilitation or lack of it that he may demonstrate, he is and will be denied parole principally due to the fact that he denies responsibility for the offense in the first place." (Doc. 9 at ¶ 20.)

Taking these allegations as true, then the denial of parole to Makthepharak was not affected in any meaningful way by the allegations in claims 4 through 11, but was conclusively determined as a result of his denial of responsibility. Specifically, his denial of parole could not

---

[5] Even if this lawsuit was a habeas action, it would be untimely. *See* 28 U.S.C. § 2244(d)(1).

have then been affected by any denial of due process rights under federal law, any failure to consider Makthepharak's juvenile status at the time of the offense, any use of "risk assessment tools" that may have discriminated against youth or penalized Makthepharak for his offense, any security classifications, any lack of availability of programming (whether rehabilitative, work release, or community corrections), or the consideration of "older institutional disciplinary history." Makthepharak has raised only hypothetical injury, not actual injury, with regard to these claims. Therefore, claims 4 through 11 should be dismissed for lack of injury in fact.

2. *Lack of causation*

For the second prong, causation, "there must be . . . a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103. Here, aside from being named in the caption and generically described in paragraphs 6 and 7 of the Complaint, Governor Kelly is not mentioned anywhere else in the Complaint. Makthepharak does not complain of any conduct by her, much less conduct that could be fairly traced and connected to Makthepharak's injuries. Therefore, he lacks constitutional standing to bring any claims against Governor Kelly because he has not plausibly alleged causation by her.

3. *Lack of redressability for the requested injunction*

For the third prong of the standing inquiry, redressability, the relief sought must serve to either reimburse the plaintiff for losses or to eliminate lingering effects of losses. *See id.* at 105-06. "Relief that does not remedy the injury suffered" does not count. *Id.* at 107. And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Here, Defendants do not control sentencing, so none of them can redress claim 1. And Governor Kelly does not control or oversee parole decisions, so she cannot perform any of the injunctive relief requested. Even if parole here was executive clemency as claimed, denial of

clemency is not reviewable (apart from "wholly arbitrary" procedures, like flipping a coin, or failure to follow procedures established explicitly by statute). *Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir. 1998) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). So the Court could not order injunctive relief against Governor Kelly based on denial of clemency. Therefore, Makthepharak lacks standing to bring claim 1 against any of the Defendants or to request any injunctive relief against Governor Kelly due to lack of redressability.

## II. Alternatively, several claims should be dismissed for failure to state a claim due to lack of personal participation and for failure to state a plausible Eighth Amendment claim.

### A. Makthepharak fails to allege the requisite personal participation of Governor Kelly.

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). So Makthepharak cannot rely on vicarious liability, but must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Here, aside from being named in the caption and generically described in Complaint paragraphs 6 and 7, Governor Kelly is not mentioned anywhere else in the Complaint. Makthepharak does not allege that she acted at all, much less acted in a way that made her personally involved in his injury, in a way that made her cause his injury, or with a culpable state of mind. So he fails to state a claim against Governor Kelly due to lack of personal participation.

### B. For most of Makthepharak's claims, he fails to state a plausible Eighth Amendment claim because he misstates the relevant federal and state law.

The Supreme Court has held that the Eighth Amendment's prohibition on cruel and unusual punishment prohibits: capital punishment for all murderers who were under 18 at the time of their crimes (in *Roper v. Simmons*, 543 U.S. 551 (2005)), life without parole for all nonhomicide offenders under 18 (in *Graham v. Florida*, 560 U.S. 48 (2010)), and, under some

10

circumstances, life without parole for homicide offenders who were under 18 (in *Miller v. Alabama*, 567 U.S. 460, 476 (2012), and held to be retroactive in *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016)). *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021) (citing each).

1. *Makthepharak has misstated the standard from Miller and Montgomery.*

Two years ago, the Supreme Court clarified that a life-without-parole sentence satisfies the standard under *Miller* and *Montgomery* "if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Id.* at 1311. It suffices that "the sentencer has discretion to consider the mitigating qualities of youth and impose a lesser punishment." *Id.* at 1314. The Court has "unequivocally stated that a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18." *Id.* at 1318-19. To the contrary, unless a sentencer "expressly refuses as a matter of law to consider the defendant's youth," then the Supreme Court presumes that the sentencer considered the defendant's youth. *Id.* at 1319-20 & n.7.

