IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SASHADA MAKTHEPHARAK,
    Plaintiff,

vs.

LAURA KELLY, *et al.*,
    Defendants.

Case No. 2:23-cv-02121-DDC-RES

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Mr. Makthepharak filed his First Amended Complaint seeking declaratory and injunctive relief under 42 U.S.C. § 1983 against Kansas's parole scheme, which he explained fails adequately to protect his Eighth Amendment right as a juvenile offender serving a life sentence to be given a meaningful opportunity to argue for release based on maturity and rehabilitation (Doc. 9).

After filing an answer (Doc. 12), the defendants now have moved for partial judgment on the pleadings (Doc. 16; Doc. 17). They argue the vast majority of Mr. Makthepharak's complaint must be dismissed for varying reasons. The defendants are entirely wrong, and this Court should deny their motion in its entirety.

**I.  The defendants' characterization of Mr. Makthepharak's complaint as asserting eleven different claims is an inaccurate strawman that ignores the bigger picture threading those "claims" together under the counts he actually brings and the relief he actually seeks.**

Mr. Makthepharak's complaint states three separate counts seeking relief: (1) Kansas's parole scheme with respect to juvenile offenders serving life sentences violates the Eighth Amendment (Doc. 9 at 26-27), (2) Kansas's parole scheme with respect to juvenile offenders serving life sentences violates Section 9 of the Kansas Bill of Rights (Doc. 9 at 27-28), and (3) K.S.A. §§ 22317(g)-(h) and 75-210a are unconstitutional as applied to Mr. Makthepharak (Doc. 9 at 29).

1

The defendants ignore these clearly enumerated counts. Instead, they re-parse Mr. Makthepharak's complaint, "granularly not[ing]" *eleven* different claims for relief (Doc. 17 at 2-4). Then, confusingly, the defendants proceed to address only these eleven "claims" throughout their motion for partial judgment on the pleadings, without actually addressing the three actual counts in Mr. Makthepharak's complaint. They conclude that if this Court fully grants their motion, only Mr. "Makthepharak's Count One with respect to claims 2 and 3 (as enumerated by Defendants) and against defendants other than Governor Kelly will remain in the case" (Doc. 17 at 15).

Before responding to the defendants' motion, Mr. Makthepharak takes this opportunity to clarify the scope of his claims. There are not "eleven claims." There are three counts. Counts I and II of his complaint allege the defendants' parole scheme for juvenile offenders serving life sentences violates the Eighth Amendment and § 9 of the Kansas Bill of Rights, respectively, constitutional provisions that Kansas courts have recognized are "coterminous." *In re E.L.W.*, No. 106,241, 2012 WL 686861, *4 (Kan. App. Feb. 17, 2012). And Count III alleges specific Kansas statutes governing the state's parole system are unconstitutional as applied to Mr. Makthepharak.

## II. The Eleventh Amendment does not bar Mr. Makthepharak's state law claim.

First, the defendants argue U.S. Const. Amend. XI bars Mr. Makthepharak's Count II (Doc. 9 at 27-28), asserting a violation of Section 9 of the Kansas Bill of Rights (Doc. 17 at 5-7). The defendants are wrong. Because (1) Mr. Makthepharak seeks only prospective, injunctive relief against state officials in their official capacities, and not retroactive declarations of law; and (2) Section 9 of the Kansas Bill of Rights is coterminous with U.S. Const. Amend. VIII, the law is that his claim under the Kansas Constitution is proper in this Court.

### A. Mr. Makthepharak's Count II is proper notwithstanding the Eleventh Amendment, because he seeks only prospective, injunctive relief.

The Eleventh Amendments provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This proscription "has been interpreted to bar suits against states and state agencies for money damages in federal court." *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1, 20-21 (1890)). But this immunity "does not extend to a state official sued in his official capacity when the plaintiff seeks only prospective, injunctive relief." *Id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Just this year, the Western District of Oklahoma, confronted with a near-identical challenge to Oklahoma's parole scheme for juvenile offenders sentenced to life in prison, recently applied this law to hold the Eleventh Amendment does not shield state officials from suits in federal seeking prospective injunctive relief under state law. *Thomas v. Stitt*, No. 5:20-cv-944, 2023 WL 359560, *3 (W.D. Okla. Jan. 23, 2023). In *Thomas*, an Oklahoma inmate sentenced to life in prison decades ago as a juvenile sought relief in federal district court, alleging as Mr. Makthepharak does that Oklahoma's parole system violates both the U.S. and Oklahoma Constitutions. *Id.* at *1. The defendants, each Oklahoma state officials sued in their official capacity, argued Eleventh Amendment immunity precluded the inmate's lawsuit against them. *Id.* at *3. The Court disagreed, citing *Tarrant*, and explained that because the inmate's suit sought "only prospective injunctive and declaratory relief" against "state officials" in "their official capacity[,]" the Eleventh Amendment did not shield them from the suit. *Id.*

