IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SASHADA MAKTHEPHARAK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case. No. 23-2121-DDC-RES |
| | ) |
| **LAURA KELLY,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants submit this reply in support of their Motion for Partial Judgment on the Pleadings (Docs. 16). Defendants assert that Plaintiff Sashada Makthepharak does not overcome their arguments. Accordingly, Defendants' motion should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Memorandum in Support (Doc. 17). Defendants' motion should be granted for the reasons previously stated.[1]

**I.  Makthepharak's characterization of his claims omits any facts.**

Makthepharak claims that Defendants have made "a total straw-man mischaracterization and resulting misinterpretation of Mr. Makthepharak's complaint." (Doc. 23 at 18.) He attempts to "clarif[y]" the scope of his claims. (Doc. 23 at 2.) But nowhere in Makthepharak's supposed clarification can any *facts* be found **<u>at all</u>**. Makthepharak clarifies his claims as nothing but legal conclusions. But that's not what claims are. *See* Claim(4) and Cause of Action(1), Black's Law Dictionary (11th ed. 2019) ("A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another

---

[1] But Defendants no longer contest injury-in-fact for claims 5-6 as explained further below.

person"). So to address the *facts* alleged, Defendants have parsed Makthepharak's Complaint into eleven claims incorporating the facts alleged and connecting them to possible legal grounds for relief.[2] Defendants have referred to these claims as "claims," and to the counts enumerated in the Complaint as "Counts."

## II. Makthepharak has conceded both claim 1 regarding sentencing and claim 4 regarding due process.

Regarding claim 1, Makthepharak says he "does not argue" "that the sentencing court unconstitutionally sentenced him to life without parole." (Doc. 23 at 11.) "He is not challenging either his conviction or sentence" (Doc. 23 at 8) and he "does not challenge the validity of the fact or length of his confinement" (Doc. 23 at 7). So he has disavowed claim 1 as grounds for any relief. And the Court can disregard § I.B in Defendants' Memorandum (concerning claim 1).

Regarding claim 4, Makthepharak states that he "*never argued a due process violation*," so "[t]he Court should deny the defendants' request to dismiss a claim that does not exist." (Doc. 23 at 15 (emphasis in original).)  So he has disavowed claim 4 as grounds for any relief.

## III. The *Thomas* case had different facts and none of the defenses here were raised.

In the unpublished *Thomas* case, the court emphasized Thomas' well-pleaded facts," including that Thomas was a "model prisoner," parole investigators had recommended parole,

---

[2] Makthepharak's Complaint appears to have been modelled heavily and almost entirely from a *pro se* inmate complaint in Oklahoma from 2020, which may be why it is difficult to decipher. *See Thomas v. Stitt*, No. 20-944 (W.D. Okla.) (Doc. 1). The two complaints share much of the *exact* same wording and structure. That would explain why the Complaint made no mention of controlling Supreme Court precedent from 2021 that directly addresses issues in the Complaint, and which came after the 2020 complaint in *Thomas*. *See Jones v. Mississippi*, 141 S. Ct. 1307 (2021). And it may be why Makthepharak openly admits that the *Thomas* claims were "identical claims to Mr. Makthepharak's" (Doc. 23 at 10), that "[t]his case is . . . materially identically [sic] to *Thomas*" (Doc. 23 at 14), and that "the inmate in *Thomas* made the same allegation" (Doc. 23 at 15). And Makthepharak's current attempts to salvage the garbled Complaint do not succeed.

2

and parole was denied solely due to aggravating factors of the initial crime. *Thomas v. Stitt*, No. 21-6011, 2022 WL 289661, at *1 (10th Cir. Feb. 1, 2022). Those are not the facts here. Here, the Plaintiff emphasizes conclusory allegations, not well-pleaded facts. And the court can take judicial notice of Makthepharak's disciplinary history in Exhibit A. (*See* Doc. 17 at 15.)

Makthepharak misstates that the *Thomas* defendants raised arguments in a motion to dismiss. (Doc. 23 at 3, 14, 16.) The case was dismissed on screening before any motions to dismiss. *Thomas*, 2022 WL 289661, at *1. Immunity arguments were not considered. Facts were not considered separately as Defendants have framed their defense here. The court did not specify which facts plausibly entitled the plaintiff to relief as they were all jumbled together.

### IV. The Eleventh Amendment bars state law claims.

As Defendants pointed out in their brief, binding Supreme Court precedent says Eleventh Amendment immunity bars claims, even for prospective injunctive relief, for ongoing violations of *state* law. (Doc. 17 at 6 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).) Makthepharak relies on cases from *state* courts ruling on *criminal* cases (Doc. 23 at 6), which does not establish a private right to a *civil* action in *federal* court, much less an action that overcomes Eleventh Amendment immunity. He also relies on an Eighth Circuit case, not binding on this Court, that does not address immunity issues at all, as apparently immunity issues were not raised in that case. He does not overcome the clear precedent of the Supreme Court.

### V. The declaratory relief requested is retrospective and the Eleventh Amendment bars independent declaratory relief not challenging a state statute.

The declaratory relief requested by Makthepharak is retrospective (especially prayers for relief 5 and 6, which are even phrased in the past tense). Makthepharak lacks standing to allege injuries of other inmates, so he raises concerns only regarding the procedures used in one 2021 decision to deny him parole, which was completed and is not ongoing. Like in *Meiners*, this is

3

retrospective. Although the employee in *Meiners* stayed fired, the firing itself was a past event. Here, although Makthepharak stays incarcerated, the 2021 denial of parole was a past event.

