IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SASHADA MAKTHEPHARAK,**

          **Plaintiff,**

v.

**LAURA KELLY, et al.,**

          **Defendants.**

Case No. 23-2121-DDC-RES

## MEMORANDUM AND ORDER

The Supreme Court has established that "children are constitutionally different from adults for purposes of sentencing." *Montgomery v. Louisiana*, 577 U.S. 190, 206–07 (2016) (citation and internal quotation marks omitted). Because children are less culpable, the Court has held that, except for rare circumstances, sentencing juvenile homicide offenders to life in prison without the possibility of parole violates the Eighth Amendment's ban on cruel and unusual punishment. *Miller v. Alabama*, 567 U.S. 460, 479 (2012). The Eighth Amendment thus requires states to give juveniles serving life sentences a "meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation." *Graham v. Florida*, 560 U.S. 48, 75 (2010).

Plaintiff Sashada Makthepharak was convicted of first degree murder, aggravated burglary, and criminal possession of a firearm in 2001—at age 16. Plaintiff was sentenced to life in prison without eligibility for parole for 20 years, as Kansas law mandated. Though theoretically plaintiff now is parole eligible, he asserts that Kansas's parole scheme is unconstitutional as applied to him. He alleges that Kansas's parole system is unconstitutional under the Eighth Amendment and the Kansas Bill of Rights because it fails to provide a

meaningful and realistic opportunity for release based on plaintiff's demonstrated maturity and rehabilitation, as the Supreme Court's juvenile sentencing precedents require.

Plaintiff has sued five defendants—Laura Kelly, Governor of Kansas, Jeff Zmuda, Secretary of the Kansas Department of Corrections, Jonathan Ogletree, chair of the Kansas Prisoner Review Board, Jeannie Wark, member of the Kansas Prisoner Review Board, and Mark Keating, member of the Kansas Prisoner Review Board—in their official capacities for injunctive and declaratory relief.  Defendants have filed a Motion for Partial Judgment on the Pleadings (Doc. 16).  As explained, below, the court grants the motion in part and denies it in part.

## I. Background

Before the court recites the facts, it briefly describes the arc of the Supreme Court's cases applying the Eighth Amendment to the sentencing of juveniles.  In *Roper v. Simmons*, the Court held that the Eighth Amendment prohibits sentencing juveniles to death.  543 U.S. 551, 568 (2005).  Five years later, in *Graham v. Florida*, the Court expanded on *Roper* and held that the Eighth Amendment prohibits sentencing juveniles—who haven't committed a homicide offense—to life in prison without the possibility of parole.  560 U.S. at 74.  The Court extended *Graham* to juvenile homicide offenders seven years later in *Miller v. Alabama*, where it held the Eighth Amendment prohibits sentencing juvenile homicide offenders to a mandatory sentence of life without parole.  567 U.S. at 479.  And, in 2016, in *Montgomery v. Louisiana*, the Court made retroactive *Miller*'s prohibition against sentencing juvenile homicide offenders to a mandatory sentence of life in prison without possibility of parole.  577 U.S. at 208, 212.  Most recently, in *Jones v. Mississippi*, the Court clarified that a juvenile homicide offender *may* be sentenced to life without parole, but only if the sentence isn't mandatory and the sentencer has discretion.  593 U.S. 98, 106–07 (2021).

