## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SASHADA MAKTHEPHARAK,
     Plaintiff,

vs.

Case No. 2:23-cv-02121-DDC-RES

LAURA KELLY, *et al.*,
     Defendants.

### DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF

Under Fed. R. Civ. P. 33, defendants propound the following interrogatories to plaintiffs:

### Interrogatory No. 1

(a) What evidence do you have to support the allegation that Plaintiff was denied parole "solely" or "principally" or "at the outset" because he did not take responsibility for the offense? (*See* Doc. 9 at ¶¶ 20, 83, 106, 113.)

**From the parole packet Plaintiff received, the only report about Plaintiff's mental and physical health was an irrelevant psychological report from when he was 17 years of age in which he refused to discuss the particulars of his offense or its background, and was "on social, emotional, and physical lockdown." And this was despite the fact that the packet stated his most recent mental health classification was in November 2020. Nothing in the packet and nothing discussed at the hearing showed Plaintiff's substantial maturity and rehabilitation during his time in prison.**

**Further, the main reason given on the KPRB action notice Plaintiff received after his parole hearing was "[d]enies responsibility."**

(b) What evidence do you have to support the allegation that Plaintiff demonstrated maturity, rehabilitation, and trustworthiness sufficient to merit parole? (*See* Doc. 9 at ¶¶ 24, 62, 107, 122.)

**During his time in prison, Plaintiff completed his GED in 2007, completed vocational electrical training in 2019, and has held minimum wage jobs, including showing job stability for seven years working in the prison print shop as part of Kansas Correctional Industries.**

(c) What evidence do you have to support the allegation that Plaintiff demonstrated maturity, rehabilitation, and trustworthiness sufficient to merit parole? (*See* Doc. 9 at ¶¶ 24, 62, 107, 122.)

**KAR 45-200-1, an administrative regulation governing parole hearings before the Kansas Prisoner Review Board strictly limits a prisoner's only evidence to himself, with no other witnesses and no process for procuring witnesses. It limits attendance at a parole hearing to "(1) Any individual who is on the board's staff; (2) the inmate; (3) the person responsible for coordination of the parole plan for that inmate; (4) a representative of the inmate's unit team or another designated institution staff member; (5) any additional employee of the department of corrections who wishes to attend the hearing and who receives prior approval from the board; and (6) if the parole applicant does not offer an objection, a limited number of persons who have a professional interest in parole procedures and who have received prior approval from the board."**

**Additionally, the parole packet that the KPRB considered in 2021 fails to mention any of the institutional maturity evidence to which DOC had access, including Plaintiff's GED in 2007, vocational training, or job stability.**

### Interrogatory No. 2

What evidence do you have to support the allegation that the KPRB did not consider during the parole process Plaintiff's juvenile status at the time of the offense? (*See* Doc. 9 at ¶¶ 89-91, prayer for relief 7 ("mitigation of youth").)

**From the parole packet Plaintiff received, the only report about Plaintiff's mental and physical health was an irrelevant psychological report from when he was 17 years of age in which he refused to discuss the particulars of his offense or its background, and was "on social, emotional, and physical lockdown." And this was despite the fact that the packet stated his most recent mental health classification was in November 2020. Nothing in the packet and nothing discussed at the hearing showed Plaintiff's substantial maturity and rehabilitation during his time in prison. The fact that Plaintiff was a juvenile at the time of the offense and had matured was not discussed at the hearing. Nothing in Kansas statutes makes juvenile status or maturity something for the KPRB to consider. Accordingly, from all the foregoing, it is a reasonable inference that they did not consider this. Plaintiff expects to develop this more in further discovery.**

## Interrogatory No. 3

What evidence do you have to support the allegation that the practices of KDOC set a minimum of medium-high security for Plaintiff because of his age and offense? (*See* Doc. 9 at ¶¶ 66, 97-104, 107, 114, 115(1), 121, prayer for relief 6.)

**The version of the KDOC Security Classification Manual in effect at the time Plaintiff filed his First Amended Complaint, which manual is required by the Secretary of Corrections' regulation KAR 44-5-104, a juvenile with prior convictions who was convicted of murder and sentenced to life would always score no less than 12, meaning he will never be able to move below medium high.  Under what appears to be the current manual, amended in March 2024, the "non point based" system provides that a prisoner like Plaintiff who is serving a life sentence and therefore has "[t]wenty or more (20.0+) years to serve to projected release" "[r]equires no less than High-Medium custody."  *See* § III at 10.4.  And even under the new points system, minimum custody is totally foreclosed.**

## Interrogatory No. 4

What evidence do you have to support the allegation that the "risk assessment tools" of KDOC and the KPRB "discriminate against youth"? (*See* Doc. 9 at ¶¶ 120, 21, 65, 94, 108, 115(3), prayer for relief 5.)

