Exhibit G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SASHADA MAKTHEPHARAK,
    Plaintiff,

vs.

LAURA KELLY, *et al.*,
    Defendants.

Case No. 2:23-cv-02121-DDC-RES

### DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANTS

1. Since 2012, how many inmates in the Kansas Department of Corrections were juveniles offenders sentenced to life?

ANSWER: **I do not know.**

2. Of the juvenile offenders sentenced to life, how many of those offenders have been granted parole by the State of Kansas?

ANSWER: **49 prisoners sentenced to life for offenses committed as a juvenile have been granted parole.**

3. Please provide the names and Kansas Department of Corrections identification number of all individuals cited in the answer provided to Interrogatories #1 and #2.

ANSWER: **See attached list of individuals.**

4. Please describe, in detail, the policies/procedures/or mechanisms utilized by the State of Kansas to comply with the holding of *Graham v. Florida*, 560 U.S 48, 75 (2010), by providing juveniles serving life sentences a, "meaningful

opportunity to obtain release based upon demonstrated maturity and rehabilitation."

ANSWER: The State of Kansas uses a parole system. A description of the parole process can be found on the Kansas Prisoner Review Board's (KPRB) main web page. For convenience, a printout of that page is attached.

A member of the KPRB is assigned as a lead for each parole hearing. The lead puts a packet of relevant information together related to the parole hearing. The KPRB does not deliberate regarding the information prior to the parole hearing. At least one KPRB member participates in the parole hearing, either in person or by video conference. The parole hearing is treated as a conversation with the inmate. The lead redirects the conversation to relevant topics. Generally, a KDOC staff member familiar with the resident will also comment during a part of the parole hearing based on the staff member's experiences with the resident.

Attorneys are permitted to participate in parole hearings, and this sometimes occurs. The resident (or an attorney) may give opening and closing statements. The resident has an opportunity to discuss matters raised by the KPRB and may present additional relevant information. An attorney may ask questions of the resident to help clarify the resident's comments, to prompt the resident to discuss additional matters, or even to conduct a direct examination of the resident (as long as the direct examination is not used to retry the underlying case).

After the parole hearing, the KPRB reviews its notes and has a full-board deliberation within a week of the hearing. Two members of the KPRB have to agree on the parole decision, and usually the decision is reached by consensus. The KPRB aims to decide the matter within 30 days

of the parole hearing. Once a decision is reached, a written Final Action Notice is prepared reflecting the decision, any reasons parole was passed, and any recommendations for the resident to improve the chances of parole in the future. The Final Action Notice is delivered to the inmate.

For differences in the parole process for residents who committed their offense when a juvenile, see answer to Interrogatory #5.

5. Do Kansas parole policies and practices distinguish between persons convicted of offenses while juveniles and adults when evaluating a person's eligibility for parole? If yes, please describe in detail how they distinguish between persons convicted of offenses while juveniles and adults are distinguished?

ANSWER: Yes. Substantively, the resident's youth at the time of the offense is considered as a factor in the discretionary parole decision for residents who committed their offense while a juvenile.

Procedurally, for residents who committed their offense while a juvenile, the full board participates in the parole hearings (at least two members, but usually all three), the hearings are recorded, and the resident is provided a packet of information to be considered at the parole hearing 30 days prior to the hearing. The following grounds for denying parole are not used by the KPRB for residents who committed their offense while a juvenile: criminal history, objections by members of the public, and the serious nature of the offense.

6. Please describe in detail the process for determining whether or not an inmate has satisfied the requirements of the written agreement drafted by the Secretary of Corrections per K.S.A. § 75-521a.

3

ANSWER: **None.**

7. Please describe in detail the policy and procedures the Secretary of Corrections uses to revise the written agreement referenced above in Interrogatory #6.

ANSWER: **None.**

8. What training, if any, do members of the Kansas Prisoner Review Board undergo regarding adolescent psychological development in order for members to properly contextualize offenses that were committed by individuals while still juveniles?