Here, the sentencing court did not sentence Makthepharak to life without parole but to a lesser punishment of life with eligibility for parole after 20 years. Not even a life sentence *with* eligibility for parole was truly mandatory, if not tried as an adult. The minimum sentence for felony murder for a juvenile not tried as an adult was 60 months.[6] Even if the court had sentenced Makthepharak to life without parole, Makthepharak does not allege that the court "expressly refuse[d] as a matter of law to consider the defendant's youth," so even then the *Miller* and *Montgomery* standard would be met. Claim 1 fails to state a plausible claim.

---

[6] K.S.A. 21-3401(b) (1995) (felony murder is an off-grid crime); K.S.A. 38-16,129(a)(1) (2000) (minimum sentence for off-grid felonies for juveniles not tried as an adult); K.S.A. 38-1636 (2000) (procedure for prosecuting a juvenile as an adult).

11

   2. *Graham and Miller create sentencing standards, not parole standards.*

The *Graham* Court did not elaborate on what exactly it meant by "some meaningful opportunity for release," but no elaboration was necessary. In both *Graham* and *Miller*, the Court said it in the context of prohibiting certain sentences of life without parole. *Graham*, 560 U.S. at 75 (2010); *Miller*, 567 U.S. at 479 (2012). While the Court did not limit "meaningful opportunit[ies] for release" to *only* parole, *Graham*, 560 U.S. at 75 ("It is for the State, in the first instance, to explore the means and mechanisms for compliance."), the context makes plain that "parole" is one such "meaningful opportunity for release."

The Tenth Circuit has specifically found that "[a] discretionary parole system can . . . comply with Graham." *Rainer v. Hansen*, 952 F.3d 1203, 1210 (10th Cir. 2020). The *Graham* standard only affects parole decisions as far as this: "The parole process cannot be a sham." *Heredia v. Blythe*, No. 19-cv-338, --- F.Supp.3d ----, 2022 WL 16635179, at *13 (W.D. Wis. Nov. 2, 2022). "A broader rule simply isn't supported by *Graham* or any other Supreme Court precedent," and "the role of courts in policing [parole] decisions is modest." *Id.* In the *Rainer* case, cited by Makthepharak, the Tenth Circuit rejected a request to impose "procedural safeguards" on the parole process. *Rainer*, 952 F.3d at 1210. The Eighth Circuit has similarly rejected "imposing on the State [an] elaborate set of parole procedures." *Brown v. Precythe*, 46 F.4th 879, 890 (8th Cir. 2022). While the Supreme Court has imposed *sentencing* requirements, "the Court has never suggested that juvenile offenders are different from adult offenders *in the context of a parole decision.*" *Heredia*, 2022 WL 16635179, at *10 (emphasis added).

Therefore, Makthepharak's requests in claims 4 through 11 for the Court to impose procedural safeguards on parole decisions and to consider juvenile offenders differently during the parole process are unsupported by the line of cases Makthepharak cites. Claims 4 through 11 should be dismissed for failure to state a claim.

    3. *Any due process rights that attach to parole hearings are minimal and are met.*

Parole hearings involving whether to grant or deny parole do not automatically implicate the due process clause.[7] *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Similarly, "[t]he right of counsel under the Sixth Amendment does not apply to parole hearings; it applies only to trials in court." *Jones v. Rivers*, 338 F.2d 862, 871 (4th Cir. 1964). Detailed explanations are not required for denials of parole. *See Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 174 (10th Cir. 1980). This accords with *Rainer* and *Brown,* cited in the previous section, which refused to impose procedural safeguards on the parole process.

When a state has a parole system, "it is possible for the state's statutes to create a liberty interest that would be protected by the Constitution's guarantee of due process." *Clark v. Fallin*, 654 F. App'x 385, 388 (10th Cir. 2016) (citing *Greenholtz*, 442 U.S. at 12). But "a state does not create a liberty interest in parole protectable by due process when its parole system is discretionary." *Id.* (citing *Boutwell v. Keating*, 399 F.3d 1203, 1213-15 (10th Cir. 2005)). Even when a state's statutes create a liberty interest protected by due process, "[t]he Constitution does not require more" than "an opportunity to be heard, and when parole is denied [informing] the inmate in what respects he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16. The notice informing the inmate need not be detailed. *See Schuemann*, 624 F.2d at 174.