The same result holds here. Like the inmate in *Thomas*, Mr. Makthepharak seeks relief under the federal and state constitutions for Kansas's unconstitutional

3

parole scheme. The defendants admit Mr. Makthepharak seeks "prospective injunctive relief" (Doc. 17 at 6), but argue the Eleventh Amendment nonetheless bars his claim under the Kansas Constitution. The District Court in *Thomas* rejected that argument, and so should this Court.

Similarly, the defendants also argue each of Mr. Makthepharak's claims for declaratory relief are barred by the Eleventh Amendment "[t]o the extent" they "stand as independent remedies apart from injunctive relief" because "[t]he Declaratory Judgment Act does not abrogate" state sovereign immunity (Doc. 17 at 6-7). In support, they cite two prior inapposite decisions of this Court (Doc. 17 at 6 n.3). Both decisions merely state the Declaratory Judgment Act does not independently confer jurisdiction nor waive sovereign immunity. *See United States v. Dillard*, 884 F. Supp. 2d 1177, 1183 (D. Kan. 2012); *Thomas v. Pierce*, 662 F. Supp. 519, 524 (D. Kan. 1987). The defendants do not argue Mr. Makthepharak's case invokes the Declaratory Judgment Act as an exclusive basis for this Court's jurisdiction, and rightly so – his case is brought under 42 U.S.C. § 1983. Instead, they suggest *Dillard*'s and *Thomas*'s holdings that the Declaratory Judgment Act does not abrogate the Eleventh Amendment preclude Mr. Makthepharak's claims for "retrospective declaratory relief" (Doc. 17 at 6). But because Mr. Makthepharak did not assert any claims for retrospective relief, this argument fails.

While the defendants are correct that the Eleventh Amendment bars claims against a state or state officials for retrospective declaratory relief, they incorrectly characterize Mr. Makthepharak's prayers for relief as retrospective. In *Meiners v. Univ. of Kan.*, on which the defendants rely, a former professor sued a university chancellor and provost, claiming they "deprived her of her property interest in her tenured position at the University without due process." 359 F.3d 1222, 1232 (10th Cir. 2004). She argued under § 1983 that she was entitled to "remedies of back pay, monetary damages, declaratory relief, and an injunction ordering her reinstatement

4

as a tenured faculty member." *Id.* The Tenth Circuit held her claims for "retrospective declaratory relief" were "barred by the Eleventh Amendment[,]" but her reinstatement claim fell within the *Ex Parte Young* exception to sovereign immunity. *Id.* at 1232-33.

Unlike the professor in *Meiners*, Mr. Makthepharak seeks no damages or retrospective declaratory relief. Rather, Mr. Makthepharak's prayers for declaratory relief ask this Court to declare the defendant's *ongoing* practices unconstitutional, the very purpose of the *Young* immunity exception. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (courts facing an assertion of Eleventh Amendment immunity must "conduct a straightforward inquiry into whether the complaint alleges *an ongoing violation* of federal law and seeks relief properly characterized as prospective" (emphasis added)); *see also Tarrant*, 545 F.3d at 911 (holding the Eleventh Amendment did not bar a suit seeking a declaration that an Oklahoma law was unconstitutional and an injunction preventing its enforcement because it did not request relief "akin to a retrospective damages award").

Like the Western District of Oklahoma held in *Thomas*, Mr. Makthepharak's identical claims to those in *Thomas* under the Kansas Constitution are viable because he brings them against state officials in their official capacity and requests only prospective, injunctive relief. Further, Mr. Makthepharak's claims for declaratory relief are not retrospective, but rather are necessary prerequisites to his ultimate claim for injunctive relief. The defendants' argument otherwise is in error. This Court should deny their request for judgment in their favor on Mr. Makthepharak's Count II.