Even if the Court considers it prospective, Congress only waived – at most – the states' Eleventh Amendment immunity for prospective declaratory relief that challenges the constitutionality of state statutes.[3] *Marie v. Mosier*, 122 F. Supp. 3d 1085, 1107-08 (D. Kan. 2015) (citing *Steffel v. Thompson*, 415 U.S. 452, 467 (1974)). Congress did not "make its intention to abrogate [immunity] unmistakably clear" with regard to declaratory judgments more generally. *See Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003); (Doc. 17 at 6 n.3). Makthepharak has not demonstrated otherwise. Sometimes a "request 'for declaratory relief adds nothing to [a] prayer for injunction,'" so it is permitted (as included within the injunction) but then it "does not impact [the court's] analysis." *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 913 (10th Cir. 2008) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002)). Regardless, only prayers for relief 3 and 4 even challenge a statute.

## VI. Makthepharak lacks standing for claims 4-11 and claims against Governor Kelly.

Regarding injury-in-fact, Makthepharak says Defendants' "failure to take into account factors *other* than Mr. Makthepharak's refusal to take responsibility for the crime *is* the very injury warranting relief." (Doc. 23 at 10.) For claims 5 and 6, this is may be correct. But claims 4 and 7-11 do not involve a failure by the KPRB to consider other factors in its parole decision, so Makthepharak still alleges only hypothetical injuries with regard to those claims.

Regarding causation, Makthepharak says that suit can be brought against persons responsible for the enforcement of a state statute when challenging its constitutionality. In such a case, causation would be met by the challenged statute. *See Petrella v. Brownback*, 697 F.3d

---

[3] The undersigned discovered this possible, but limited waiver while researching for this Reply.

1285, 1293-94 (10th Cir. 2012). But in such cases, the plaintiff must also allege "a credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). (If *Petrella* says otherwise, then it has been abrogated by *Driehaus*.) Here, no credible threat has been plausibly alleged that the statute will be enforced by Governor Kelly or in the peculiar way that Makthepharak alleges. And claims 1, 3-4, and 6-11 do not even involve a challenge to a statute.

Regarding redressability, *Petrella* did not automatically establish redressability for challenges to statutes. *See Petrella*, 697 F.3d at 1294. Makthepharak fails to address Defendants' point that "Governor Kelly does not control or oversee parole decisions, so she cannot perform any of the injunctive relief requested." (Doc. 17 at 9.) While Makthepharak does address an alternative argument, his argument there fails too. With clemency, procedures are all that can be reviewed, and he has not alleged "wholly arbitrary" procedures like flipping a coin or that officials failed to follow procedures established explicitly by statute. (*See* Doc. 17 at 10.)

### VII. Makthepharak fails to state a claim against Governor Kelly or in claims 4-11.

Regarding the personal participation of Governor Kelly, Makthepharak cites a Sixth Circuit case, not binding on this Court, which, *in addition to* requiring "actions" by the defendant *also* requires that those actions "constitute official policy." (Doc. 23 at 12-13.) The Tenth Circuit has applied that standard to municipalities, *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-71 (10th Cir. 2013), but not as of yet to officials, *see id.* at 767-69. Even under his proposed standard, he never alleges any "actions" by Governor Kelly that supposedly constituted official policy (or *would* in the context of a credible threat of enforcement for a challenge to a statute). He says she has "ultimate authority" (Doc. 23 at 13) over parole decisions, but this is an unsupported legal conclusion, not a factual allegation. He points to her ability to appoint and fire Zmuda, merely reinforcing that he seeks to apply vicarious liability.

As stated above, *Thomas* does not establish that claims apart from claim 2 state a claim.

5

Regarding claims 5 and 6, Makthepharak says that the Court must take as true his allegation that the KPRB failed to consider his status as a juvenile offender. (Doc. 23 at 16.) But that is contrary to Supreme Court precedent. *See Jones v. Mississippi*, 141 S. Ct. 1307, 1319-20 & n.7 (holding that a decision maker with discretion necessarily considers an offender's youth).

Regarding claim 8, he says that he "does not challenge the mere denial of parole." (Doc. 23 at 17.) But claim 8 addressed "risk assessment tools and/or the parole process," not just the 2021 parole decision. Defendants showed that *influences* on parole decisions, direct *or indirect*, including factors considered, do not penalize an inmate for the inmate's offense. (Doc. 17 at 14.)

Regarding claim 11, he says "denial of parole based solely on 'crime severity or older institutional disciplinary history' does not satisfy the Constitution." (Doc. 23 at 17 (quoting Doc. 9 at 31).) But as Defendants have pointed out, the Complaint never actually alleges that was the sole reason. (Doc. 17 at 14-15.) He says "[t]he defendants do not respond to this actual assertion, because they cannot." Not so. Defendants did not respond to it because it is not in the Complaint.

As previously argued in the Defendants' Motion, the claims addressed in the Motion should be dismissed for lack of subject-matter jurisdiction due to the Eleventh Amendment and lack of standing. Alternatively, they should be dismissed for failure to state a claim.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of July, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Jonathan Sternberg
Jonathan Sternberg, Attorney, PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108-2607
jonathan@sternberg-law.com
*Attorney for Plaintiff*

Brody Sabor
Jonathan Sternberg, Attorney, PC
2323 Grand Boulevard, Suite 1100
Kansas City, MO 64108
brody@sternberg-law.com
*Attorney for Plaintiff*

    */s/ Matthew L. Shoger*
    Matthew L. Shoger
    Assistant Attorney General