The following facts come from plaintiff's First Amended Complaint (Doc. 9). The court accepts them as true and views them in the light most favorable to plaintiff, as the party opposing the Motion for Judgment on the Pleadings. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

Plaintiff Sashada Makthepharak is an inmate in custody of the Kansas Department of Corrections. Doc. 9 at 2 (1st Am. Compl. ¶ 5). He was born on December 14, 1984. *Id.* In October 2001, a jury in the District Court of Sedgwick County, Kansas convicted plaintiff of: (i) first degree murder under a felony murder theory; (ii) aggravated burglary; and (iii) criminal possession of a firearm. *Id.* Plaintiff was 16 when convicted. *Id.* For the felony murder charge, the state court sentenced plaintiff to life in prison without eligibility for parole for 20 years—the statutorily mandated sentence. *Id.* The court sentenced plaintiff to 64 months on the other counts, to be served consecutively. *Id.* When the court sentenced plaintiff, it did not consider his youth status or attendant characteristics. *Id.* at 17 (1st Am. Compl. ¶ 75). Plaintiff now has served more than 20 years of his life sentence. *Id.* at 6–7 (1st Am. Compl. ¶ 20). Plaintiff has matured and demonstrated his rehabilitation during his incarceration through his behavior and institutional accomplishments. *Id.* at 8 (1st Am. Compl. ¶ 24). But—no matter the maturity or rehabilitation he demonstrates—defendants will deny plaintiff parole principally because plaintiff denies responsibility for the offense in the first place and without considering his juvenile offender status. *Id.* at 6–7 (1st Am. Compl. ¶ 20).

At the heart of plaintiff's case is his allegation that Kansas's parole system doesn't provide him with a meaningful and realistic opportunity for release, converting his life sentence

into a de facto sentence of life without parole. *Id.* at 8 (1st Am. Compl. ¶ 25). Though Kansas law describes life sentences as "parole-eligible," in practice, plaintiff never can secure parole, regardless of his demonstrated maturity, rehabilitation, or any other aspect of his record. *Id.* at 15 (1st Am. Compl. ¶ 62). The state's parole policies and practices don't distinguish between youth and adults. *Id.* (1st Am. Compl. ¶ 65). And these policies and practices fail to consider adequately the attributes of youth. *Id.* Instead, the state relies on risk assessment tools that penalize those who were young at the time of their offense. *Id.*

In Kansas, the authority to parole a person sentenced to life lies first in the hands of the Secretary of Corrections. *Id.* at 7 (1st Am. Compl. ¶ 21). The Secretary makes a written agreement and plan that the person in prison must meet to earn parole. *Id.* Whether a person has satisfied the agreement is up to the Secretary's discretion, who may revise the agreement at any time. *Id.* at 18–19 (1st Am. Compl. ¶ 79). And nothing requires the Secretary to consider a person's youth at the time of the offense. *Id.* at 19 (1st Am. Compl. ¶ 83). Indeed, the Secretary doesn't consider youth. *Id.* If the Secretary determines that the person has completed the written agreement, the Secretary then files a report with the Prisoner Review Board. *Id.* (1st Am. Compl. ¶ 81).

After the Secretary has reported that the person completed the written agreement, Kan. Stat. Ann. § 22-3717(g) allows the Prisoner Review Board to release the person on parole if "the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is a reasonable probability that the inmate can be released without detriment to the community or to the inmate." And Kan. Stat. Ann. § 22-3717(h) provides the Board with the following list of considerations:

> (1) Whether the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any

4

>revision of such agreement; and (2) all pertinent information regarding such inmate, including, but not limited to, the circumstances of the offense of the inmate; the presentence report; the previous social history and criminal record of the inmate; the conduct, employment, and attitude of the inmate in prison; the reports of such physical and mental examinations as have been made, including, but not limited to, risk factors revealed by any risk assessment of the inmate; comments of the victim and the victim's family including in person comments, contemporaneous comments and prerecorded comments made by any technological means; comments of the public; official comments; any recommendation by the staff of the facility where the inmate is incarcerated; proportionality of the time the inmate has served to the sentence a person would receive under the Kansas sentencing guidelines for the conduct that resulted in the inmate's incarceration; and capacity of state correctional institutions.