**In the version of the KDOC Security Classification Manual in effect at the time Plaintiff filed his First Amended Complaint, which manual is required by the Secretary of Corrections' regulation KAR 44-5-104, a juvenile with prior convictions who was convicted of murder and sentenced to life would always score no less than 12, meaning he will never be able to move below medium high.  Under what appears to be the current manual, amended in March 2024, the "non point based" system provides that a prisoner like Plaintiff who is serving a life sentence and therefore has "[t]wenty or more (20.0+) years to serve to projected release" "[r]equires no less than High-Medium custody."  *See* § III at 10.4.  And even under the new points system, minimum custody is totally foreclosed.**

**In both instances, the manual fails to take into account a prisoner's juvenile status at the time of his offense and his maturation over time, as the Eighth Amendment requires, and instead treats him the same as a prisoner who is incarcerated for an offense committed as an adult.**

### Interrogatory No. 5

What evidence do you have to support the allegation that the practices of KDOC foreclose rehabilitation opportunities from Plaintiff by preventing him from engaging in work release or community corrections programs? (*See* Doc. 9 at ¶ 97.)

**In the version of the KDOC Security Classification Manual in effect at the time Plaintiff filed his First Amended Complaint, which manual is required by the Secretary of Corrections' regulation KAR 44-5-104, a juvenile with prior convictions who was convicted of murder and sentenced to life would always score no less than 12, meaning he will never be able to move below medium high. Under what appears to be the current manual, amended in March 2024, the "non point based" system provides that a prisoner like Plaintiff who is serving a life sentence and therefore has "[t]wenty or more (20.0+) years to serve to projected release" "[r]equires no less than High-Medium custody." *See* § III at 10.4. And even under the new points system, minimum custody is totally foreclosed.**

**So, no matter what Plaintiff's record in prison is, from personal knowledge Plaintiff knows the fact that he cannot be classified below medium high, and is ineligible for minimum ever, means that he is ineligible for further work, educational, work release, and other opportunities that are available to medium low prisoners.**

### Interrogatory No. 6

What evidence do you have to support the allegation that Plaintiff's parole decision was based on "older institutional disciplinary history"? (*See* Doc. 9 at prayer for relief 7.)

**OBJECTION: this interrogatory mischaracterizes Plaintiff's complaint. The language to which the interrogatory points does not state that his parole decision was "based on older institutional disciplinary history."**

**Without waiving this objection, Plaintiff states that his institutional disciplinary history as far back as 1999 when he was a juvenile, including his juvenile record, was discussed at the parole hearing. Also discussed were alleged disciplinary matters dating back to the earlier part of his present incarceration, which began in 2001, more than 20 years ago.**

## Interrogatory No. 7

What evidence do you have that the Secretary of Corrections (whether Zmuda or any of his predecessors) ever entered into an agreement with any inmate regarding programs that must be completed to be released on parole? (*See* Doc. 9 at ¶¶ 113, 7(d), 21, 77-85, 92.)

**Kansas's statutes governing parole by the KPRB speak for themselves. Within "a reasonable time after a defendant is committed to the custody of the secretary of corrections," solely at the discretion of the Secretary of Corrections, "the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole supervision." K.S.A. § 75-5210a.**

**Whether the inmate has satisfied this is further entirely at the Secretary of Corrections' discretion, who may revise the agreement at any time without any standards or oversight: "The agreement shall be conditioned on the inmate's satisfactory conduct, employment and attitude while incarcerated. If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which are set forth in the agreement, the secretary shall revise the requirements. The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the prisoner review board. If the inmate becomes eligible for parole before satisfactorily completing such programs, the secretary shall report in writing to the board the programs which are not completed." *Id.***

**K.S.A. § 22-3717(g) provides that outside of release "for hospitalization, deportation or to answer the warrant or other process of a court," *the only* way "the prisoner review board may release on parole those persons confined in institutions who are eligible for parole" is when "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."**

## Interrogatory No. 8

What evidence do you have that the Secretary of Corrections (whether Zmuda or any of his predecessors since July 1, 2011) ever submitted a report to the Kansas Prisoner Review Board regarding the appropriateness of parole for any inmate (other than providing access to the Department of Corrections' records in general)? (*See* Doc. 9 at ¶¶ 113, 79, 81, 91-92.)