ANSWER: **The members of the KPRB regularly attend the Association of Paroling Authorities International's (APAI) annual training conference to both receive and provide training on all aspects of the parole process, including training regarding residents who were juveniles at the time of their offense. Additionally, current members Mark Keating and Jeannie Wark and past member Jonathan Ogletree each have over two decades of experience serving in corrections and the criminal justice system.**

**Informal in-house guidance was also provided years ago by Attorney General counsel when certain court decisions initially were released related to individuals who committed offenses while still juveniles. This information included brief descriptions of those decisions and recommended modifications to the KPRB hearing processes that were adopted and are in use today. See response to interrogatory #5, second paragraph, for those specific procedural modifications.**

4

9. Do the risk assessment tools utilized by the Kansas Prisoner Review Board account for the maturation of a juvenile offender over time based on their accomplishments and institutional record? If so, please describe how this is taken into consideration.

ANSWER: **A resident's accomplishments and institutional record are reviewed and are discussed with the resident at a parole hearing, which allows the resident an opportunity to comment. For example, Plaintiff's parole eligibility was passed in both 2021 and 2024 due, at least in part, to serious and recent disciplinary reports. Plaintiff had an opportunity to comment on those disciplinary reports at each parole hearing, and he did so. Plaintiff also had an opportunity to present any other relevant information that he wanted the KPRB to consider.**

**The KPRB looks at both static and dynamic factors that change over time and include current behaviors and attitudes. Other factors, such as custody classification, disciplinary records, programming participation records, employment, and others are all based on both historical and current, up-to-date information, to allow for the KPRB to gauge and measure an individual's degree of maturation and change over time.**

10. Since (2012 or 2016) how many juvenile offenders sentenced to life for homicide have been held in the Kansas Department of Corrections in a security classification below medium high?

ANSWER: **I do not know.**

11. Since 2012 how many juvenile offenders sentenced to life in the custody of the Kansas Department of Corrections have participated in work release programs or community corrections programs?

5

ANSWER: **I do not know.**

12.    Please provide the names and Kansas Department of Corrections identification number of all individuals cited in the answer provided to Interrogatories #10 and #11.

ANSWER: **None cited.**

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## VERIFICATION

STATE OF __Kansas__ )
)ss :
COUNTY OF __Shawnee__ )

The undersigned, on his/her oath and being first duly sworn, states that the answers to the foregoing interrogatories are true and correct to the best of his/her knowledge and belief and are made on behalf of Defendant Mark Keating.

_____
Affiant

Subscribed and sworn to before me this __26th__ day of __August__ _____, 2024.

_____
NOTARY PUBLIC

My Commission expires:

8-23-25



Carolyn J Perez
NOTARY PUBLIC~STATE OF KANSAS
MY APPT EXP: 8-23-25

7

| 2012 – 2019 | |
|---|---|
| KDOC # | NAME |
| 45083 | WOODS, FRANK |
| 50144 | CADY, JOHN, |
| 50219 | POMPA, RAYMOND |
| 52228 | TAYLOR, STEPHEN |
| 54965 | TONEY, DEMENTRIUS |
| 55268 | GUTIERREZ, LOUIS, JR |
| 56797 | FISHER, MARIO |
| 56867 | COOK, CARL |
| 57564 | SYKES, VICTOR |
| 57573 | JONES, BRILON |
| 57695 | ALBERTSON, CARLTON |
| 58016 | PHILLIPS, BRIAN |
| 58250 | COX, DAMON |
| 58681 | JONES, QUILAN |
| 58885 | KAISER, JOSHUA |
| 58909 | ORR, ABRAHAM |
| 59770 | MCGIVERN, CASEY |
| 59977 | CLAIBORNE, KENO |
| 60715 | NAVE, BRETT |
| 61206 | AIKINS, ROBERT |
| 62351 | STEPHENS, LANCE |
| 64278 | AVALOS, JOSE |
| 64775 | HUMPHERY, LARRY |
| 64843 | YARDLEY, MICHAEL |
| 65048 | AMOS, DANNY |
| 65543 | SAMUEL, ROY |
| 65693 | HAYES, WISE |
| 65719 | CAMPBELL, DUEREAL |
| 65914 | DAVIS, SHAKEER |
| 67603 | MCGINNIS, EVERETT |
| 67634 | RAMOS, DANIEL |
| 6008442 | WHIPPLE, LUKE |
| 35685 | EVERSON, THOMAS |
| 37366 | HUNTER, CHARLES |