Here, Kansas law does not create a liberty interest in parole. *Gilmore v. Kan. Parole Bd.*, 243 Kan. 173, 180 (1988). Even if Kansas law did so, the parole hearing and written notice of reasons under K.S.A. 22-3717(h) and (j)(1) provide an opportunity to be heard and inform the inmate in what respects he falls short of qualifying for parole. To the extent a mechanism for

---

[7] And even parole-revocation hearings, which implicate the due process clause to some degree, would not require many of the features requested by Makthepharak. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

review might be required, review is available through habeas, *Peltier v. Booker*, 348 F.3d 888, 892 (10th Cir. 2003), and through requests for reconsideration on the basis of new evidence, K.A.R. 45-200-2(b). Therefore, claim 4 should be dismissed for failure to state a claim.

   4. *The statutory factor list is not exclusive.*

In statutes, "the word *include* does not ordinarily introduce an exhaustive list." *United States v. Porter*, 745 F.3d 1035, 1046 (10th Cir. 2014) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 174 (2012)). Here, in the statute that provides factors to consider at a parole hearing, not only does the statute introduce the list with the word "including," but it even specifies "including, *but not limited to*." K.S.A. 22-3717(h). Makthepharak's claim that the statute excludes consideration of youth is contrary to the plain text of the statute. Analogizing to the sentencing context, discussed above in section II(B)(1), the parole board had discretion to consider youth, so it should be presumed to have done so. So claims 5 and 6 (along with Count Three) should be dismissed for failure to state a claim.

   5. *Denial of parole is not a penalty.*

Denial of parole does not penalize an inmate for the inmate's offense, but simply allows the court-imposed penalty of incarceration to continue. *Diaz v. Lampela*, 601 F. App'x 670, 676 (10th Cir. 2015) (citing *Mahn v. Gunter*, 978 F.2d 599, 602 n.7 (10th Cir. 1992)). This is true even if the KPRB *directly* considers and bases its denial of parole on "the serious nature of the crime of which he was convicted." *Carroll v. Simmons*, 89 F. App'x 658, 663 (10th Cir. 2004); *see also Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010). Similarly, when custody classification takes into consideration the offense, this does not penalize the inmate for the offense, even if it may *indirectly* influence the denial of parole. So claim 8 should be dismissed.

   6. *"Older disciplinary history" can be considered alongside recent disciplinary history.*

Makthepharak does not allege that his denial of parole was based solely on older

14

disciplinary history. He does not cite any authority that "older disciplinary history" cannot be considered in conjunction with other factors, such as more recent disciplinary history. As part of considering "demonstrated maturity and rehabilitation," *Graham*, 560 U.S. at 75, the KPRB *must* be permitted to consider an inmate's behavior as revealed by disciplinary history. The Court can take judicial notice of Makthepharak's *recent* disciplinary history in 2020 *just prior to his 2021 parole hearing*, as shown in Exhibit A.[8] Claim 11 should be dismissed for failure to state a claim.

## CONCLUSION

For these reasons, Defendants request that the Court dismiss Makthepharak's state law claims (that is, Count Two), claims for declaratory relief (prayers for relief 1 through 6), claim 1 (as enumerated by Defendants), claims 4 through 11 (as enumerated by Defendants, which includes Makthepharak's Count Three), and all claims against Governor Kelly. If this motion is fully granted, only Makthepharak's Count One with respect to claims 2 and 3 (as enumerated by Defendants) and against defendants other than Governor Kelly will remain in the case.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

---

[8] *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding that judicial notice of facts that are a matter of public record does not convert a motion to dismiss to a motion for summary judgment); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that courts can take judicial notice of factual information on the world wide web).

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 22nd day of May, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Jonathan Sternberg, Attorney, PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108-2607
jonathan@sternberg-law.com
*Attorney for Plaintiff*

                                            */s/ Matthew L. Shoger*
                                            Matthew L. Shoger
                                            Assistant Attorney General