5

### B. Mr. Makthepharak's Count II is also proper because it hinges on a section of the Kansas Constitution that provides protection identical to its federal counterpart.

Counts I and II of Mr. Makthepharak's complaint state violations of the Eighth Amendment and Section 9 of the Kansas Bill of Rights. Both of these constitutional provisions protect the right to be free from "cruel and unusual punishments[.]" U.S. Const. Amend. VIII; *see* Kan. Const. Bill of Rights § 9 (prevents "cruel *or* unusual punishment" (emphasis added)). The Kansas Supreme Court holds these provisions provide the same protections and has interpreted both identically. *State v. Scott*, 961 P.2d 667, 670 (Kan. 1998); *see also In re E.L.W.*, No. 106,241, 2012 WL 686861, *4 (Kan. App. Feb. 17, 2012) (concluding *Scott* held the cruel and unusual punishment clauses of both constitutions to be "coterminous"). Because the provisions at issue provide identical protections, Mr. Makthepharak's Kansas state constitutional claim is proper for this reason, too.

An Eighth Circuit decision considering a materially identical challenge to Missouri's parole scheme for juveniles sentenced to life considered a claim under the Missouri Constitution because it is identical to the Eighth Amendment. In *Brown v. Precythe*, the Eighth Circuit en banc considered a set of inmates' challenges to Missouri's parole scheme as applied to juvenile offenders serving life sentences. 46 F.4th 879, 883 (8th Cir. 2022) (en banc). The inmates brought claims under § 1983, alleging violations of the U.S. and Missouri constitutions. *Id.* at 885. The Eighth Circuit specifically noted the clauses at issue of both constitutions were "coterminous" and should be considered together. *Id.* at 885 n.3.

This Court should do the same here. Because the Kansas Constitution provides identical protections as the Eighth Amendment, any ruling in this case on Mr. Makthepharak's Eighth Amendment claim necessarily will be a ruling on the merits of his Kansas constitutional claim. As the Eighth Circuit did in *Brown*, this Court should consider both claims together without dismissing Count II.

### III. This suit is properly brought under § 1983, not a habeas corpus proceeding, and the *Rooker-Feldman* doctrine is inapplicable.

Next, the defendants argue Mr. Makthepharak's "claim that he was unlawfully sentenced should be dismissed for lack of subject-matter jurisdiction" because his claims should be asserted in a petition for writ of habeas corpus, not a § 1983 action (Doc. 17 at 7-8). Specifically, they assert Mr. Makthepharak's complaint challenges the validity of his sentence, a matter reserved for habeas corpus. This is in error. Because Mr. Makthpharak does not challenge "the validity of the fact or length of [his] confinement," a habeas corpus proceeding is not an appropriate vehicle for his claims. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

In *Preiser*, the Supreme Court considered a group of inmates' claims that they were deprived of good-time credits due to unconstitutional prison disciplinary proceedings. *Id.* at 476. The Court held the prisoners' claims, even if viable under the plain language of § 1983, were more appropriate for habeas relief because they challenged "the very fact or duration of" their confinement and sought "a determination that [they were] entitled to immediate release or a speedier release from that" confinement. *Id.* at 500.

Over twenty years later, the Supreme Court decided *Heck v. Humphrey*, requiring an Indiana inmate to pursue a claim alleging state law enforcement officials unlawfully orchestrated his wrongful conviction in a habeas corpus action, not under § 1983. 512 U.S. 477, 478-79, 483 (1994). It explained § 1983, not habeas corpus, is the appropriate vehicle for claims that "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff …." *Id.* at 487 (emphasis in original).

Finally, and most relevant here, the Court ruled in *Wilkinson v. Dotson* that two inmates challenging the constitutionality of Ohio's parole scheme as applied to them properly brought their claims under § 1983. 544 U.S. 74, 76-77, 82 (2005).

7

Habeas corpus was only an appropriate remedy, the Court explained, "*if* success … would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82 (emphasis in original).