The Board receives no training about adolescent psychological development or any other training that would help Board members contextualize offenses committed by youth. *Id.* at 21 (1st Am. Compl. ¶ 92). The Board doesn't distinguish between those who committed their offenses as youth and those who committed their offenses as adults. *Id.* at 20 (1st Am. Compl. ¶ 90). In some ways, the Board disproportionately penalizes those who were youth at the time of their offense. *Id.* (1st Am. Compl. ¶ 89). The Board uses risk assessment tools that asses the individual as if frozen in time upon his arrival at the Department of Corrections, rather than assessing who the individual is at the time of the assessment. *Id.* at 21–22 (1st Am. Compl. ¶ 94). The tools don't account for plaintiff's maturation over time, accomplishments, or institutional record. *Id.* By utilizing these tools, the Board virtually ensures that plaintiff will demonstrate a moderate to high level of risk even when he is thoroughly rehabilitated and presents little or no risk. *Id.*

The Department of Corrections categorically bars those sentenced to life for homicide from progressing to a security classification below medium high. *Id.* at 16 (1st Am. Compl. ¶ 66). In the Department of Corrections, security classifications determine virtually all aspects of an individual's conditions of confinement: housing, restrictions on freedom of movement, and program eligibility, including access to treatment, training, and employment. *Id.* at 22 (1st Am.

Compl. ¶ 98).  The Secretary has adopted policies that categorically bar those serving life sentences, including juveniles, from eligibility for work release and community corrections.  *Id.* (1st Am. Compl. ¶ 97).  Plaintiff asserts that categorically assigning him to no lower than medium high security and barring him from progressing through the system unlawfully denies him a core component of a meaningful and realistic opportunity for release.  *Id.* at 23 (1st Am. Compl. ¶ 102).  Yet those who entered Department of Corrections custody as juveniles have a greater need for supportive programming and opportunities that will enable rehabilitation.  *Id.*  The Department of Corrections' scheme thus reinforces that juveniles serving life sentences can't attain opportunities for release.  *Id.* (1st Am. Compl. ¶ 103).

Plaintiff regards parole proceedings as futile and meaningless, and the idea of parole as completely illusory.  *Id.* at 24 (1st Am. Compl. ¶ 107).  No matter his behavioral record and efforts to rehabilitate, plaintiff never can progress below medium high security to lower classifications that will allow him to demonstrate further his readiness for release.  *Id.*

## II.    Legal Standard

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.  It provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A court evaluates a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.     Analysis

Defendants have filed a Motion for Judgment on the Pleadings (Doc. 16).  Before the court addresses its substance, the court must address an unusual feature of defendants' motion:  it asks the court to dismiss claims that plaintiff doesn't assert.

Plaintiff's Amended Complaint asserts three counts:

- Count I:  a § 1983 claim for violating plaintiff's Eighth Amendment right;
- Count II:  a claim for violating § 9 of the Kansas Bill of Rights;
- Count III:  a declaratory judgment claim seeking a declaration that Kan. Stat. Ann. §§ 22-3717(g)–(h) and 75-5210(a) are unconstitutional as applied to plaintiff.

Doc. 9 at 26–29 (1st Am. Compl. ¶¶ 116–33).  But defendants have decided that plaintiff brings other claims.[1]  Defendants "more granularly note" 11 claims in plaintiff's Amended Complaint.  Doc. 17 at 2.  Defendants report that they "parse[d]" these claims out "to enable a more organized response to these claims." *Id.*  Then, defendants asked the court to dismiss nine of those 11 claims.  *See generally id.*  In his response, plaintiff clarified that he doesn't assert 11 claims—he asserts three counts.  Doc. 23 at 2.  Defendants' reply doubled down on their approach, arguing that plaintiff's "characterization of his claims omits any facts."  Doc. 26 at 1.  According to defendants, they "parsed" plaintiff's Amended Complaint "into eleven claims incorporating the facts alleged and connecting them to possible legal grounds for relief" so defendants could "address the *facts* alleged[.]"  *Id.* at 2 (emphasis in original).  Defendants' approach perplexes the court as well.