**Kansas's statutes governing parole by the KPRB speak for themselves.  Within "a reasonable time after a defendant is committed to the custody of the secretary of corrections," solely at the discretion of the Secretary of Corrections, "the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole supervision."  K.S.A. § 75-5210a.**

**Whether the inmate has satisfied this is further entirely at the Secretary of Corrections' discretion, who may revise the agreement at any time without any standards or oversight: "The agreement shall be conditioned on the inmate's satisfactory conduct, employment and attitude while incarcerated.  If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which are set forth in the agreement, the secretary shall revise the requirements.  The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the prisoner review board.  If the inmate becomes eligible for parole before satisfactorily completing such programs, the secretary shall report in writing to the board the programs which are not completed."  *Id.***

**K.S.A. § 22-3717(g) provides that outside of release "for hospitalization, deportation or to answer the warrant or other process of a court," *the only* way "the prisoner review board may release on parole those persons confined in institutions who are eligible for parole" is when "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."**

## Interrogatory No. 9

What evidence do you have that the Secretary of Corrections (whether Zmuda or any predecessors) was involved in any decision-making processes regarding parole for any inmate? (*See* Doc. 9 at ¶¶ 64, 77-85, 92, 113, prayers for relief 3-4, 7 ("unilateral determination").)

**Kansas's statutes governing parole by the KPRB speak for themselves, and provide that by virtue of his office, the Secretary is always involved in the decision-making process regarding parole for inmates. Within "a reasonable time after a defendant is committed to the custody of the secretary of corrections," solely at the discretion of the Secretary of Corrections, "the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole supervision." K.S.A. § 75-5210a.**

**Whether the inmate has satisfied this is further entirely at the Secretary of Corrections' discretion, who may revise the agreement at any time without any standards or oversight: "The agreement shall be conditioned on the inmate's satisfactory conduct, employment and attitude while incarcerated. If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which are set forth in the agreement, the secretary shall revise the requirements. The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the prisoner review board. If the inmate becomes eligible for parole before satisfactorily completing such programs, the secretary shall report in writing to the board the programs which are not completed." *Id.***

**K.S.A. § 22-3717(g) provides that outside of release "for hospitalization, deportation or to answer the warrant or other process of a court," *the only* way "the prisoner review board may release on parole those persons confined in institutions who are eligible for parole" is when "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."**

## Interrogatory No. 10

(a) What evidence do you have to support the allegation that parole is rarely granted? (*See* Doc. 9 at ¶¶ 21-22, 63, 67, 92, 107, 118-19.)

**OBJECTION: Nowhere in his complaint, let alone in the paragraphs cited, did Plaintiff state "parole is rarely granted."  He stated that grants of release for people *like him* who were sentenced to life as juveniles is "exceptionally rare, are governed by no substantive or enforceable standards, and are masked from view by the public and the inmate whose liberty is at stake."  ¶ 118.**

**Without waiving his objection, Plaintiff states that the allegation he actually made in ¶ 118 is from personal observation during his more than two decades as a prisoner in KDOC.**

(b) What evidence do you have to support the allegation that the parole process has no substantive or enforceable standards or constraints? (*See* Doc. 9 at ¶¶ 21, 64, 67, 82, 84-85, 118.)'

**Under KAR 45-200-1, the discretionary parole process in Kansas provides no evidentiary rules, no right to obtain expert assistance or testimony, no cross-examination, no compulsory process, no right to the assistance of counsel, and cannot meet the meaningful requirements under the constitution and enforce *Miller's* concerns.  *See* KAR 45-200-1. Further, the content of and satisfaction of the mandatory agreement under §§ 75-5210a and 22-3717(g) is entirely at the unilateral, unfettered discretion of the Secretary of Corrections.**

(c) What evidence do you have to support the allegation that the parole process has no mechanisms for review? (*See* Doc. 9 at ¶¶ 21, 64, 67, 85, 92, prayer for relief 7 ("institute a meaningful administrative and judicial process to review decisions of the Parole Review Board").)

**The content of and satisfaction of the mandatory agreement under §§ 75-5210a and 22-3717(g) is entirely at the unilateral, unfettered discretion of the Secretary of Corrections, with no oversight.**

**Further, while an inmate may file a writ of habeas corpus under K.S.A. § 60-1501 to seek review of a final order of the KPRB, *Swisher v. Hamilton*, 12 Kan. App. 2d 183, 185, 740 P.2d 95 (1987), "because parole is a privilege, a matter of grace exercised by the [KPRB], … review of the denial of parole is limited to whether the [KPRB] complied with applicable statutes and whether its action was arbitrary and capricious."  *Payne v.***

*Kansas Parole Board*, 20 Kan. App. 2d 301, 307, 887 P.2d 147 (1994).