| 2020 – 2024 YTD | |
|---|---|
| DOC# | NAME |
| 33333 | BOHANNON, BRAZELL |
| 68224 | BEY, YUSIF |
| 54127 | MARTINEZ, CHRISTOPHER |
| 6010350 | MCCARTY, EDRICK |
| 69687 | WINDSOR, DAMIEN |
| 73393 | BELL, HORACE |
| 65760 | FLORES, RAFAEL |
| 73374 | NGUYEN, JEREMY |
| 37035 | GUIDEN, RONALD |
| 61077 | BROOKS, DAVID |
| 74774 | BOONE, BRANDON |
| 67610 | MEDRANO, DANIEL |
| 20905 | GARRETT, ANTHONY |
| 57800 | BROWN, DAVID |
| 66600 | JORRICK, MICHAEL |



# Prisoner Review Board

by David — last modified Aug 28, 2023 12:42 PM

## Prisoner Review Board Role

by Nancy Burghart — last modified Aug 28, 2023 01:47 PM

The Prisoner Review Board plays a significant role in the two sentencing systems that govern those confined within Kansas Department of Corrections' facilities. Under the indeterminate release structure, the Prisoner Review Board determines when an incarcerated inmate will be released. Furthermore, the Board establishes supervision **conditions** of parole and conditional release, discharges successful parole and conditional releasees from supervision per the recommendation of the Parole Officer and revokes the release of those who have violated the conditions of their supervision.

On July 1, 1993, the legislature enacted the sentencing guidelines system. In this process, the Prisoner Review Board has the added responsibility of establishing conditions of supervision for inmates released on post-release supervision. The Board is also responsible for revoking those individuals who have violated their conditions of release.

Under both systems, the Prisoner Review Board has the responsibility to review **executive clemency** applications and make recommendations to the Governor regarding the clemency.

The Prisoner Review Board strives to cooperate fully with all criminal justice agencies for the continuing advancement of criminal justice and public safety in the State of Kansas. The Board also strives to be accessible to victims of crimes and other concerned citizens and to be receptive to their input.

## Overview

by CJ Perez — last modified Jul 09, 2020 03:18 PM

### Historical Overview of Kansas Paroling Authorities

The system of early release of inmates, which we know today as "parole," can be traced to as early as 1864. At that time the Governor, vested with constitutional authority, enjoyed the power to commute or reduce an inmate's sentence when deemed appropriate and advisable. To offer assistance to the Governor, the 1885 Legislature created a Board of Pardons whose function was to review commutation or pardon applications and report their recommendations to the Governor. This was a three-person Board, which met four times per year at the State Capitol. Each member received $5 per day for compensation.

In 1901, the Legislature again addressed the area of early release of inmates and empowered the Governor to set certain inmates free under circumstances and conditions quite similar to today's parole. In fact, this legislation was the first to ever use the word "parole." The Governor was required to make certain findings before authorizing an inmate's release under this system. The Governor had to be convinced that the inmate had served an adequate amount of time to be reformed. The Governor also had to find that the inmate could be released without endangering the community and that the inmate could find suitable employment upon release.

As with today's parole, conditions were attached to this privileged release. The inmate was required to report regularly to the Warden, refrain from using intoxicating liquors and gambling, refrain from frequenting places where intoxicating liquor was sold or where gambling occurred and refrain from associating with criminals and unworthy associates. An inmate could be incarcerated for violating these conditions and might not again be released until the expiration of his sentence - a much stricter requirement than today.

It was not until 1903 that a release procedure was adopted that was independent of the Governor's power. The Legislature created a Prison Board comprised of the Board of Directors and the Warden of the Penitentiary. The Board could parole inmates who had served their minimum sentences and had secured residence and employment. Conditions were attached to those releases and revocation was available when conditions were violated.

More than 50 years passed without substantive modifications to the Prison Board or its power. In 1957, however, the Prison Board was abolished and the Board of Probation and Parole was created. This Board had five part-time members who were appointed by the Governor and confirmed by the Senate. No more than three could share the same political affiliation and the membership had to include an attorney, a minister, a businessman and a farmer. The fifth member was chosen at-large.