While the defendants' purport to rely on *Wilkinson* (Doc. 17 at 7), the Supreme Court's decision in favor of the inmates in that case is controlling in Mr. Makthepharak's favor here, not the defendants'. Like one of the inmates in that case, Mr. Makthepharak "seek[s] relief that will render invalid the state procedures used to deny parole … suitability[.]" *Id.* at 82. "Success for [Mr. Makthepharak] means at most a new parole hearing at which [Kansas] parole authorities may, in their discretion, decline to shorten his prison term." *Id.* So, just like the plaintiffs' claim in *Wilkinson*, Mr. Makthepharak's claims would not "necessarily spell speedier release" and accordingly do not lie "at the core of habeas corpus." *Id.* (internal quotation marks and citation omitted). He is not challenging either his conviction or sentence. So, as in *Wilkinson*, his § 1983 action is proper.

Next, the defendants halfheartedly invoke the *Rooker-Feldman* doctrine, which prohibits federal courts from "considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kanth v. Lubeck*, 123 F. App'x. 921, 923 (10th Cir. 2005). *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983). But this doctrine "does *not* preclude federal district court review of executive action, including determinations made by a state administrative agency." *Pretlow v. McPherson*, 497 F. App'x. 846, 847 (10th Cir. 2012) (quoting *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004)) (emphasis added).

The defendants do not explain whether and how any Kansas state court ever has decided any of the claims Mr. Makthepharak presents in this case, becuase they cannot. Mr. Makthepharak has never challenged Kansas's parole scheme in Kansas state court. To the extent the defendants argue the *Rooker-Feldman* doctrine

precludes this Court's review of the Kansas Parole Review Board's prior denials of parole to Mr. Makthepharak, *Pretlow* clearly forecloses their argument. Moreover, this case does not just challenge prior administrative action denying Mr. Makthepharak parole, it challenges the very constitutionality of Kansas' parole scheme as applied to juvenile offenders serving life sentences. Because no state court has considered this matter, the *Rooker-Feldman* doctrine does not apply.

### IV. Mr. Makthepharak has sufficient constitutional standing to challenge Kansas's parole scheme.

Next, the defendants argue Mr. Makthepharak lacks sufficient constitutional standing to bring "some" of his claims against them (Doc. 17 at 8-10). But because this Court may remedy the defendants' continued refusal to consider Mr. Makthepharak's youth at the time of his offense when deciding his parole-ability, their defense is in error.

U.S. Const. Art. III requires a plaintiff to have sufficient standing to pursue their claims against a defendant in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has the required standing when (1) he has suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct complained of," and (3) it is "likely" the injury can "be redressed by a favorable decision" from the court. *Id.* at 560-61 (internal quotation marks and citations omitted).

The defendants argue first that Mr. Makthepharak has raised only "hypothetical injury, not actual injury, with regard to" the "claims" they identify as 4 through 11 (Doc. 17 at 8-9). This is so, they assert, because Mr. Makthepharak's claim he has previously been denied parole "solely because he did not take responsibility for the offense" (Doc. 9 at 19), means "the denial of parole to [Mr.] Makthepharak was not affected in any meaningful way by" the defendants' continued refusal to take his status as a juvenile offender, his maturity, or his

9

rehabilitation into account when considering whether he should be granted parole (Doc. 17 at 8).

The defendants ignore the big picture presented in Mr. Makthepharak's complaint: their failure to take into account factors *other* than Mr. Makthepharak's refusal to take responsibility for the crime *is* the very injury warranting relief. In other words, the defendants failed to consider constitutionally mandated factors when evaluating whether Mr. Makthepharak should be paroled. This abrogation of a constitutional duty satisfies the injury requirement. *See Howard v. Coonrod*, 546 F. Supp. 3d 1121, 1128-29 (M.D. Fla. 2021) (inmates who alleged state officials failed "to provide a realistic and meaningful opportunity for release upon demonstrated maturity and rehabilitation" had standing); *see also Thomas v. Stitt*, No. 21-6011, 2022 WL 289661 (10th Cir. Feb. 1, 2022) (reversing dismissal of identical claims to Mr. Makthepharak's challenging Oklahoma's parole scheme for juvenile offenders serving life sentences), discussed below at pages 13-16.

On the causation element, the defendants argue only that Mr. Makthepharak's complaint fails to sufficiently explain how Governor Kelly's conduct caused the injury of which he complains. But Mr. Makthepharak's complaint explained how Kansas' parole scheme operates, and that Governor Kelly appointed Mr. Zmuda, who continues to serve "at Governor Kelly's pleasure" (Doc. 9 at 3). Governor Kelly's argument fails because the Tenth Circuit has already rejected it.