Rarely do defendants borrow trouble by telling a plaintiff that he actually has asserted (or should assert) *more* claims against them.  This likely is so because it's not defendants' place to

---

[1]     To distinguish between plaintiff's actual legal theories and defendants' ones, defendants use the word "claim" and plaintiff uses the word "count."

7

tell plaintiff what his legal claims should be.  A "plaintiff is the master of [his] own complaint.  As long as [his] complaint states [his] 'claims intelligibly so as to inform the defendants of the legal claims being asserted,' . . . [he] may bring claims, and support those claims with factual allegations, in the way [he] sees fit."  *Doe v. Taos Mun. Schs.*, No. 1:20-cv-01041-SCY-JHR, 2023 WL 5015394, at *7 (D.N.M. Aug. 7, 2023) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)).  Because plaintiff controls his Amended Complaint, the court will not "reshap[e] his allegations so they suit defendants' arguments[.]"  *Pirotte v. HCP Prairie Village KS OPCO LLC*, 580 F. Supp. 3d 1012, 1025 (D. Kan. 2022).  Defendants call plaintiff's Amended Complaint "difficult to decipher" and argue that this is so because plaintiff modelled his Amended Complaint "heavily and almost entirely from a *pro se* inmate complaint in Oklahoma from 2020[.]"  Doc. 26 at 2.  The court, however, has little trouble deciphering plaintiff's Amended Complaint—it identifies the defendants, the three claims he asserts in three distinctly numbered counts, and his factual allegations clearly enough.  And plaintiff here is represented by counsel.  The court thus rejects defendants' characterization of the Amended Complaint and declines to consider the 11 claims they "parsed" from it.[2]

As a result, the court need only address the following:  (1) whether the Eleventh Amendment bars plaintiff's Count II and Count III; (2) whether plaintiff has failed to state a

---

[2] Defendants' Motion for Partial Judgment on the Pleadings (Doc. 16) trains most of its focus on these 11 "claims."  The court declines to consider defendants' arguments to dismiss claims that they've brought to the Complaint.  Specifically, the court will not consider:  (i) whether § 1983 is an inappropriate legal avenue for postconviction relief asserted in claim one; (ii) whether plaintiff fails to allege an injury in fact for claims four through 11; (iii) whether plaintiff fails to assert a redressable injury in claim one; (iv) whether plaintiff's claim one has failed to state a plausible Eighth Amendment claim because he has misstated the legal standard from *Miller* and *Montgomery*; (v) whether plaintiff's claims four through 11 fail to state a claim because *Graham* and *Miller* create sentencing standards, not parole standards; (vi) whether plaintiff's claim four fails to state a claim because any due process rights that attach to parole hearings are minimal and are met; (vii) whether claim eight fails to state a claim because denial of parole isn't a penalty; and (viii) whether claim 11 fails to state a claim because the parole board can consider older disciplinary history alongside recent disciplinary history.

claim against Governor Laura Kelly; and (3) whether plaintiff's Count III fails to state a claim. The court addresses each, in turn, below.

### A.     Eleventh Amendment

Defendants—state officials sued in their official capacity—invoke the Eleventh Amendment's guarantee of state sovereign immunity. "In the absence of a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court."[3] *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). "If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability." *Id.* (citation omitted). So, generally, "the law considers state officials acting in their official capacities to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998) (citations omitted).

There's a narrow exception to this total immunity for state officials, however, one created by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. at 155–56). But the Supreme Court has "refused to extend the reasoning of *Young* . . . to claims for retrospective relief." *Id.*

Defendants argue that the Eleventh Amendment bars plaintiff's Count II—his Kansas Bill of Rights claim—and Count III—his declaratory judgment claim. The court examines each claim, below.

---

[3]     Congress didn't abrogate state sovereign immunity from § 1983 suits when it created the statute. *Ambus*, 995 F.2d at 994 ("Although Congress did not abrogate state Eleventh Amendment immunity when enacting § 1983, that immunity extends only to the states themselves and to those governmental entities that are arms of the state." (citation and internal quotation marks omitted)).