That is not a meaningful administrative and judicial process to review KPRB decisions in which the failure to take into account juvenile status and maturity as the Eighth Amendment requires can be addressed.

(d) What evidence do you have to support the allegation that the parole process vests "unilateral" authority in the Secretary of Corrections? (*See* Doc. 9 at prayer for relief 7 ("unilateral determination"), ¶¶ 64, 77-85, 92, 113, prayers for relief 3-4.)

Kansas's statutes governing parole by the KPRB speak for themselves, and provide that by virtue of his office, the Secretary has total and unilateral authority to determine whether a prisoner should be paroled. Within "a reasonable time after a defendant is committed to the custody of the secretary of corrections," solely at the discretion of the Secretary of Corrections, "the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole supervision." K.S.A. § 75-5210a.

Whether the inmate has satisfied this is further entirely at the Secretary of Corrections' discretion, who may revise the agreement at any time without any standards or oversight: "The agreement shall be conditioned on the inmate's satisfactory conduct, employment and attitude while incarcerated. If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which are set forth in the agreement, the secretary shall revise the requirements. The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the prisoner review board. If the inmate becomes eligible for parole before satisfactorily completing such programs, the secretary shall report in writing to the board the programs which are not completed." *Id.*

K.S.A. § 22-3717(g) provides that outside of release "for hospitalization, deportation or to answer the warrant or other process of a court," *the only* way "the prisoner review board may release on parole those persons confined in institutions who are eligible for parole" is when "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able

**and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."**

(e) What evidence do you have to support the allegation that the parole process has no transparency, including regarding any next steps to be recommended for parole? (*See* Doc. 9 at ¶¶ 64, 84, 93, 115(2), 118, prayer for relief 7 (would require certain disclosures).)

**The Secretary of Corrections has no standards or guidelines for determining the content of his "agreement" with a prisoner or when that agreement has been satisfied. Instead, § 75-5210a gives those determinations unilaterally to the Secretary, with no oversight. Beyond that, KAR 45-200-1 prevents any outside transparency, as it strictly limits a prisoner's only evidence to himself, with no other witnesses and no process for procuring witnesses. It limits attendance at a parole hearing to "(1) Any individual who is on the board's staff; (2) the inmate; (3) the person responsible for coordination of the parole plan for that inmate; (4) a representative of the inmate's unit team or another designated institution staff member; (5) any additional employee of the department of corrections who wishes to attend the hearing and who receives prior approval from the board; and (6) if the parole applicant does not offer an objection, a limited number of persons who have a professional interest in parole procedures and who have received prior approval from the board."**

(f) What evidence do you have to support the allegation that the parole process is effectively executive clemency and not parole? (*See* Doc. 9 at ¶¶ 21, 63, 67, 88, 115(4), 118.)

**Kansas's statutes governing parole by the KPRB speak for themselves, and provide that by virtue of his office, the Secretary has total and unilateral authority to determine whether a prisoner should be paroled. Within "a reasonable time after a defendant is committed to the custody of the secretary of corrections," solely at the discretion of the Secretary of Corrections, "the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole supervision." K.S.A. § 75-5210a.**

**Whether the inmate has satisfied this is further entirely at the Secretary of Corrections' discretion, who may revise the agreement at any time without any standards or oversight: "The agreement shall be conditioned on the inmate's satisfactory conduct, employment and**

attitude while incarcerated.  If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which are set forth in the agreement, the secretary shall revise the requirements.  The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the prisoner review board.  If the inmate becomes eligible for parole before satisfactorily completing such programs, the secretary shall report in writing to the board the programs which are not completed." *Id.*

K.S.A. § 22-3717(g) provides that outside of release "for hospitalization, deportation or to answer the warrant or other process of a court," *the only* way "the prisoner review board may release on parole those persons confined in institutions who are eligible for parole" is when "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a, and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."

### Interrogatory No. 11

(a) What evidence do you have to support that any evidence was considered in Makthepharak's parole process that should not have been considered or that any evidence was not considered that should have been considered? (*See* Doc. 9 at ¶ 92 ("evidentiary rules).)

KAR 45-200-1 limits attendance at a parole hearing to "(1) Any individual who is on the board's staff; (2) the inmate; (3) the person responsible for coordination of the parole plan for that inmate; (4) a representative of the inmate's unit team or another designated institution staff member; (5) any additional employee of the department of corrections who wishes to attend the hearing and who receives prior approval from the board; and (6) if the parole applicant does not offer an objection, a limited number of persons who have a professional interest in parole procedures and who have received prior approval from the board."

As a result, a prisoner has no ability to procure expert assessments or other witnesses to demonstrate maturity compared to decades ago at the time of his offense, and is limited to the evidence the KPRB unilaterally opts to hear.