The Board size was decreased in 1961 to three members, who received an annual salary as opposed to the previous per diem allowance. As before, the appointments were made by the Governor and approved by the Senate. The authority to grant or deny parole, and the powers attendant therewith, were vested exclusively in this Board while the Governor retained control over pardons and commutations. After a century of development and growth, the parole system finally emerged. It was allowed to separate from the Governor's authority and was acknowledged as an independent entity.

The Board of Probation and Parole had the responsibility of deciding who was granted parole and to supervise those offenders who were placed on parole as well as those offenders who sentencing judges had placed on probation. The supervising task remained with the Board until 1974. At that time, the Board of Probation and Parole was abolished and replaced by the Kansas Adult Authority. This Board had five members, with no more than three permitted to be from the same political party. One member was required to be an attorney, and two of the others from the fields of medicine, psychiatry, sociology or psychology. With the removal of parole and probation supervision from its jurisdictions, the Board focused on parole decisions, policies, and procedures, revocation of parole violators, discharge of parolees from supervision and review of pardon and clemency applications.

In 1979, the five-member Board became full-time employees of the State of Kansas.

In 1983, the Governor reduced the Board to three members and this change was ratified by the 1984 Legislature. Also in 1984, the name was changed from the Kansas Adult Authority to the Kansas Parole Board effective January 1, 1986.

Kansas Parole Board members were appointed by the Governor, with the advice and consent of the Senate. No more than two members could belong to the same political party. Members served staggered four year terms and represented diverse backgrounds, professional training and experience.

The 1988 Legislature increased Board membership to five then during the 1997 Legislative session; a law was passed which reduced the membership of the Parole Board to four full-time members. This reduction became effective in June 1997 effective July 1, 2003, the Legislature once again reduced the Board to three full time members.

In 2011, Governor Sam Brownback issued Executive Reorganization Order No. 34 (ERO 34) which abolished the Kansas Parole Board and established a three-member Prisoner Review Board whose members are appointed by the Secretary of Corrections and serve at the pleasure of the Secretary. This change became effective July 1, 2011.

# Process

by CJ Perez — last modified Jul 09, 2020 03:19 PM

**The Parole Process**

**Public Comment Sessions**

The Prisoner Review Board conducts monthly Public Comment Sessions in the cities of Derby, Topeka and Kansas City. The sessions provide an opportunity for Board members to receive written and oral input from victims, victims' families, inmates' families, community members and other interested persons regarding the possible parole of inmates. Notice of the Public Comment Sessions and a list of relevant inmates are available at: Public Comment Sessions.

**Parole Eligibility**

Inmates under the indeterminate sentencing structure become parole eligible after serving the minimum sentence, less good time credits. The good time credits are calculated according to statute. Currently, good time is earned at a rate of one day for every day served for sentences with a minimum of two years. In other words, an individual will become eligible at half of his/her minimum sentence if all good time is earned. For sentences with a one-year minimum, parole eligibility is reached after serving nine months.

**The Parole Hearing**

By statute, the Board must conduct a parole hearing during the month prior to the inmate's parole eligibility date with the inmate present if he/she is incarcerated in Kansas. This appearance does not necessarily mean that the inmate will be released on parole. Parole eligibility is viewed by the Board as distinctly different from parole suitability.

During the parole hearing the inmate is given an opportunity to:

- Present to the Board the inmate's version of the offense and any mitigating or precipitating factors;

- Discuss the inmate's prior criminal history;
- Discuss the progress the inmate has made and the programs that have been completed, including those that are a part of the inmate's Program Agreement;
- Discuss the precipitating or mitigating factors of any Disciplinary Reports the inmate has received while incarcerated;
- Discuss the inmate's problems and needs;
- Present and discuss a parole plan;
- Discuss other matters that are pertinent to consideration of parole release;
- Present other reasons the inmate believes makes him/her ready for parole.

Parole hearings provide the Board an opportunity to review all available reports and material pertinent to the case, as well as to question the inmate directly about relevant issues and to make an assessment of the inmate and his/her readiness for parole.