In *Petrella v. Brownback*, a group of students and their parents challenged Kansas's statutory scheme to fund its public schools, naming then-Governor Brownback as a defendant in the case. 697 F.3d 1285, 1289 (10th Cir. 2012). Specifically, the plaintiffs challenged a statute permitting local school districts to levy additional property taxes beyond those statutorily required but placing a cap on how much extra funding those taxes could raise. *Id.* at 1290-91. The Governor

argued the plaintiffs lacked standing to sue him because they could not "identify any specific action on [the Governor's] part that has caused them harm." *Id.* at 1293. The Tenth Circuit quickly rejected that argument, noting "the Governor … of the state of Kansas [has] responsibility for the enforcement of the law of the state." *Id.* at 1294 (citing Kan. Const. Art. I § 3).

The logic the Tenth Circuit applied in *Petrella* directly applies even more here. In *Petrella*, the only direct action the Governor took was signing the challenged statutes into law. Here, not only did the Governor or her predecessors sign the applicable parole statutes into law, she directly appointed the Secretary of Corrections, who personally oversees and appoints the Kansas Parole Review Board and serves at her pleasure. Under *Petrella*, this is more than a sufficient connection to merit standing against Governor Kelly in this case.

Finally, the defendants argue Mr. Makthepharak "lacks standing to bring claim 1 against any of the Defendants or to request any injunctive relief against Governor Kelly due to lack of redressability" (Doc. 17 at 9-10). The defendants presumably use the term "claim 1" to refer to the first of their own recharacterization of Mr. Makthepharak's complaint, which states "[t]hat the sentencing court unconstitutionally sentenced him to life without parole" (Doc. 17 at 2). Mr. Makthepharak plainly does not argue that. Putting aside the inaccurate rewriting of Mr. Makthepharak's complaint already addressed above, the defendants' argument fails because it does not address the relief actually requested in the complaint.

While the defendants correctly assert they "do not control sentencing" (Doc. 17 at 9), nowhere in Mr. Makthepharak's complaint did he request this Court order anyone to resentence him. Instead, he requested declaratory relief regarding the constitutionality of various aspects of Kansas's parole system and an injunction requiring the defendants to provide him a new parole hearing that is

11

constitutionally compliant (Doc. 9 at 29-32).  The defendants altogether fail to address how an order from this Court ordering that relief would fail to redress his injury, because they cannot.

Governor Kelly also argues this Court "could not order injunctive relief against Governor Kelly based on denial of clemency" because "clemency is not reviewable" (Doc. 17 at 10).  Again, this wholly ignores the relief Mr. Makthepharak actually requested in the complaint.  Mr. Makthepharak never asked this Court to review a clemency decision or to order Governor Kelly to grant clemency to him.  Rather, he requested this Court "[e]njoin Defendants immediately to discontinue [their unconstitutional] practices and to take remedial steps to address their past illegal conduct, by granting Mr. Makthepharak … a meaningful and realistic opportunity to demonstrate his readiness for release" (Doc. 9 at 31).  Because the very lack of that opportunity is the primary injury of which Mr. Makthepharak complains, the injunction he requests would directly redress that harm, and the defendants' argument fails.

## V. Governor Kelly was properly named as a defendant because she is directly responsible for the enforcement of Kansas' parole scheme.

Next, Governor Kelly argues she must be dismissed as a party because the complaint "does not allege that she acted at all, much less acted in a way that made her personally involved in his injury, in a way that made her cause his injury, or with a culpable state of mind" (Doc. 17 at 10).  So, she argues, the complaint was required to plead her "personal involvement; (2) sufficient causal connection; and (3) culpable state of mind" (Doc. 17 at 10) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).

Governor Kelly's argument is in error.  The law she cites is wholly inapplicable.  In a suit under § 1983, if a plaintiff is not seeking money damages, he need only allege that a defendant's "actions constitute official policy and that such

12

actions violated his constitutional rights." *Dotson v. Collins*, 317 F. App'x 439, 443 (6th Cir. 2008). Unlike this case, both decisions on which Governor Kelly relies involved claims for money damages for constitutional violations specific individuals allegedly committed. *See Schneider*, 717 F.3d at 767-69 (affirming grant of summary judgment on claims for money damages against law enforcement supervisors arising out of a specific officer's rape of plaintiff); *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005) (affirming dismissal of claims for money damages against prosecuting attorney and chief of police when plaintiff pleaded no facts whatsoever demonstrating their personal involvement).