### 1. Count II:  Kansas Bill of Rights Claim

Defendants argue that the *Ex parte Young* exception doesn't apply to Count II because it only applies to claims for "prospective injunctive relief to prevent a continuing violation of *federal* law" and Count II asserts a *state* law claim.  *Id.* (emphasis added) (citing *Ex parte Young*, 209 U.S. at 155–56).  Defendants are correct.  The Supreme Court has held that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  The Court explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  *Id.*  As a result, federal "courts do not have jurisdiction over suits seeking to require state officials to comply with state law."  *Lewis v. N.M. Dep't of Health*, 94 F. Supp. 2d 1217, 1229 (D.N.M. 2000), *aff'd*, 261 F.3d 970 (10th Cir. 2001).

Plaintiff tries to avoid this result by citing *Thomas v. Stitt*, 653 F. Supp. 3d 1084 (W.D. Okla. 2023).  There, plaintiff—a juvenile sentenced to life in prison with the possibility of parole—alleged "that Oklahoma's parole system violate[d] the Eighth Amendment of the United States Constitution and Article II, § 9 of the Oklahoma Constitution by denying juveniles sentenced to parole-eligible life sentences a meaningful opportunity for release."  *Id.* at 1086.  Defendants argued for dismissal based on Eleventh Amendment immunity.  *Id.* at 1088.  The Oklahoma district court declined to apply Eleventh Amendment immunity for a simple reason: plaintiff had sued state officials in their official capacities for prospective injunctive and declaratory relief.  *Id.* at 1088–89.  Plaintiff urges this court to reach the same result.

Plaintiff stretches *Thomas* too far.  *Thomas* doesn't address defendants' argument here: that the court should dismiss the state law claim because *Ex parte Young* doesn't apply to suits based on state law.  *See generally id.*  Putting it another way, *Thomas* only addresses part of *Ex parte Young*:  plaintiff sued state officials for prospective equitable relief.  *See Lewis v. N.M.*

*Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001) (breaking *Ex parte Young* exception down into four requirements: "(1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; (3) the plaintiffs seek prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate special sovereignty interests." (citation and internal quotation marks omitted)). *Thomas* never addresses the requirement that plaintiff "allege[s] a non-frivolous violation of *federal* law[.]" *Id.* (emphasis added).

The court thus agrees with defendants and concludes that it lacks jurisdiction over plaintiff's claim in Count II. *See Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *5 (D. Colo. Jan. 17, 2013) (dismissing plaintiff's request for declaratory relief for violation of the Colorado Constitution as barred by the Eleventh Amendment). It thus dismisses Count II without prejudice. The court next considers defendants' Eleventh Amendment arguments about Count III.

### 2. Count III: Declaratory Judgment "Claim"

Count III seeks a "declaratory judgment that K.S.A. §§ 22-3717(g)–(h) and 74-5210a are unconstitutional as applied to Mr. Makthepharak[.]" Doc. 9 at 29 (1st Am. Compl. ¶¶ 130–33). Plaintiff asserts that these Kansas statutes "violate the prohibition against cruel and unusual punishment under the Eighth Amendment . . . because they mandate what the Secretary of Corrections and the Prisoner Review Board consider in order to parole individuals sentenced to life irrespective of any consideration of the youth status of the offender." *Id.* (1st Am. Compl. ¶ 132). Plaintiff alleges that he "has been injured by parole consideration under these statutes by being denied . . . parole without a meaningful and realistic opportunity for release upon his demonstrated maturity and rehabilitation, in violation of the Eighth Amendment[.]" *Id.* (1st Am. Compl. ¶ 133).