(b) What evidence do you have to support that Plaintiff was denied any expert assistance or testimony? (*See* Doc. 9 at ¶ 92 ("no right to obtain expert assistance or testimony").)

**By rule, Plaintiff had no opportunity to procure expert testimony for his KPRB hearing.  KAR 45-200-1 limits attendance at a parole hearing to "(1) Any individual who is on the board's staff; (2) the inmate; (3) the person responsible for coordination of the parole plan for that inmate; (4) a representative of the inmate's unit team or another designated institution staff member; (5) any additional employee of the department of corrections who wishes to attend the hearing and who receives prior approval from the board; and (6) if the parole applicant does not offer an objection, a limited number of persons who have a professional interest in parole procedures and who have received prior approval from the board."**

(c) What evidence do you have to support that testimony from any adverse witnesses was considered by the KPRB? (*See* Doc. 9 at ¶ 92 ("no cross-examination").)

**OBJECTION: Plaintiff's First Amended Complaint does not state that any adverse witnesses were considered.**

**Without waiving that objection, Plaintiff states that at the hearing, he was not given any opportunity to examine any witnesses, either adverse or friendly.**

(d) What materials or testimony did Plaintiff need the assistance of "compulsory process" to obtain for a parole hearing? (*See* Doc. 9 at ¶ 92.)

**KAR 45-200-1 prohibited Plaintiff from any such process, so he did not attempt it.  It limits attendance at a parole hearing to "(1) Any individual who is on the board's staff; (2) the inmate; (3) the person responsible for coordination of the parole plan for that inmate; (4) a representative of the inmate's unit team or another designated institution staff member; (5) any additional employee of the department of corrections who wishes to attend the hearing and who receives prior approval from the board; and (6) if the parole applicant does not offer an objection, a limited number of persons who have a professional interest in parole procedures and who have received prior approval from the board."**

**If allowed, Plaintiff would have sought expert and other testimony to demonstrate his maturity compared to decades ago at the time of his offense.**

(e) What evidence do you have that any attorneys were prevented from attending or participating in a parole hearing for Plaintiff? (*See* Doc. 9 at ¶ 92 ("assistance of counsel").)

**OBJECTION: Plaintiff's First Amended Complaint does not state that any attorneys were prevented from participating in a parole hearing for him.**

**Without waiving that objection, Plaintiff states that no process is given for the right to assistance of counsel at parole hearings.**

(f) What evidence do you have to support that "verbal or written explanation" of parole decisions was only provided "perfunctorily" to Plaintiff? (*See* Doc. 9 at ¶ 93.)

**The only explanation for why the KPRB denied Plaintiff parole was four words in an "Action Notice" on April 16, 2021: "Denies responsibility; Disciplinary reports."  Plaintiff believes that four words is "perfunctory."**

## Interrogatory No. 12

Is Plaintiff alleging that the statutory factors considered by the KPRB do not allow for considering his juvenile status at the time of the offense? (*See* Doc. 9 at ¶¶ 132-33, 91, 64, prayer for relief 4.)

**No.**

## Interrogatory No. 13

Plaintiff has stated that he is *not* asserting a violation of due process in this case. (*See* Doc. 23 at 15.) With that in mind, on what legal basis does Plaintiff claim he is entitled in the parole process to the procedural mechanisms he complains in the complaint of not having use of, such as evidentiary rules, the ability to obtain expert assistance or testimony, cross-examination, compulsory process, assistance of counsel, written explanation of the decision, and mechanisms for review? (*See* Doc. 9 at ¶¶ 92-93, 21, 64, 67, 85, prayer for relief 7 ("institute a meaningful administrative and judicial process to review decisions of the Parole Review Board").)

**For a life sentence to not be the "life without parole" that the Eighth Amendment prohibits for juveniles, there must be a "meaningful" and "realistic" opportunity for release upon the prisoner's demonstrated maturity and rehabilitation.  *Graham v. Florida*, 560 U.S. 48, 82 (2010); *Miller v. Alabama*, 567 U.S. 460, 474, 479 (2012).  This necessarily means the**

prisoner must have a meaningful opportunity to demonstrate that maturity.  *Rainer v. Hansen*, 952 F.3d 1203, 1210 (10th Cir. 2020); *Thomas v. Stitt*, No. 21-6011, 2022 WL 289661 (10th Cir. Feb. 1, 2022).  Kansas's parole scheme fails to provide that.

## <u>Declaration</u>

Under 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing answers given are true and correct to the best of my knowledge and belief. Executed on August 26, 2024.

**Sashada Makthepharak**