**The Parole Decision-Making Process**

Kansas Law stipulates that the Board may release on parole those inmates who have satisfactorily completed the Program Agreement, required by the K.S.A. 75-5210a, whom the Board believes are able and willing to fulfill the obligations of a law-abiding citizen, and when the Board is of the opinion that there is a reasonable probability that the inmate can be released without detriment to the community or to the inmate. (K.S.A. 22-3717 (e)).

In conjunction with K.S.A. 22-3717 (h), the following non-exhaustive factors are considered when determining parole suitability:

- Circumstances of the offense
- Previous criminal record and social history of the inmate
- Programs and program participation
- Conduct, employment, attitude, disciplinary history during incarceration
- Reports of physical/mental examinations, including but not limited to risk factors revealed by any risk assessment
- Comments from public officials, victims or their family, offender family or friends, or any other interested member of the general public
- Capacity of state correctional institutions
- Input from staff where offender is housed
- Proportionality of time served to the sentence that would have been received under the Kansas sentencing guidelines for the conduct that resulted in the inmate's incarceration
- Presentence report

In addition to soliciting comments from violent crime victims, comments are solicited from public officials regarding the inmate's possible parole. These officials include the Prosecuting Attorney, Sheriff's Department, Police Department and the Sentencing Judge from the county or counties in which the inmate was convicted. This information is made available to the Board at the inmate's hearing.

These considerations take into account the welfare of the community and public safety in determining the optimum period of time for parole release of an individual inmate. The parole decision is representative of the criminal justice system and governmental guidelines and is an attempt to reflect the general attitude and opinions of law enforcement and the community at large. Before granting parole, the Board determines whether or not an offender has demonstrated appropriate behavior which ensures a reasonable opportunity to succeed socially and economically. The Board takes into consideration the individuality of offenders on a case-by-case basis.

The Board can make one of three basic decisions at a parole hearing. These decisions are

- parole
- continue
- pass

The Board can decide to "parole" when it believes the inmate is suitable for release.

Secondly, the Parole Board can decide to "continue," which is to postpone making a decision to parole or pass the inmate. This action is made to facilitate further deliberation or receipt of information, when it requires a more in-depth review or discussion of the case. The Board may also continue for additional votes necessary for a majority decision. Other times, it may continue for the inmates to undergo an evaluation to assess the inmate's mental health. Once the reason for the continuation is satisfied, a determination as to whether or not to release the inmate is made.

The third decision is to "pass" for a particular period of time, which is a denial of parole. The maximum period for which the Prisoner Review Board may pass offenders convicted of A or B felonies or off-grid offenses is ten years, if the Board can provide reasons as to why it is not believed that the inmate would have been granted parole otherwise. Previously, offenders convicted of such offenses could only be passed for up to 3 years.

For offenders convicted of offenses other than A or B felonies or off-grid offenses, the Board may issue a pass for a period up to three years, provided the Board can give reasons as to why it is not believed that the inmate would have been granted parole otherwise. Previously, offenders convicted of such offenses could only be passed for up to one year.

**Appeal**

An inmate has the right to appeal a parole decision under authority of K.A.R. 45-200-2(b), when he/she can present "new evidence which was unavailable at the prior hearing." The appeal must be made in writing and specify the new evidence upon which the inmate relies. Those that meet the outlined criteria are reviewed by the Prisoner Review Board so that a decision can be made regarding the appeal. Once a decision has been reached, the offender is notified of the decision by the Board.

**Conditional Release**

A conditional release is the date when an inmate under an indeterminate sentence must be released, because he/she has served half of the maximum sentence. Good time for conditional release is calculated in the same manner as for parole eligibility. Therefore, for sentences with a maximum of two years or more an inmate must serve one-half of the maximum before being conditionally released. For example, on a three-to-ten year sentence, an inmate will reach his/her conditional release after serving five years and must be released at that time, provided he/she has lost no good time. When an inmate reaches his/her conditional release, the Prisoner Review Board reviews the inmate's file and establishes conditions with which the inmate must comply. The offender is then placed on conditional release and supervised until the maximum sentence date or granted an early discharge by the Board.