Mr. Makthepharak alleged Governor Kelly appointed Secretary Zmuda and has ultimate authority to decide whether any individual will receive a grant of parole (Doc. 9 at 2). Moreover, his complaint explains that Secretary Zmuda serves at Governor Kelly's pleasure, and Secretary Zmuda's job responsibilities directly coincide with the constitutional violations Mr. Makthepharak asserts (Doc. 17 at 2-3). And as noted above, the Tenth Circuit has recognized "the Governor … of the state of Kansas [has] responsibility for the enforcement of the law of the state," and so is a proper party anytime a state law is challenged *Petrella*, 697 F.3d at 1294. Because these facts are sufficient to show an official Kansas policy, under *Dotson*, they are sufficient to bring a claim against Governor Kelly.

## VI. Mr. Makthepharak's claims are proper under clear Tenth Circuit precedent.

Next, the defendants argue Mr. Makthepharak's complaint misstates the law of the relevant Supreme Court decisions[1] (Doc. 17 at 10-12). First, they assert *Miller* and *Montgomery* are inapplicable to this case because they establish the

---

[1] *Jones v. Mississippi*, 141 S. Ct. 1307 (2021); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010).

13

Eighth Amendment is satisfied "if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment" (Doc. 17 at 11) (quoting *Jones*, 141 S. Ct. at 1311). So, because Kansas law did not mandate life without the possibility of parole at the time Mr. Makthepharak was sentenced, the defendants argue *Graham* and its progeny are inapposite here. This point fails in light of the Tenth Circuit's recent decision in *Thomas*, 2022 WL 289661, which Mr. Makthepharak cites in his complaint, but which the defendants ignore.

In *Thomas*, an inmate like Mr. Makthepharak who had been sentenced decades earlier to a life sentence *with* the possibility of parole in Oklahoma filed a § 1983 suit against the Governor of Oklahoma and other state officials alleging the state's parole system is unconstitutional because "it fails to provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation …." *Id.* at *1. The Oklahoma defendants argued, just as the defendants do here, that the complaint failed to state a claim upon which relief may be granted, and the district court agreed and dismissed the inmate's complaint. *Id.* The Tenth Circuit reversed the dismissal decision and remanded the case for further proceedings, holding the inmate's allegation that Oklahoma's parole "system operates as a wholly arbitrary system of *ad hoc* executive clemency that provides no meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" was sufficient to survive a motion to dismiss. *Id.* at *4.

This case is procedurally and materially identically to *Thomas*. Like the inmate in *Thomas*, Mr. Makthepharak also alleges he is technically parole eligible, but Kansas's system unconstitutionally fails to guarantee "a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation[.]" *Id.* at *3. Like the Tenth Circuit did there, this Court should reject the defendant's motion to dismiss.

## VII. The defendants' remaining arguments fail to explain how Mr. Makthepharak's three actual Counts fail to state a claim upon which relief can be granted.

Finally, the defendants assert a variety of reasons Mr. Makthepharak's "claims," as they define them, fail to state a claim upon which relief can be granted (Doc. 17 at 12-15). *See* Section I, above at pp. 1-2. But because none of their points address Mr. Makthepharak's actual counts, all the defendants' arguments fail.

First, the defendants argue Mr. Makthepharak's "claim 4" should be dismissed for failure to state a claim (Doc. 17 at 13-14). According to the defendants, "claim 4" is an allegation Mr. Makthepharak "was denied due process rights under federal law due to a lack of evidentiary rules, ability to obtain expert assistance or testimony, cross-examination, compulsory process, assistance of counsel, written explanation of the decision, and mechanisms for review" (Doc. 17 at 3). Mr. Makthepharak's complaint only asserted three claims for relief, none of which asserted a due process violation, let alone for the reasons they state (Doc. 9 at 26-28).

While the defendants repeatedly argue there is no protectable liberty interest in parole, this point altogether ignores that Mr. Makthepharak *never argued a due process violation*. Rather, his complaint asserts a violation of the constitutional protections against cruel and unusual punishment and requests this Court enjoin defendants from continuing those violations by ordering the defendants, among other things, to provide Mr. Makthepharak an opportunity to be heard and present his case for maturity and rehabilitation. The Court should deny the defendants' request to dismiss a claim that does not exist.