The court first notes that Count III really isn't a claim at all. The Declaratory Judgment Act doesn't create an independent cause of action. *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–74 (1950) (outlining "limited procedural purpose of the Declaratory Judgment Act"); *Alvidrez v. Ridge*, 311 F. Supp. 2d 1163, 1166 (D. Kan. 2004) ("The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* does not create an independent cause of action, it only provides a form of relief previously unavailable."). "In other words, the Act 'enlarges the range of remedies available in federal courts,' *Skelly Oil Co.*, 339 U.S. at 671, but it leaves 'substantive rights unchanged,' *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)." *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (brackets omitted). "To maintain an action for a declaratory judgment, then, [plaintiff] must assert a valid federal cause of action—one that exists independent of any request for declaratory relief." *Id.* Here, plaintiff has done just that with Count I, his § 1983 claim against defendants for violating of his Eighth Amendment rights. So, plaintiff's request for declaratory relief is proper. Defendants make two arguments to the contrary. The court rejects them both, below.

*First*, defendants argue that the Eleventh Amendment bars Count III because plaintiff's requested declaratory relief is retrospective. Doc. 26 at 3. To be sure, "claims for . . . retrospective declaratory relief are barred by the Eleventh Amendment." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). And "*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (citation and internal quotation marks omitted).

The court counts seven requests for declaratory relief in plaintiff's Amended Complaint. The first lies in what plaintiff calls his "Count III" section. It asks the court to declare that Kan.

Stat. Ann. §§ 22-2717(g)–(h) and 75-5210(a) are unconstitutional as applied to him. *See* Doc. 9 at 29 (1st Am. Compl. ¶¶ 130–33). Then, in his prayer for relief, plaintiff asks the court to declare the following six things under its Declaratory Judgment Act authority (28 U.S.C §§ 2201–01):

- Defendants have operated, and continue to operate, a parole scheme that denies individuals, such as Mr. Makthepharak, who are serving parole-eligible life sentences for offenses committed as a juvenile, a meaningful and realistic opportunity for release, in violation of the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution[.]

- Mr. Makthepharak is serving a *de facto* [life in prison without parole] sentence under which he has not been afforded any meaningful or realistic opportunity for release, in violation of the prohibitions against cruel and unusual punishment in the Eighth Amendment[.]

- K.S.A. § 75-5210a, which grants the Secretary of Corrections the exclusive authority to fashion the conditions of parole-ability for an inmate serving a parole-eligible life sentence, is unconstitutional as applied to individuals, including Mr. Makthepharak, who were juveniles at the time of their offenses[.]

- K.S.A. § 22-3717(g)–(h), precluding the Parole Review Board from granting parole to an inmate serving a parole-eligible life sentence without the approval of the Secretary of Corrections, and setting the further factors the Parole Review Board should consider, is unconstitutional as applied to individuals, including Mr. Makthepharak, who were juveniles at the time of their offenses[.]

- Defendants' reliance on risk assessment tools that discriminate against those who were juveniles at the time of their offense to assess opportunities for release has denied Mr. Makthepharak a meaningful and realistic opportunity for release upon a showing of rehabilitation, in violation of the Eighth Amendment[.]

- Defendants have denied Mr. Makthepharak and those similarly situated[] a meaningful and realistic opportunity for release by denying him access to critical rehabilitative opportunities through policies and practices automatically classifying him as no lower than medium high security and prohibiting him from progressing to security levels below medium high regardless of individual merit, in violation of the prohibitions against cruel and unusual punishment in the Eighth Amendment[.]

Doc. 9 at 29–31 (1st Am. Compl.).