**Post-Release Supervision**

The Kansas Legislature imposed a Sentencing Guideline Sentencing structure for individuals whose crimes were committed on or after July 1, 1993. This system is determinate in nature, in that the inmate's period of incarceration is predetermined at sentencing. Post-release supervision is similar to conditional release. Post-release supervision begins when an inmate has served the maximum sentence, less good time credits. Each sentence has its own predetermined period of supervision and the inmate may earn good time in an amount no greater than 15-20 percent (depending on when the crime occurred) of the sentence, thereby reducing the portion of the sentence that must be served in prison. This amount of time, however, will then be added to the period of post-release supervision, so that the entirety of the term will not be affected or reduced. Therefore, since the inmate's release date is predetermined, the Prisoner Review Board's role at release is to set the conditions of the supervision period. Once the individual reaches the expiration date of his/her supervision period, the individual's obligation to the state has been satisfied.

**Parole, Conditional Release, and Post-Release Revocation Hearings**

In general, after an inmate has been released on parole, conditional release or post-release supervision, the Secretary of Corrections may issue a warrant when a violation of parole, conditional release or post-release supervision has been established. This process is initiated by an offender's Parole Officer, not by the Prisoner Review Board. If the Parole Officer wishes to pursue revocation proceedings, a probable cause/ preliminary hearing is conducted by the field parole staff and an impartial hearing officer. If probable cause is found, the inmate may be returned to the Department of Corrections' custody. The offender is then scheduled for a revocation hearing before the Prisoner Review Board. The inmate has the right to have witnesses present who may have information relevant to the alleged violation. If the violation is established to the satisfaction of the Board, it may revoke the parole, conditional release or post-release or take any other appropriate action. In the case that the release is revoked, this action could include assessment of a penalty in the nature of further time which the inmate must serve before again being considered by the Board for release.

For offenders under post-release supervision, the Board is limited in the length of time it can order offenders to serve on a condition violation. For these offenders, depending on when their original conviction occurred, the Board may only revoke for up to 90 days or for 180 days. The exception to these limits is if the violation results from a conviction for a new felony or misdemeanor.  Prior to July 1, 2013, upon revocation for a new felony conviction the inmate was required to serve the entire remaining balance of the period of post-release supervision even if the new conviction did not result in the imposition of a new term of imprisonment.  As a result of FY2013 legislation that amended K.S.A. 75-5217 (c) the Board, beginning July 1, 2013, has the discretion to require an offender to serve a revocation period up to the date of sentence discharge when revocation is predicated on either a new felony or misdemeanor conviction.

**Waiver of Final Prisoner Review Board Hearing**

During the FY 1999 legislative session, K.S.A. 75-5217 (b) was amended to provide post-release supervision violators the option of waiving their final hearing before the Prisoner Review Board. Following arrest, an offender is served documents regarding the pending revocation and has the option to admit guilt and sign a waiver of their right to a hearing before the Board. In doing so, the revocation process for the offender begins at that point, and the revocation period of either 90 or 180 days begins immediately, rather than after the offender appears in person before the Board at a revocation hearing. Offenders who have been granted a parole release are not eligible to waive their final hearing before the Board.

**Discharge from Supervision**

An inmate under the indeterminate release system can be maintained on supervision up to the expiration of his/her maximum sentence. There is a minimum requirement of one year of supervision before discharge may be requested. This action may be initiated by the offender's supervising Parole Officer, the Prisoner Review Board or the offender. A poor performance under supervision could result in causing the inmate to remain under supervision for a longer period of time than one or two years. If an inmate's adjustment has been satisfactory, the Parole Officer may submit a written report, summarizing the offender's conduct while under supervision, which outlines for the Board issues such as employment, compliance with conditions and law enforcement contact. The Request for Discharge must be accompanied by an approval by the Parole Officer's supervisor and is then considered by the Board. Without regard to his/her conduct, an inmate must be released from supervision at the maximum sentence expiration date in the absence of an early discharge.

During the FY 2013 legislative session, K.S.A. 22-3717 (d) (2) was amended to allow offenders serving 12, 24 or 36 months of post release supervision to petition the Board for early discharge if they have paid court ordered restitution.