Moreover, the inmate in *Thomas* made the same allegation that Oklahoma's system contained "no evidentiary rules, no right to obtain expert assistance or testimony, no cross-examination, no compulsory process, no assistance of counsel, no right to challenge the accuracy of any information in the [parole board]'s file, and

15

no right to an explanation." 2022 WL 289661 at *2. In the face of a motion to dismiss for failure to state a claim, the Tenth Circuit passed on these specific allegations without comment and held the inmate's complaint pleaded a valid claim for relief. *Id.* at *4. This Court should do the same.

Next, the defendants argue the Court should dismiss "claims 5 and 6" because K.S.A. § 22-3717(h) contains a nonexhaustive list of factors the Prisoner Review Board ("PRB") may consider when determining whether to grant parole, which does not preclude it from considering Mr. Makthepharak's status as a juvenile offender (Doc. 17 at 14). But this argument fails because the Constitution *requires* that consideration in Mr. Makthepharak's case, and his complaint alleged the PRB did not do so (Doc. 9 at 20). So, while § 22-3717(h) may permit the PRB to consider Mr. Makthepharak's maturity and rehabilitation, it certainly does not mandate that consideration. And Mr. Makthepharak argues the PRB has failed to do so when evaluating his parole eligibility, which this Court must take as true at this stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). This is sufficient to survive defendants' motion for judgment on the pleadings.

Next, the defendants argue Mr. Makthepharak's "claim 8" must be dismissed because "[d]enial of parole does not penalize an inmate for the inmate's offense, but simply allows the court-imposed penalty of incarceration to continue … [e]ven if the KPRB *directly* considers and bases its denial of parole on the serious nature of the crime of which he was convicted" (Doc. 17 at 14) (emphasis in original). Like the defendants' other arguments asserting failure to state a claim, this point fails because it relies on a mischaracterization of Mr. Makthepharak's complaint.

Mr. Makthepharak's complaint does not allege that mere denial of parole constitutes any constitutional violation. Rather, it argues the PRB's refusal to

16

permit him "a meaningful and realistic opportunity to demonstrate his readiness for release" violates his constitutional rights (Doc. 9 at 31).  So, because Mr. Makthepharak does not challenge the mere denial of parole, the defendants' argument fails.

Finally, the defendants argue "claim 11" must be dismissed because the PRB "*must* be permitted to consider an inmate's behavior as revealed by disciplinary history" (Doc. 17 at 15) (emphasis in original).  This argument fails because the complaint does not assert otherwise.  Rather, Mr. Makthepharak's prayer for relief argues that denial of parole based solely on "crime severity or older institutional disciplinary history" does not satisfy the Constitution.  The defendants do not respond to this actual assertion, because they cannot.

17

## **Conclusion**

The defendants' motion for partial judgment on the pleadings largely relies on a total straw-man mischaracterization and resulting misinterpretation of Mr. Makthepharak's complaint. Precedent totally forecloses their Eleventh Amendment arguments in response to Count II, and clear law from the Supreme Court precludes their argument that any of Mr. Makthepharak's claims must be brought in a habeas corpus action. Their attacks on Mr. Makthepharak's standing to bring suit are meritless. This Court should deny the defendants' motion in its entirety.

    Respectfully submitted,

*Jonathan Sternberg, Attorney, P.C.*

by /s/Jonathan Sternberg
    Jonathan Sternberg, Kan. #25902
    Brody Sabor, Kan. #79098
    2323 Grand Boulevard #1100
    Kansas City, Missouri 64108
    Telephone: (816) 292-7020
    Facsimile: (816) 292-7050
    jonathan@sternberg-law.com
    brody@sternberg-law.com

    COUNSEL FOR PLAINTIFF
    SASHADA MAKTHEPHARAK

<u>Certificate of Service</u>

      I certify that on June 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which sent electronic notification of that filing to the following:

> Mr. Matthew L. Shoger
> Office of the Kansas Attorney General
> 120 SW 10th Avenue, 2nd Floor
> Topeka, Kansas 66612
> (785) 296-2215
> matt.shoger@ag.ks.gov

                                                    Counsel for Defendants

> Mr. Shon D. Qualseth
> Office of the Kansas Attorney General
> 120 SW 10th Avenue, 2nd Floor
> Topeka, Kansas 66612
> (785) 368-8424
> shon.qualseth@ag.ks.gov

/s/Brody Sabor
Attorney