Defendants broadly assert that all six of plaintiff's requested declarations are retrospective because plaintiff "raises concerns only regarding the procedures used in one 2021 decision to deny him parole[.]" Doc. 26 at 3. Defendants also point out that two of plaintiff's requests—bullet points five and six, above—are phrased in the past tense. *Id.* Plaintiff disputes defendants' characterization. He asserts that his "prayers for declaratory relief ask this Court to declare the defendant's *ongoing* practices unconstitutional, the very purpose of the *Young* immunity exception." Doc. 23 at 5. The court agrees with plaintiff; defendants again have re-parsed the Amended Complaint too much. Defendants have no right to transform the claims that a complaint asserts.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks, citation, and brackets omitted). In *Verizon Maryland*, a public utilities commission had ordered Verizon to pay another carrier for internet service provider calls, asserting that the Telecommunications Act required Verizon to pay. *Id.* at 638–39. Verizon sued the Commission, invoking *Ex parte Young*, and "sought injunctive and declaratory relief, alleging that the Commission's order requiring payment . . . was pre-empted by" federal law and an administrative ruling. *Id.* at 645. Verizon's injunctive relief requested "that state officials be restrained from enforcing an order in contravention of controlling federal law"—a request well within the parameters of *Ex parte Young*. *Id.*

Verizon also sought declaratory relief, seeking a declaration of the "ineffectiveness of the Commission's action[.]" *Id.* at 646.  Though the declaratory relief sought a declaration of *past* ineffectiveness, the Court nonetheless held that the declaratory relief also fell within the parameters of *Ex parte Young*.  *Id.*  The Court explained that "the prayer for declaratory relief adds nothing to the prayer for injunction."  *Id.*  And "no past liability of the State, or of any of its commissioners, [was] at issue."  *Id.*  Nor did the declaratory relief "impose upon the State a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."  *Id.* (citation, emphasis, and internal quotation marks omitted).

Here, plaintiff's declaratory relief satisfies *Verizon Maryland*'s straightforward inquiry.  Plaintiff's declaratory relief seeks to "declare unconstitutional Kansas's parole process to the extent that it fails to provide adequate consideration of youth status[.]"  Doc. 9 at 8 (1st Am. Compl. ¶ 26).  Like *Verizon Maryland*, the declaratory relief adds nothing to the injunction, nor does it seek to impose any liability on defendants "from a past breach of legal duty."  *Verizon Md.*, 535 U.S. at 646.  The court thus rejects defendants' first argument.

*Second*, defendants assert that to "the extent such declaratory judgments stand as independent remedies apart from injunctive relief, they are barred."  Doc. 17 at 6–7.  But, as already explained, the court doesn't read plaintiff's Amended Complaint in the fashion defendants attribute to it because plaintiff seeks a declaratory judgment remedy on his § 1983 claim.  Plaintiff seeks injunctive and declaratory relief under 42 U.S.C. § 1983, which makes this a garden variety civil rights suit.  The court thus rejects defendants' second argument.

In sum, the court agrees with defendants that they are entitled to Eleventh Amendment immunity against plaintiff's Count II.  But the court declines to extend that immunity to bar

15

plaintiff's requested declaratory relief. The court next considers defendants' argument that defendant Governor Laura Kelly isn't a proper defendant.

### B. Governor Kelly

Plaintiff alleges that the Governor appoints the Secretary of Corrections, and the Secretary serves at the pleasure of the Governor. Doc. 9 at 2–3 (1st Am. Compl. ¶ 7). Defendants argue the court should dismiss Governor Kelly because plaintiff doesn't have standing to sue her. Doc. 17 at 9. Defendants point out that "Governor Kelly does not control or oversee parole decisions, so she cannot perform any of the injunctive relief requested." *Id.* And, defendants argue, plaintiff has failed to allege any facts showing that Governor Kelly personally participated in acts giving rise to plaintiff's injury. *Id.* at 10.

A plaintiff suing a governmental official in the official's *individual* capacity must show personal involvement. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) ("Individual liability under § 1983 must be based on the defendant's personal involvement in the alleged constitutional violation." (citation, brackets, and internal quotation marks omitted)); *Thomas*, 653 F. Supp. 3d 1084, 1087 n.3 (W.D. Okla. 2023) (rejecting argument that plaintiff failed to state a claim based on personal involvement because plaintiff had sued defendants "in their official—not individual—capacity"). But plaintiff sues Governor Kelly in her *official* capacity. An official capacity suit is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citation and internal quotation marks omitted).