**Maximum Release**

In the event an inmate under the indeterminate release system has had his/her Conditional Release revoked and/or serves to the maximum, he/she shall be released from prison at that time as the offender's sentence has been satisfied. The Board has no authority to set any conditions upon the release or to have any control over the offender's conduct. The Department of Corrections, similarly, cannot provide any supervision. Once an offender reaches his/her maximum date the offender's obligation to the State has been satisfied and the Board records this with the issuance of a maximum sentence discharge certificate.

**Executive Clemency**

Executive Clemency is an extraordinary method of relief and is not regarded as a substitute for parole. An inmate who believes that he/she has a deserving case for executive clemency may request the necessary applications from institutional staff. Once completed by the inmate, these forms are submitted to the Board, along with the inmate's reasons for applying for clemency. As required by law, a notice of the inmate's application is forwarded to the official county newspaper in the area of conviction so that interested parties may offer comments. In the event the inmate does not have sufficient funds for the cost of this publication, the Department of Corrections bears the cost. Comments are solicited from the sentencing judge and the prosecuting attorney. After the formalities have been accomplished, the Board conducts a file review to determine if a personal interview with the inmate is warranted. After reviewing the file, and conducting a hearing (if needed), the Board then submits a recommendation to the Pardon Attorney in the Governor's office for the Governor's final action.

## Public Comment Sessions

by CJ Perez — last modified Jul 09, 2024 11:28 AM
Each month, the Prisoner Review Board offers multiple forums through which the general public, public officials, victims, and family or friends of an offender can comment either in support or opposition of parole suitability one month prior to an offender's parole hearing.

Read More…

## IMPP 23-101A Prisoner Review Board Applying for Clemency

by Nancy Burghart — last modified Aug 28, 2023 12:22 PM

Read More…

## Clemency

by CJ Perez — last modified Aug 28, 2023 09:42 AM
Instructions and application materials

Executive Clemency is an extraordinary method of relief and is not regarded as a substitute for parole. An offender who believes that he/she has a deserving case for executive clemency may submit an application to the Prisoner Review Board, following the outlined procedure and policy. Following a thorough case review and possibly an interview, the Prisoner Review Board will submit a recommendation to the Pardon Attorney in the Governor's office for the Governor's final action.

- If an attorney is retained for clemency purposes, the attorney must submit the **Attorney Affidavit** called for in K.S.A. 22-3706.

- When complete, send all documents to the Prisoner Review Board at:

    Kansas Department of Corrections
    ATTN: Prisoner Review Board
    714 SW Jackson, Suite 300
    Topeka, Kansas 66603

- The Prisoner Review Board will examine all pertinent records, reports and other available information. Should a personal interview with the applicant be required, the Board will notify the applicant. Upon full review, the Board will submit a report along with all information received to the Governor. The applicant will be notified when the Governor renders a decision via letter.

**CLEMENCY APPLICATIONS**

| Fiscal Year | Received by the PRB | Recommended Favorably by the PRB |
|---|---|---|

| 2015 | 3 | 0 |
|------|---|---|
| 2016 | 30 | 0 |
| 2017 | 16 | 5 |
| 2018 | 35 | 3 |

## Midwest Innocence Project

by Nancy Burghart — last modified Aug 28, 2023 12:57 PM

Who They Are - (Per the MIP home page-see attached link below) "We represent individuals convicted of crimes they did not commit, work to bring them home, support them upon re-entry, and change the system to prevent wrongful convictions in the first place. We are an independent innocence organization that is a part of the national Innocence Network. Our partnerships with law firms, law schools, and volunteers allow us to provide the very best representation at no cost to innocent people within our region." *MIP Only Accepts Cases in which the Applicant: - Is claiming actual innocence, in other words, that he/she did not participate in the crime - Was convicted in Missouri, Kansas, Iowa, Nebraska or Arkansas - Is currently incarcerated and has more than 10 years left to serve on his/her sentence - Has exhausted their appeals and is not currently represented by an attorney **Please note that the Kansas Prisoner Review Board is not affiliated with the Midwest Innocence Project. This information is being provided as an additional resource to assist in the clemency process when applicable.