The "proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute." *Petrella v. Brownback*, 697 F.3d 1285, 1293–94 (10th Cir. 2012). The Governor of Kansas has responsibility for enforcing the laws of the state. *Id.* at

16

1294.  So, plaintiff argues, the Governor is a proper defendant here because the Governor bears responsibility for enforcing the applicable parole statutes.  Indeed, under *Petrella*'s logic, plaintiff's right.

Defendants respond that plaintiff must allege "a credible threat of enforcement" based on the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Doc. 26 at 5.  Defendants also argue that, to the extent "*Petrella* says otherwise, then it has been abrogated by *Driehaus*."  *Id*.  There are two problems with defendants' argument, and both are fatal.

*First*, defendants failed to assert this "credible threat of enforcement" argument in their initial brief.  *See generally* Doc. 17.  Defendants' reply brief argues—but only for the first time—that plaintiff has failed to allege a credible threat of enforcement by Governor Kelly.  Doc. 26 at 5.  The court need not consider arguments raised for the first time in a reply.  *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding that an argument raised for the first time in a reply brief is waived (citation omitted)); *see also Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance.").

*Second*, plaintiff plausibly has alleged that he seeks a meaningful and realistic opportunity for release.  And he alleges that Kansas law—enforced by Governor Kelly—robs him of that opportunity.  The court thus rejects defendants' request to dismiss Governor Kelly from this suit.

### C.     Failure to State a Claim:  Count III

Finally, defendants argue that the court should dismiss Count III for failing to state a claim.  Doc. 17 at 14.  Recall that Kan. Stat. Ann. § 22-3717(h) provides a list of considerations

17

for the Prisoner Review Board. *See above* § I. Plaintiff points out that this list doesn't include juvenile offender status. And plaintiff alleges that the Board doesn't consider his status as a juvenile offender, violating his Eighth Amendment rights. Doc. 9 at 20 (1st Am. Compl. ¶¶ 89–90). On that basis, plaintiff seeks a declaratory judgment that Kan. Stat. Ann. § 22-3717(h) is unconstitutional as applied to him.

Defendants argue that plaintiff's claim fails because the statute's text prefaces the list of considerations with "including, but not limited to[.]" Kan. Stat. Ann. § 22-3717(h). Defendants argue that, because the statutory list is not exclusive, the parole board has discretion to consider youth. Doc. 17 at 14. So, defendants argue, plaintiff's Count III fails to state a claim.

As an initial matter, the court notes that plaintiff's Count III—seeking a declaratory judgment—isn't really a claim at all, as explained above. *See above* § III.A.2. Defendants also misunderstand plaintiff's argument. He argues that the Constitution *requires* the Board to consider his juvenile offender status. And plaintiff has alleged that the "Prisoner Review Board's policies and practices make no distinction between youth and adults, fail to consider adequately the attributes of youth, and in some respects disproportionately penalize those who were youth at the time of their offense[.]" Doc. 9 at 20 (1st Am. Compl. ¶ 89). The court takes plaintiff's allegations as true—as it must—and thus concludes that plaintiff's declaratory relief survives defendants' motion. The court also notes that our Circuit, albeit in an unpublished opinion, has found a lawsuit—a lawsuit defendants themselves call nearly identical—"stated plausible claims for relief." *Thomas v. Stitt*, No. 21-6011, 2022 WL 289661, at *4 (10th Cir. Feb. 1, 2022).

## IV. Conclusion

The court thus grants in part and denies in part defendants' Motion for Judgment on the Pleadings (Doc. 16). The court dismisses Count II without prejudice for lack of subject matter jurisdiction. In all other respects, the court denies defendants' motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 16) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 25th day of March, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**