Link to the Midwest Innocence Project  https://themip.org/

## Procedure for Completing a Clemency Application

by CJ Perez — last modified Aug 25, 2023 01:29 PM
Step-by-step instructions for offenders and/or staff on how to submit an application for executive clemency.

The link address is: https://ekdoc.doc.ks.gov/pb/clemency-1/procedures-for-completing-a-clemency-application/at_download/file

## Clemency Forms

by CJ Perez — last modified Aug 25, 2023 01:28 PM

Read More…

## PRB Members

by cherylca — last modified Jan 05, 2016 09:57 AM

Read More…

## Contact us

by CJ Perez — last modified Aug 07, 2020 05:08 PM



**The Prisoner Review Board is located at:**

**Kansas Department of Corrections
ATTN: Prisoner Review Board
714 SW Jackson, Suite 300
Topeka, KS 66603**

**Phone: (785) 746-7516
E-mail: KDOC_PRB_Public_Comment@ks.gov**

## Kansas Parole Board

by David Cook — last modified Dec 08, 2020 02:11 PM
Public Comments on Parole Board Hearings

August 2024 Schedule of Public Comment Sessions — by CJ Perez — last modified Jul 09, 2024 11:31 AM

The August 2024 public comment sessions will be conducted using a Zoom Webinar platform. Please note that there will only be one session offered in August, which will be held on August 7, 2024. Those interested in attending or submitting correspondence to the Board may do so by registering and joining the scheduled Zoom webinar and/or by mailing written comments to the PRB address included in the information below. Please utilize the Public Comment Forms in support or opposition in regard to offenders included on the September docket. Please mail to the address provided below by no later than Friday, August 30, 2024. E-mail correspondence may be directed to KDOC_PRB_Public_Comment@ks.gov

August 2024 Public Comment Offender List — by CJ Perez — last modified Jul 03, 2024 11:22 AM

The following list of offenders are scheduled for parole hearings with the Prisoner Review Board during the month of September 2024. These offenders may become eligible for parole in October 2024.

August 7, 2024 Public Comment Session Zoom Link — by CJ Perez — last modified Jul 03, 2024 11:21 AM

June 2024 Schedule of Public Comment Sessions — by C.J. Perez — last modified May 23, 2024 10:52 AM

The June 2024 Public Comment Sessions will be conducted using a Zoom Webinar platform. Sessions will be offered on June 6th and June 18th, 2024. Please be advised that the Prisoner Review Board will be accepting comments for offenders with hearings scheduled in July and August 2024. Those interested in attending or submitting correspondence to the Board may do so by registering and joining the scheduled Zoom Webinar and/or by mailing written comments to the PRB address included in the information below. Please utilize the Public Comment Forms in support or opposition in regard to offenders included on the offenders list for the upcoming June public comment session. Please mail correspondence to the address provided below by no later than Friday, June 28th for those included on the July PE list below and by Friday, July 26th for those listed on the August PE list. E-mail correspondence may be directed to KDOC_PRB_Public_Comment@ks.gov

June 2024 Public Comment Offender List — by CJ Perez — last modified May 23, 2024 10:40 AM

The following list of offenders are scheduled for parole hearings with the Prisoner Review Board during the months of July and August 2024. These offenders may become eligible for parole in August or September 2024.

Overview and Instructions for Written Comments — by CJ Perez — last modified Aug 03, 2020 04:31 PM

Public Comments Form - Support Release — by adamp — last modified Oct 03, 2014 03:02 PM

Public Comments Form - Oppose Release — by adamp — last modified Oct 03, 2014 03:02 PM

# October 2020 Public Comment Session Zoom Link

by Nancy Burghart — last modified May 23, 2023 03:29 PM

The link address is: https://kdoc.zoom.us/webinar/register/WN_s1tf6i0MTEaRt11O6QbXIg

# January 2021 Zoom

by Nancy Burghart — last modified May 23, 2023 03:30 PM

The link address is: https://kdoc.zoom.us/webinar/register/WN_kCbzsswiR-iqE9UfoDCHVw%20

# Jan. 6 Public Comment Session

by Nancy Burghart — last modified May 23, 2023 03:31 PM

The link address is: https://kdoc.zoom.us/webinar/register/WN_kCbzsswiR-iqE9UfoDCHVw