**Exhibit K**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**SASHADA MAKTHEPHARAK,**

**Plaintiff,**

**v.** **Case No. 23-2121-DDC-RES**

**LAURA KELLY,** ***et al.*****,**

**Defendants.**

**DECLARATION OF MELISSA WALDOCK**

I, Melissa Waldock, being of lawful age, make the following declaration pursuant to 28 U.S.C. § 1746 relating to the captioned matter based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment.

1. I have served as a Classification Director for the Kansas Department of Corrections (KDOC) since July 2018.

2. My duties include serving as a subject-matter expert regarding custody classification, overseeing the facility classification administrators, overseeing sentence computation (including ensuring the accuracy of time spent in custody, good-time credits, and all technical aspects of the computation), and overseeing population management.

3. Population management means tracking and assigning bed space at the appropriate classification levels and in appropriate facilities for all inmates in the custody of KDOC.

4. I report to the Deputy Secretary of Facilities Management.

5. I have worked for KDOC for nineteen years.

6. I began employment at the Lansing Correctional Facility (LCF) as a Corrections Counselor I on February 7, 2005, and remained there in different capacities, ultimately promoting to Classification Administrator for LCF on February 2, 2014. I remained in that position until I moved to Central Office on July 1, 2018, and promoted to my current position.

**Custody Classification Manual**

7. KDOC currently uses the Custody Classification Manual for Men, revised March 2024, which is located at: https://www.doc.ks.gov/publications/kdoc-facilities-management.

8. Sub-Exhibit 1, attached, contains fair and accurate copies of all versions of the custody classification manual used by the Kansas Department of Corrections for male inmates from April 2008 until the current version in March 2024.

9. The Kansas Department of Corrections has followed and continues to follow the custody classification manual to determine the custody classification for each male inmate in KDOC's custody. A separate manual is currently used for female inmates.

10. Although the classification scheme uses a score-based system as a baseline, it includes some non-point-based items described in the section titled "Non-Point-Based Items." Custody Classification Manual for Men, 24-25.

11. For purposes of the non-point-based items, the phrase "years to serve to projected release" is interpreted for offenders serving indeterminate sentences to mean the years to serve until "the earliest of the following dates – PE (Parole Eligibility), CR

(Conditional Release), or SDD (Sentence Discharge Date)." Custody Classification Manual for Men, 24-25.

12. The March 2016 version of the manual had added the following similar language on page 29: "For inmates serving an indeterminate sentence use the earliest of the following dates: PE, CR, or SDD to determine if 10.13 or 10.14 are applicable."

13. This sentence was added in the March 2016 version because there was confusion as to which date to use and facilities were utilizing different dates. This sentence helped make it consistent from facility to facility.

14. Based on how inmates such as Sashada Makthepharak (#73697) were classified at Hutchinson Correctional Facility (HCF) from 2008 to 2016, HCF's existing practice from 2008 to 2016 matched this sentence added in 2016.

**Restrictive Housing**

15. As part of my official duties, I have access to and am familiar with KDOC's policies and practices regarding restrictive housing (RH) (also known as segregation).

16. Inmates can be placed in RH for reasons including disciplinary segregation (which must be limited in duration), protective custody, active investigation, other security risk, and consistent bad behavior.

17. RH units at KDOC facilities limit interactions of RH residents with other individuals primarily to prevent violence and contraband.

18. The phrase "Special Management" generally refers to RH. It can also refer to a crisis-level placement, such as when an inmate poses a heightened risk of self-harm.

19. Because of the heightened risks associated with RH residents, they must be handcuffed when transported. They use caged showers, have caged yard time, and must be in chair restraints when in any classes.

**Disciplinary Reports**

20. Disciplinary reports (DR's) penalize an inmate for breaking a rule in a correctional facility.

21. DR's come in three classes of offenses:

    a. Class 1 offenses are designated as "very serious in nature."

    b. Class 2 offenses are designated as "of moderate seriousness."

    c. Class 3 offenses are designated as "of a less serious nature."

**Possession of an Unauthorized Communication Device**

22. Inmates are not allowed unmonitored contact with persons outside the correctional facility.

23. Contraband cell phones and other contraband communication devices pose a major risk to the safety and security of correctional facilities and even to the safety of persons outside of correctional facilities.

24. Inmates frequently use cell phones to threaten and intimidate witnesses, organize criminal gang activity, coordinate smuggling into a correctional facility, or coordinate escape attempts.

25. In addition, inmates may fight over the coveted devices.

26. All of these dangers have led to possession of these devices being classified as a Class 1 aggressive disciplinary violation.

**Sashada Makthepharak**

27. Sashada Makthepharak (#73697) is serving an indeterminate life sentence.

28. He has been classified as "Medium-Low" (same as "Low-Medium") custody while serving his current sentence.

29. The meaning of Medium-Low has stayed substantially the same since at least April 2008.

30. Makthepharak has not been barred from moving to Minimum security, although it would require a recommendation from the KPRB. Custody Classification Manual for Men, 25 (non-point-based item 10.14).

31. For purposes of the institutional-adjustment category for custody-classification scoring:

    a. When determining whether a DR occurred within one year, the full date is compared.

    b. When determining whether a DR occurred within multiple years, only the calendar year is compared.

    c. When determining whether a DR occurred within a certain span of time from a regular, annual reclassification date, the reclassification date is treated as if it is in the following month.

32. As a result of Makthepharak's annual reclassification, he was reclassified as Medium-Low from December 15, 2009, to June 3, 2010, due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 0 |
| 7 – Current Age | 2 |
| 8 – Incentive Level | -1 |
| 9 – Scoring Point-Based Items | 11 – Medium Low |
| 10 – Non-Point Based Items | None |
| 11 – Special Management Needs | No |
| 12 – Custody | Medium Low |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Medium Low |

33. Later, Makthepharak was classified as Medium-Low from April 17, 2013, to February 10, 2014, due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 0 |
| 7 – Current Age | 2 |
| 8 – Incentive Level | -1 |
| 9 – Scoring Point-Based Items | 11 – Medium Low |
| 10 – Non-Point Based Items | None |
| 11 – Special Management Needs | No |
| 12 – Custody | Medium Low |
| 13 – Condition Violators | No |

| 14 – Exception | No |
|---|---|
| 15 – Facility Custody | Medium Low |

34. After being on special management status for a day, Makthepharak was again classified as Medium-Low from February 11, 2014, to July 9, 2014, due to the same scoring breakdown as previously applied (or substantially similar).

35. In 2014, Makthepharak was found guilty on a Class 1 DR from July 9, 2014, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

36. From July 9, 2014, to August 29, 2014, Makthepharak was placed in RH for reasons related to that DR.

37. At or around this time, Makthepharak became considered by KDOC to be an active and validated security threat group (STG) member in accordance with KDOC policies on identifying and managing STG's.

38. From August 29, 2014, to September 2014, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 11 *(increased from previous)* |
| 7 – Current Age | 2 |
| 8 – Incentive Level | 0 *(increased from previous)* |
| 9 – Scoring Point-Based Items | 23 → 18 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) *(new)* |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |

| | |
|---|---|
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

39. In 2014, Makthepharak was found guilty on a Class 1 DR from September 8, 2014, for Theft (K.A.R. 44-12-203).

40. From September 2014, to September 21, 2015, Makthepharak continued to be classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 *(increased from previous)* → 11 *(changed during this period)* → 6 *(changed again during this period)* |
| 7 – Current Age | 2 |
| 8 – Incentive Level | 0 *(increased from previous)* |
| 9 – Scoring Point-Based Items | 29 → 23 → 18 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

41. In 2014, Makthepharak was found guilty on a Class 2 DR from October 6, 2014, for Violating a Restricted Area (K.A.R. 44-12-503(a)).

42. In 2015, Makthepharak was found guilty on a Class 1 DR from September 20, 2015, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

43. From September 21, 2015, to November 4, 2015, Makthepharak was placed in RH for reasons related to that DR.

44. From November 4, 2015, to December 28, 2015, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 11 *(increased)* |
| 7 – Current Age | 2 → 1 *(changed during this period)* |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 23 → 22 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

45. After being placed on special management status for a day, Makthepharak was again classified as Maximum from December 29, 2015, to February 4, 2016, due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 11 |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |

| | |
|---|---|
| 9 – Scoring Point-Based Items | 22 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

46. In 2016, Makthepharak was found guilty on a Class 1 DR from February 3, 2016, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

47. From February 4, 2016, to March 4, 2016, Makthepharak was placed in RH for reasons related to that DR.

48. The custody classification manual was updated on March 1, 2016, although this updated version was mislabeled as a draft. The updates did not change the custody-classification scoring for Makthepharak.

49. From March 4, 2016, to March 6, 2017, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 *(increased from previous)* → 11 *(changed during this period)* → 6 *(changed again during this period)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 28 → 22 → 17 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |

| 12 – Custody | Maximum |
|---|---|
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

50. The custody classification manual was updated on September 6, 2016. The updates did not change the custody-classification scoring for Makthepharak.

51. On March 7, 2017, Makthepharak was found guilty on Class 1 DR's from March 5, 2017, for a Felony Crime (K.A.R. 44-12-1001(a)), Dangerous Contraband (K.A.R. 44-12-901), and Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

52. Sub-Exhibit 2, attached, is a fair and accurate copy of the DR records for those DR's.

53. From March 6, 2017, to April 19, 2017, Makthepharak was placed in RH for reasons related to those DR's.

54. The DR for a Felony Crime was for Trafficking Contraband in violation of K.S.A. 21-5914 for trafficking a cell phone.

55. From April 19, 2017, to December 3, 2018, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 *(increased from previous)* → 6 *(changed during this period)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |

| | |
|---|---|
| 9 – Scoring Point-Based Items | 28 → 17 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

56. In 2017, Makthepharak was found guilty on a Class 2 DR from December 15, 2017, for Misuse of State Property (K.A.R. 44-12-208).

57. After being placed on special management status for a day in December 2018, Makthepharak was again classified as Maximum from December 4, 2018, to February 25, 2019, due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 6 |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 17 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

58. On March 7, 2019, Makthepharak was found guilty on a Class 1 DR from February 25, 2019, for Dangerous Contraband (K.A.R. 44-12-901).

59. Sub-Exhibit 3, attached, is a fair and accurate copy of the DR records for that DR.

60. From February 25, 2019, to March 18, 2019, Makthepharak was placed in RH for reasons related to that DR.

61. From March 18, 2019, to June 5, 2019, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 11 *(increased)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 22 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

62. On June 5, 2019, Makthepharak was found guilty on a Class 1 DR from May 25, 2019, for Interference with Cell Operation and Visibility (K.A.R. 44-12-504).

63. On June 5, 2019, Makthepharak was also found guilty on a Class 1 DR from May 25, 2019, for Dangerous Contraband (K.A.R. 44-12-901).

64. Sub-Exhibit 4, attached, is a fair and accurate copy of the DR records for both of these May 25, 2019, DR's.

65. From June 5, 2019, to July 5, 2019, Makthepharak was placed in RH for reasons related to these May 25, 2019, DR's.

66. From July 5, 2019, to March 12, 2020, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 *(increased)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 28 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

67. On January 8, 2020, Makthepharak was found guilty on a Class 2 DR from December 24, 2019, for Violating a Restricted Area (K.A.R. 44-12-503(a).)

68. Sub-Exhibit 5, attached, is a fair and accurate copy of the DR records for that DR.

69. On March 12, 2020, Makthepharak was found guilty on a Class 1 DR from March 7, 2020, for Interference with Cell Operation and Visibility (K.A.R. 44-12-504).

70. Sub-Exhibit 6, attached, is a fair and accurate copy of the DR records for that DR.

71. From March 12, 2020, to November 12, 2020, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |

| | |
|---|---|
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 → 11 *(changed during this period)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 28 → 22 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

72. On November 12, 2020, Makthepharak was found guilty on a Class 1 DR from November 2, 2020, for Dangerous Contraband (K.A.R. 44-12-901).

73. Sub-Exhibit 7, attached, is a fair and accurate copy of the DR records for that DR.

74. From November 12, 2020, to September 27, 2021, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 17 *(increased from previous)* → 11 *(changed during this period)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 28 → 22 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |

| 15 – Facility Custody | Maximum |
|---|---|

75. On October 6, 2021, Makthepharak was found guilty on a Class 1 DR from September 27, 2021, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

76. Sub-Exhibit 8, attached, is a fair and accurate copy of the DR records for that DR.

77. The DR records for that DR include an outgoing letter by Makthepharak from October 3, 2021. This letter was screened and scanned in by security as part of regular screening practices for inmates' incoming and outgoing mail.

78. From September 27, 2021, to October 4, 2021, Makthepharak was placed in RH for reasons related to that DR.

79. From October 4, 2021, to February 27, 2023, Makthepharak was classified as Maximum custody due to the following scoring breakdown (or substantially similar):

| **Item** | **Score** |
|---|---|
| 1 – Most Serious Current Offense | 6 |
| 2 – Time Remaining to Serve | 3 |
| 3 – Severity of Prior Convictions | 1 |
| 4 – Escape History | 0 |
| 5 – Escape Characteristics | 0 |
| 6 – Institutional Adjustment | 11 → 6 *(changed during this period)* |
| 7 – Current Age | 1 |
| 8 – Incentive Level | 0 |
| 9 – Scoring Point-Based Items | 22 → 17 – Maximum |
| 10 – Non-Point Based Items | 10.4 (validated STG member) |
| 11 – Special Management Needs | No |
| 12 – Custody | Maximum |
| 13 – Condition Violators | No |
| 14 – Exception | No |
| 15 – Facility Custody | Maximum |

80. In February 2023, the custody classification manual was significantly updated, and on or around February 27, 2023, Makthepharak's custody classification was reevaluated because of the new classification criteria. However, as a result of a calculation error, Makthepharak became classified as High-Medium custody from February 27, 2023, through May 15, 2023. The correct scoring breakdown would have been as follows:

| Item | Score |
|---|---|
| II.B.1 – Most Serious Current Conviction | 6 |
| 2 – Escape History and Characteristics | 0 |
| 3 – Severity of Prior Convictions | 0 |
| 4 – Current Age | 1 |
| 5 – Institutional Adjustment | 6 |
| 6 – Time Remaining to Serve | n/a |
| C – Point-Based Custody Level | 13  – Low-Medium |
| III – Non-Point Based Items | 10.14 (indeterminate life sentence) |
| IV.A – Special Management Needs | No |
| B – Assigned Custody Level | Low-Medium |
| V – Condition Violators | No |
| VI – Exception | No |
| VII – Facility Custody | Low-Medium |

81. From May 15, 2023, to May 19, 2023, Makthepharak was placed in RH due to a then-pending DR for fighting, but he was released from RH after he was found not guilty on that DR. At or around this time, the calculation error in Makthepharak's custody classification was discovered.

82. From May 19, 2023, to August 30, 2023, Makthepharak was classified as Low-Medium custody due to the following scoring breakdown (or substantially similar):

| Item | Score |
|---|---|
| II.B.1 – Most Serious Current Conviction | 6 |

| | |
|---|---|
| 2 – Escape History and Characteristics | 0 |
| 3 – Severity of Prior Convictions | 0 |
| 4 – Current Age | 1 |
| 5 – Institutional Adjustment | 6 |
| 6 – Time Remaining to Serve | n/a |
| C – Point-Based Custody Level | 13 – Low-Medium |
| III – Non-Point Based Items | 10.14 (indeterminate life sentence) |
| IV.A – Special Management Needs | No |
| B – Assigned Custody Level | Low-Medium |
| V – Condition Violators | No |
| VI – Exception | No |
| VII – Facility Custody | Low-Medium |

83. On August 30, 2023, Makthepharak was found guilty on a Class 1 DR from August 26, 2023, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

84. Sub-Exhibit 9, attached, is a fair and accurate copy of the DR records for that DR.

85. From August 30, 2023, to March 2024, Makthepharak was classified as Low-Medium custody due to the same scoring breakdown as previously applied (or substantially similar).

86. In March 2024, the custody classification manual was updated, and Makthepharak was reevaluated based on the new current classification criteria. The updates did not change the custody-classification scoring for Makthepharak. So, as a result of that reevaluation, Makthepharak remained classified as Low-Medium custody from March 2024, through July 1, 2024, due to the same scoring breakdown as previously applied (or substantially similar).

87. On July 3, 2024, Makthepharak was found guilty on a Class 1 DR from July 1, 2024, for Possession of an Unauthorized Communication Device (K.A.R. 44-12-211(b)).

88. Sub-Exhibit 10, attached, is a fair and accurate copy of the DR records for that DR.

89. On July 1, 2024, Makthepharak was placed in disciplinary RH pending resolution of that DR.

90. Since at least July 25, 2024, Makthepharak has been in RH on "other security risk" (OSR) status after being found guilty on the DR from July 1, 2024, which showed ongoing problems with possession of contraband.

91. Sub-Exhibit 11, attached is a fair and accurate copy of an Administrative Restrictive Housing Report noting this reason for his current custody classification level.

92. Makthepharak remains considered by KDOC to be an active and validated STG member in accordance with KDOC policies on identifying and managing STG's.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2024.

Melissa Waldock
Classification Director
Kansas Department of Corrections



Sub-Exhibit 1

# CUSTODY CLASSIFICATION MANUAL FOR MEN

Issued November 1, 2005
Revised January 24, 2006
Revised March 19, 2007
Revised April 1, 2008
Revised March 1, 2016
Revised September 6, 2016
Revised February 2023

# Kansas Department of Corrections (KDOC) Classification System for Men

**Table of Contents**

| Section | Page |
|---|---|
| I. General Classification Information and Scoring Instructions for Custody Assessments | 4 |
| A. What is a custody classification? | 4 |
| B. When do we classify? | 4 |
| C. What kinds of assessment instruments are used? | 4 |
| D. Is compliance with the criteria mandatory? | 5 |
| E. Assessment of Condition Violators | 5 |
| F. Classifying within the Criteria and Exceptions | 6 |
| Classifying within the Criteria | 6 |
| Classifying Outside the Criteria -- Classification Exceptions | 6 |
| Types of Classification Exceptions | 7 |
| Need for Objective Documentation | 8 |
| Revision Dates | 9 |
| Active and Inactive Sentences | 9 |
| G. Types of Custody Assessments | 9 |
| II. Specific Coding and Scoring Instructions for each Custody Item | 12 |
| A. Identifying Information | 12 |
| B. Risk Factor Scoring | 12 |
| Item 1: Most serious current offense | 12 |
| Item 2: Time remaining to serve | 15 |
| Item 3: Severity of prior convictions | 16 |
| Item 4: Escape history and characteristics | 18 |
| Item 5: Institutional adjustment | 21 |
| Item 6: Current age | 22 |
| C. Point-Based Custody Level | 23 |
| III. Non-Point Based Items | 24 |
| IV. Special Management Needs | 26 |
| A. Segregation Needs | 26 |
| B. Assigned Custody Level | 28 |
| V. Condition Violators and Prison Sanctions from Probation | 28 |
| VI. Classification Exception Request | 29 |
| VII. Facility Custody / Next Custody Due | 31 |
| Attachments | |
| A. Custody Assessment Instruments | 32 |
| B: Classification Exception Form | 36 |
| C: Offense Severity Table | 37 |
| D: Disciplinary Infraction Table | 39 |

# I. General Classification Information and Scoring Instructions for Custody Assessments

## A. What is a custody classification?

A custody classification assesses the risk an individual presents to self, other residents, staff, and the community based upon a standard set of objective criteria.

This gender-specific classification system was developed to promote public safety and institutional order. This manual provides the instructions for completing custody assessments for men in the custody of the KDOC and guidelines to ensure their placement in the least restrictive level of supervision according to their assessed risks.

## B. When do we classify?

Each individual receives a custody assessment at:

- reception;
- admission as a conditions violator;
- regularly scheduled intervals (180-day or annual) following admission; and
- unscheduled events occur that trigger a reassessment.

## C. What kinds of assessment instruments are used?

The KDOC custody classification system utilizes gender-specific initial classification and reclassification instruments comprised of objective point-based and non-point-based risk criteria. (See Attachment A for the classification instruments for men in the custody of the KDOC.

The point-based classification criteria include:

- Most serious current offense
- Length of time remaining to serve
- Escape history
- Severity of prior convictions
- Institutional adjustment
- Current age

The non-point-based items include:

- Participation in sex offender treatment
- Time remaining to serve
- Detainers
- Pending disciplinary issues
- Civil commitment issues
- Special needs (protective custody, segregation, etc.)

**D. Is Compliance With The Criteria Mandatory?**

**Yes.** Compliance with the scoring criteria for each risk item is mandatory. However, if the criteria do not accurately reflect the level or types of risks presented by the individual, when supported by objective documentation, an exception may raise or lower the scored custody level. Documentation of an exception should include the mitigating or aggravating factors that support the exception request. A custody exception must be submitted via an exception form to the Deputy Secretary of Facilities Management or designee for review and approval.

**E. Assessment Of Condition Violators**

Custody Assessments for Condition Violators shall be scored on the reclassification instrument. Pursuant to KSA 75-5210, if a man is within 90-days of his scheduled release, there is a presumption of minimum custody status if he was returned to prison for the violating conditions of post-release supervision (PRS) if the violation did not involve a new criminal conviction and/or the custody level immediately prior to the most recent release from prison was not maximum custody or special management. This presumption applies only to the first custody assessment upon return to prison; this custody level may be overridden by any enhancement factors as per policies adopted by the Secretary of Corrections. Condition Violators who have Lifetime Post-Release shall be scored as an indeterminate LIFE sentence unless otherwise noted in this manual.

**F. Classifying Within and Outside the Custody Criteria**

- **Classifying Within the Criteria**

The custody criteria are designed to stratify the population into manageable groups according to the individuals' actual threats to institutional safety and security. In the development of the criteria schema, consider two questions. The first is, "What objective criteria are required to accurately assess the risk that the man presents to the system?" The second is, "What is the weight or contribution of each factor to the risk assessment?" For most men, it is the interaction among and combination of factors that determines their level of risk. For these criteria, points are assigning according to their relative contributions to the risk assessment. In other instances, criteria considerations do not fit well within the point-based scheme. To ensure that these criteria are not overlooked while simultaneously providing that they do not over-estimate the individual's risk, these criteria are established as non-point-based items and are applied only in the circumstances in which they become a risk factor.

- **Classifying Outside The Criteria -- Classification Exceptions**

As with any systemized decisions, there are three possible outcomes:

1) Agree with the decision indicated by the system -- No special action is required for this outcome. The Point-Based Custody Level determines the custody level. If the custody level indicated by the assessment instrument accurately reflects the level of risk presented by the individual, the staff person completes the classification and assigns the individual to the custody level indicated by the total points scored for the point-based risk factors.

2) Recommend a lesser degree of control than indicated by the system -- If the individual does not appear to require the level of management indicated by the custody assessment instrument, the classification staff has the option to recommend a reduction in the custody level indicated by the point-based risk factors. Submit all exceptions for a custody reduction to the Deputy Secretary of Facilities Management or designee for review and approval using the Classification by Exception form (Attachment B).

3) Recommend a higher degree of control than indicated by the system -- If the individual appears to require a greater level of management than indicated by the custody assessment instrument, the classification staff has the option to recommend for a higher custody level than that indicated by the point-based risk factors. Submit any exception for an more restrictive custody level to the Deputy Secretary of Facilities Management or designee for review and approval using the Classification by Exception form (Attachment B). The facility may temporarily classify the individual to a more restrictive security level pending approval by the Deputy Secretary.

- **Types of Classification Exceptions**

1) **Reentry Custody Review and Recommendation**: At the individual's regular custody review within 12 to 24 months prior to the scheduled release, submit a request for a classification exception if the custody level is greater than minimum custody solely due to the application of the point-based reclassification items 1, 3, 5, or 6. Complete a Classification by Exception form (Attachment B) to indicate either support for or opposition to a less-restrictive custody level based upon the individual's institutional record, LSI-R score, applicable treatment summaries, etc. An exception form is not required if the point-based item score for Escape History & Characteristics or Institutional Adjustment is greater than zero (0) or if any non-point-based or special management item is scored as "Yes."

   Item 5.a. on the Classification Exception form shall be coded as follows: [X] Reentry – the individual is within two years of release.

2) **Prison Review Board (PRB) Recommendation:** Upon receipt of a recommendation by PRB for the individual's placement in a program not available at his current custody level, the counselor shall prepare a classification review indicating support for or opposition to a less-restrictive custody level based upon the individual's institutional record, LSI-R level, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B).

   Item 5.b. on the Classification Exception form shall be coded as follows: [X] PRB Recommendation. Provide the PRB recommendations and decision date in the space provided.

3) **Request for assignment of an active validated member of an unsanctioned** prison group (STG) to higher or lower custody: Using the Classification by Exception form (Attachment B), provide documentation that the EAI (Enforcement, Apprehensions, and Investigations Unit) has designated the individual an "Active Validated STG member" and the individual requires greater supervision than that indicated by his point-based item score. STG members who are not active or have renounced their affiliations should not be recommended for a custody exception based on their STG status.

   Item 5.c. on the Classification Exception form shall be coded as follows: [X] Active validated gang member.

4) **General Security/Case Management Recommendation:** All requests for exceptions to the custody classification indicated on the initial assessment or reassessment not included above.

   Item 5.d. on the Classification Exception form shall be coded as follows: [X] General Security/Case Management. Indicate whether the recommendation is for a more or less restrictive custody level by placing an X in the appropriate box.

- **Need for Objective Documentation**

A major premise of this classification system is that the score for each criterion is supported by appropriate documentation. This means that appropriately documented official criminal justice system records should be used. This also means that KDOC personnel must base judgments about the individual's behavior(s) on appropriately documented professional diagnosis or staff observations. This requirement of written documentation is essential to support and confirm the application of the objective classification criteria.

- **Revision Dates**

Some items of the classification criteria are time-limited. That is, there are dates after which the item, as coded, becomes invalid and requires revision. Such revision, however, may or may not result in an actual custody change. The significance of revision dates is explained in the discussion of non-routine reclassification below.

- **Active and Inactive Sentences**

The point and non-point-based items consider both the severity and sentence of the current and prior convictions. Scoring the individual's criminal record is dependent on whether the conviction or sentence is active defined as:

  - **Active Sentence/Conviction**: A sentence currently being served, must be served before eligibility for release, or for which the individual is serving a post-incarceration violation. An indeterminate sentence of LIFE, LIFETIME post-release, or having a maximum term of LIFE, an indeterminate sentence is scored as active.

  - **Inactive Sentence/Conviction**: A sentence that has been satisfied in full, including both the prison portion and any post-incarceration supervision associated with the case.

**G. Types of Custody Assessments**

1) **Initial classification:** The classification committee completes the initial custody assessment. For those referred to the Reception and Diagnostic Unit for evaluation, the initial classification will take place upon completion of the assessment but prior to transfer to another institution. Create an Initial Classification Record for individuals whose admission type is coded as a New Court Commit (NCC), Probation Violator - New Sentence (PB-NS), Probation Violator – No New Sentence (PB-NNS), Probation Violator – New Conviction (PB-NC), for an in-absentia or corrections compact case that does not have a current custody classification, or if a new sentence is received after completion of the initial custody assessment.

   An initial classification instrument must also be completed if the individual was:
   1) Returned from court with a new sentence; or
   2) Released to a detainer by the PRB upon reaching his guidelines release date, conditional release date, or maximum sentence expiration date but was returned to prison with a new sentence.

Except as provided below, consider all active convictions when scoring the most serious active offense (Item 1) and not as a prior conviction (Item 4).

- Except as provided in the scoring instructions for Item 1, do not count convictions for which the prison portion has been satisfied in Item 1.

- With limited exceptions, LIFE sentences or sentences with a maximum term of LIFE remain active even upon the individual's parole or release. Therefore, convictions carrying a LIFE sentence must be scored as the Most Serious Active Offense (Item 1).

Any unscheduled classification occurring subsequent to the initial classification but prior to the first regularly scheduled reclassification shall be scored using the initial classification criteria. It is essential to compute the "next custody" date correctly. For unscheduled initial custody assessments, the review date is the first regularly scheduled reclassification date, <u>not</u> the review code for assessing the point-based items.

An initial classification shall be completed using the KDOC gender-specific Initial Classification Instrument according to the facility to which the individual is assigned.

2) **Reclassification**: A custody reclassification is any regularly scheduled classification action that occurs after the initial classification (including a condition violator admission). There are two types of custody reclassifications: (a) regular or routine and (b) unscheduled.

**(a) Regular or Routine:** For all individuals, reclassifications shall occur at scheduled intervals using the KDOC gender-specific reclassification instrument according to the facility to which the individual is assigned.

- **180-day classification review:** Schedule the first regular custody review six months/180 days from the date the classification committee completes the initial custody assessment.

- **Annual classification cycle:** Schedule the next custody assessment 12 months from the completion date of any subsequent custody re-assessment.

**(b) Unscheduled:** Unscheduled reclassifications shall occur if:

- A risk factor revision date changes or expires;
- The score for a point-based item changes;
- An individual's status for a non-point-based item changes; or

- o New information applicable to any of the point- or non-point-based items is received.

A custody classification must be reviewed and updated regardless of whether the unscheduled event adds or subtracts custody points, identifies new system risk factors, or does not change the individual's custody level. A non-routine reclassification may or may not revise the custody assignment. For example, the addition of a single point may change the custody level if the original total point score was borderline between custody levels. On the other hand, adjustment of the total point scores within the mid-range of the scale would not change the custody level. However, if the total points score is not current, the cumulative impact of several instances of adding a single point may go unnoticed.

Item revision dates will result in a reclassification only when the point deduction or accumulation of point deductions is sufficient to reduce an individual's custody level.

3) **Special Management Status Reviews:** Individuals in need of enhanced supervision may be assigned to special management status for one or more reasons. If the reason(s) for assigning an individual to special management change (e.g., from pre-hearing detention to protective custody), rather than recreate an entire classification record to document a special management status change, the counselor may create a "Change in Special Management Status" record. Only the reason(s) for the special management assignment can be modified when such an option is selected.

## II.  Specific Coding and Scoring Instructions For Each Custody Item

### A.  Identifying Information

Provide the following information in the spaces provided:

- **KDOC #:** Enter the individual's seven-digit number.
  - Include any necessary preceding zeros.

- **Name:** Enter the first three letters of the individual's last name.

- **Type of Assessment:**
  - Initial
  - Reclassification
    - Regular or Unscheduled
  - Special Management Status Change/Review

- Date of Assessment – Actual date (mo/day/yyyy) this custody assessment is initiated.

## B. Risk Factor Scoring

**Item 1: Most Serious Current Conviction**

For the custody assessments for men, score the item as:

| | Men | |
|---|---|---|
| Severity Level | Initial | Reclassification |
| Greatest | 9 | 6 |
| High | 8 | 5 |
| Moderate | 2 | 2 |
| Low | 1 | 1 |

**Intent of Item 1:**

Due to the potential ramifications of incidents involving individuals with serious convictions, the behavior involved in the current offense must be considered an important factor for setting the appropriate supervision level. Such consideration is essential if conviction involved death, personal injury, or threat of harm to the victim.

The statutory violation for which the individual was tried and convicted sometimes does not always reflect the severity of the offense. Thus, the staff member must review the description of the offense to identify any elements that suggest a need for more intensive supervision. If there are behaviors outside of the crime of conviction that warrant a higher level of supervision, request a custody exception.

**Scoring Instructions:**

The offenses are categorized according to their severity and threat to institutional safety. Except as indicated below**, score** the most serious active conviction regardless of when the crime occurred. Active convictions include all offenses for which the sentences are currently being served, must be served before eligibility for release, or for which the individual is serving a post-incarceration violation.

The severity of a crime is scored as Greatest, High, Moderate, or Low. See Attachment C for the Offense Severity Table.

Aiding and Abetting, Attempts or Solicitation, and Conspiracy shall be scored the same as the actual underlying offense.

Individuals returned to prison as post-release supervision (PRS) condition violators (determinate sentences) with no new sentence, who are not serving a LIFE sentence, shall have this item scored as Low severity.

An individual returned to prison as post-release supervision (PRS) violators with a new sentence, who are not serving a LIFE sentence, shall have the new sentence for which the individual was returned to prison coded as his current offense in accordance with Attachment C. The crime for which the individual was on post-release supervision becomes history; score the sentence, if applicable, in Item 3 – Prior Conviction Severity. Note: If the individual received probation on the new offense, score as a condition violator, i.e., low severity offense. Document the new conviction in the comments section of the custody assessment. Upon reviewing the official description of the offense and court record, if the new conviction indicates an increase in the level of risk, staff shall request an exception.

Individuals returned to prison as parole condition violators (indeterminate sentence) shall have the most serious active conviction coded in this section in accordance with Attachment C.

If a probation violator is admitted with a new sentence, to determine the most serious active offense for Item #1, consider the severity of the original offense for which the offender was sentenced to probation and the offense resulting in the probation violation.

Individuals serving indeterminate sentences who return to prison with a new indeterminate or determinate sentence shall have the most serious active conviction scored in this section. (Consider both the indeterminate or determinate sentence as active convictions.) If the most serious active conviction is associated with the indeterminate sentence, upon parole to the determinate sentence, the indeterminate sentence shall be treated as history, except as provided below. For example:

> Individual was incarcerated for an indeterminant sentence for robbery and determinant sentence for possession of controlled substance. Consider both convictions, i.e., the robbery is the most serious conviction. On his parole from the robbery to the drug-related charge, score the drug offense as the most serious conviction. The robbery becomes a prior conviction, if the conviction was within the last 15 years.

Individuals paroled from a LIFE sentence or a sentence with a maximum term of LIFE to a determinate sentence shall continue to have the LIFE sentence scored as a current conviction/sentence as long as the LIFE sentence is active.

If the individual is sentenced for a new conviction due to court action while in KDOC custody, a new custody record shall be created. The new record shall be coded as an Initial Classification. Consider all active sentences when scoring severity of the current conviction.

**Item 2: Escape History and Characteristics**

| Escape History and Characteristics | Initial | Reclassification |
|---|---|---|
| Any escape with special characteristic(s) | 8 | 8 |
| Secure less than 10 years | 6 | 6 |
| Non-secure less than 3 years | 4 | 4 |
| 2+ escapes from non-secure facilities less than 10 years | 2 | 2 |
| None | 0 | 0 |

**Intent of the Item:**

Previous escapes or attempted escapes may predict a tendency to repeat the behavior.

Convictions for an attempted escape or aiding and abetting an escape/attempted escape shall be treated the same as an escape.

The time period for considering an escape is based on the date of the most recent conviction either in court or through the disciplinary process. This item only applies to escapes from confinement, while under escort, or while in court. It does not include convictions for failure to appear. If the individual was under police escort or under police escort and out to court, score as an escape from a secure facility. If the individual was out on bond and walked or fled from the court, it is considered an escape from a non-secure facility.

If there is no conviction for a particular escape or an aggravated juvenile delinquency involving escape behaviors, either in court, by the disciplinary process, or by a revocation of probation for absconding from a community corrections facility (Johnson or Sedgwick County), then the item SHALL NOT apply. If, however, revocation from a community corrections facility was the direct result of absconding, score the behavior as an escape from a non-secure facility.

If other escape-related behaviors are documented for which there is no conviction, an exception shall be considered. Escape-related behaviors involving an arrest for which there was no conviction (plea bargains) shall be noted in the comment section of the assessment instrument even if an exception is not submitted.

**Scoring Instructions:**

Score the escape according to the type of facility from which the flight occurred and the conviction date for the escape behavior. Both felony and misdemeanor convictions resulting from an unauthorized absence from an adult or juvenile facility, jail, holding/detention facility, community corrections facility, conservation camp, or work release shall be considered an escape and scored for this item.

**Scoring multiple escape events**: The highest scoring event shall be scored until such time as it no longer applies. Subsequent custodies shall be scored using the multiple escape coding and shall expire ten (10) years from the date of the most recent escape conviction. If the multiple escapes include escape from a secure facility, score as six (6) points until the ten (10) years from the most recent secure facility escape expire. Likewise, if there was an escape from a non-secure facility, score as four (4) points until the three (3) years for the escape from the non-secure escape expire.

Escapes represent a particular type of behavior that must be tracked closely. Escapes shall be scored in this item as applicable, even if not scored as a current or prior conviction. For example, a probationer was sentenced to a community residential facility and then escaped. He was granted probation for the escape, but the original probation was revoked. Per instructions above, the escape would not score as current or prior criminal history. However, the escape behavior score under "Escape History" regardless of its role in the probation violation.

**Scoring the Type of Facility:** Score escape events according to the type of facility or custody level from which the individual escaped:

- **Secure facility or Escort:** Escape from minimum, medium, or maximum custody, or escape from a non-secure facility with violence, force, or threat of violence.
- **Non-secure facility**: Escape from an outside work detail, work release, or community corrections residential facility.

**Scoring Special Characteristics of an Escape:** The risk associated with an escape or escape attempt is magnified when the action involved violence, taking of hostages, weapons, outside assistance, or an escape plan. (An escape plan may include paraphernalia such as rope, handcuffs, blueprints, etc.) The commission of a felony while on escape intensifies the risk to the public. The intent is to identify and score those high-risk characteristics documented in the individual's previous escape record.

While it is recognized that the use of a sophisticated escape plan in prior escapes or attempted escapes indicates a need for enhanced security measures, it is also recognized that any escape or attempted escape would require at least momentary premeditation. Therefore, the intent of this item is to identify those escape characteristics, which indicate a level of planning and sophistication that is clearly above that which would be minimally required to take advantage of an opportune moment. This item shall not be coded unless there is clear documentation of such circumstances. Examples of an escape plan include, but are not limited to, letters to family indicating a plan to escape, investigation reports indicating other individuals created a diversion to distract attention from the attempt, maps of escape routes, or manufacturing tools required to facilitate the escape plan.

Sources of information on the escape characteristics include official reports and documented information in files. Such information may reference one or more of the following escape characteristics. If the escape event did not involve one of the special characteristics listed below, but the elements of the escape were significant, document the specific elements of the escape.

When scoring the special characteristics for an escape or attempted escape include:

1. Taking of hostage(s)
2. Violence or inflicting harm
3. Weapon(s)
4. Commission of a felony while at large
5. Outside assistance
6. Escape plan (premeditated)
7. Other

**Revision Date**:

Indicate the revision date in the space provided.

**Item 3: Severity of Prior Convictions during the last 15 years**

For all -- initial and reclassification custody assessments -- score the item as:

| Severity of Prior Convictions | Initial | Reclassification |
|---|---|---|
| Greatest | 4 | 3 |
| High | 3 | 2 |
| Moderate | 2 | 1 |
| Low | 1 | 0 |
| None | 0 | 0 |

**Intent of Item:**

The intent of this item is to ensure that the individual's prior criminal behaviors, in addition to any current behaviors, are considered in assessing his overall risk to institutional safety and security. The prior criminal history item is based on official criminal history data. For the purpose of this item, consider prior adult felony convictions or juvenile felony dispositions using the "Offense Severity Category" (Attachment C) verified to have occurred during the past fifteen (15) calendar years. Do not consider prior charges which were dismissed or for which a disposition cannot be verified. Score any out-of-state and federal felony conviction using the Kansas offense that best resembles the out-of-state conviction.

Aiding and abetting, attempts, solicitations, and conspiracy offenses shall be scored the same as the actual offense.

**Scoring Instructions:**

When considering prior convictions, the 15-year limit shall be computed as the current custody assessment date minus fifteen years.

Once an individual is paroled from an indeterminate to a determinate sentence, the indeterminate sentence is scored as a prior conviction if the conviction occurred within the last 15 years.

Except as provided below, convictions for which the individual receives a determinate sentence cannot be scored as Current Offense and as Criminal History.

If the individual is convicted of a new offense committed while in prison, when scoring the Most Serious Current Conviction, consider the original offense (the conviction(s) for he was admitted to prison), any new offense committed while in prison, and any new conviction from another jurisdiction/detainer.

Convictions expunged within the last 15 years of the custody assessment are counted as criminal history.

**Item 4: Current Age**

| Current Age | Points |
|---|---|
| 26.99 years or younger | 3 |
| 27 – 31.99 years | 2 |
| 32 – 42.99 | 1 |
| 43 – 61.99 years | 0 |
| 62+ years | -1 |

**Intent of the Item:**

Age has been shown to be statistically correlated with institutional adjustment.

**Scoring Instructions:**

The computer will generate this item by subtracting the individual's date of birth from the date of the classification action.

**Revision Date:**

This date is computer-generated based on the month and year of the individual's next birth date that will change the points scored.

**Item 5: Institutional Adjustment**

| Institutional Adjustment | Initial | Reclassification |
|---|---|---|
| 2+ Predatory within 2 years | 14 | 14 |
| 1 Predatory within 12 months | 10 | 10 |
| 2+ Aggressive within 2 years | 9 | 9 |
| 1 Aggressive within 12 months or Active Validated Security Threat Group Member | 6 | 6 |
| 1+ Rule 2 Infractions: Disruption of Facility Management within 12 months | 3 | 3 |
| 1+ Rule 3 Infractions: Problems Behaviors within 12 months | 1 | 1 |
| 0 Rule 1 – 3 Disciplinary Reports within 12 months but has 2+ Rule 4 Disciplinary Reports and/or 2+ Summary Violations | 0 | 0 |
| 1+ Summary Violations and/or 1+ Rule 4 Disciplinary Reports | | -1 |
| 0 Summary Violations and 0 Disciplinary Reports within 12 months | | -2 |

**Intent of the Item:**

Demonstrated poor adjustment in correctional and detention facilities provides information relevant for determining the level of supervision required for the individual. The expectation of the item is that the individual will have zero (0) will Rule 1 - 3 disciplinary reports. Negative points, i.e., -1 for 1+ Summary Violations and/or 1+ Rule 4 Disciplinary Reports or -2 for 0 Summary Violations and 0 Disciplinary Reports within 12 months recognizes the individual's good behavior and low risk for disruptive/problem institutional behaviors.

At the time of Initial Classification, the individual may not have been in KDOC custody for a sufficient length of time to adequately observe behavioral problems and attitudes that may detract from his ability to adjust to the new and varied conditions of prison life. Documented negative behaviors during jail detention are indicators of poor adjustment to the conditions of confinement in prison.

**Scoring Instructions:**

Refer to the Categories for Rule Infraction form (Attachment D) for a listing of rule infractions by the level of seriousness.

**Prior Incarceration:** Information about past behavior in prison is deemed appropriate if the behavior occurred within the last two calendar years. Set the revision date for

each disciplinary infraction according to the date of hearing at which the individual was found guilty of the infraction. (NOTE: If there was only one (1) predatory infraction with a finding of guilt during the last twelve months, score category 2. If there are two or more predatory convictions within the last two years, score as category 1.)

**Local detention:** If the behavior occurred at a local detention facility before transfer to the KDOC, it shall be scored for any custody assessment if there is documentation as to circumstances of the violation, the behavior would have violated a predatory or aggressive rule infraction if committed in a KDOC facility, and the behavior occurred within the applicable revision date for the category.

The categories within the Institutional Adjustment item are arranged in a hierarchy of seriousness, from most to least severe. Code only one category to reflect the individual's history of institutional adjustment. In the instance that several applicable categories, select the most serious category to score.

For purposes of determining the custody level, score summary judgments pursuant to KAR 44-13-201b as a violation. The purpose of the summary judgment process is to expedite the disciplinary process. The violation must still be considered when assessing the overall level of institutional adjustment at reclassification. For custody reassessments, count the number of summary violations during the last 12 months, regardless of the specific rule(s) violated.

**Revision Date:**

Indicate the month and year for the revision date in the space provided. Set the revision date according to the date of the disciplinary hearing at which the individual was found guilty of the rule infraction.

**Item 6: Time Remaining to Serve**

For all initial custody assessments, score the item as:

| Men | |
|---|---|
| Time to Serve | Initial |
| Life or 30+ years | 3 |
| 5 – 29.99 years | 2 |
| Less than 5 Years | 0 |

**Intent of the Item:**

There is a relationship between a man's potential for adverse behavior and the amount of time remaining to be served. The basis for this is twofold: (1) the more time invested in a sentence, the less likely the individual is to risk jeopardizing his record, and (2) the more time served, the more likely institutional factors will have affected the individual.

The projected release date is either the: (1) parole eligibility date; (2) conditional release date; (3) projected guidelines release date; (4) maximum sentence expiration date; or (5) sentence discharge date.

**Scoring Instructions:**

1. For all initial custody assessments consider the projected release, conditional release, maximum sentence expiration, guidelines release, guidelines discharge date to determine the projected release date. This item is not scored at reclassification for the men. A LIFE sentence, a sentence with a maximum term of LIFE, and Lifetime Post Release shall always be scored as LIFE remaining until a PRB decision has been published. Once the PRB decision has been published, the Time Remaining to Serve item shall still be scored as LIFE until the **PRB** issues a decision to grant parole. Items 10.4 and 10.5 may still apply based on scoring instruction for those items.

2. Calculate the time between the current date of action and the projected release date.
   - Initial Assessment - Use the most recent admission date as the current date of action.
   - Reassessment - Use date of classification as the current date.

3. Indicators:
   - A Guidelines Indicator -- If the individual is serving an aggregate consecutive indeterminate-determinate sentence, calculate the time remaining to serve by

adding the time remaining until the projected release date on the indeterminate sentence to the time owed on the determinate sentence less the maximum potential good time credits (15% or 20%). Except for those serving an indeterminate sentence of LIFE, LIFETIME post-release, or having a maximum term of LIFE, the indeterminate sentence shall become inactive upon release.

- C Guidelines Indicators – If the Individual is serving aggregate concurrent indeterminate-determinate sentences, the projected release date shall be computed on whichever sentence results in his latest release date from prison.

**Revision Date:**

If the individual is five (5) or more years from his projected release, a revision date must be entered in the space provided in the scoring guide.

Individuals serving sentences of LIFE or sentences with a maximum term of LIFE shall be scored under category 1 (3 points) until the Prison Review Board issues a decision of parole or parole to the determinate sentence. Enter the revision date as 12-31-9999.

### C. Point-Based Custody Level

| Custody Level | Men | |
|---|---|---|
| | Initial Points | Reclassification Points |
| Minimum | 0 to 6 | Lo to 7 |
| Low-Medium | 7 to 11 | 8 to 15 |
| High-Medium | 12 to 15 | 16 to 23 |
| Maximum | 16+ | 24+ |

**Scoring Instructions:**

This item is computer-generated.

## III. Non-Point-Based Items

**Intent of the Non-Point-Based Items:**

A characteristic or status that may either expand or limit the level of risk the Department is willing to accept and thus impact the custody level and supervision to which the individual is assigned. Application of a non-point-based item does not prohibit a request for an exception.

**Scoring Instructions:**

Mark every non-point-based item applicable to the current custody assessment. The highest custody level indicated by the applicable items will control the final custody level. If none of the categories apply to this custody assessment, mark 10.30 -- None.

| | | |
|---|---|---|
| 10.1 | Refuses RDU Evaluation or has multiple (more than one) convictions for murder and has more than 50 years remaining to serve - Requires no less than **Maximum** custody | ______ |
| 10.2 | Pending disciplinary report that will change custody level to maximum - Requires no less than **Maximum** custody. | ______ |
| 10.3 | Resides at EDCF, LCF, LSSH, or TCF in a behavioral health unit. Requires no less than **High-Medium** custody. | ______ |
| 10.4 | Twenty or more (20.0+) years to serve to projected release – Requires no less than **High-Medium** custody. | ______ |
| 10.5 | Ten or more (10.0+) years to serve to projected release – Requires no less than **Low-Medium** custody. | ______ |
| 10.6 | High-risk for civil commitment as a violent sexual predator – Requires no less than **Low-Medium** custody. | ______ |
| 10.7 | Any active detainer or judgment for a felony charge(s) – Requires no less than **Low-Medium** custody. | ______ |
| 10.8 | Refuses or was volitionally terminated from a facility-based sex offender's treatment program – Requires no less than **Low-Medium** custody. | ______ |
| 10.9 | An Immigration and Customs Enforcement (ICE) Detainer has been filed or the individual was foreign-born and his immigration status is unknown - Requires no less than **Low-Medium** custody. | ______ |
| 10.10 | Any detainer for probation or parole violation – Requires no less than **Low-Medium** custody. | ______ |
| 10.11 | Two or more (2+) detainers for pending misdemeanor charges or judgments likely to result in additional time – Requires no less than **Low-Medium** custody. | ______ |
| 10.12 | Pending disciplinary report that will change custody to medium – Requires no less than **Low-Medium** custody. | ______ |

10.13 Behavioral health recommends higher custody (explain in comments) – Requires no less than **Low-Medium** custody. ________

10.14 Has an indeterminate life sentence and the PRB has not recommended a reduced custody and/or work release – Requires no less than **Low-Medium** custody. This does not apply to PRS violators that have lifetime post-release supervision. ________

10.15 A misdemeanor conviction(s) or pending charge(s) – Does not impact custody. ________

10.16 Notification only detainer – Does not impact custody. ________

10.30 None of the non-point-based items are applicable. ________

Use the following criteria to define a violent sexual predator for Item 10.6. One or more (1+) of the following applies to the individual:

- Scores high (6-11) on the Static 99.
- Is managed as a sex offender and scores high (41+) on the LSI-R, 30+ on the LSCMI.
- Is high-risk to be civilly committed as a violent sexual predator per the Multidisciplinary Team (MDT).
- Has a conviction for a sex offense or a sexually motivated offense committed after the completion of a sex offender treatment program.

Once a decision not to pursue civil commitment has been made, the resident shall no longer be considered high-risk for item 10.6.

Use the following criteria to code 10.4 and 10.5 re Time Remaining to Serve:

- LIFE sentence or lifetime post-release returned to prison as a violator shall be scored 10.4 until the PRB decision has been published, at that time the PE (Parole Eligibility) date shall be used to determine if 10.4 or 10.5 are applicable.
- For individuals serving the prison portion of their determinate sentences, use the projected guidelines release date to determine if 10.4 or 10.5 is applicable.
- For individuals serving indeterminate sentences, use the earliest of the following dates – PE (Parole Eligibility), CR (Conditional Release), or SDD (Sentence Discharge Date) -- to determine if 10.4 or 10.5 is applicable.

## IV. Special Management Needs:

### A. Restrictive Housing Needs

Indicate if the individual needs to be segregated:

1. ___ No
2. ___Yes

If yes, select Disciplinary Segregation, Administrative Segregation, or both.

___ Disciplinary Segregation (DS)
___ Administrative Segregation (IMPP 20-104)

If Administrative Segregation is applicable, indicate <u>all</u> appropriate categories:

1. ___ Consistent Bad Behavior (BB)
2. ___ Communicable Disease (CD)
3. ___ Sentenced to Death for a Capital Offense (CP)
4. ___ Extreme Risk of Escape (ER)
5. ___ Holdovers (HO)
6. ___ Mental or emotional problems create a threat to self or others (MP)
7. ___To Prevent Other Security Concerns (OS) -- indicate all concerns:
   a. Communication and collaboration between residents
   b. Further disruption of the facility
   c. Intimidation of witnesses or accusers
   d. Refusal to participate in identification procedures
   e. Other:________________________________________
8. ___ Critical Monitoring (OT)
9. ___ Protective Custody (PC)
10. ___ Pre-hearing detention (PD)
11. ___ Pending results of an investigation (PI)
12. ___ Protection from Other Residents (PS)
13. ___ Self-injury (SM) – indicate the appropriate category(s):
   a. Current threats or self-injurious behaviors
   b. History of self-mutilation or self-injury
14. ___Violent Behavior (VB)

**<u>Intent of the Item:</u>**

This item is designed to identify individuals who require isolation from others due to a special status.

**Scoring Instructions:**

Identify the appropriate category(s) according to the individual's current segregation need(s). An individual may be assigned to two or more categories at one time.

If the individual's status changes within administrative segregation or from disciplinary segregation to administrative segregation, but none of the point or non-point-based items changes, his segregation status may be updated without creating a new custody record. To do so, place an "X" in the space immediately preceding "Special Management Status" under Type of Assessment.

Note: All individuals sentenced to Death under KSA 21-3439 shall be classified as Special Management unless approved for a less restrictive custody level by the Secretary of Corrections or designee.

**Coding Instructions:**

A revision date must be entered when assigning an individual to disciplinary segregation. The revision date is the date the total disciplinary segregation time ends.

Status changes within Special Management, as identified above, do not require a new custody record if none of the point- or non-point-based items changed. Place an "X" in the space preceding "Special Management" on the data entry screen to access the Special Management status menu.

If a Special Management record is open, the scorer needs to mark "Yes" for segregation. Once the date is closed, the program will return to the segregation question, which may then be marked "No".

**B. Assigned Custody Level**

The computer will assign the individual to the most restrictive custody level according to the highest custody level indicated by the Point-Based Items, Non-Point-Based Items, or the Special Management considerations.

## V. Condition Violators and Prison Sanctions from Probation

Indicate whether the "Condition Violator Rule" Applies?

1. ___ Yes
2. ___ No

Apply the Condition Violator Rule (condition violator/prison sanction assigned to minimum custody) if questions 1, 2, and 3 as listed below were answered as "Yes" and questions 4, 5, and 6 were answered as "No."

The computer will generate the response "Yes" or "No" to the following questions:

1. ____ Was the resident's most recent admission to prison for a post-release supervision (PRS) violator NNS (No New Sentence, i.e., a condition violator) or Prison Sanction?
2. ____ Was the resident assigned to medium or minimum custody level at the time of his most recent prior release?
3. ____ Is the resident within 90 days of his scheduled (projected) release date?
4. ____ Is the resident's current custody level “Maximum” based on the point-based classification items?
5. ____ Are any of the non-point-based categories 10.0 through 10.13 or special management statuses applicable?
6. ____ Does the resident score as medium custody due to the points scored for Escape History or Institutional Adjustment?

**Intent of the Item:**

KSA 75-5210(b) provides for the presumption of minimum custody for post-release supervision violators who meet the criteria set forth by the Secretary of Corrections. Such status shall apply only to the first classification conducted upon the individual's return to prison as a PRS NNS. All custody classifications for post-release supervision violators shall consider these items.

This item applies only to individuals returned to prison from post-release supervision with no new sentence and individuals sentenced to a prison sanction from probation. This item does not apply to individuals serving indeterminate, lifetime post-release, or off-grid sentences. Always check for active wants and warrants prior to an individual’s placement in a minimum-security living area. All other custody items shall be coded to ensure that the individual's custody level at the time of his prior release correctly reflected his threat to institutional safety and security.

It is the responsibility of the staff member completing the custody record to review the "Transportation Memo" and "Statement of Charge" prepared by Field Services

staff to ensure that all risk behaviors are considered prior to assignment to minimum custody.

## VI. Classification Exception Requested

Is an exception being requested?

1. _____ No
2. _____ Yes

Requested Custody Level: _____________

Type of Exception Request:
a.____ Re-entry
b.____ PRB recommendation
c.____ Active member of a Security Threat Group
d.____ General Security/Case Management

**Intent of the Item:**

This item identifies any exceptions sufficiently serious to warrant modification of the custody level. This item also enables the facility staff to recommend an exception to the individual's custody classification to the Deputy Secretary.

**Coding Instructions:**

If no exception is recommended, enter "No" on the Custody Classification Record. If an exception is recommended, enter a "Yes" on the Record.

If an exception is recommended, a "Classification Exception Form" (Attachment B) must be completed. The computer will generate an Exception Form indicating the individual's current location, name, KDOC#, and custody level as per the classification criteria.

The user must enter the proposed custody level and the type of exception on the Exception Form.

The section titled "Reason for Recommendation" is a comment section to include any information concerning aggravating or mitigating circumstances that support the proposed custody classification as well as an assessment of the individual's risk to public safety and institutional order.

The Classification by Exception Form (Attachment B), the coding sheet, and all necessary supporting documentation not in OMIS must be sent to the Central Office for the review and approval of the Deputy Secretary or designee. Following the Deputy Secretary's (or designee's) review and decision, Central Office staff will code the Exception Form to reflect the decision. The Deputy Secretary's approval of an

exception will be carried forward and automatically reflected on subsequent classification records. For subsequent reclassifications, the Deputy Secretary need not review approved custody exceptions to a lower custody level, so long as there have been no changes to the classification record which result in an increase in the custody level due to change in the point-based total score, a non-point-based criteria, or Special Management status **and** no further decrease in the custody level is requested. If the total point score increases under any subsequent reclassification, the custody level shall revert to that prescribed by the criteria until another exception is approved by the Deputy Secretary.

Except as provided below, if the recommendation is for an exception for assignment to a higher level of custody, (Attachment B) must be resubmitted at each subsequent reclassification for review by the Deputy Secretary.

The revision date for an exception to elevate the custody level of an active validated security threat group member shall be set as two years (24 months) from the date the exception was approved by the Deputy Secretary. Enter the revision date in the space provided.

## VII. Facility Custody/Next Custody Due:

This item indicates the custody level to which the resident is assigned:

Special Management
Maximum
High-Medium
Low-Medium
Minimum

On recommendation for an exception to a more restrictive custody level than prescribed by the criteria, enter the proposed new custody level.

On recommendation for an exception is to a less restrictive custody level than prescribed by the criteria, enter the custody level prescribed by the criteria. Following action by the Deputy Secretary, the item will be modified by central office staff to indicate the assigned custody level. In essence, no reduction in custody classification assignment shall be effective until approved by the Deputy Secretary. An increase in custody level by exception shall be considered approved unless an action to reverse the exception is taken by the Deputy Secretary.

Set the next custody date according to the date of the next regularly scheduled review or the item revision date that would change in the custody level. A revision date that will not change the custody level will not be used to determine the next custody review date.

**Attachment A: Gender-Specific Custody Classification Instruments**

| Initial Classification – Men | | | |
|---|---|---|---|
| **Name:** ______ (Last) (First) (MI) | | **KDOC#:** | |
| **Current Date:** | | **Next Classification Date:** | |
| **Type of Classification Assessment:** Intake Post-Disciplinary Review New Information | | | |

| Risk Factor | Points | Score |
|---|---|---|
| 1. MOST SERIOUS CURRENT CONVICTION | | |
| Greatest Severity | 9 | |
| High Severity | 8 | |
| Moderate Severity | 2 | |
| Low Severity | 1 | |
| 2. TIME REMAINING TO SERVE | | |
| Life or 30+ years | 3 | |
| 5 – 29.99 years | 2 | |
| Less than 5 years | 0 | |
| 3. ESCAPE HISTORY | | |
| Escape with special characteristic(s) | 8 | |
| Secure less than 10 years | 6 | |
| Non-secure less than 3 years | 4 | |
| Multiple escapes from non-secure facilities less than 10 years | 2 | |
| None | 0 | |
| 4. SEVERITY OF PRIOR CONVICTIONS during the last 15 years | | |
| Greatest Severity | 4 | |
| High Severity | 3 | |
| Moderate Severity | 2 | |
| Low Severity | 1 | |
| None | 0 | |
| 5. INSTITUTIONAL ADJUSTMENT | | |
| 2+ Predatory within 2 years | 14 | |
| 1 Predatory within 12 months | 10 | |
| 2+ Aggressive within 2 years | 9 | |
| 1 Aggressive within 12 months or Active Validated Security Threat Group Member | 6 | |
| 1+ Rule 2 Infractions – Disruption of Facility Management – within 12 months | 3 | |
| 1+ Rule 3 Infractions – Problems Behaviors – within 12 months | 1 | |
| None | 0 | |
| 6. Current Age | | |
| 26.99 years or younger | 3 | |
| 27 – 31.99 years | 2 | |
| 32 – 42.99 | 1 | |
| 43 – 61.99 years | 0 | |
| 62+ years | -1 | |
| | **Total Score** | |

**Attachment A: Gender-Specific Custody Classification Instruments**

Using Total Score, determine the custody assignment according to the following scales:

| **Custody Level** | **Initial Classification – Men** |
|---|---|
| Minimum | 0 to 6 points |
| Low-Medium | 7 to 11 points |
| High-Medium | 12 to 15 points |
| Maximum | 16+ points |

**Attachment A: Gender-Specific Custody Classification Instruments**

| Reclassification Instrument – Men | | | |
|---|---|---|---|
| **Name:**______________________ (Last) (First) (MI) | | **KDOC #:** | |
| | | **Date of Birth:** | |
| **Current Date:** | | **Next Classification Date** | |
| **Type of Classification Assessment:** Intake Post-Disciplinary Review New Information Regular Interim | | | |

| Risk Factor | Points | Score |
|---|---|---|
| 1. MOST SERIOUS CURRENT CONVICTION | | |
| Greatest Severity | 6 | |
| High Severity | 5 | |
| Moderate | 2 | |
| Low Severity | 1 | |
| 2. ESCAPE HISTORY | | |
| Escape with special characteristic(s) | 8 | |
| Secure less than 10 years | 6 | |
| Non-secure less than 3 years | 4 | |
| Multiple escapes from non-secure facilities less than 10 years | 2 | |
| None | 0 | |
| 3. SEVERITY OF PRIOR CONVICTIONS – last 15 years | | |
| Greatest Severity | 3 | |
| High Severity | 2 | |
| Moderate Severity | 1 | |
| Low Severity/None | 0 | |
| 4. INSTITUTIONAL ADJUSTMENT | | |
| 2+ Predatory within 2 years | 14 | |
| 1 Predatory within 12 months | 10 | |
| 2+ Aggressive within 2 years | 9 | |
| 1 Aggressive within 12 months or Active Validated Security Threat Group Member | 6 | |
| 1+ Rule 2 Infractions - Disruption of Facility Management - within 12 months | 3 | |
| 1+ Rule 3 Infractions - Problems Behaviors - within 12 months | 1 | |
| No Rule 1 - 3 Disciplinary Reports - within 12 months | 0 | |
| 1+ Summary Violations, but 0 Rule 1 – 3 Disciplinary Reports within 12 months | -1 | |
| 0 Summary Violations and 0 Disciplinary Reports within 12 months | -2 | |
| 5. CURRENT AGE | | |
| 26.99 years or younger | 3 | |
| 27 – 31.99 years | 2 | |
| 32 – 42.99 | 1 | |
| 43 – 61.99 years | 0 | |
| 62+ years | -1 | |
| | **Total Score** | |

**Attachment A: Gender-Specific Custody Classification Instruments**

Using the Total Score, determine the custody assignment according to the following scale:

| **Custody Level** | **Reclassification – Men Scale** |
|---|---|
| Minimum | Lo to 7 points |
| Low-Medium | 8 to 15 points |
| High-Medium | 16 to 23 points |
| Maximum | 24+ points |

**Attachment B – Classification Exception Form**

**CLASSIFICATION EXCEPTION**

1. FACILITY: ______________________________________________________________________

2. RESIDENT: ____________________________________________________ _________________
   Last First Middle Number

3. CUSTODY CLASSIFICATION BY CRITERIA:

4. CUSTODY CLASSIFICATION PROPOSED:

5. Type of Exception:
   a. [ ] Re-Entry –Offender is within one year of release
   b. [ ] PRB Recommendation ____________________________
   c. [ ] Active Member of an Unsanctioned Prison Group
   d. [ ] General Security/Case Management [ ] More restrictive [ ] Less Restrictive

6. REASON for RECOMENDATION [Attach supplemental documentation if information is not in OMIS.]

7. Recommendation of Warden

   [ ] APPROVED [ ] DISAPPROVED

   ______________________________________________________________________________
   Warden Date

8. Decision of Deputy Secretary or Designee

   [ ] APPROVED [ ] DISAPPROVED

   ______________________________________________________________________________
   Deputy Secretary, Facility Management Division Date

**Attachment C – Offense Severity Scale**

| Offense/Severity Level | Statute # | Offense | Statute # |
|---|---|---|---|
| **Greatest** | | **Moderate** | |
| Agg, Battery – LEO | 21-3415/5413 | Abuse of a Child | 21-3609/5602 |
| Agg. Assault | 21-3410/5412 | Agg. Arson | 21-3719/5812 |
| Agg. Assault – LEO | 21-3411/5412 | Agg. Burglary | 21-3716/5807 |
| Agg. Battery | 21-3414/5413 | Agg. Indecent Liberties w Child | 21-3504/5506 |
| Agg. Escape | 21-3810/5911 | Agg. Indecent Solicitation (Entice) | 21-3511/5508 |
| Agg. Kidnapping | 21-3421/5408 | Agg. Interfere w Parent | 21-3422a/5409 |
| Agg. Robbery | 21-3427/5420 | Agg. Interference w Parent | 21-3829/5409 |
| Agg. Sexual Battery | 21-3518/5505 | Agg. Intimidation of a Witness | 21-3833/5909 |
| Agg. Sodomy | 21-3506/5504 | Agg. Juvenile Delinquency | 21-3611/R |
| Aggravated Trafficking | 21-3447/5426b | Agg. Incest | 21-3603/5604 |
| Aircraft Piracy | 21-3433 | Aiding a Felon | 21-3812/5913 |
| Att. Poisoning | 21-3417 | Aiding an Escape | 21-3811/5912 |
| Battery of a CO | 21-3413/5413 | Arson | 21-3718/5812 |
| Battery on MH employee | 21-3448/5413 | Burglary | 21-3715/5807 |
| Capital Murder | 21-5401 | Cont. to Childs Misconduct | 21-3612/5603 |
| Criminal Sodomy | 21-3505/5504 | Criminal Damage to Property | 21-3720/5813 |
| Criminal Use of Explosives | 21-3731/5814 | Criminal Threats | 21-3419b/5415a |
| Incitement to Riot | 21-4105/6201 | Elect. Solicitation of a Child (ADD) | 21-3523/5509 |
| Kidnapping | 21-3420/5408 | Enticement of a Child | 21-3509/R |
| Murder | 21-3401/5402 | Expose other to life-threatening communicable disease | 21-3435/5424 |
| Murder 2nd Degree | 21-3402/5403 | Fleeing and Eluding | 8-1568 |
| Premeditated Murder | 21-3439 | Identity Theft | 21-4018/6107 |
| Rape | 21-3502/5503 | Incest | 21-3602/5604 |
| Robbery | 21-3426/5420 | Indecent Libs w Child/Ward | 21-3503/5506 |
| | | Indecent Solicitation of a Child | 21-3510/5508 |
| **High** | | Kansas Offender Registration/Act-Failure to Register | 22-4903/4904 |
| Agg Criminal Threat | 21-3419a/5415b | Lewd & Lascivious Behavior | 21-3508b,c/5513 |
| Agg, Vehicle Homicide | 21-3405/5406 | Mistreat. of Dep. Adult-Physical | 21-3437/5417 |
| Criminal Discharge of a Firearm - unoccupied dwell | 21-4219a/6308 | Obstruction of Legal Process | 21-3808/5904 |
| Criminal Discharge of Firearm - occupied dwell/vehicle | 21-4219b/c/6308 | Poss. Of Burglary Tools | 21-3717 |
| Criminal Poss. Of Firearm | 21-4204/6304 | Prom. Sexual Perf./Minor | 21-3519 |
| Criminal use of Firearm/Weapon | 21-4201/6301 | Sex. Exploitation of a Child | 21-3516/5510 |
| **High – Continued** | | **Moderate - Continued** | |

**Attachment C – Offense Severity Scale**

| Offense/Severity Level | Statute # | Offense | Statute # |
|---|---|---|---|
| Domestic Battery (3rd conv. fel) | 21-3412/5414 | Stalking | 21-5427 (b) (1) (B) |
| Involuntary Manslaughter | 21-3404/5405 | Stalking | 21-5427 (b) (2) (B) |
| Involuntary Manslaughter - DUI | 21-3442/5405(a)(3) | Stalking | 21-5427 (b) (3) (A) |
| Possession of Firearm/Weapon | 21-4202/6304 | Stalking | 21-5427 (b) (3) (B) |
| Soliciting Gang Membership | 21-4227/6314 | Trafficking | 21-3446/5426a |
| Voluntary Manslaughter | 21-3403/5404 | Trafficking Contraband | 21-3826/5914 |
| | | | |
| | | **Low** | |
| | | All others | |
| | | Technical Violation of Post-Supervision Conditions | KSA 75-5210 |

## Attachment D – KDOC Disciplinary Infractions Scale

| Rule Number | Section | Description |
|---|---|---|
| Predatory Infractions | | |
| 44-12-314 | | Sexual Activity, Sodomy, Agg Sodomy, Agg Sex Act |
| 44-12-319 | | Riot or Incitement to Riot |
| 44-12-323 | | Assault |
| 44-12-324 | | Battery |
| 44-12-901 | | Dangerous Contraband – when a weapon or object crafted for use as a weapon is involved |
| Aggressive Infractions | | |
| 4-12-211 | (b) | Unauthorized Possession or Use of Telephone or other Communication Devices |
| 44-12-105 | (b) | Unsanitary Practices |
| 44-12-301 | | Fighting |
| 44-12-306 | | Threaten or Intimidation Any Person |
| 44-12-315 | (b) | Lewd Acts (3rd Subsequent Viol.) |
| 44-12-318 | | Disruptive Behavior |
| 44-12-327 | | Interference W/Restraints |
| 44-12-328 | | Undue familiarity |
| 44-12-322 | | Arson |
| Disruption of Management of Facility (R2) | | |
| 44-12-206 | | Debt Adj or Collection Prohibited item(s) |
| 44-12-304 | | Disobeying Orders |
| 44-12-310 | | Misconduct in Dining Room |
| 44-12-311 | | Being in a Cond. Of Drunk, Intoxicant, Altered Con |
| 44-12-312 | | Use Stimulants, Sedatives, etc. |
| 44-12-320 | (a) | Interference with Official Duties |
| 44-12-325 | (c) | Resident Activity; Limitations(c) |
| 44-12-401 | (a) | Work performance (a) |
| 44-12-502 | | Responsibility for Counts |
| 44-12-504 | | Interference W/Cell Oper/Visibility |
| Problem Behaviors (R3) | | |
| 44-12-103 | | Tattoos and Body Markings |
| 44-12-203 | | Theft |
| 44-12-204 | | Taking W/O Permission |
| 44-12-205 | | Unauthorized Dealing or Trade |
| 44-12-207 | | Gambling and Bookmaking |
| 44-12-208 | | Misuse of State Property |
| 44-12-209 | | Enter Contracts, Incur Fin Ob |
| 44-12-210 | | Accounts |
| 44-12-211 | (a) | Telephones and other Communication Devices |
| 44-12-212 | | Accessing Unauthorized Information |
| 44-12-303 | | Lying |
| 44-12-305 | | Insub/Disrespect Officer/Other |
| 44-12-307 | | Avoiding an Officer |
| 44-12-309 | | Kitchen Utensils or Shop Tools |
| 44-12-313 | | Obscenity (W/Children) |
| 44-12-313 | | Obscenity (W/O Children) |
| 44-12-315 | (a) | Lewd Acts (1st/2nd Violation) |

**Attachment D – KDOC Disciplinary Infractions Scale**

| Rule Number | Section | Description |
|---|---|---|
| 44-12-317 | | Falsifying Documents |
| 44-12-321 | | Conduct Reg. Visitors/Public |
| 44-12-401 | (b) | Work performance (b) |
| 44-12-503 | (a&b) | Restricted Area and Unauthorized Presence |
| 44-12-505 | | Viol. Of Restriction |
| 44-12-601 | | Mail |
| 44-12-702 | | Leg. Assist by Inmates |
| 44-12-901 | | Dangerous Contraband – not involving a weapon (includes 3rd/+ viol for tobacco/products) |
| 44-12-901 | | Second Tobacco Violation (Revised 09/02/03) |
| 44-12-902 | | Less Dangerous Contraband |
| 44-12-903 | | Tobacco Contraband (includes 2nd violation of Subsection "c"-trafficking) |
| 44-12-1002 | | Violation of Published Orders (Class I) |
| Nuisance Behaviors (R4) | | |
| 44-12-101 | | Inmate Clothing |
| 44-12-102 | | Personal Cleanliness |
| 44-12-104 | | Care of Living Quarters |
| 44-12-105 | (a) | Unsanitary Practices |
| 44-12-106 | | Hair Standards and Appearance |
| 44-12-107 | | Use of Safety Devices |
| 44-12-201 | | Regis. & Use Of Pers. Property |
| 44-12-202 | | Radios, TV, Musical Instrument. Other |
| 44-12-302 | | Noise |
| 44-12-308 | | Improper Use of Food |
| 44-12-325 | (a&b) | Inmate Activity; Limitations (a & b) |
| 44-12-401 | (c&d) | Work Performance (c & d) |
| 44-12-501 | | Answering Calls or Passes |
| 44-12-503 | (c) | Restricted Area and Unauthorized Presence(c) |
| 44-12-505 | (b) | Medical Restriction |
| 44-12-506 | | Change Name on JE, Convictions |
| 44-12-602 | | Posting Notices |
| 44-12-801 | | Bulletin Boards |
| 44-12-901 | | Dangerous First Tobacco Viol (Revised 09/02/03) |
| 44-12-902 | | Trafficking in Contraband (by way of 44-12-1001) |
| 44-12-903 | | Tobacco Contraband (includes 2nd and 3rd violation of Subsection "c"-trafficking) |
| 44-12-1001 | (b) | Viol Statute/Other Reg/Orders (Other than a felony or misdemeanor.) |
| 44-12-1002 | | Violation of Published Orders (Class II or Class III) |
| Score as the Underlying Violation/Crime | | |
| 44-12-1001 | (a) | Viol Statute (Felony Crime) |
| 44-12-1001 | (a) | Viol Statute (Misdemeanor Criminal Offense) |

# KANSAS DEPARTMENT OF CORRECTIONS

## INMATE CUSTODY CLASSIFICATION MANUAL

Final

Issued November 1, 2005
Revised January 24, 2006
Revised March 19, 2007
Revised April 1, 2008
Revised March 1, 2016
Revised September 6, 2016

# Table of Contents:

## Section:

**I. General Classification Information and Scoring Instructions for Inmate Classification**

The elements of inmate classification – page 5

Coding Instructions – pages 6-11

**II. Specific Coding and Scoring Instructions for each Item.**

Identifying Information – page 12

Item 1: Most serious current offense – pages 13 and 14

Item 2: Time to serve in prison – pages 15 and 16

Item 3: Severity of prior convictions – pages 17 and 18

Item 4: Escape history – pages 19 and 20

Item 5: Escape characteristics – page 21

Item 6: Institutional adjustment – page 22 and 23

Item 7: Current age – page 24

Item 8: Incentive level – page 25

Item 9: Total for point based items – page 26

Item 10: Non-point based items – pages 27, 28, and 29

Item 11: Special Management needs – pages 30 and 31

Item 12: Custody – page 32

Item 13: Condition/Sanction violators – page 33

Item 14: Exception status – pages 34 and 35

Item 15: Final custody and revision date – page 35

Attachment A:      Assessment Instrument

Attachment B:     Classification Exception Form

Attachment C:     Offense Severity Table

Attachment D:     Disciplinary Infraction Table

# SECTION I:

## General Classification Information and Scoring Instructions for Inmate Classification

# Kansas Department of Corrections
# Inmate Classification System

## What is inmate custody classification?

Custody classification is the means by which inmates are assessed regarding the risk they present to themselves, other inmates, staff and the community, based upon a standard set of objective criteria.

This classification instrument was developed to promote public safety and institutional order. It provides guidelines to place inmates in the least restrictive level of supervision required based upon their assessed level of risk.

## When do we classify inmates?

Each inmate receives a classification review:

- upon reception;
- upon admission as a conditions violator;
- at regularly scheduled intervals(120 day or annual) following admission, and,
- as unscheduled events occur that trigger a reclassification.

## What kind of assessment instrument is used?

The KDOC classification system includes objective point-based and non-point based risk criteria.

The point-based classification criteria include:

- Most serious current offense
- Length of time remaining to serve
- Severity of prior convictions
- Escape history
- Escape characteristics
- Institutional adjustment
- Current age
- Incentive level

The non-point based items include:

- Inmate performance in sex offender's treatment/civil commitment issues
- Detainers
- Pending disciplinary issues/STG activity
- RDU refusal, multiple murders
- Special needs (protective custody, segregation, etc.)

## Is compliance with the criteria mandatory?

If the criteria do not accurately reflect the level of risk the inmate presents, an exception to the classification system supported by documentation that either raises or lowers the inmate's classification may be approved. Comments on an exception should include an assessment of the mitigating or aggravating factors that support the exception request.

## Are condition violators treated differently than other inmates?

Pursuant to KSA 75-5210, there is a presumption of minimum custody status for offenders returned to prison for violating conditions of their post release supervision (PRS) not involving a new criminal conviction and whose classification immediately prior to their most recent release from prison was not maximum custody or special management and who are within 90-days of their scheduled release. This presumption is to be applied to the offender's first custody classification upon return to prison subject to exclusionary enhancement factors pursuant to policies adopted by the Secretary of Corrections. Inmates returned to prison as violators who have **Lifetime Post Release** shall be scored as an indeterminate **LIFE** sentence unless otherwise noted in this manual. Condition Violators shall be scored as a reclassification.

## Coding Instructions

- Classifying within the criteria:

  The custody criteria are designed to provide for stratification of the inmate population into manageable groups, based on the actual risk presented by each group. In the development of the criteria schema, two factors must be considered. The first is making the determination as to the criteria that are relative in the assessment of the risk that one presents to the system. The second is making the determination as to the weight of each of those factors. In some instances it was the interaction among and/or culmination of factors that results in the determination of the inmate's level of risk. For these criteria, points are assessed. In other instances criteria considerations do not fit well within the point-based scheme. To assure that these criteria are not overlooked, while simultaneously ensuring that they do not lead to unnecessary over classifications and/or subjective classification, these criteria are established as non point-based items and are applied only in the range of circumstances in which they actually become a risk factor.

- Classifying outside the criteria (classification exceptions)

  As with any systemized decisions, there are three possible outcomes: (1) agree with the decision indicated by the system; (2) desire a lesser degree of control than

indicated by the system; and (3) desire a higher degree of control than indicated by the system. In the first situation, no special action is required; the custody will be determined at Item 12.

- If the custody classification indicated by the assessment instrument accurately reflects the level of risk that presented by the offender, the staff person completes the classification and assigns the individual to the custody level indicated in Item 12.

- If the inmate does not appear to need the level of management indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a reduction in custody indicated by the criteria. All exceptions for a reduction in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B).

- If the inmate appears to need a greater level of management than indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a higher custody than indicated by the criteria. All exceptions for an increase in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B). The facility may temporarily classify the inmate at the more restrictive security level pending approval from the Deputy Secretary.

- Types of Classification Exceptions:

  - Re entry Custody Review and Recommendation:

    A classification exception for all inmates whose custody classification is greater than minimum custody shall be submitted at the inmate's regularly scheduled review which occurs from fifteen months to twelve months prior to the inmate's scheduled release. The custody review shall either indicate support for or opposition to a less-restrictive classification based upon the inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B). The comments shall include an assessment of the inmate's risk to public safety and institutional order and shall include the mitigating or aggravating factors considered. If point-based Items 4: Escape, 5: Escape Characteristics or special management items are scored, an exception need not be submitted. A chrono entry in TOADS shall be entered to indicate that this custody review has been completed and the outcome. If the risk level changes prior to release a subsequent custody review may be completed.

    Item 5.a.on the Classification Exception form shall be coded as follows: [X] Reentry – offender is within one years of release.

- Prisoner Review Board (PRB) Recommendation:
  Upon receipt of a decision issued by PRB with the recommendation that an inmate be placed in a program not available at the inmate's current custody level, the inmate's counselor shall prepare a classification review indicating support for or opposition to a less-restrictive classification based upon the inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B). The comments shall include an assessment of the inmate's risk to public safety and/or institutional order.

  Item 5.b. on the Classification Exception form shall be coded as follows: [X] KPB Recommendation. Provide the decision date in the space provided.

- Request that <u>Active</u> validated members of unsanctioned prison groups be assigned to maximum custody using the Classification by Exception form (Attachment B).

  Item 5.c. on the Classification Exception form shall be coded as follows: [X] Active validated gang member.

- General Security/Case Management Recommendation:

  All requests for exceptions to the custody classification indicated on the inmate's initial assessment or reassessment not included above.

  Item 5.d. on the Classification Exception form shall be coded as follows: [X] General Security/Case Management. Indicate whether the recommendation is for a more restrictive or less restrictive classification by placing an <u>X</u> in the appropriate [ ].

- The need for documentation

  A major premise upon which this classification scheme rests is that the application of each criterion be supported by appropriate documentation. This means that appropriately documented information of officials in the criminal justice system may be used. This also means that judgments by KDOC personnel about the behavior of the inmate must be based on professional diagnosis or staff observations, which are appropriately documented. This requirement of documentation is essential to support and confirm the application of the classification criteria.

- Revision date

  Some items of the classification criteria are time limited. That is, they have dates after which the item, as coded, becomes invalid and needs revision. Such revision,

however, may or may not result in an actual custody change. The significance of revision dates is explained in the discussion of non-routine reclassification below.

- o Inmates with five (5) years four (4) months or more to serve at the time that the custody assessment is completed will be on an annual classification cycle.
- o Inmates with less than five (5) years four (4) months to serve at the time that the custody assessment is completed will be on a 120 day classification cycle.

- Types of Classification

  - Initial classification

    Initial classification criteria shall be applied by a classification committee. For those inmates referred to the Reception and Diagnostic Unit for evaluation, initial classification will take place upon completion of the evaluation, prior to transfer to another institution. An Initial Classification Record shall be created for each inmate whose admission type is coded as a New Court Commit (NCC), Probation Violator - New Sentence (PB-NS) or Probation Violator – No New Sentence (PB-NNS), Probation Violator – New Conviction (PB-NC), for an in-abstentia inmate or corrections compact inmate that does not have a current custody classification, or for an inmate who receives a new sentence after the completion of their initial custody. An initial classification shall also be created on inmates released to a detainer as a result of action by the Prisoner Review Board, as a result of having reached their guidelines release date, conditional release date or maximum sentence expiration date returned with a new sentence or released to court and returned with a new sentence. Except as provided below, all active convictions shall be considered in the scoring of the most serious active offense (Item 1) and not as a prior conviction (Item 3). Inmates admitted as a **Prison Sanction** from probation or community corrections shall be scored as an initial each time they are admitted on a prison sanction in lieu of revocation.

    - o Except as provided in the scoring instructions for Item 1, do not count convictions for active sentences in which the prison portion has been satisfied in Item 1.

    - o With limited exceptions, LIFE sentences, Lifetime Post Release, or sentences with a maximum term of LIFE remain active upon the offender being paroled or released. They may, therefore, be scored in as the Most Serious Active Offense (Item 1) and as Severity of Prior Conviction (Item 3).

    Any unscheduled classification occurring subsequent to the initial classification but prior to the first regularly scheduled reclassification shall be scored using the criteria for an initial classification. It is essential that the “next custody due” date

be computed correctly; the edit for this item uses the review date and not the review code for assessing points on items 1 and 3.

The Initial Classification shall be completed using the Assessment Instrument (Attachment A).

- Reclassification

Any regularly scheduled classification action that takes place after the initial classification (including condition violator admission) is regarded as reclassification. There are two types of reclassification: (a) regular or routine and (b) unscheduled.

a. **Regular:** Except for inmates classified as minimum custody, regular reclassifications shall take place on each inmate at the regularly scheduled (120 day or annual) review using the Custody Classification – Assessment Instrument (Attachment A).

b. **Unscheduled:** Unscheduled reclassifications shall take place:
  - When a revision date changes or expires
  - When a change of points occurs
  - When a non-point based item becomes applicable
  - Upon newly identified risk factors

- Changes in Special Management Status:

Inmates in need of specialized supervision may be assigned to special management for one or more reasons. The reason(s) that an inmate is assigned to special management may change while in that status. Rather than recreate an entire classification record for an inmate whose status with in special management changes, the counselor may create a "Change in Special Management Status" record. When such an option is selected, only the reason(s) for the special management assignment can be modified.

- Custody revisions for inmates classified minimum custody:

**Effective March 19, 2007 for <u>minimum</u> custody inmates:**

Once an initial custody has been completed, all subsequent custodies for minimum custody inmates shall be event driven. An event shall be defined as any activity or action which results in a change in the point total or change in the revision date of a point-based item or an activity or action which results in a revision to a non-point-based item regardless of whether or not the event results in an increase in the inmate's custody.

If for example, the inmate receives a disciplinary conviction that changes the scored category or extends the revision expiration date in Item 6: Institutional

Adjustment, then a new custody record must be created. If for example, a detainer is lodged or withdrawn, Item 10 must be revised even if it does not result in a change in the inmate's custody.

All custody records for minimum custody inmates created subsequent to the Initial Custody shall be scored as an Unscheduled Custody. The computer will score unscheduled custodies created within 120 days of the Initial Custody (within one year if the inmate is on an annual cycle) as an Initial. It will score all other unscheduled custodies for minimum custody inmates as reclassifications.

Consistent with current practice, an exception to a more restrictive custody shall be requested on an as needed basis.

## SECTION II:

# Specific Coding and Scoring Instructions
# For each Custody Item

**Identifying Information:**

Provide the following information in the spaces provided:

**Initial and Reclassification:**

- **KDOC #:** Enter the inmate's KDOC number including preceding zeros

- **Inmate Name:** Enter the first three letters of the inmate's last name.

- **Type of Assessment:**
  - **I**nitial
  - **R**eassessment
  - **U**nscheduled
  - **S**pecial Management Status

**Item 1: Most Serious Current Offense (INITIAL AND RECLASSIFICATION)**

| **Initial:** | **Reclassification** |
|---|---|
| 9 = Greatest | 6 = Greatest |
| 8 = High | 5 = High |
| 2 = Moderate | 2 = Moderate |
| 1 = Low | 1 = Low |

**Intent of the Item**

Due to the potential ramifications of an incident involving inmates with more serious convictions, the behavior involved in the offense must be considered as an important factor in determining the level of supervision required. Such consideration is especially important in cases involving death, personal injury, and threat of harm to the victim.

The statutory violation for which the inmate was tried and convicted sometimes does not reflect what took place in the offense. Because of this, the rater must look for behaviors of the offense that might require more intensive supervision. If there are behaviors outside of the crime of conviction that warrant a higher level of supervision, an exception must be submitted.

**Scoring Instructions**

The offenses are categorized in order of severity. Except as indicated below**,** the section of the most serious active offense (Attachment C) is to be coded regardless of when the offense occurred.

This section should be scored Greatest, High, Moderate, or Low.

Aiding and Abetting, Attempts or Solicitation, and Conspiracy, shall be scored the same as the actual offense for the purpose of coding this item.

Inmates returned to prison as post release supervision (PRS) condition violators (determinate sentences) with no new sentence, who are not serving a LIFE or Lifetime Post Release sentence shall have this item scored as "Low".

Inmates returned to prison as post release supervision (PRS) violators with a new sentence, who are not serving a LIFE or a Lifetime Post release sentence, shall have the new sentence on which the inmate is returned to prison coded on this item in accordance with Attachment C. The sentence for which the inmate was serving on post release becomes history and should be scored if applicable in Item 3. Note: If the inmate received probation on the new offense, they shall be scored as a condition violator. The new conviction shall be noted in the comments section of the custody. If staff feel that new conviction warrants an increase in the level of risk, an exception shall be requested.

Inmates returned to prison as parole (indeterminate sentence or lifetime post release) condition violators shall have the most serious active conviction coded in this section in accordance with Attachment C.

Inmates serving indeterminate sentences who return to prison with a new indeterminate or determinate sentence shall have the most serious active conviction scored in this section. If the most serious active conviction is associated with the indeterminate sentence, upon parole to the determinate sentence the indeterminate sentence shall be treated as history only except as provided below.

Inmates paroled from a LIFE sentence or a sentence with a maximum term of LIFE to a determinate sentence shall continue to have the LIFE sentence scored under Item 1 as long as the sentence is active.

If a sentence for a new conviction is received due to court action occurring while the inmate is in KDOC custody, a new custody record shall be created. The new record shall be scored as an “Initial”.

**Item 2: Time Remaining to Serve**

3 = Life or 29.5+ years (greater than or equal to 354 months)
2 = 15 – 29.49 years (greater than or equal to 180 months but less than 354 months)
1 = 5 – 14.99 years (greater than or equal to 60 months but less than 180 months)
0 = Less than 5 years (less than 60 months)

**Intent of the Item**

There is an important relationship between an inmate's potential for adverse behavior and the amount of time remaining to be served. The basis for this is twofold: (1) the more time an inmate has invested in their sentence, the less likely the inmate is to risk jeopardizing their record and (2) the more time the inmate has served, the more likely the factors within the institution have affected change in the inmate.

An inmate's projected release date is either: (1) the parole eligibility date; (2) the conditional release date; (3) the projected guidelines release date; (4) the maximum sentence expiration date; (5) or the sentence discharge date.

**Scoring Instructions:**

1. Considering projected release, conditional release, maximum sentence expiration, guidelines release, guidelines discharge date, determine the inmate's projected release date. A LIFE sentence or a sentence with a maximum term of LIFE shall always be scored as LIFE remaining to serve without regard to any scheduled hearing before the Prisoner Review Board. **Lifetime Post Release** shall be scored as LIFE when the inmate has returned as a condition violator and nonpoint based item # 10.14 (20 years or more remaining to serve) shall apply until a PRB decision has been published. Once a decision of PRB has been published item #2 shall still be scored as LIFE until a decision to parole has been granted by PRB, items 10.13 and 10.14 may still apply based on scoring instruction for those items.

2. Calculate the time between the current date of action and the projected release date.
   a. Initial Assessment -Use the most recent admission date as the current date of action
   b. Reassessment - Use date of classification as current date

3. A Indicators

   If the inmate is serving an aggregate consecutive indeterminate-determinate sentence (A Guidelines Indicator) the time remaining to serve shall be determined by adding the time remaining until the projected release date on the indeterminate sentence to the time owed on the determinate sentence less the maximum potential good time credits (15% or 20%). Except for inmates serving an indeterminate sentence of LIFE, LIFETIME post release, or having a maximum term of LIFE the indeterminate

sentence shall become inactive upon release and should be reviewed for consideration under item #3.

4. For inmates serving aggregate concurrent indeterminate-determinate sentences (C Guidelines Indicators) the projected release date shall be computed on whichever sentence results in the inmate's latest release date from prison.

**Revision Date:**

If the inmate is 5 or more years from projected release, a revision date must be entered in the space provided in the scoring guide.

An inmate serving a sentence of LIFE or a sentence with a maximum term of LIFE shall be scored under category 1 (3 points) until such time a decision of parole or parole to determinate sentence is issued by the Prisoner Review Board. The revision date shall be 12-31-9999.

**Item 3: Severity of Prior Convictions (INITIAL AND RECLASSIFICATION)**

**Initial:**

4 = Greatest
3 = High
2 = Moderate
1 = Low
0 = None

**Reclassification:**

3 = Greatest
2 = High
1 = Moderate
0 = Low/None

**Intent of Item:**

The intent of this item is to ensure that the offender's prior criminal behaviors, as well as any current behaviors, are considered in assessing the overall risk presented by the individual. The inmate's prior criminal history shall be based on official criminal history data. For the purpose of this item, include prior adult felony convictions or juvenile felony dispositions using the "Offense Severity Categories" (Attachment C) which have been verified to have occurred during the past fifteen (15) years from the date of admission or for which were still being supervised. Do not consider prior charges which have been dismissed or which a disposition cannot be verified. Felony convictions from jurisdictions other than Kansas shall be scored using the Kansas offense which most resembles the conviction from the other jurisdiction.

Aiding and abetting, attempts or solicitations and conspiracy offenses shall be scored the same as the actual offense.

**Scoring Instructions:**

In considering prior convictions the fifteen year limit shall be computed from the date of conviction on the prior offense to the date of admission to the KDOC.

This item has no expiration date. If applicable at the time the initial custody classification record is completed, it shall be scored throughout inmate's incarceration, including any readmission as a condition violator or return from court. (**Do not use "admissions" as CVs or returns from court to adjust the 15 year time frame on this item).**

Inmates sentenced to a determinate sentence due to a conviction for an offense committed while on release on an indeterminate sentence shall be scored on the most serious conviction (whether it is part of the indeterminate or determinate sentence) under Item 1. Once the inmate is paroled from the indeterminate sentence to the determinate sentence and the indeterminate sentence is no longer scored as active in determining the offender's custody classification, the indeterminate sentence shall still be coded as history even if the conviction occurred fifteen (15) years or more in the past.

If an inmate is admitted as a probation violator with a new sentence, the most serious presenting offense (whether be the original offense for which the offender was sentenced to probation or the offense resulting in the violation of the probation) shall be scored in Item 1.

It is possible for a conviction on an indeterminate sentence to be scored both in Item 1 and Item 3 if it is part of an active aggregate sentence.

Except as provided below, convictions for which the inmate receives a determinate sentence cannot be scored as Current (Item 1) and as History (Item 3).

> If the inmate is convicted of a new offense committed while in prison, the most serious active offense is scored in Item 1: Most Serious Current Conviction. The original offense (the one on which the inmate was admitted) is scored as Item 3: Most Serious Prior Conviction. If the original offense was also the most serious, it shall also be scored under Item 1.

Expunged convictions are counted as criminal history.

**Item 4: Escape History**

**Categories:**

6 = Secure less than 10 years
4 = Non-secure less than 3 years
2 = Multiple escapes less than 10
0 = None

**Intent of the Item:**

Previous escapes or attempted escapes may predict a tendency to repeat the behavior.

Convictions for an attempted escape or for aiding and abetting an escape/attempted escape shall be treated the same as an escape.

The date from which the escape time period takes effect is the date of the most recent conviction either in court or through the disciplinary process. This item only applies to escapes from confinement, while in escort or while in court. It does not include convictions for failure to appear. If the inmate was under police escort or under police escort and out to court, it shall be considered a secure escape. If the inmate is out on bond and walks or flees from the court, it is considered non-secure.

If there is no conviction for a particular escape or an aggravated juvenile delinquency involving escape behaviors, either in court, by the disciplinary process, or by revocation of probation for absconding from a community corrections facility (Johnson or Sedgwick County), then the item **SHALL NOT** apply. If however, revocation from a community corrections facility was the direct result of absconding, score the behavior as an escape from a non-secure facility.

If other escape type behaviors of concern are documented for which there is no conviction, an exception shall be considered. Escape-type behaviors involving an arrest for which there was no conviction (plea bargains) shall be noted in the comment section of the assessment instrument even if an exception is not submitted.

**Scoring Instructions**

Identify the escape in view of the type of facility at which the escape occurred and the date of conviction. Both **felony and misdemeanor** convictions resulting from an unauthorized absence from an adult or juvenile facility, jail, holding/detention facility, community corrections facility, conservation camp, or work release, shall be considered an escape and scored in item #4. For the purpose of scoring **multiple escapes** the highest scoring event shall be scored until such time as it no longer applies. Subsequent custodies shall be scored using the multiple escape coding and shall expire 10 years from the date of the most recent escape. If the multiple escapes include escape from a secure facility 6 points shall be scored until they expire 10 years from the most recent secure facility escape. Likewise, if the 10

points are not applicable but the inmate has an escape from a non-secure facility as one of the multiple escapes 4 points shall be scored until they expire 3 years from the non-secure escape.

Escapes represent a particular behavior that must be tracked closely. Escapes shall be scored in this item as applicable, even if not scored in Items 1 and 3. For example: An inmate is on probation sentenced to a community residential facility and then escapes. He is granted probation of the escape, but the original probation is revoked. Per instructions in the escape would not be scored in Items 1 and 3. However, the escape behavior would be scored under this item, irrespective of when it occurred in relationship to the probation violation.

**Types of Facilities:**

> **Secure facility or escort escapes** [Escape from minimum, medium, or maximum custody, or escape from a non-secure facility with violence, force, and/or threats of violence.]
> **Non-secure facility escapes** [Escape from outside work detail, work release or community corrections residential facility.

**Revision Date:**

Indicate the revision date in the space provided.

**Item 5: Escape Characteristics**

4 = Special Characteristic
0 = None

**Intent of the Item**

An escape or escape attempt is magnified when the action involved violence, taking of hostages, weapons, outside assistance, or an escape plan. (May include paraphernalia such as rope, handcuffs, blue prints, etc.) The commission of a felony while on escape intensifies the risk to the public. The intent of this item is to identify those characteristics when they are a documented part of an inmate's previous escape record.

While it is recognized that the use of a sophisticated escape plan in prior escapes or attempted escapes indicates a need for the application of enhanced security measures, it is also recognized that any escape or attempted escape would require at least momentary premeditation. This item is intended, therefore, to identify those escape characteristics, which indicate a level of planning, and sophistication, which is clearly above that which would be minimally required to take advantage of an opportune moment. This item shall not be coded unless there is clear documentation of such circumstances. Examples of an escape plan might include, but are not limited to, letters to family indicating a plan to escape, investigation reports indicating other inmates created a diversion to distract attention from the attempt, maps of escape routes, or manufacturing of tools which were needed to facilitate the escape plan.

**Scoring Instructions**

Documented information in files or official reports may be sources of information on the escape characteristics. Such information may reference one or more of the following escape characteristics. If no characteristics apply, but the intent of this item does appear to be applicable due to other involved behaviors, it shall be clearly documented.

Item 4: Escape/attempted escape must be scored for this item to apply.

1. Taking of hostage(s)
2. Violence and/or inflicting harm
3. Weapon(s)
4. Commission of a felony while at large
5. Outside assistance
6. Escape plan (premeditated)
7. Other

**ITEM 6: Institutional Adjustment**

1. 17 = 2 or more R1 w/in 1yr
2. 11 = 1 R1 w/in 1yr
3. 6 = 1 or more R1 w/in 3 yr
4. 3 = 1 or more R2 w/in 1yr
5. 3 = 8 or more R3 and/or R4 w/in 8 months
6. 2 = 1 or more R3 w/in 6 mo
7. 1 = 2 or more R4 w/in 6 mos
8. 0 = None

**Intent of the Item**

Demonstrated poor adjustment in correctional and detention facilities provides information relevant to the determination of the nature of supervision that is required for the inmate.

At the time of Initial Classification, the inmate has not been in KDOC facilities for a sufficient length of time to adequately observe if the inmate has behavioral problems and attitudes, which detract from his/her ability to adjust to the new and varied conditions of prison life. Documented negative behaviors during jail detention, etc., provide indicators of poor adjustment to conditions of confinement similar to prison.

**Scoring Instructions**

Refer to the Categories for Rule Infraction form (Attachment D) for a listing of rule infractions by level of seriousness.
**Prior Incarceration:** Information about past behavior in prison is deemed appropriate if the behavior occurred during the last year of the inmate's most recent period of confinement, providing that such period occurred within the last ten years. For purposes of scoring only Rule 1 Disciplinary Violations shall apply. The revision date shall be the date of the next regularly scheduled review. (NOTE: If there is only one R1 conviction during the last twelve months of a prior conviction, score category 2. If there are two or more R1 convictions, score as category 1).

**Local detention:** If the behavior occurred while held in local detention prior to transfer to the KDOC it shall also be scored on the initial custody if there is documentation that includes the circumstances of the violation and that behavior would have violated an R1 or R2 rule infraction if committed in a KDOC facility.

The categories within the consideration of Institutional Adjustment have been arranged in a hierarchy of seriousness, from most serious to least serious. Only one category can be coded to reflect a history of poor adjustment. In the instance that several categories are appropriate, the most serious category shall be the one selected to score.

For purposes of determining the inmate's custody, summary judgments pursuant to KAR 44-13-201b shall be scored the same as a disciplinary conviction. The purpose of the summary

judgment process is to expedite the disciplinary process. The violation must still be considered when assessing the inmate's overall level of risk.

**<u>Revision Date</u>:**    Indicate revision date in the space provided. (month and year only)Revision date is determined by using the offense date of the disciplinary infraction

**Item 7: Current Age**

3 = less than 25
2 = 25 - 30
1 = 31 - 40
0 = 41 or greater

**Intent of the Item:**

Age has been shown to be statistically correlated with institutional adjustment.

**Scoring Instructions:**

This item will be computer generated by subtracting the offender's date of birth from the date of the classification action.

**Revision Date:**

This date will be computer generated based on the month and year of the inmate's next birth date that will change the points applied.

**Item 8: Incentive level (RECLASSIFICATION ONLY)**

1. 0 = Level = D, R, 0, 1, 2, or 3 for less than one full year
2. -1 = Level = 3 for one year or longer

**Intent of the Item**

An inmate's positive behavior and program participation is a predictor of future institutional adjustment.

**Scoring Instructions**

This item will be computer generated.

For inmates whose Incentive Level is Exempt (E), the incentive level to which the inmate was assigned immediately prior to placement on exempt status shall be scored.

In order for a reduction in points to occur (category 2), the inmate cannot have served any portion of the previous year on restriction status.

**Revision Date:**

Although this item may change during the review period, it shall only be revised as necessary at the time of a regular or unscheduled review. There is therefore no revision date.

**Item 9: Scoring point-based Items (1-8)**

This item is computer generated.

| | | |
|---|---|---|
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**Item 10: Non-point based items:**

**Mark all that apply, the highest custody will control:**

10.1 Inmate refuses RDU Evaluation or has multiple (more than one) convictions for murder and has more than 50 years remaining to serve - Requires no less than maximum custody: _____

10.2 Inmate needs to be managed at LCMHF-CU, Isaac Ray Unit (LSSH) LCF-TRU or TCF-MH – Requires no less than maximum custody: _____

10.3 Pending disciplinary report that will change custody to maximum - Requires no less than maximum custody: _____

10.4 Inmate is a validated member of a security threat group (STG) and Item 6 Categories 1, 2, 3 or 4 are scored – Requires no less than maximum custody: _____

10.5 High risk to be civilly committed as a violent sexual predator– Requires no less than medium low custody: _____

10.6 Pending felony charges – Requires no less than medium low custody: _____

10.7 Judgment for felony offense that will result in additional time of more than one additional year to serve – Requires no less than medium low custody: _____

10.8 Inmate refused or was volitionally terminated from a facility based sex offender's treatment – requires no less than medium low custody: _____

10.9 An Immigration and Customs Enforcement (ICE) Detainer has been filed against the inmate or the inmate was foreign-born and their immigration status in unknown- requires no less than medium low custody: _____

10.10 Probation or parole violation likely to result in additional time of more than one year - requires no less than medium low custody: _____

10.11 Multiple misdemeanor convictions or pending charges likely to result in additional time of more than three years - requires no less than medium low custody: _____

10.12 Pending disciplinary report that will change custody to medium - requires no less than medium low custody: _____

10.13   The inmate has ten or more years to serve to projected release –
Requires no less than medium-low custody.                              _____

10.14   The inmate has twenty or more years to serve to projected release –
Requires no less than medium-high custody:                            _____

10.20   The inmate has a misdemeanor conviction(s) or pending charge(s)
 likely to result in additional time of less than three years –
does not impact custody:                                              _____

10.21   The inmate has a professional diagnosis of "pedophilia" –
does not impact custody.                                              _____

10.22   Notification Detainer only – does not impact custody:         _____

10.23   The inmate has a felony detainer that is likely to result in additional time
to serve of one year or less – does not impact custody.       _____

10.30   None:                                                        _____

**Intent of Items:**

Inmate characteristics that may either expand or limit the level of risk that the department is willing to accept in considering the appropriate level of housing. Application of a non-point based item does not prohibit a request for an exception

**Scoring Instructions:**

Mark every non-point based category that applies to the inmate. The highest custody will control. If none of the categories are applicable, score 10.30.

The following criteria shall be used in coding Item 10.5:
- The inmate scores high (6-11) on the Static 99.
- The inmate is managed as a sex offender and scores high (41+) on the LSIR
- The inmate is high risk to be civilly committed as a violent sexual predator per Multidisciplinary Team (MDT).
- The inmate has a conviction for a sex offense or a sexually motivated offense that was committed after the completion of a sex offender treatment program.

Once the decision not to pursue civil commitment has been made, the inmate shall no longer be considered high risk based upon these criteria.

The following criteria shall be used in coding 10.13 and 10.14:
- LIFE sentence or lifetime post release returned to prison as a violator shall be scored 10.14 until a decision of the PRB has been published, at that time the PE date shall be used to determine if 10.13 or 10.14 are applicable.

- For inmates serving the prison portion of their determinate sentence the projected guidelines release date shall be used to determine if 10.13 or 10.14 are applicable
- For inmates serving an indeterminate sentence use the earliest of the following dates PE , CR, or SDD to determine if 10.13 or 10.14 are applicable

**Item 11: Special Management Needs:**

The inmate needs to be segregated:

1. ___ No
2. ___Yes

    If yes, select Disciplinary Segregation, Administrative Segregation or both.

    ___ Disciplinary Segregation (DS)

    ___ Administrative Segregation (IMPP 20-104)

    If Administrative Segregation is applicable, select as many of the following categories as apply:

1. ___Protective Custody (PC)
2. ___Pending results of investigation(PI)
3. ___To prevent (OS):
   a. Communication and collaboration between inmates
   b. The possible intimidation of witnesses or accusers
   c. Further disruption
4. ___Pre-hearing detention (PD)
5. ___Communicable Disease (CD)
6. ___Critical Monitoring (OT)
7. ___Inflicts Self-injury (SM)
8. ___History of self-mutilation or self-injury (SM)
9. ___Mental or emotional problems which cause a threat to self or others (MP)
10. ___Violent Behavior(VB)
11. ___Extreme Risk of Escape (ER)
12. ___Consistent Bad Behavior(BB)
13. ___Other Security Risk (OS)
14. ___Holdovers (HO)
15. ___Refusal to participate in identification procedure (OS)
16. ___Sentence to Death for a Capital Offense (CP)

**Intent of the Item**

This item is designed to identify those inmates who must be isolated from other inmates as a result of their special assignment.

**Scoring Instructions**

Identify the appropriate category(s) which reflects the inmate's current segregation need. It may be possible for the inmate to be assigned to two or more categories at one time.

If the inmate changes status within administrative segregation or changes status from disciplinary segregation to administrative segregation, and there are no other changes to any of the inmate's remaining custody items, the segregation status may be revised without creating a new custody record. To do so, place an 'X" in the space immediately preceding "Special Management Status" under Type of Assessment.

**Note: All inmates sentenced to Death under KSA 21-3439 shall be classified special management unless approved for a less restrictive custody by the Secretary of Corrections or designee.**

**Coding Instructions**

If the inmate is assigned to disciplinary segregation, a revision date must be entered. This date would be the date that the disciplinary segregation ends.

If the only change in status is within Special Management as identified above, a new custody record need not be created. Place an "X" in the space following "S" (Special Management) on the data entry screen to access the menu for assigning inmates within Special Management status.

If a Special Management record is "open", the scorer needs to mark "yes" on segregation. Once the date is closed, the program will return the scorer to the segregation question, which may then be marked "no".

**Item 12: Custody:**

This item is computer generated based on the highest custody indicated by items 9, 10, or 11.

| | | |
|---|---|---|
| 5. | Special Management | Item 12 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**Item 13: Condition Violators and Prison Sanctions from Probation**:

Condition Violator Rule Applies?

    1.   ___ yes
    2.   ___ no

For the Condition Violator Rule to apply (condition violator/prison sanction assigned to minimum custody) questions 1, 2, 3 as listed below must be answered "yes" and questions 4, 5, 6 as listed below must be answered "no".

The computer will generate the response ("Yes" or "No") to the following questions:

    1.    ____ Is the inmate's most recent admission to prison for a post release supervision (PRS) violator NNS (condition violator) or Prison Sanction?

    2.    ____ Was the inmate's custody at the time the most recent prior release medium or minimum custody?

    3.    ____ Is the inmate is within 90 days of their scheduled (projected) release.

    4.    ____ Is the inmate's current custody greater than medium custody based upon the application of the point-based classification items (Items 1-8)?

    5.    ____ Are any of the non-point-based categories 10.0 through 10.12 or is special management applicable?

    6.    ____ Is the inmate medium custody due to the application of Item 4: Escape or Item 6: Institutional Adjustment?

**Intent of the Item:**

KSA 75-5210(b) provides for the presumption of minimum custody for post release supervision violators who meet criteria set forth by the Secretary of Corrections. Such status shall apply only to the first classification conducted upon the inmate's return to prison as a PRS NNS. All custody classifications for sanction inmates shall consider these items.

This item applies only to inmates returned to prison from post release supervision with no new sentence and inmates sentenced to a prison sanction from probation. This item does not apply to inmates serving indeterminate, lifetime post release or off-grid sentences. A check for wants and warrants shall be conducted prior to placement in a minimum security living area. All other custody items shall be coded to ensure that the inmate's custody at the time of his or her prior release correctly reflected the inmate's level.

It is the responsibility of the staff member completing the custody record to review the "Transportation Memo" and "Statement of Charges" prepared by Field Services staff to ensure that all risk behaviors are considered prior to assigning the inmate to minimum custody.

**Item 14: Classification Exception Requested:**

Is an exception being requested?

1. ____ no
2. ____ yes
3. ____ grandfather

Requested Custody____________

Type of Exception Request:

a.___ Re-entry
b.___ PRB recommendation
c.___ Active member of Security Threat Group
d.___ General Security/Case Management

**Intent of Item**

This item identifies any exceptions sufficiently serious to warrant modification of the custody level. This item also enables the facility to recommend an exception to the inmate's custody classification to the Deputy Secretary.

**Coding Instructions**

If no exception is recommended "no" must be entered on the Custody Classification Record. If an exception is recommended a "yes" must be entered.

If yes is coded the "Classification Exception Form" (Attachment B) must be completed. The inmate's current location, name, KDOC #, and custody by classification by criteria will be generated by the computer.

The user must enter the custody that is being proposed on the exception and the type of exception.

The section titled "Reason for Recommendation" is a comment section to include any information concerning aggravating or mitigating circumstances that support the proposed custody classification as well as an assessment of the inmate's risk to public safety and institutional order.

Classification by Exception Form (Attachment B), the coding sheet and all necessary supporting documentation not in OMIS must be sent to the Central Office for the review and approval of the Deputy Secretary or designee. Following the review and decision by the Deputy Secretary or designee, the item as coded by facility personnel will be modified by the Central Office to reflect the decision made. Approval by the Deputy Secretary will be carried forward and automatically reflected on subsequent classification records. If the

recommendation to assign a classification level lower than prescribed was approved, the case need not be reviewed by the Deputy Secretary at the time of subsequent reclassification, so long as there have been no changes to the classification record which result in a point total (Item 9) increase, or an increase do a non-point based criteria (Item 10) or Special Management (item 11) and so long as no further decrease in custody level is requested. If there is an increase in point total in any subsequent reclassification, then the inmate security level shall revert to that prescribed by the criteria until another exception is approved by the Deputy Secretary.

Except as provided below, if the recommendation is for an exception to assign an inmate to a higher level of custody, (Attachment B) must be resubmitted at each subsequent reclassification for review by the Deputy Secretary.

When the approved exception is for an elevation in custody of an active validated member, the revision date on the exception shall be set for two years (24 months). The revision date shall be entered in the space provided.

**Grandfather Clause:**

No longer Applicable

**Item 15: Facility Custody/ Next Custody Due:**

This item indicates the custody level to be assigned to the inmate:

| | | |
|---|---|---|
| 5. | Special Management | Item 11 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

If a recommendation for an exception is to a more restrictive custody level than prescribed by the criteria, the proposed new custody level shall be entered.

If a recommendation for an exception is to a less restrictive custody level than prescribed by the criteria, the custody level prescribed by the criteria shall be entered. Following action by the Deputy Secretary, the item will be modified by central office staff to indicate the custody level assigned. In essence, no reduction in custody classification assignment shall be effective until approved by the Deputy Secretary. An increase in custody level by exception shall be considered to be approved, unless an action to reverse the exception is taken by the Deputy Secretary.

The next custody due is the date of the next regularly scheduled review or the item revision date that would cause a change in the custody level. A revision date that will not change the custody level will not be used to determine when the next custody is due.

# KANSAS DEPARTMENT OF CORRECTIONS

## INMATE CUSTODY CLASSIFICATION MANUAL

## DRAFT

Issued November 1, 2005
Revised January 24, 2006
Revised March 19, 2007
Revised April 1, 2008
Revised March 1, 2016

## Table of Contents:

### Section:

**I. General Classification Information and Scoring Instructions for Inmate Classification**

The elements of inmate classification – page 5

Coding Instructions – pages 6-11

**II. Specific Coding and Scoring Instructions for each Item.**

Identifying Information – page 12

Item 1: Most serious current offense – pages 13 and 14

Item 2: Time to serve in prison – pages 15 and 16

Item 3: Severity of prior convictions – pages 17 and 18

Item 4: Escape history – pages 19 and 20

Item 5: Escape characteristics – page 21

Item 6: Institutional adjustment – page 22 and 23

Item 7: Current age – page 24

Item 8: Incentive level – page 25

Item 9: Total for point based items – page 26

Item 10: Non-point based items – pages 27, 28, and 29

Item 11: Special Management needs – pages 30 and 31

Item 12: Custody – page 32

Item 13: Condition violators – page 33

Item 14: Exception status – pages 34 and 35

Item 15: Final custody and revision date – page 35

Attachment A:     Assessment Instrument

Attachment B:     Classification Exception Form

Attachment C:     Offense Severity Table

Attachment D:     Disciplinary Infraction Table

# SECTION I:

## General Classification Information and Scoring Instructions for Inmate Classification

# Kansas Department of Corrections
# Inmate Classification System

## What is inmate custody classification?

Custody classification is the means by which inmates are assessed regarding the risk they present to themselves, other inmates, staff and the community, based upon a standard set of objective criteria.

This classification instrument was developed to promote public safety and institutional order. It provides guidelines to place inmates in the least restrictive level of supervision required based upon their assessed level of risk.

## When do we classify inmates?

Each inmate receives a classification review:
- upon reception;
- upon admission as a conditions violator;
- at regularly scheduled intervals(120 day or annual) following admission, and,
- as unscheduled events occur that trigger a reclassification.

## What kind of assessment instrument is used?

The KDOC classification system includes objective point-based and non-point based risk criteria.

The point-based classification criteria include:
- Most serious current offense
- Length of time remaining to serve
- Severity of prior convictions
- Escape history
- Escape characteristics
- Institutional adjustment
- Current age
- Incentive level

The non-point based items include:
- Inmate performance in sex offender's treatment/civil commitment issues
- Detainers
- Pending disciplinary issues/STG activity
- RDU refusal, multiple murders
- Special needs (protective custody, segregation, etc.)

## Is compliance with the criteria mandatory?

If the criteria do not accurately reflect the level of risk the inmate presents, an exception to the classification system supported by documentation that either raises or lowers the inmate's classification may be approved. Comments on an exception should include an assessment of the mitigating or aggravating factors that support the exception request.

## Are condition violators treated differently than other inmates?

Pursuant to KSA 75-5210, there is a presumption of minimum custody status for offenders returned to prison for violating conditions of their post release supervision (PRS) not involving a new criminal conviction and whose classification immediately prior to their most recent release from prison was not maximum custody or special management and who are within 90-days of their scheduled release. This presumption is to be applied to the offender's first custody classification upon return to prison subject to exclusionary enhancement factors pursuant to policies adopted by the Secretary of Corrections. Inmates returned to prison as violators who have **Lifetime Post Release** shall be scored as an indeterminate **LIFE** sentence unless otherwise noted in this manual. Condition Violators shall be scored as a reclassification.

## Coding Instructions

- Classifying within the criteria:

  The custody criteria are designed to provide for stratification of the inmate population into manageable groups, based on the actual risk presented by each group. In the development of the criteria schema, two factors must be considered. The first is making the determination as to the criteria that are relative in the assessment of the risk that one presents to the system. The second is making the determination as to the weight of each of those factors. In some instances it was the interaction among and/or culmination of factors that results in the determination of the inmate's level of risk. For these criteria, points are assessed. In other instances criteria considerations do not fit well within the point-based scheme. To assure that these criteria are not overlooked, while simultaneously ensuring that they do not lead to unnecessary over classifications and/or subjective classification, these criteria are established as non point-based items and are applied only in the range of circumstances in which they actually become a risk factor.

- Classifying outside the criteria (classification exceptions)

  As with any systemized decisions, there are three possible outcomes: (1) agree with the decision indicated by the system; (2) desire a lesser degree of control than

indicated by the system; and (3) desire a higher degree of control than indicated by the system. In the first situation, no special action is required; the custody will be determined at Item 12.

- If the custody classification indicated by the assessment instrument accurately reflects the level of risk that presented by the offender, the staff person completes the classification and assigns the individual to the custody level indicated in Item 12.

- If the inmate does not appear to need the level of management indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a reduction in custody indicated by the criteria. All exceptions for a reduction in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B).

- If the inmate appears to need a greater level of management than indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a higher custody than indicated by the criteria. All exceptions for an increase in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B). The facility may temporarily classify the inmate at the <u>more restrictive</u> security level pending approval from the Deputy Secretary.

- Types of Classification Exceptions:

  - Re entry Custody Review and Recommendation:

    A classification exception for all inmates whose custody classification is greater than minimum custody shall be submitted at the inmate's regularly scheduled review which occurs from fifteen months to twelve months prior to the inmate's scheduled release. The custody review shall either indicate support for or opposition to a less-restrictive classification based upon the inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B). The comments shall include an assessment of the inmate's risk to public safety and institutional order and shall include the mitigating or aggravating factors considered. If point-based Items 4: Escape, 5: Escape Characteristics or special management items are scored, an exception need not be submitted. A chrono entry in TOADS shall be entered to indicate that this custody review has been completed and the outcome. If the risk level changes prior to release a subsequent custody review may be completed.

    Item 5.a.on the Classification Exception form shall be coded as follows: [X] Reentry – offender is within one years of release.

    - o Prisoner Review Board (PRB) Recommendation:
  Upon receipt of a decision issued by PRB with the recommendation that an inmate be placed in a program not available at the inmate's current custody level, the inmate's counselor shall prepare a classification review indicating support for or opposition to a less-restrictive classification based upon the inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B). The comments shall include an assessment of the inmate's risk to public safety and/or institutional order.

  Item 5.b. on the Classification Exception form shall be coded as follows: [X] KPB Recommendation. Provide the decision date in the space provided.

- o Request that <u>Active</u> validated members of unsanctioned prison groups be assigned to maximum custody using the Classification by Exception form (Attachment B).

  Item 5.c. on the Classification Exception form shall be coded as follows: [X] Active validated gang member.

- o General Security/Case Management Recommendation:

  All requests for exceptions to the custody classification indicated on the inmate's initial assessment or reassessment not included above.

  Item 5.d. on the Classification Exception form shall be coded as follows: [X] General Security/Case Management. Indicate whether the recommendation is for a more restrictive or less restrictive classification by placing an <u>X</u> in the appropriate [ ].

- The need for documentation

  A major premise upon which this classification scheme rests is that the application of each criterion be supported by appropriate documentation. This means that appropriately documented information of officials in the criminal justice system may be used. This also means that judgments by KDOC personnel about the behavior of the inmate must be based on professional diagnosis or staff observations, which are appropriately documented. This requirement of documentation is essential to support and confirm the application of the classification criteria.

- o Revision date

  Some items of the classification criteria are time limited. That is, they have dates after which the item, as coded, becomes invalid and needs revision. Such revision,

however, may or may not result in an actual custody change. The significance of revision dates is explained in the discussion of non-routine reclassification below.

- Inmates with five (5) years four (4) months or more to serve at the time that the custody assessment is completed will be on an annual classification cycle.
- Inmates with less than five (5) years four (4) months to serve at the time that the custody assessment is completed will be on a 120 day classification cycle.

- Types of Classification

  - Initial classification

    Initial classification criteria shall be applied by a classification committee. For those inmates referred to the Reception and Diagnostic Unit for evaluation, initial classification will take place upon completion of the evaluation, prior to transfer to another institution. An Initial Classification Record shall be created for each inmate whose admission type is coded as a New Court Commit (NCC), Probation Violator - New Sentence (PB-NS) or Probation Violator – No New Sentence (PB-NNS), Probation Violator – New Conviction (PB-NC), for an in-abstentia inmate or corrections compact inmate that does not have a current custody classification, or for an inmate who receives a new sentence after the completion of their initial custody. An initial classification shall also be created on inmates released to a detainer as a result of action by the Prisoner Review Board, as a result of having reached their guidelines release date, conditional release date or maximum sentence expiration date returned with a new sentence or released to court and returned with a new sentence. Except as provided below, all active convictions shall be considered in the scoring of the most serious active offense (Item 1) and not as a prior conviction (Item 3). Inmates admitted as a **Prison Sanction** from probation or community corrections shall be scored as an initial each time they are admitted on a prison sanction in lieu of revocation.

    - Except as provided in the scoring instructions for Item 1, do not count convictions for active sentences in which the prison portion has been satisfied in Item 1.

    - With limited exceptions, LIFE sentences, Lifetime Post Release, or sentences with a maximum term of LIFE remain active upon the offender being paroled or released. They may, therefore, be scored in as the Most Serious Active Offense (Item 1) and as Severity of Prior Conviction (Item 3).

    Any unscheduled classification occurring subsequent to the initial classification but prior to the first regularly scheduled reclassification shall be scored using the criteria for an initial classification. It is essential that the “next custody due” date

be computed correctly; the edit for this item uses the review date and not the review code for assessing points on items 1 and 3.

The Initial Classification shall be completed using the Assessment Instrument (Attachment A).

- Reclassification

Any regularly scheduled classification action that takes place after the initial classification (including condition violator admission) is regarded as reclassification. There are two types of reclassification: (a) regular or routine and (b) unscheduled.

a. **Regular:** Except for inmates classified as minimum custody, regular reclassifications shall take place on each inmate at the regularly scheduled (120 day or annual) review using the Custody Classification – Assessment Instrument (Attachment A).

b. **Unscheduled:** Unscheduled reclassifications shall take place:
  - When a revision date changes or expires
  - When a change of points occurs
  - When a non-point based item becomes applicable
  - Upon newly identified risk factors

- Changes in Special Management Status:

Inmates in need of specialized supervision may be assigned to special management for one or more reasons. The reason(s) that an inmate is assigned to special management may change while in that status. Rather than recreate an entire classification record for an inmate whose status with in special management changes, the counselor may create a "Change in Special Management Status" record. When such an option is selected, only the reason(s) for the special management assignment can be modified.

- Custody revisions for inmates classified minimum custody:

**Effective March 19, 2007 for <u>minimum</u> custody inmates:**

Once an initial custody has been completed, all subsequent custodies for minimum custody inmates shall be event driven. An event shall be defined as any activity or action which results in a change in the point total or change in the revision date of a point-based item or an activity or action which results in a revision to a non-point-based item regardless of whether or not the event results in an increase in the inmate's custody.

If for example, the inmate receives a disciplinary conviction that changes the scored category or extends the revision expiration date in Item 6: Institutional

Adjustment, then a new custody record must be created. If for example, a detainer is lodged or withdrawn, Item 10 must be revised even if it does not result in a change in the inmate's custody.

All custody records for minimum custody inmates created subsequent to the Initial Custody shall be scored as an Unscheduled Custody. The computer will score unscheduled custodies created within 120 days of the Initial Custody (within one year if the inmate is on an annual cycle) as an Initial. It will score all other unscheduled custodies for minimum custody inmates as reclassifications.

Consistent with current practice, an exception to a more restrictive custody shall be requested on an as needed basis.

**SECTION II:**

# Specific Coding and Scoring Instructions
# For each Custody Item

**Identifying Information:**

Provide the following information in the spaces provided:

**Initial and Reclassification:**

- **KDOC #:** Enter the inmate's KDOC number including preceding zeros

- **Inmate Name:** Enter the first three letters of the inmate's last name.

- **Type of Assessment:**
  - **I**nitial
  - **R**eassessment
  - **U**nscheduled
  - **S**pecial Management Status

**Item 1: Most Serious Current Offense (INITIAL AND RECLASSIFICATION)**

| **Initial:** | | **Reclassification** | |
|---|---|---|---|
| 9 | = Greatest | 6 | = Greatest |
| 8 | = High | 5 | = High |
| 2 | = Moderate | 2 | = Moderate |
| 1 | = Low | 1 | = Low |

**Intent of the Item**

Due to the potential ramifications of an incident involving inmates with more serious convictions, the behavior involved in the offense must be considered as an important factor in determining the level of supervision required. Such consideration is especially important in cases involving death, personal injury, and threat of harm to the victim.

The statutory violation for which the inmate was tried and convicted sometimes does not reflect what took place in the offense. Because of this, the rater must look for behaviors of the offense that might require more intensive supervision. If there are behaviors outside of the crime of conviction that warrant a higher level of supervision, an exception must be submitted.

**Scoring Instructions**

The offenses are categorized in order of severity. Except as indicated below**,** the section of the most serious active offense (Attachment C) is to be coded regardless of when the offense occurred.

This section should be scored Greatest, High, Moderate, or Low.

Aiding and Abetting, Attempts or Solicitation, and Conspiracy, shall be scored the same as the actual offense for the purpose of coding this item.

Inmates returned to prison as post release supervision (PRS) condition violators (determinate sentences) with no new sentence, who are not serving a LIFE or Lifetime Post Release sentence shall have this item scored as "Low".

Inmates returned to prison as post release supervision (PRS) violators with a new sentence, who are not serving a LIFE or a Lifetime Post release sentence, shall have the new sentence on which the inmate is returned to prison coded on this item in accordance with Attachment C. The sentence for which the inmate was serving on post release becomes history and should be scored if applicable in Item 3. Note: If the inmate received probation on the new offense, they shall be scored as a condition violator. The new conviction shall be noted in the comments section of the custody. If staff feel that new conviction warrants an increase in the level of risk, an exception shall be requested.

Inmates returned to prison as parole (indeterminate sentence or lifetime post release) condition violators shall have the most serious active conviction coded in this section in accordance with Attachment C.

Inmates serving indeterminate sentences who return to prison with a new indeterminate or determinate sentence shall have the most serious active conviction scored in this section. If the most serious active conviction is associated with the indeterminate sentence, upon parole to the determinate sentence the indeterminate sentence shall be treated as history only except as provided below.

Inmates paroled from a LIFE sentence or a sentence with a maximum term of LIFE to a determinate sentence shall continue to have the LIFE sentence scored under Item 1 as long as the sentence is active.

If a sentence for a new conviction is received due to court action occurring while the inmate is in KDOC custody, a new custody record shall be created. The new record shall be scored as an “Initial”.

**Item 2: Time Remaining to Serve**

3 = Life or 29.5+ years (greater than or equal to 354 months)
2 = 15 – 29.49 years (greater than or equal to 180 months but less than 354 months)
1 = 5 – 14.99 years (greater than or equal to 60 months but less than 180 months)
0 = Less than 5 years (less than 60 months)

**Intent of the Item**

There is an important relationship between an inmate's potential for adverse behavior and the amount of time remaining to be served. The basis for this is twofold: (1) the more time an inmate has invested in their sentence, the less likely the inmate is to risk jeopardizing their record and (2) the more time the inmate has served, the more likely the factors within the institution have affected change in the inmate.

An inmate's projected release date is either: (1) the parole eligibility date; (2) the conditional release date; (3) the projected guidelines release date; (4) the maximum sentence expiration date; (5) or the sentence discharge date.

**Scoring Instructions:**

1. Considering projected release, conditional release, maximum sentence expiration, guidelines release, guidelines discharge date, determine the inmate's projected release date. A LIFE sentence or a sentence with a maximum term of LIFE shall always be scored as LIFE remaining to serve without regard to any scheduled hearing before the Prisoner Review Board. **Lifetime Post Release** shall be scored as LIFE when the inmate has returned as a condition violator and nonpoint based item # 10.14 (20 years or more remaining to serve) shall apply until a PRB decision has been published. Once a decision of PRB has been published item #2 shall still be scored as LIFE until a decision to parole has been granted by PRB, items 10.13 and 10.14 may still apply based on scoring instruction for those items.

2. Calculate the time between the current date of action and the projected release date.
    a. Initial Assessment -Use the most recent admission date as the current date of action
    b. Reassessment - Use date of classification as current date

3. A Indicators

    If the inmate is serving an aggregate consecutive indeterminate-determinate sentence (A Guidelines Indicator) the time remaining to serve shall be determined by adding the time remaining until the projected release date on the indeterminate sentence to the time owed on the determinate sentence less the maximum potential good time credits (15% or 20%). Except for inmates serving an indeterminate sentence of LIFE, LIFETIME post release, or having a maximum term of LIFE the indeterminate

sentence shall become inactive upon release and should be reviewed for consideration under item #3.

4. For inmates serving aggregate concurrent indeterminate-determinate sentences (C Guidelines Indicators) the projected release date shall be computed on whichever sentence results in the inmate's latest release date from prison.

**Revision Date:**

If the inmate is 5 or more years from projected release, a revision date must be entered in the space provided in the scoring guide.

An inmate serving a sentence of LIFE or a sentence with a maximum term of LIFE shall be scored under category 1 (3 points) until such time a decision of parole or parole to determinate sentence is issued by the Prisoner Review Board. The revision date shall be 12-31-9999.

**Item 3: Severity of Prior Convictions (INITIAL AND RECLASSIFICATION)**

| **Initial:** | | **Reclassification:** | |
|---|---|---|---|
| 4 | = Greatest | 3 | = Greatest |
| 3 | = High | 2 | = High |
| 2 | = Moderate | 1 | = Moderate |
| 1 | = Low | 0 | = Low/None |
| 0 | = None | | |

**Intent of Item:**

The intent of this item is to ensure that the offender's prior criminal behaviors, as well as any current behaviors, are considered in assessing the overall risk presented by the individual. The inmate's prior criminal history shall be based on official criminal history data. For the purpose of this item, include prior adult felony convictions or juvenile felony dispositions using the "Offense Severity Categories" (Attachment C) which have been verified to have occurred during the past fifteen (15) years from the date of admission or for which were still being supervised. Do not consider prior charges which have been dismissed or which a disposition cannot be verified. Felony convictions from jurisdictions other than Kansas shall be scored using the Kansas offense which most resembles the conviction from the other jurisdiction.

Aiding and abetting, attempts or solicitations and conspiracy offenses shall be scored the same as the actual offense.

**Scoring Instructions:**

In considering prior convictions the fifteen year limit shall be computed from the date of conviction on the prior offense to the date of admission to the KDOC.

This item has no expiration date. If applicable at the time the initial custody classification record is completed, it shall be scored throughout inmate's incarceration, including any readmission as a condition violator or return from court. (**Do not use "admissions" as CVs or returns from court to adjust the 15 year time frame on this item).**

Inmates sentenced to a determinate sentence due to a conviction for an offense committed while on release on an indeterminate sentence shall be scored on the most serious conviction (whether it is part of the indeterminate or determinate sentence) under Item 1. Once the inmate is paroled from the indeterminate sentence to the determinate sentence and the indeterminate sentence is no longer scored as active in determining the offender's custody classification, the indeterminate sentence shall still be coded as history even if the conviction occurred fifteen (15) years or more in the past.

If an inmate is admitted as a probation violator with a new sentence, the most serious presenting offense (whether be the original offense for which the offender was sentenced to probation or the offense resulting in the violation of the probation) shall be scored in Item 1.

It is possible for a conviction on an indeterminate sentence to be scored both in Item 1 and Item 3 if it is part of an active aggregate sentence.

Except as provided below, convictions for which the inmate receives a determinate sentence cannot be scored as Current (Item 1) and as History (Item 3).

> If the inmate is convicted of a new offense committed while in prison, the most serious active offense is scored in Item 1: Most Serious Current Conviction. The original offense (the one on which the inmate was admitted) is scored as Item 3: Most Serious Prior Conviction. If the original offense was also the most serious, it shall also be scored under Item 1.

Expunged convictions are counted as criminal history.

**Item 4: Escape History**

**Categories:**

6 = Secure less than 10 years
4 = Non-secure less than 3 years
2 = Multiple escapes less than 10
0 = None

**Intent of the Item:**

Previous escapes or attempted escapes may predict a tendency to repeat the behavior.

Convictions for an attempted escape or for aiding and abetting an escape/attempted escape shall be treated the same as an escape.

The date from which the escape time period takes effect is the date of the most recent conviction either in court or through the disciplinary process. This item only applies to escapes from confinement, while in escort or while in court. It does not include convictions for failure to appear. If the inmate was under police escort or under police escort and out to court, it shall be considered a secure escape. If the inmate is out on bond and walks or flees from the court, it is considered non-secure.

If there is no conviction for a particular escape or an aggravated juvenile delinquency involving escape behaviors, either in court, by the disciplinary process, or by revocation of probation for absconding from a community corrections facility (Johnson or Sedgwick County), then the item **SHALL NOT** apply. If however, revocation from a community corrections facility was the direct result of absconding, score the behavior as an escape from a non-secure facility.

If other escape type behaviors of concern are documented for which there is no conviction, an exception shall be considered. Escape-type behaviors involving an arrest for which there was no conviction (plea bargains) shall be noted in the comment section of the assessment instrument even if an exception is not submitted.

**Scoring Instructions**

Identify the escape in view of the type of facility at which the escape occurred and the date of conviction. Both **felony and misdemeanor** convictions resulting from an unauthorized absence from an adult or juvenile facility, jail, holding/detention facility, community corrections facility, conservation camp, or work release, shall be considered an escape and scored in item #4. For the purpose of scoring **multiple escapes** the highest scoring event shall be scored until such time as it no longer applies. Subsequent custodies shall be scored using the multiple escape coding and shall expire 10 years from the date of the most recent escape. If the multiple escapes include escape from a secure facility 6 points shall be scored until they expire 10 years from the most recent secure facility escape. Likewise, if the 10

points are not applicable but the inmate has an escape from a non-secure facility as one of the multiple escapes 4 points shall be scored until they expire 3 years from the non-secure escape.

Escapes represent a particular behavior that must be tracked closely. Escapes shall be scored in this item as applicable, even if not scored in Items 1 and 3. For example: An inmate is on probation sentenced to a community residential facility and then escapes. He is granted probation of the escape, but the original probation is revoked. Per instructions in the escape would not be scored in Items 1 and 3. However, the escape behavior would be scored under this item, irrespective of when it occurred in relationship to the probation violation.

**Types of Facilities:**

**Secure facility or escort escapes** [Escape from minimum, medium, or maximum custody, or escape from a non-secure facility with violence, force, and/or threats of violence.]
**Non-secure facility escapes** [Escape from outside work detail, work release or community corrections residential facility.

**Revision Date:**

Indicate the revision date in the space provided.

**Item 5: Escape Characteristics**

4 = Special Characteristic
0 = None

**Intent of the Item**

An escape or escape attempt is magnified when the action involved violence, taking of hostages, weapons, outside assistance, or an escape plan. (May include paraphernalia such as rope, handcuffs, blue prints, etc.) The commission of a felony while on escape intensifies the risk to the public. The intent of this item is to identify those characteristics when they are a documented part of an inmate's previous escape record.

While it is recognized that the use of a sophisticated escape plan in prior escapes or attempted escapes indicates a need for the application of enhanced security measures, it is also recognized that any escape or attempted escape would require at least momentary premeditation. This item is intended, therefore, to identify those escape characteristics, which indicate a level of planning, and sophistication, which is clearly above that which would be minimally required to take advantage of an opportune moment. This item shall not be coded unless there is clear documentation of such circumstances. Examples of an escape plan might include, but are not limited to, letters to family indicating a plan to escape, investigation reports indicating other inmates created a diversion to distract attention from the attempt, maps of escape routes, or manufacturing of tools which were needed to facilitate the escape plan.

**Scoring Instructions**

Documented information in files or official reports may be sources of information on the escape characteristics. Such information may reference one or more of the following escape characteristics. If no characteristics apply, but the intent of this item does appear to be applicable due to other involved behaviors, it shall be clearly documented.

Item 4: Escape/attempted escape must be scored for this item to apply.

1. Taking of hostage(s)
2. Violence and/or inflicting harm
3. Weapon(s)
4. Commission of a felony while at large
5. Outside assistance
6. Escape plan (premeditated)
7. Other

**ITEM 6: Institutional Adjustment**

1. 17 = 2 or more R1 w/in 1yr
2. 11 = 1 R1 w/in 1yr
3. 6 = 1 or more R1 w/in 3 yr
4. 3 = 1 or more R2 w/in 1yr
5. 3 = 8 or more R3 and/or R4 w/in 8 months
6. 2 = 1 or more R3 w/in 6 mo
7. 1 = 2 or more R4 w/in 6 mos
8. 0 = None

**Intent of the Item**

Demonstrated poor adjustment in correctional and detention facilities provides information relevant to the determination of the nature of supervision that is required for the inmate.

At the time of Initial Classification, the inmate has not been in KDOC facilities for a sufficient length of time to adequately observe if the inmate has behavioral problems and attitudes, which detract from his/her ability to adjust to the new and varied conditions of prison life. Documented negative behaviors during jail detention, etc., provide indicators of poor adjustment to conditions of confinement similar to prison.

**Scoring Instructions**

Refer to the Categories for Rule Infraction form (Attachment D) for a listing of rule infractions by level of seriousness.
**Prior Incarceration:** Information about past behavior in prison is deemed appropriate if the behavior occurred during the last year of the inmate's most recent period of confinement, providing that such period occurred within the last ten years. For purposes of scoring only Rule 1 Disciplinary Violations shall apply. The revision date shall be the date of the next regularly scheduled review. (NOTE: If there is only one R1 conviction during the last twelve months of a prior conviction, score category 2. If there are two or more R1 convictions, score as category 1).

**Local detention:** If the behavior occurred while held in local detention prior to transfer to the KDOC it shall also be scored on the initial custody if there is documentation that includes the circumstances of the violation and that behavior would have violated an R1 or R2 rule infraction if committed in a KDOC facility.

The categories within the consideration of Institutional Adjustment have been arranged in a hierarchy of seriousness, from most serious to least serious. Only one category can be coded to reflect a history of poor adjustment. In the instance that several categories are appropriate, the most serious category shall be the one selected to score.

For purposes of determining the inmate's custody, summary judgments pursuant to KAR 44-13-201b shall be scored the same as a disciplinary conviction. The purpose of the summary

judgment process is to expedite the disciplinary process. The violation must still be considered when assessing the inmate's overall level of risk.

**Revision Date:** Indicate revision date in the space provided. (month and year only)Revision date is determined by using the offense date of the disciplinary infraction

**Item 7: Current Age**

3 = less than 25
2 = 25 - 30
1 = 31 - 40
0 = 41 or greater

**Intent of the Item:**

Age has been shown to be statistically correlated with institutional adjustment.

**Scoring Instructions:**

This item will be computer generated by subtracting the offender's date of birth from the date of the classification action.

**Revision Date:**

This date will be computer generated based on the month and year of the inmate's next birth date that will change the points applied.

**Item 8: Incentive level (RECLASSIFICATION ONLY)**

1. 0 = Level = D, R, 0, 1, 2, or 3 for less than one full year
2. -1 = Level = 3 for one year or longer

**Intent of the Item**

An inmate's positive behavior and program participation is a predictor of future institutional adjustment.

**Scoring Instructions**

This item will be computer generated.

For inmates whose Incentive Level is Exempt (E), the incentive level to which the inmate was assigned immediately prior to placement on exempt status shall be scored.

In order for a reduction in points to occur (category 2), the inmate cannot have served any portion of the previous year on restriction status.

**Revision Date:**

Although this item may change during the review period, it shall only be revised as necessary at the time of a regular or unscheduled review. There is therefore no revision date.

**<u>Item 9: Scoring point-based Items (1-8)</u>**

This item is <u>computer generated</u>.

| | | |
|---|---|---|
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**Item 10: Non-point based items:**

**Mark all that apply, the highest custody will control:**

10.1 Inmate refuses RDU Evaluation or has multiple (more than one) convictions for murder and has more than 50 years remaining to serve - Requires no less than maximum custody: ______

10.2 Inmate needs to be managed at LCMHF-CU, Isaac Ray Unit (LSSH) LCF-TRU or TCF-MH – Requires no less than maximum custody: ______

10.3 Pending disciplinary report that will change custody to maximum - Requires no less than maximum custody: ______

10.4 Inmate is a validated member of a security threat group (STG) and Item 6 Categories 1, 2, 3 or 4 are scored – Requires no less than maximum custody: ______

10.5 High risk to be civilly committed as a violent sexual predator– Requires no less than medium low custody: ______

10.6 Pending felony charges – Requires no less than medium low custody: ______

10.7 Judgment for felony offense that will result in additional time of more than one additional year to serve – Requires no less than medium low custody: ______

10.8 Inmate refused or was volitionally terminated from a facility based sex offender's treatment – requires no less than medium low custody: ______

10.9 An Immigration and Customs Enforcement (ICE) Detainer has been filed against the inmate or the inmate was foreign-born and their immigration status in unknown- requires no less than medium low custody: ______

10.10 Probation or parole violation likely to result in additional time of more than one year - requires no less than medium low custody: ______

10.11 Multiple misdemeanor convictions or pending charges likely to result in additional time of more than three years - requires no less than medium low custody: ______

10.12 Pending disciplinary report that will change custody to medium - requires no less than medium low custody: ______

10.13 The inmate has ten or more years to serve to projected release – Requires no less than medium-low custody. ______

10.14 The inmate has twenty or more years to serve to projected release – Requires no less than medium-high custody: ______

10.20 The inmate has a misdemeanor conviction(s) or pending charge(s) likely to result in additional time of less than three years – does not impact custody: ______

10.21 The inmate has a professional diagnosis of "pedophilia" – does not impact custody. ______

10.22 Notification Detainer only – does not impact custody: ______

10.23 The inmate has a felony detainer that is likely to result in additional time to serve of one year or less – does not impact custody. ______

10.30 None: ______

**Intent of Items:**

Inmate characteristics that may either expand or limit the level of risk that the department is willing to accept in considering the appropriate level of housing. Application of a non-point based item does not prohibit a request for an exception

**Scoring Instructions:**

Mark every non-point based category that applies to the inmate. The highest custody will control. If none of the categories are applicable, score 10.30.

The following criteria shall be used in coding Item 10.5:

- The inmate scores high (6-11) on the Static 99.
- The inmate is managed as a sex offender and scores high (41+) on the LSIR
- The inmate is high risk to be civilly committed as a violent sexual predator per Multidisciplinary Team (MDT).
- The inmate has a conviction for a sex offense or a sexually motivated offense that was committed after the completion of a sex offender treatment program.

Once the decision not to pursue civil commitment has been made, the inmate shall no longer be considered high risk based upon these criteria.

The following criteria shall be used in coding 10.13 and 10.14:

- LIFE sentence or lifetime post release returned to prison as a violator shall be scored 10.14 until a decision of the PRB has been published, at that time the PE date shall be used to determine if 10.13 or 10.14 are applicable.

- For inmates serving the prison portion of their determinate sentence the projected guidelines release date shall be used to determine if 10.13 or 10.14 are applicable
- For inmates serving an indeterminate sentence use the earliest of the following dates PE , CR, or SDD to determine if 10.13 or 10.14 are applicable

**Item 11: Special Management Needs:**

The inmate needs to be segregated:

1. ___ No
2. ___Yes

    If yes, select Disciplinary Segregation, Administrative Segregation or both.

    ___ Disciplinary Segregation (DS)

    ___ Administrative Segregation (IMPP 20-104)

    If Administrative Segregation is applicable, select as many of the following categories as apply:

    1. ___Protective Custody (PC)
    2. ___Pending results of investigation(PI)
    3. ___To prevent (OS):
        a. Communication and collaboration between inmates
        b. The possible intimidation of witnesses or accusers
        c. Further disruption
    4. ___Pre-hearing detention (PD)
    5. ___Communicable Disease (CD)
    6. ___Critical Monitoring (OT)
    7. ___Inflicts Self-injury (SM)
    8. ___History of self-mutilation or self-injury (SM)
    9. ___Mental or emotional problems which cause a threat to self or others (MP)
    10. ___Violent Behavior(VB)
    11. ___Extreme Risk of Escape (ER)
    12. ___Consistent Bad Behavior(BB)
    13. ___Other Security Risk (OS)
    14. ___Holdovers (HO)
    15. ___Refusal to participate in identification procedure (OS)
    16. ___Sentence to Death for a Capital Offense (CP)

**Intent of the Item**

This item is designed to identify those inmates who must be isolated from other inmates as a result of their special assignment.

**Scoring Instructions**

Identify the appropriate category(s) which reflects the inmate's current segregation need. It may be possible for the inmate to be assigned to two or more categories at one time.

If the inmate changes status within administrative segregation or changes status from disciplinary segregation to administrative segregation, and there are no other changes to any of the inmate's remaining custody items, the segregation status may be revised without creating a new custody record. To do so, place an 'X" in the space immediately preceding "Special Management Status" under Type of Assessment.

**Note: All inmates sentenced to Death under KSA 21-3439 shall be classified special management unless approved for a less restrictive custody by the Secretary of Corrections or designee.**

**Coding Instructions**

If the inmate is assigned to disciplinary segregation, a revision date must be entered. This date would be the date that the disciplinary segregation ends.

If the only change in status is within Special Management as identified above, a new custody record need not be created. Place an "X" in the space following "S" (Special Management) on the data entry screen to access the menu for assigning inmates within Special Management status.

If a Special Management record is "open", the scorer needs to mark "yes" on segregation. Once the date is closed, the program will return the scorer to the segregation question, which may then be marked "no".

**Item 12: Custody:**

This item is computer generated based on the highest custody indicated by items 9, 10, or 11.

| | | |
|---|---|---|
| 5. | Special Management | Item 12 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**<u>Item 13: Condition Violators</u>**:

Condition Violator Rule Applies?

1. ___ yes
2. ___ no

For the Condition Violator Rule to apply (condition violator assigned to minimum custody) questions 1, 2, 3 as listed below must be answered "yes" and questions 4, 5, 6 as listed below must be answered "no".

The computer will generate the response ("Yes" or "No") to the following questions:

1. ____ Is the inmate's most recent admission to prison for a post release supervision (PRS) violation with no new sentence (condition violator)?
2. ____ Was the inmate's custody at the time the most recent prior release medium or minimum custody?
3. ____ Is the inmate is within 90 days of their scheduled (projected) release.

4. ____ Is the inmate's current custody greater than medium custody based upon the application of the point-based classification items (Items 1-8)?
5. ____ Are any of the non-point-based categories 10.1 through 10.12 or is special management applicable?
6. ____ Is the inmate medium custody due to the application of Item 4: Escape or Item 6: Institutional Adjustment?

**<u>Intent of the Item:</u>**

KSA 75-5210(b) provides for the presumption of minimum custody for post release supervision violators who meet criteria set forth by the Secretary of Corrections. Such status shall apply only to the first classification conducted upon the inmate's return to prison.

This item applies only to inmates returned to prison from post release supervision with no new sentence. This item does not apply to inmates serving indeterminate, lifetime post release or off-grid sentences. A check for wants and warrants shall be conducted prior to placement in a minimum security living area. All other custody items shall be coded to ensure that the inmate's custody at the time of his or her prior release correctly reflected the inmate's level.

It is the responsibility of the staff member completing the custody record to review the "Transportation Memo" and "Statement of Charges" prepared by Field Services staff to ensure that all risk behaviors are considered prior to assigning the inmate to minimum custody.

**Item 14: Classification Exception Requested:**

Is an exception being requested?

1. ____ no
2. ____ yes
3. ____ grandfather

Requested Custody____________

Type of Exception Request:

a.___ Re-entry
b.___ PRB recommendation
c.___ Active member of Security Threat Group
d.___ General Security/Case Management

**Intent of Item**

This item identifies any exceptions sufficiently serious to warrant modification of the custody level. This item also enables the facility to recommend an exception to the inmate's custody classification to the Deputy Secretary.

**Coding Instructions**

If no exception is recommended "no" must be entered on the Custody Classification Record. If an exception is recommended a "yes" must be entered.

If yes is coded the "Classification Exception Form" (Attachment B) must be completed. The inmate's current location, name, KDOC #, and custody by classification by criteria will be generated by the computer.

The user must enter the custody that is being proposed on the exception and the type of exception.

The section titled "Reason for Recommendation" is a comment section to include any information concerning aggravating or mitigating circumstances that support the proposed custody classification as well as an assessment of the inmate's risk to public safety and institutional order.

Classification by Exception Form (Attachment B), the coding sheet and all necessary supporting documentation not in OMIS must be sent to the Central Office for the review and approval of the Deputy Secretary or designee. Following the review and decision by the Deputy Secretary or designee, the item as coded by facility personnel will be modified by the Central Office to reflect the decision made. Approval by the Deputy Secretary will be carried forward and automatically reflected on subsequent classification records. If the recommendation to assign a classification level lower than prescribed was approved, the case

need not be reviewed by the Deputy Secretary at the time of subsequent reclassification, so long as there have been no changes to the classification record which result in a point total (Item 9) increase, or an increase do a non-point based criteria (Item 10) or Special Management (item 11) and so long as no further decrease in custody level is requested.  If there is an increase in point total in any subsequent reclassification, then the inmate security level shall revert to that prescribed by the criteria until another exception is approved by the Deputy Secretary.

Except as provided below, if the recommendation is for an exception to assign an inmate to a higher level of custody, (Attachment B) must be resubmitted at each subsequent reclassification for review by the Deputy Secretary.

When the approved exception is for an elevation in custody of an active validated member, the revision date on the exception shall be set for two years (24 months). The revision date shall be entered in the space provided.

**Grandfather Clause:**

No longer Applicable


**Item 15: Facility Custody/ Next Custody Due:**

This item indicates the custody level to be assigned to the inmate:

| | | |
|---|---|---|
| 5. | Special Management | Item 11 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium  Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

If a recommendation for an exception is to a more restrictive custody level than prescribed by the criteria, the proposed new custody level shall be entered.

If a recommendation for an exception is to a less restrictive custody level than prescribed by the criteria, the custody level prescribed by the criteria shall be entered. Following action by the Deputy Secretary, the item will be modified by central office staff to indicate the custody level assigned.  In essence, no reduction in custody classification assignment shall be effective until approved by the Deputy Secretary.  An increase in custody level by exception shall be considered to be approved, unless an action to reverse the exception is taken by the Deputy Secretary.

The next custody due is the date of the next regularly scheduled review or the item revision date that would cause a change in the custody level. A revision date that will not change the custody level will not be used to determine when the next custody is due.

# KANSAS DEPARTMENT OF CORRECTIONS

## INMATE CUSTODY CLASSIFICATION MANUAL

Issued November 1, 2005
Revised January 24, 2006
Revised March 19, 2007
Revised April 1, 2008

## Table of Contents:

### Section:

**I. General Classification Information and Scoring Instructions for Inmate Classification**

The elements of inmate classification – page 5

Coding Instructions – pages 6-11

**II. Specific Coding and Scoring Instructions for each Item.**

Identifying Information – page 13

Item 1: Most serious current offense – pages 14 and 15

Item 2: Time to serve in prison – pages 16 and 17

Item 3: Severity of prior convictions – pages 18 and 19

Item 4: Escape history – pages 20 and 21

Item 5: Escape characteristics – page 22

Item 6: Institutional adjustment – page 23

Item 7: Current age – page 24

Item 8: Incentive level – page 25

Item 9: Total for point based items – page 26

Item 10: Non-point based items – pages 27 and 28

Item 11: Special Management needs – pages 29 and 30

Item 12: Custody – page 31

Item 13: Condition violators – page 32

Item 14: Exception status – pages 33 and 34

Item 15: Final custody and revision date – page 35

Attachment A:     Assessment Instrument

Attachment B:     Classification Exception Form

Attachment C:     Offense Severity Table

Attachment D:     Disciplinary Infraction Table

## SECTION I:

## General Classification Information and Scoring Instructions for Inmate Classification

# Kansas Department of Corrections
# Inmate Classification System

## What is inmate custody classification?

Custody classification is the means by which inmates are assessed regarding the risk they present to themselves, other inmates, staff and the community, based upon a standard set of objective criteria.

This classification instrument was developed to promote public safety and institutional order. It provides guidelines to place inmates in the least restrictive level of supervision required based upon their assessed level of risk.

## When do we classify inmates?

Each inmate receives a classification review:
- upon reception;
- upon admission as a conditions violator;
- at regularly scheduled intervals (120 day or annual) following admission, and,
- as unscheduled events occur that trigger a reclassification.

## What kind of assessment instrument is used?

The KDOC classification system includes objective point-based and non-point based risk criteria.

The point-base classification criteria include:
- Most serious current offense
- Length of time remaining to serve
- Severity of prior convictions
- Escape history
- Escape characteristics
- Institutional adjustment
- Current age
- Incentive level

The non-point based items include:
- Inmate performance in sex offender's treatment
- Detainers
- Pending disciplinary issues
- Civil commitment issues
- Special needs (protective custody, segregation, etc.)

## Is compliance with the criteria mandatory?

If the criteria do not accurately reflect the level of risk the inmate presents, an exception to the classification system supported by documentation that either raises or lowers the inmate's classification may be approved.

## Are condition violators treated differently than other inmates?

Pursuant to KSA 75-5210, there is a presumption of minimum custody status for offenders returned to prison for violating conditions of their post release supervision (PRS) not involving a new criminal conviction and whose classification immediately prior to their most recent release from prison was not maximum custody or special management and who are within 90-days of their scheduled release. This presumption is to be applied to the offender's first custody classification upon return to prison subject to exclusionary enhancement factors pursuant to policies adopted by the Secretary of Corrections.

## Coding Instructions

- Classifying within the criteria:

  The custody criteria are designed to provide for stratification of the inmate population into manageable groups, based on the actual risk presented by each group. In the development of the criteria schema, two factors must be considered. The first is making the determination as to the criteria that are relative in the assessment of the risk that one presents to the system. The second is making the determination as to the weight of each of those factors. In some instances it was the interaction among and/or culmination of factors that results in the determination of the inmate's level of risk. For these criteria, points are assessed. In other instances criteria considerations do not fit well within the point-based scheme. To assure that these criteria are not overlooked, while simultaneously ensuring that they do not lead to unnecessary over classifications and/or subjective classification, these criteria are established as non point-based items and are applied only in the range of circumstances in which they actually become a risk factor.

- Classifying outside the criteria (classification exceptions)

  As with any systemized decisions, there are three possible outcomes. (1) agree with the decision indicated by the system, (2) desire a lesser degree of control than indicated by the system and (3) desire a higher degree of control than indicated by the system. In the first situation, no special action is required; the custody will be determined at Item 12.

- If the custody classification indicated by the assessment instrument accurately reflects the level of risk that presented by the offender, the staff person completes the classification and assigns the individual to the custody level indicated in Item 12.

- If the inmate does not appear to need the level of management indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a reduction in custody indicated by the criteria. All exceptions for a reduction in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B).

- If the inmate appears to need a greater level of management than indicated by the assessment instrument, the staff person completing the classification has the opportunity to objectively document the justification for a higher custody than indicated by the criteria. All exceptions for an increase in custody shall be forwarded to the Deputy Secretary of Facilities Management or designee for review and approval, on form Classification by Exception (Attachment B). The facility may temporarily classify the inmate at the more restrictive security level pending approval from the Deputy Secretary.

- Types of Classification Exceptions:

  - Re entry Custody Review and Recommendation:

    A classification exception for all inmates whose custody classification is greater than minimum custody solely due to the application of point-based classification criteria items 1, 2, 3, and 7, shall be submitted at the inmate's regularly scheduled review which occurs from fifteen months to twelve months prior to the inmate's scheduled release. The review shall either indicate support for or opposition to a less-restrictive classification based upon the inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B). If point-based Items 4: Escape, 5: Escape Characteristics or 6-: Institutional Adjustment or any of the non point-based or special management items are scored, an exception need not be submitted.

    Item 5.a.on the Classification Exception form shall be coded as follows: [X] Reentry – offender is within one years of release.

  - Kansas Parole Board(KPB) Recommendation:
    Upon receipt of a decision issued by KPB with the recommendation that an inmate be placed in a program not available at the inmate's current custody level, the inmate's counselor shall prepare a classification review indicating support for or opposition to a less-restrictive classification based upon the

inmate's institutional record, LSI-R score, applicable treatment summaries, etc. using the Classification by Exception form (Attachment B).

Item 5.b. on the Classification Exception form shall be coded as follows: [X] KPB Recommendation. Provide the decision date in the space provided.

- Request that Active validated members of unsanctioned prison groups be assigned to maximum custody using the Classification by Exception form (Attachment B).

  Item 5.c. on the Classification Exception form shall be coded as follows: [X] Active validated gang member.

- General Security/Case Management Recommendation:

  All requests for exceptions to the custody classification indicated on the inmate's initial assessment or reassessment not included above.

  Item 5.d. on the Classification Exception form shall be coded as follows: [X] General Security/Case Management. Indicate whether the recommendation is for a more restrictive or less restrictive classification by placing an X in the appropriate [ ].

- The need for documentation

  A major premise upon which this classification scheme rests is that the application of each criterion be supported by appropriate documentation. This means that appropriately documented information of officials in the criminal justice system may be used. This also means that judgments by KDOC personnel about the behavior of the inmate must be based on professional diagnosis or staff observations, which are appropriately documented. This requirement of documentation is essential to support and confirm the application of the classification criteria.

- Revision date

  Some items of the classification criteria are time limited. That is, they have dates after which the item, as coded, becomes invalid and needs revision. Such revision, however, may or may not result in an actual custody change. The significance of revision dates is explained in the discussion of non-routine reclassification below.

  - Inmates with five (5) years four (4) months or more to serve at the time that the custody assessment is completed will be on an annual review cycle.
  - Inmates with less than five (5) years four (4) months to serve at the time that the custody assessment is completed will be on a 120 day review cycle.

- Types of Classification

  - Initial classification

    Initial classification criteria shall be applied by a classification committee. For those inmates referred to the Reception and Diagnostic Unit for evaluation, initial classification will take place upon completion of the evaluation, prior to transfer to another institution. An Initial Classification Record shall be created for each inmate whose admission type is coded as a New Court Commit (NCC), Probation Violator - New Sentence (PB-NS) or Probation Violator – No New Sentence (PB-NNS). An initial classification shall also be created on inmates released to a detainer as a result of action by the Kansas Parole Board, as a result of having reached their guidelines release date, conditional release date or maximum sentence expiration date returned with a new sentence or released to court and returned with a new sentence. Except as provided below, all active convictions shall be considered in the scoring of the most serious active offense (Item 1) and not as a prior conviction (Item 3).

    - Except as provided in the scoring instructions for Item 1, do not count convictions for active sentences in which the prison portion has been satisfied in Item 1.

    - With limited exceptions, LIFE sentences or sentences with a maximum term of LIFE remain active upon the offender being paroled or released. They may, therefore, be scored in as the Most Serious Active Offense (Item 1) and as Severity of Prior Conviction (Item 3).

    Any unscheduled classification occurring subsequent to the initial classification but prior to the first regularly scheduled reclassification shall be scored using the criteria for an initial classification. It is essential that the “next custody due” date be computed correctly; the edit for this item uses the review date and not the review code for assessing points on items 1 and 3.

    The Initial Classification shall be completed using the Assessment Instrument (Attachment A).

  - Reclassification

    Any regularly scheduled classification action that takes place after the initial classification is regarded as reclassification. There are two types of reclassification: (a) regular or routine and (b) unscheduled.

    a. **Regular or routine:** Except for inmates classified as minimum custody, regular reclassifications shall take place on each inmate at the regularly scheduled (120 day or annual) review using the Custody Classification – Assessment Instrument (Attachment A).

b.    **Unscheduled:**  Unscheduled reclassifications shall take place when the expiration of time limited items calls for consideration of a lower custody or when significant changes in the inmate's status occurs, whether identified by staff or the inmate.  For example, one of the custody criteria is based on institutional adjustment of the inmate.  In such cases the inmate should be considered for reclassification as soon as reasonably possible after the time limit is reached.

The occurrence of an event which adds custody points or takes note of newly identified system risk factors will require that the inmate's custody classification be reviewed and updated.  Such non-routine reclassification may or may not bring about a revision in custody assignment.  For example, the addition of a single point may result in revision of custody in the case of a point score, which is borderline between custody levels.  On the other hand, point scores, which are in the mid-range of a custody level, would not be affected by addition of a single point.  However, if scoring points are not kept current the cumulative impact of several instances of single point additions may go unnoticed.

Item revision dates will result in a reclassification only when the point deduction or accumulation of point deductions is sufficient to reduce an inmate's custody level.

- Changes in Special Management Status:

  Inmates in need of specialized supervision may be assigned to special management for one or more reasons. The reason(s) that an inmate is assigned to special management may change while in that status (pre-hearing detention to other security risk or consistent bad behavior to protective custody).  Rather than recreate an entire classification record for an inmate whose status with in special management changes, the counselor may create a "Change in Special Management Status" record. When such an option is selected, only the reason(s) for the special management assignment can be modified.

- Custody revisions for inmates classified minimum custody:

  **Effective March 19, 2007 for <u>minimum</u> custody inmates:**

  Once an initial custody has been completed, all subsequent custodies for minimum custody inmates shall be event driven. An event shall be defined as any activity or action which results in an increase in the point total or change in the revision date of a point-based item or an activity or action which results in a revision to a non-point-based item regardless of whether or not the event results in an increase in the inmate's custody.

  If for example, the inmate receives a disciplinary conviction that changes the scored category or extends the revision expiration date in Item 6: Institutional Adjustment, then a new custody record must be created. If for example, a detainer

is lodged or withdrawn, Item 10 must be revised even if it does not result in a change in the inmate's custody.

All custody records for minimum custody inmates created subsequent to the Initial Custody shall be scored as an Unscheduled Custody. The computer will score unscheduled custodies created within 120 days of the Initial Custody (within one year if he inmate is on an annual cycle) as an Initial. It will score all other unscheduled custodies for minimum custody inmates as reclassifications.

Consistent with current practice, an exception to a more restrictive custody shall be requested on an as needed basis.

## SECTION II:

## Specific Coding and Scoring Instructions For each Custody Item

**Identifying Information:**

Provide the following information in the spaces provided:

**Initial and Reclassification:**

- **KDOC #:** Enter the inmate's seven digit number
    - Include any necessary preceding zeros
- **Inmate Name:** Enter the first three letters of the inmate's last name.
- **Type of Assessment:**
    - Initial
    - Reassessment
    - Unscheduled
    - Change in Special Management Status

**Item 1: Most Serious Current Offense (INITIAL AND RECLASSIFICATION)**

| **Initial:** | | **Reclassification** | |
|---|---|---|---|
| 9 | = Greatest | 6 | = Greatest |
| 8 | = High | 5 | = High |
| 2 | = Moderate | 2 | = Moderate |
| 1 | = Low | 1 | = Low |

**Intent of the Item**

Due to the potential ramifications of an incident involving inmates with more serious convictions, the behavior involved in the offense must be considered as an important factor in determining the level of supervision required. Such consideration is especially important in cases involving death, personal injury, and threat of harm to the victim.

The statutory violation for which the inmate was tried and convicted sometimes does not reflect what took place in the offense. Because of this, the rater must look for behaviors of the offense that might require more intensive supervision. If there are behaviors outside of the crime of conviction that warrant a higher level of supervision, an exception must be submitted.

**Scoring Instructions**

The offenses are categorized in order of severity. Except as indicated below**,** the section of the most serious active offense (Attachment C) is to be coded regardless of when the offense occurred.

This section should be scored Greatest, High, Moderate, or Low.

Aiding and Abetting, Attempts or Solicitation, and Conspiracy, shall be scored the same as the actual offense for the purpose of coding this item.

Inmates returned to prison as post release supervision (PRS) condition violators (determinate sentences) with no new sentence, who are not serving a LIFE sentence, shall have this item scored as "Low".

Inmates returned to prison as post release supervision (PRS) violators with a new sentence, who are not serving a LIFE sentence, shall have the new sentence on which the inmate is returned to prison coded on this item in accordance with Attachment C. The sentence for which the inmate was serving on post release becomes history and should be scored if applicable in Item 3. Note: If the inmate received probation on the new offense, they shall be scored as a condition violator. The new conviction shall be noted in the comments section of the custody. If staff feel that new conviction warrants and increase in the level of risk, and exception shall be requested.

Inmates returned to prison as parole (indeterminate sentence) condition violators shall have the most serious active conviction coded in this section in accordance with Attachment C.

Inmates serving indeterminate sentences who return to prison with a new indeterminate or determinate sentence shall have the most serious active conviction scored in this section. If the most serious active conviction is associated with the indeterminate sentence, upon parole to the determinate sentence the indeterminate sentence shall be treated as history only except as provided below.

Inmates paroled from a LIFE sentence or a sentence with a maximum term of LIFE to a determinate sentence shall continue to have the LIFE sentence scored under Item 1 as long as the sentence is active.

If a sentence for a new conviction is received due to court action occurring while the inmate is in KDOC custody, a new custody record shall be created. The new record shall be scored as an “Initial”.

**Item 2: Time Remaining to Serve**

| | | |
|---|---|---|
| 3 | = Life or 29.5+ yrs | (greater than or equal to 354 months) |
| 2 | = 15 – 29.49 years | (greater than or equal to 180 months but less than 354 months) |
| 1 | = 5 – 14.99 years | (greater than or equal to 60 months but less than 180 months) |
| 0 | = Less than 5 yrs | (less than 60 months) |

**Intent of the Item**

There is an important relationship between an inmate's potential for adverse behavior and the amount of time remaining to be served. The basis for this is twofold: (1) the more time an inmate has invested in their sentence, the less likely the inmate is to risk jeopardizing their record and (2) the more time the inmate has served, the more likely the factors within the institution have affected change in the inmate.

An inmate's projected release date is either: (1) the parole eligibility date; (2) the conditional release date; (3) the projected guidelines release date; (4) the maximum sentence expiration date; (5) or the sentence discharge date.

**Scoring Instructions:**

1. Considering projected release, conditional release, maximum sentence expiration, guidelines release, guidelines discharge date, determine the inmate's projected release date. A LIFE sentence or a sentence with a maximum term of LIFE shall always be scored as LIFE remaining to serve without regard to any scheduled hearing before the Kansas Parole Board.

2. Calculate the time between the current date of action and the projected release date.
    a. Initial Assessment -Use the most recent admission date as the current date of action
    b. Reassessment - Use date of classification as current date

3. A Indicators

    If the inmate is serving an aggregate consecutive indeterminate-determinate sentence (A Guidelines Indicator) the time remaining to serve shall be determined by adding the time remaining until the projected release date on the indeterminate sentence to the time owed on the determinate sentences less the maximum potential good time credits (15% or 20%). Except for inmates serving an indeterminate sentence of LIFE or having a maximum term of LIFE the indeterminate sentence shall become inactive upon release and should be reviewed for consideration under item #3.

4. For inmates serving aggregate concurrent indeterminate-determinate sentences (C Guidelines Indicators) the projected release date shall be computed on whichever sentence results in the inmate's latest release date from prison.

**Revision Date:**

If the inmate is 5 or more years from projected release, a revision date must be entered in the space provided in the scoring guide.

An inmate serving a sentence of LIFE or a sentence with a maximum term of LIFE shall be scored under category 1 (3 points) until such time a decision of parole or parole to determinate sentence is issued by the Kansas Parole Board. The revision date shall be 12-31-9999.

**Item 3: Severity of Prior Convictions (INITIAL AND RECLASSIFICATION)**

**Initial:**

4 = Greatest
3 = High
2 = Moderate
1 = Low
0 = None

**Reclassification:**

3 = Greatest
2 = High
1 = Moderate
0 = Low/None

**Intent of Item:**

The intent of this item is to ensure that the offender's prior criminal behaviors, as well as any current behaviors, are considered in assessing the overall risk presented by the individual. The inmate's prior criminal history shall be based on official criminal history data. For the purpose of this item, include prior adult felony convictions or juvenile felony dispositions using the "Offense Severity Categories" (Attachment C) which have been verified to have occurred during the past fifteen (15) years from the date of admission or for which were still being supervised. Do not consider prior charges which have been dismissed or which a disposition cannot be verified. Felony convictions from jurisdictions other than Kansas shall be scored using the Kansas offense which most resembles the conviction from the other jurisdiction.

Aiding and abetting, attempts or solicitations and conspiracy offenses shall be scored the same as the actual offense.

**Scoring Instructions:**

In considering prior convictions the fifteen year limit shall be computed from the date of conviction on the prior offense to the date of admission to the KDOC.

This item has no expiration date. If applicable at the time the initial custody classification record is completed, it shall be scored throughout inmate's incarceration, including any readmission as a condition violator or return from court. (**Do not use "admissions" as CVs or returns from court to adjust the 15 year time frame on this item).**

Inmates sentenced to a determinate sentence due to a conviction for an offense committed while on release on an indeterminate sentence shall be scored on the most serious conviction (whether it is part of the indeterminate or determinate sentence) under Item 1. Once the inmate is paroled from the indeterminate sentence to the determinate sentence and the indeterminate sentence is no longer scored as active in determining the offender's custody classification, the indeterminate sentence shall still be coded as history even if the conviction occurred fifteen (15) years or more in the past.

If an inmate is admitted as a probation violator with a new sentence, the most serious presenting offense (whether be the original offense for which the offender was sentenced to probation or the offense resulting in the violation of the probation) shall be scored in Item 1.

It is possible for a conviction on an indeterminate sentence to be scored both in Item 1 and Item 3 if it is part of an active aggregate sentence.

Except as provided below, convictions for which the inmate receives a determinate sentence cannot be scored as Current (Item 1) and as History (Item 3).

> If the inmate is convicted of a new offense committed while in prison, the most serious active offense is scored in Item 1: Most Serious Current Conviction. The original offense (the one on which the inmate was admitted) is scored as Item 3: Most Serious Prior Conviction. If the original offense was also the most serious, it shall also be scored under Item 1.

Expunged convictions are counted as criminal history.

**Item 4: Escape History**

**Categories:**

6 = Secure less than 10 years
4 = Non-secure less than 3 years
2 = Multiple escapes from non-secure facilities less than 10 yrs
0 = None

**Intent of the Item:**

Previous escapes or attempted escapes may predict a tendency to repeat the behavior.

Convictions for an attempted escape or for aiding and abetting an escape/attempted escape shall be treated the same as an escape.

The date from which the escape time period takes effect is the date of the most recent conviction either in court or through the disciplinary process.

This item only applies to escapes from confinement, while in escort or while in court. It does not include convictions for failure to appear. If the inmate was under police escort or under police escort and out to court, it shall be considered a secure escape. If the inmate is out on bond and walks or flees from the court, it is considered non-secure.

If there is no conviction for a particular escape or an aggravated juvenile delinquency involving escape behaviors, either in court, by the disciplinary process, or by revocation of probation for absconding from a community corrections facility (Johnson or Sedgwick County), then the item **SHALL NOT** apply. If however, revocation from a community corrections facility was the direct result of absconding, score the behavior as an escape from a non-secure facility.

If other escape type behaviors of concern are documented for which there is no conviction, an exception shall be considered. Escape-type behaviors involving an arrest for which there was no conviction (plea bargains) shall be noted in the comment section of the assessment instrument even if an exception is not submitted.

**Scoring Instructions**

Identify the escape in view of the type of facility at which the escape occurred and the date of conviction. A conviction resulting from an unauthorized absence from an adult or juvenile facility, jail, holding/detention facility, community corrections facility, conservation camp, or work release, shall be considered an escape.

Escapes represent a particular behavior that must be tracked closely. Escapes shall be scored in this item as applicable, even if not scored in Items 1 and 3. For example: An inmate is on probation sentenced to a community residential facility and then escapes. He is granted

probation of the escape, but the original probation is revoked. Per instructions in the escape would not be scored in Items 1 and 3. However, the escape behavior would be scored under this item, irrespective of when it occurred in relationship to the probation violation.

**Types of Facilities:**

**Secure facility or escort escape** [Escape from minimum, medium, or maximum custody, or escape from a non-secure facility with violence, force, and/or threats of violence.]
**Non-secure facility escape** [Escape from outside work detail, work release or community corrections residential facility.

**Revision Date:**

Indicate the revision date in the space provided.

## Item 5: Escape Characteristics

4 = Special Characteristic
0 = None

## Intent of the Item

An escape or escape attempt is magnified when the action involved violence, taking of hostages, weapons, outside assistance, or an escape plan. (May include paraphernalia such as rope, handcuffs, blue prints, etc.) The commission of a felony while on escape intensifies the risk to the public. The intent of this item is to identify those characteristics when they are a documented part of an inmate's previous escape record.

While it is recognized that the use of a sophisticated escape plan in prior escapes or attempted escapes indicates a need for the application of enhanced security measures, it is also recognized that any escape or attempted escape would require at least momentary premeditation. This item is intended, therefore, to identify those escape characteristics, which indicate a level of planning, and sophistication, which is clearly above that which would be minimally required to take advantage of an opportune moment. This item shall not be coded unless there is clear documentation of such circumstances. Examples of an escape plan might include, but are not limited to, letters to family indicating a plan to escape, investigation reports indicating other inmates created a diversion to distract attention from the attempt, maps of escape routes, or manufacturing of tools which were needed to facilitate the escape plan.

## Scoring Instructions

Documented information in files or official reports may be sources of information on the escape characteristics. Such information may reference one or more of the following escape characteristics. If no characteristics apply, but the intent of this item does appear to be applicable due to other involved behaviors, it shall be clearly documented.

Item 4:Escape/attempted escape must be scored for this item to apply.

1. Taking of hostage(s)
2. Violence and/or inflicting harm
3. Weapon(s)
4. Commission of a felony while at large
5. Outside assistance
6. Escape plan (premeditated)
7. Other

**ITEM 6: Institutional Adjustment**

1. 17 = 2 or more R1 w/in 1yr
2. 11 = 1 R1 w/in 1yr
3. 6 = 1 or more R1 w/in 3 yr
4. 3 = 1 or more R2 w/in 1yr
5. 3 = 8 or more R3 and/or R4 w/in 8 months
6. 2 = 1 or more R3 w/in 6 mo
7. 1 = 2 or more R4 w/in 6 mos
8. 0 = None

**Intent of the Item**

Demonstrated poor adjustment in correctional and detention facilities provides information relevant to the determination of the nature of supervision that is required for the inmate.

At the time of Initial Classification, the inmate has not been in KDOC facilities for a sufficient length of time to adequately observe if the inmate has behavioral problems and attitudes, which detract from his/her ability to adjust to the new and varied conditions of prison life. Documented negative behaviors during jail detention, etc., provide indicators of poor adjustment to conditions of confinement similar to prison.

**Scoring Instructions**

Refer to the Categories for Rule Infraction form (Attachment D) for a listing of rule infractions by level of seriousness. Information about past behavior in prison is deemed appropriate if the behavior occurred during the last year of the inmate's most recent period of confinement, providing that such period occurred within the last ten years. For purposes of scoring only Rule 1 Disciplinary Violations shall apply. The revision date shall be the date of the next regularly scheduled review. (NOTE: If there is only one R-1 conviction during the last twelve months of a prior conviction, score category 2. If there are two or more R-1 convictions, score as category 1). If the behavior occurred while held in local detention prior to transfer to the KDOC, it shall also be scored on the initial custody.

The categories within the consideration of Institutional Adjustment have been arranged in a hierarchy of seriousness, from most serious to least serious. Only one category can be coded to reflect a history of poor adjustment. In the instance that several categories are appropriate, the most serious category shall be the one selected to score.

For purposes of determining the inmate's custody, summary judgments pursuant to KAR 44-13-201b shall be scored the same as a disciplinary conviction. The purpose of the summary judgment process is to expedite the disciplinary process. The violation must still be considered when assessing the inmate's overall level of risk.

**Revision Date:** Indicate revision date in the space provided. (month and year only)

**Item 7: Current Age**

3 = less than 25
2 = 25 - 30
1 = 31 - 40
0 = 41 or greater

**Intent of the Item:**

Age has been shown to be statistically correlated with institutional adjustment.

**Scoring Instructions:**

This item will be computer generated by subtracting the offender's date of birth from the date of the classification action.

**Revision Date:**

This date will be computer generated based on the month and year of the inmate's next birth date that will change the points applied.

**Item 8: Incentive level (RECLASSIFICATION ONLY)**

1. 0 = Level = D, R, 0, 1, 2, or 3 for less than one full year
2. -1 = Level = 3 for one year or longer

**Intent of the Item**

An inmate's positive behavior and program participation is a predictor of future institutional adjustment.

**Scoring Instructions**

This item will be computer generated.

For inmates whose Incentive Level is Exempt (E), the incentive level to which the inmate was assigned immediately prior to placement on exempt status shall be scored.

In order for a reduction in points to occur (category 2), the inmate cannot have served any portion of the previous year on restriction status.

**Revision Date:**

Although this item may change during the review period, it shall only be revised as necessary at the time of a regular or unscheduled review. There is therefore no revision date.

**Item 9: Scoring point-based Items (1-8)**

This item is computer generated.

| | | |
|---|---|---|
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**Item 10: Non-point based items:**

**Identify all that apply, but score only the first category that applies:**

10.1 Inmate refuses RDU Evaluation or has multiple (more than one) convictions for murder and has more than 50 years remaining to serve - Requires no less than maximum custody: _____

10.2 Inmate needs to be managed at LCMHF-CU, Isaac Ray Unit (LSSH) LCF-TRU or TCF-MH – Requires no less than maximum custody: _____

10.3 Pending disciplinary report that will change custody to maximum - Requires no less than maximum custody: _____

10.4 Inmate is a validated member of a security threat group (STG) and Item 6 Categories 1, 2, 3 or 4 are scored – Requires no less than maximum custody: _____

10.5 High risk to be civilly committed as a violent sexual predator– Requires no less than medium low custody: _____

10.6 Pending felony charges – Requires no less than medium low custody: _____

10.7 Judgment for felony offense that will result in additional time of more than one additional year to serve – Requires no less than medium low custody: _____

10.8 Inmate refused or was volitionally terminated from sex offender's treatment – requires no less than medium low custody : _____

10.9 An Immigration and Customs Enforcement (ICE) Detainer has been filed against the inmate or the inmate was foreign-born and their customs status in unknown- requires no less than medium low custody: _____

10.10 Probation or parole violation likely to result in additional time of more than one year - requires no less than medium low custody: _____

10.11 Multiple misdemeanor convictions or pending charges likely to result in additional time of more than three years - requires no less than medium low custody: _____

10.12 Pending disciplinary report that will change custody to medium - requires no less than medium low custody: _____

10.13 The inmate has ten or more years to serve to projected release – Requires no less than medium-low custody. ______

10.14 The inmate has twenty or more years to serve to projected release – Requires no less than medium-high custody: ______

10.20 The inmate has a misdemeanor conviction(s) or pending charge(s) likely to result in additional time of less than three years – does not impact custody: ______

10.21 The inmate has a professional diagnosis of "pedophilia" – does not impact custody. ______

10.22 Notification Detainer only – does not impact custody: ______

10.23 The inmate has a felony detainer that is likely to result in additional time to serve of less than one year – does not impact custody. ______

10.30 None: ______

**Intent of Items:**

Just as there are classification factors that must be considered in making the determination as to the most suitable housing for the inmate, there are inmate characteristics that may either expand or limit the level of risk that the department is willing to accept in considering the appropriate level of housing. Application of a non-point based item does not prohibit a request for an exception

**Scoring Instructions:**

Code every non-point based category that applies to the inmate. Score only the lowest numbered category that applies. If none of the categories is applicable, score 10.30.

The following criteria shall be used in coding Item 10.5:

- The inmate scores high (6-11) on the Static 99.
- The inmate is managed as a sex offender and scores high (41+) on the LSIR
- The inmate is high risk to be civilly committed as a violent sexual predator per Multidisciplinary Team (MDT).
- The inmate has a conviction for a sex offense or a sexually motivated offense that was committed after the completion of a sex offender treatment program.

If any of these criteria are met, the inmate should not be assigned a classification of less than low-medium without an administrative review (override) until a determination has been made not to pursue civil commitment. Once the decision not to pursue civil commitment has been made, the inmate shall no longer be considered high risk based upon these criteria.

**Item 11: Special Management Needs:**

The inmate needs to be segregated:

1. ___ No
2. ___Yes

If yes, select either Disciplinary Segregation, Administrative Segregation or both.

___ Disciplinary Segregation (DS)

___ Administrative Segregation (IMPP 20-104)

If Administrative Segregation is applicable, select as many of the following categories as apply:

1. ___Protective Custody (PC)
2. ___Pending results of investigation(PI)
3. ___To prevent (OS):
   a. Communication and collaboration between inmates
   b. The possible intimidation of witnesses or accusers
   c. Further disruption
4. ___Pre-hearing detention (PD)
5. ___Communicable Disease (CD)
6. ___Critical Monitoring (OT)
7. ___Inflicts Self-injury (SM)
8. ___History of self-mutilation or self-injury (SM)
9. ___Mental or emotional problems which cause a threat to self or others (MP)
10. ___Violent Behavior(VB)
11. ___Extreme Risk of Escape (ER)
12. ___Consistent Bad Behavior(BB)
13. ___Other Security Risk (OS)
14. ___Holdovers (HO)
15. ___Refusal to participate in identification procedure (OS)
16. ___Sentence to Death for a Capital Offense (CP)

**Intent of the Item**

This item is designed to identify those inmates who must be isolated from other inmates as a result of their special assignment.

**Scoring Instructions**

Identify the appropriate category(s) which reflects the inmate’s current segregation, need. It may be possible for the inmate to be assigned to two or more categories at one time.

If the inmate changes status within administrative segregation or changes status from disciplinary segregation to administrative segregation, and there are no other changes to any of the inmate's remaining custody items, the segregation status may be revised without creating a new custody record. To do so, place an 'X" in the space immediately preceding "Change in Special Management Status" under Type of Assessment.

**Note: All inmates sentenced to Death under KSA 21-3439 shall be classified special management unless approved for a less restrictive custody by the Secretary of Corrections or designee.**

**Coding Instructions**

If the inmate is assigned to disciplinary segregation, a revision date must be entered. This date would be the date that the disciplinary segregation ends.

If the only change in status is within Special Management as identified above, a new custody record need not be created. Place an "X" in the space following "S" (Special Management) on the data entry screen to access the menu for assigning inmates within special Management status.

If a special management record is "open", the scorer needs to mark "yes" on segregation. Once the date is closed, the program will return the scorer to the segregation question, which may then be marked "no".

**Item 12: Custody:**

This item is computer generated based on the highest custody indicated by items 9, 10, or 11.

| | | |
|---|---|---|
| 5. | Special Management | Item 12 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

**Item 13: Condition Violators**:

Condition Violator Rule Applies?

1. ___ yes
2. ___ no

For the Condition Violator Rule to apply (condition violator assigned to minimum custody) questions 1, 2, 3 as listed below must be answered "yes" and questions 4, 5, 6 as listed below must be answered "no".

The computer will generate the response ("Yes" or "No") to the following questions:

1. ____ Is the inmate's most recent admission to prison for a post release supervision (PRS) violation with no new sentence (condition violator)?
2. ____ Was the inmate's custody at the time the most recent prior release medium or minimum custody?
3. ____ Is the inmate is within 90 days of their scheduled (projected) release.
4. ____ Is the inmate's current custody greater than medium custody based upon the application of the point-based classification items (Items 1-8)?
5. ____ Are any of the non-point-based categories 10.1 through 10.12 or is special management applicable?
6. ____ Is the inmate medium custody due to the application of Item 4: Escape or Item 6: Institutional Adjustment?

**Intent of the Item:**

KSA 75-5210(b) provides for the presumption of minimum custody for post release supervision violators who meet criteria set forth by the Secretary of Corrections. Such status shall apply only to the initial classification conducted upon the inmate's return to prison.

This item applies only to inmates returned to prison from post release supervision with no new sentence. This item does not apply to inmates serving indeterminate or off-grid sentences. A check for wants and warrants shall be conducted prior to placement in a minimum security living area. All other custody items shall be coded to ensure that the inmate's custody at the time of his or her prior release correctly reflected the inmate's level.

It is the responsibility of the staff member completing the custody record to review the "Transportation Memo" and "Statement of Charges" prepared by Field Services staff to ensure that all risk behaviors are considered prior to assigning the inmate to minimum custody.

**Item 14: Classification Exception Requested:**

Is an exception being requested?

1. ____ no
2. ____ yes
3. ____ grandfather

Requested Custody____________

Type of Exception Request:

a.___ Re-entry
b.___ KPB recommendation
c.___ Active member of Security Threat Group
d.___ General Security/Case Management

**Intent of Item**

This item identifies any exceptions sufficiently serious to warrant modification of the custody level. This item also enables the facility to recommend an exception to the inmate's custody classification to the Deputy Secretary.

**Coding Instructions**

If no exception is recommended "no" must be entered on the Custody Classification Record. If an exception is recommended a "yes" must be entered.

If yes is coded the "Classification Exception Form" (Attachment B) must be completed. The inmate's current location, name, KDOC #, and custody by classification by criteria will be generated by the computer.

The user must enter the custody that is being proposed on the exception and the type of exception.

The section titled "Reason for Recommendation" is a comment section to include any information not available in OMIS that supports the proposed custody classification.

Classification by Exception Form (Attachment B), the coding sheet and all necessary supporting documentation not in OMIS must be sent to the Central Office for the review and approval of the Deputy Secretary or designee. Following the review and decision by the Deputy Secretary or designee, the item as coded by facility personnel will be modified by the Central Office to reflect the decision made. Approval by the Deputy Secretary will be carried forward and automatically reflected on subsequent classification records. If the recommendation to assign a classification level lower than prescribed was approved, the case need not be reviewed by the Deputy Secretary at the time of subsequent reclassification, so long as there have been no changes to the classification record which result in a point total

(Item 9) increase, or an increase do a non-point based criteria (Item 10) or Special Management (item 11) and so long as no further decrease in custody level is requested. If there is an increase in point total in any subsequent reclassification, then the inmate security level shall revert to that prescribed by the criteria until another exception is approved by the Deputy Secretary.

Except as provided below, if the recommendation is for an exception to assign an inmate to a higher level of custody, (Attachment B) must be resubmitted at each subsequent reclassification for review by the Deputy Secretary.

When the approved exception is for an elevation in custody of an active validated member, the revision date on the exception shall be set for two years (24 months). The revision date shall be entered in the space provided.

**Grandfather Clause:**

If the inmate's custody is elevated solely due to the application of the new custody classification criteria, the staff member completing the assessment may request that the inmate be "grandfathered" into the custody level to which they were assigned prior to the application of the new criteria. Such exceptions may be approved authorized staff at the facility level.

**Item 15: Facility Custody/ Next Custody Due:**

This item indicates the custody level to be assigned to the inmate:

|  |  |  |
|---|---|---|
| 5. | Special Management | Item 11 |
| 6. | Maximum | 17+ |
| 7. | Medium High | 12 - 16 |
| 8. | Medium  Low | 11 -8 |
| 9. | Minimum | 7 - 0 |

If a recommendation for an exception is to a more restrictive custody level than prescribed by the criteria, the proposed new custody level shall be entered.

If a recommendation for an exception is to a less restrictive custody level than prescribed by the criteria, the custody level prescribed by the criteria shall be entered. Following action by the Deputy Secretary, the item will be modified by central office staff to indicate the custody level assigned.  In essence, no reduction in custody classification assignment shall be effective until approved by the Deputy Secretary.  An increase in custody level by exception shall be considered to be approved, unless an action to reverse the exception is taken by the Deputy Secretary.

The next custody due is the date of the next regularly scheduled review or the item revision date that would cause a change in the custody level. A revision date that will not change the custody level will not be used to determine when the next custody is due.

Attachment G, IMPP 11-119
Effective: 07/2007

**Sub-Exhibit 2**

# DISCIPLINARY REPORT

HUTCHINSON CORRECTIONAL FACILITY - CENTRAL
( FACILITY)

| Case No. 17-03-045 Date of Alleged Violation:3/5/2017 | Time:4:24 P.M. |
|---|---|
| Date This Report Written:3/6/2017 | Time:1:00 P.M. |

Name of Inmate: Makthepharak Sashada (LAST, FIRST, MI) No. 73697 Cell No: A1-140

Duty Assignment:Segregation

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 1) 44-12-211 (b): Telephone or Other Communication Devices, Class I. 2) 44-12-901 Dangerous Contrband CLI

3) 44-12-1001: Violation of Statutes, to wit, K.S.A. 21-5914: Traffic in Contraband in a Correctional Institution, Class I

FACTS:On 3/5/2017 during a mass shakedown, I Cpl. Carpenter was going to do a target search of C2 cell 105. Upon walking up to the cell, the cell house officer opened the door and I entered the cell and told inmate Makthepharak to stand up and turn to submit to restraints.He complied with my orders and would not stop looking at me directly in the face. I then had M/Sgt Steele escort inmate Makthepharak to segregation. I looked immediately on Makthepharak 's bunk and noticed a black samsung cell phone (not authorized by the Warden) on his pillow with it plugged in by way an altered MP3 player. I then collected the cellphone and the altered charger and turned it over to EAI for evidence.

G(211b) 45 DSEG 60 RES $20.00 FINE (CS) 1 MLGT (CS)
G (901) 30 DSEG 30 RES (CC)
G (1001/5914) 30 DSEG 30 RES (CC)

Staff Witnesses: M/Sgt Steele

(Attach Additional Sheet(s) if necessary)
(Signature) [signature]
D. Carpenter COI
Printed Name and Title of Employee Writing Report

9915

Approved by: [signature] CS II
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 3/6/17 *Signature* [signature]

I received a copy of this report on 3/7/17 (Date), 840 (Time), [signature] (Inmate Signature & No)

I served a copy of this report 3/7/17 (Date), 840 (Time), [signature] Smith CSI (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*



# DISPOSITION AND HEARING RECORD

INMATE NAME & NO: MAKTHEPHARAK SASHADA #73697

FACILITY: HCF

CASE NO: 17-03-045

HEARING:
DATE: 3/7/17

TIME: 840

CHARGING HCF

HEARING HCF

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 44-12-211b | I | ____ | ____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| Reason: INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| 44-12-901 | I | ____ | ____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| Reason: INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| 44-12-1001 | I | KAS 21-5914 | ____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| Reason: INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| ____ | - | ____ | ____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: ____ | | | | | |
| ____ | - | ____ | ____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: ____ | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☒ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☒ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason ____

Staff Assistant Assigned: ____

☐ Inmate Not Sworn In/Affirmed Explain ____

____

____

Inmate Testimony / Cross Examination (Attach Testimony)

INMATE NAME & NUMBER: MAKTHEPHARAK SASHADA #73697

☐ Witness(es) Sworn In/Affirmed

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)
If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 44-12-211 45 DSEG 60 RES $20.00 FINE (CS) 1 MLGT (CS) 44-12-901 30 DSEG 30 RES (CC)
44-12-1001/21-5914 30 DSEG 30 RES (CC)

Reason for Sanctions: AS PER 44-12-1301

Disposition of Evidence: SAMSUNG CELL PHONE AND ALTERED MP3 PLAYER
DESTROY EVIDENCE AFTER APPEAL/TIME EXPIRATIONS

☑ Inmate advised of right to Appeal, Have Inmate Initial [signature]

HEARING OFFICER SIGNATURE [signature] CST DATE 3/7/17

FINAL ACTION BY FACILITY WARDEN:

- ☒ APPROVED
- ☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
- ☐ AMEND THE CHARGE
- ☐ DISAPPROVE/DISMISS
- ☐ REDUCE THE PENALTY
- ☐ SUSPEND ALL OR PART OF SENTENCE
- ☐ REMAND NEW HEARING
- ☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments:

[signature]
WARDEN/DESIGNEE SIGNATURE — DATE 3/14/17

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

[signature]
INMATE SIGNATURE — DATE 4-17-17

I served a copy of the Hearing Record

[signature] M. L... CTS
STAFF SIGNATURE — DATE 4/17/17

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

# KANSAS DEPARTMENT OF CORRECTIONS
# HUTCHINSON CORRECTIONAL FACILITY
## INTERDEPARTMENTAL MEMORANDUM

Date: 03/07/17

To: Mr. Dan Schnurr
Warden, HCF

From: R. Smith CSI

Subject: Disciplinary Segregation 30 day limit

The Disciplinary office is requesting your approval to exceed the 30 day limit for Disciplinary Segregation, as per 44-12-1308b for the following individual:

Name: MAKTHEPHARAK SASHADA

Inmate Number: 73697

Case Number: 17-03-045

Total days to serve: 45DAYS FOR CELL PHONE

R Smith CSI
R. SMITH CSI

Dan Schnurr Warden-HCF (or designee)

Approved X Disapproved ________

PLEA OF: ☑ GUILTY ☐ NO CONTEST BY INMATE

CASE # 17-03-045

NAME: MAKTHEPHARAK SASHADA NUMBER: 73697

HEARING DATE: 3/7/17 HEARING OFFICER: CSI SMITH, CSII BROWN

RULE VIOLATION(S): 44-12-211b CL I 44-12-901 CL I 44-12-1001/21-5914 CL I

WAIVER:

(To be read to inmate)

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☒ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☒ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | [initials] |
| ☒ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703 (d) (1) (2) (3)? | [initials] |
| ☒ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | [initials] |
| ☒ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | [initials] |
| ☒ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | [initials] |
| ☒ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | [initials] |
| ☐ | ☒ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | [initials] |

[signature] Smith CSI — Hearing Officer Signature — Date: 3/7/17

X Makthepharak Sashada 73697 — Inmate Signature, Number — Date: 3/7/17

Attachment G, IMPP 11-119
Effective: 07/2007

# DISCIPLINARY REPORT

**Sub-Exhibit 3**

HUTCHINSON CORRECTIONAL FACILITY - CENTRAL
(FACILITY)

| | |
|---|---|
| Case No. 19-02-347 Date of Alleged Violation:02/25/2019 | Time:0915 A.M. |
| Date This Report Written:02/25/2019 | Time:0947 A.M. |

Name of Inmate: Makthepharak, Sashada No. 73697 Cell No: C1-233
LAST FIRST MI

Duty Assignment:PHD

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 44-12-901, Dangerous Contraband, Class 1

FACTS:On Feburary 25th 2019 at 0915 I was conducting a search of Inmate Makthepharak's (73697) cell, I noticed Cabinet was loss from the wall so I looked behind it and found a homemade stabbing device. I then took it up to EAI and submitted it to evidence, see picture attached. EOR.

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: ______ (Signature) [signature]

G. Jones COI
Printed Name and Title of Employee Writing Report

1400

Approved by: [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 2-25-19 *Signature* [signature]

I received a copy of this report on 2/26/19, 824, X [signature] 73697
(Date) (Time) (Inmate Signature & No)

I served a copy of this report 2/26/19, 824, CSI [signature]
(Date) (Time) (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

E2-112

# DISPOSITION AND HEARING RECORD

**INMATE NAME & NO:** MAKTHEPHARAK, SASHADA #73697

**FACILITY:** HCF

**CASE NO:** 19-02-347

**HEARING: DATE:** 03/07/19

**TIME:** 814AM

**CHARGING** HCF

**HEARING** HCF

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 44-12-901 | I | _____ | _____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐DISM. |
| Reason: INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| _____ | _ | _____ | _____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: ____________ | | | | | |
| _____ | _ | _____ | _____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: ____________ | | | | | |
| _____ | _ | _____ | _____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: ____________ | | | | | |
| _____ | _ | _____ | _____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: ____________ | | | | | |

☐ **Reporting Officer Sworn In / Affirmed** ☒ **Notarized Testimony Read into the Record**

**Staff Testimony / Cross Examination (Attach Testimony)**

☒ **Inmate Sworn in / Affirmed**

☐ **Hearing held Inabsentia** **Reason** ______

**Staff Assistant Assigned:** ______

☐ **Inmate Not Sworn In/Affirmed** **Explain** _____

_____

_____

**Inmate Testimony / Cross Examination (Attach Testimony)**

**INMATE NAME & NUMBER:** MAKTHEPHARAK, SASHADA #73697

☐ **Witness(es) Sworn In/Affirmed** ______ ______

______ ______ ______

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s): (Attach Arguments)**
**If applicable include inmate's testimony/ arguments on restitution**

**Sanction(s):** (44-12-901) 21 DSEG 45 RES (CC)

**Reason for Sanctions:** AS PER 44-12-1301

**Disposition of Evidence:** WEAPON DESTROY EVIDENCE AFTER APPEAL/TIME EXPIRATIONS

☑ **Inmate advised of right to Appeal, Have Inmate Initial** [signature]

**HEARING OFFICER SIGNATURE** [signature] **DATE** 03/07/19

**FINAL ACTION BY FACILITY WARDEN:**

☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

**Comments:** ______

[signature]
**WARDEN/DESIGNEE SIGNATURE** **DATE** 3/22/19

**I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.**

[signature] 73697 3-27-19
INMATE SIGNATURE DATE

**I served a copy of the Hearing Record**

[signature] CCI 3/27/19
STAFF SIGNATURE DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

# DISPOSITION OF DISCIPLINARY CASE

**INMATE NAME & NO.** MAKTHEPHARAK, SASHADA #73697 **CASE NO.** 19-02-347

## TESTIMONY

This is a summary of the disciplinary hearing and is not intended to be a transcript.

Inmate MAKTHEPHARAK was sworn in, the DR was read into the record, there wasn't a witness slip submitted. Inmate entered a plea as follows:

44-12-901 DANGEROUS CONTRABAND CLASS I GUILTY

The hearing officer presented a photograph of the evidence. Makthepharak entered a plea of guilt.

Inmate MAKTHEPHARAK had no further comments and did not request staff assistance.

BASED UPON THE PREPONDERANCE OF THE EVIDENCE IN WHICH THE EVIDENCE SUPPORTS THE CHARGE, IT IS MORE LIKELY THAN NOT, IN THE HEARING OFFICERS OPINION, TRUE THE INCIDENT DID HAPPEN AND THE FOLLOWING SANCTIONS WERE IMPOSED:

44-12-901 GUILTY 21 DSEG 45 RES (CC)

Attachment C, IMPP 11-119
Effective: 07/2007

# STAFF ASSISTANCE

| INMATE AND NUMBER: MAKTHEPHARAK, SASHADA #73697 | CASE NO: 19-02-347 |
|---|---|

The above-named inmate appeared before this Hearing Officer on the below date, and based on my personal observation and conversation with this inmate, I find that the inmate:

☐ IS ☒ IS NOT IN NEED OF STAFF ASSISTANCE IN ACCORDANCE WITH KAR 44-13-408.

If finding is that inmate is in need of staff assistance, specify the reason(s)

☐ The inmate incapable of self-representation due to physical or mental disability, whether temporary or permanent;

☐ The inmate is illiterate in the English language;

☐ The charge is too complex for the inmate to readily comprehend or defend against;

☐ There will be testimony or other evidence given either directly or indirectly, by a confidential inmate informant or witness;

☐ The inmate either refuses to attend, or has been removed from the hearing; or

☐ Any other circumstance exists that in the judgment of the hearing officer, substantially impairs the inmate's ability to participate meaningfully in the inmate's defense. Explain:

03/07/19
DATE

[signature]
HEARING OFFICER'S SIGNATURE

☐ I Waive Staff Assistance Inmate's Signature____________________

If the above box denoting the inmate REQUIRES assistance is checked, assistance shall be provided.

ASSISTED BY: ____________________

PLEA OF: ☒ GUILTY ☐ NO CONTEST BY INMATE

CASE # 19-02-347

NAME: MAKTHEPHARAK, SASHADA NUMBER: 73697

HEARING DATE: 3/7/19 HEARING OFFICER: CSI SIMON/ CSII BROWN

RULE VIOLATION(S): 44-12-901 CLI

**WAIVER:**

(To be read to inmate)
☑YES ☑ NO

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☒ | ☐ | 1. | Do you understand the charges against you? | |
| ☒ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | |
| ☒ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703 (d) (1) (2) (3)? | |
| ☒ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | |
| ☒ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | |
| ☒ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | |
| ☒ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | |
| ☐ | ☒ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | |

[signature] CSII — Hearing Officer Signature — Date: 3/7/19

X [signature] 73697 — Inmate Signature — Number — Date: 3-7-19



Attachment D1, IMPP 11-119
Effective 12-11-13

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: MAKTHEPHARAK, SASHADA (INMATE NAME) 73697 (NUMBER) DATE: 2/26/2019

HOUSING UNIT/CELL: C1-233

CASE NO. 19-02-347

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: TBA

DATE: 3/7/2019

LOCATION: TBA

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: X [signature]

STAFF SIGNATURE: CSI [signature]

SERVED: 2/26/19 (DATE) 824 (TIME)

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**STAFF WITNESS SUMMONS**

**TO:** COI JONES
STAFF NAME

**DATE:** 3/1/2019

**SHIFT:** 7-3

**CASE NO:** 19-02-347

**CHARGED INMATE:** MAKTHEPHARAK (**NAME**) 73697 (**NUMBER**)

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS WITNESS IN THE ABOVE REFERENCED CASE.

**TIME:** W/C

**DATE:** 03/07/2019

**LOCATION:** TBA

IF YOU ARE UNABLE TO ANSWER THIS SUMMONS DUE TO ILLNESS OR OTHER REASONS CONTACT THE DISCIPLINARY ADMINISTRATOR BY PHONE OR IN WRITING PRIOR TO YOUR SCHEDULED APPEARANCE.

**FAILURE TO ANSWER THIS SUMMONS MAY RESULT IN DISMISSAL OF CHARGES**

SIGNATURE OF STAFF WITNESS: ______________________ DATE: __________

SUPERVISOR SIGNATURE: ______________________ DATE: __________

SIGN THE ORIGINAL SUMMONS AND RETURN TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. KEEP THE COPY FOR YOUR RECORDS.

11-1
S/M
C30

Attachment B, IMPP 11-119
Effective: 12-11-13
P-1528

**Sub-Exhibit 4**

# DISCIPLINARY REPORT

HCF Central
(FACILITY)

| Case No. 19-05-311 | Date of Alleged Violation: 5-25-2019 | Time: 0105 A.M. / P.M. |
|---|---|---|
| Date This Report Written: 5-29-2019 | | Time: 0204 A.M. / P.M. |

Name of Inmate: Makthepharak (LAST) Sashada (FIRST) (MI) No. 73697 Cell No: C2-227

Duty Assignment: Voc Ed Am

**Alleged Violation of Law or Rule** *(Identify by Code No., Short Title, and Class)* 44-12-901, Dangerous Contraband, class I; 44-12-1001A-KSA21-5914; Trafficking contraband into a correctional facility, class I; 44-12-304, Disobeying orders, class I; 44-12-504, Interference w/cell operation and visibility, class I

FACTS: On the above date & approx time listed above, I, MSgt Mead & MSgt J Smith were in process of conducting a strikedown on I/M Makthepharak 73697. Makthepharak refused orders from MSgt Smith & I while taking a sheet to block visibility into his cell. After taking his sheet down & stepping out of his cell, I recovered a cell phone charger. (Photo Attached)

EOR

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: MSgt Smith, J

(Signature) [signature] CSI

S Mead CSI

9858

Printed Name and Title of Employee Writing Report

Approved by: [signature] CSII

(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 5-25-2019 *Signature* [signature] CSI

I received a copy of this report on 5/28/19 (Date), 847 (Time) [signature] (Inmate Signature & No)

I served a copy of this report 5/28/19 (Date) 847 (Time) [signature] CSI (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*



# DISPOSITION AND HEARING RECORD

**INMATE NAME & NO:** MAKTHEPHARAK, SASHADA #73697

**FACILITY:** HCF **CASE NO:** 19-05-311 **HEARING: DATE:** 06/05/19

**CHARGING** HCF

**TIME:** 648AM

**HEARING** HCF

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 44-12-901 | I | _____ | _____ | ☐G ☒N/G ☐NC | ☒G ☐N/G ☐DISM. |
| Reason: PREPONDERANCE OF THE EVIDENCE | | | | | |
| 44-12-1001A | I | 21-5914 | I | ☐G ☒N/G ☐NC | ☐G ☒N/G ☐DISM. |
| Reason: PREPONDERANCE OF THE EVIDENCE | | | | | |
| 44-12-304 | I | _____ | _____ | ☐G ☒N/G ☐NC | ☐G ☒N/G ☐DISM. |
| Reason: PREPONDERANCE OF THE EVIDENCE | | | | | |
| 44-12-504 | I | _____ | _____ | ☐G ☒N/G ☐NC | ☒G ☐N/G ☐DISM. |
| Reason: PREPONDERANCE OF THE EVIDENCE | | | | | |
| _____ | _ | _____ | _____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: ____________ | | | | | |

☒ **Reporting Officer Sworn In / Affirmed** ☒ **Notarized Testimony Read into the Record**

**Staff Testimony / Cross Examination (Attach Testimony)**

☒ **Inmate Sworn in / Affirmed**

☐ **Hearing held Inabsentia** **Reason** ______

**Staff Assistant Assigned:** ______

☐ **Inmate Not Sworn In/Affirmed** **Explain** _____

_____

_____

**Inmate Testimony / Cross Examination (Attach Testimony)**

**INMATE NAME & NUMBER:** MAKTHEPHARAK, SASHADA #73697

☒ **Witness(es) Sworn In/Affirmed** EDWARDS #50292

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s): (Attach Arguments)**
**If applicable include inmate's testimony/ arguments on restitution**

**Sanction(s):** (44-12-901) 30 DSEG (CC), (44-12-1001A/21-5914) NOT GUILTY, (44-12-304) NOT GUILTY, (44-12-504) $10 FINE (CS)

**Reason for Sanctions:** AS PER 44-12-1301

**Disposition of Evidence:** CELL PHONE CHARGER DESTROY EVIDENCE AFTER APPEAL/TIME EXPIRATIONS

☐ **Inmate advised of right to Appeal, Have Inmate Initial** ________

**HEARING OFFICER SIGNATURE** [signature] **DATE** 06/05/19

**FINAL ACTION BY FACILITY WARDEN:**
☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ **REDUCE TO SUMMARY JUDGMENT**
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

**Comments:** ________

[signature]
**WARDEN/DESIGNEE SIGNATURE** **DATE** 6/24/19

**I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.**

[signature]
INMATE SIGNATURE DATE 6-28-19

**I served a copy of the Hearing Record**

[signature]
STAFF SIGNATURE DATE 6/28/19

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

# DISPOSITION OF DISCIPLINARY CASE

**INMATE NAME & NO.** MAKTHEPHARAK, SASHADA #73697 **CASE NO.** 19-05-311

## TESTIMONY

This is a summary of the disciplinary hearing and is not intended to be a transcript.

Inmate MAKTHEPHARAK was sworn in, the DR was read into the record, there was a witness slip submitted. Inmate entered a plea as follows:

44-12-901 DANGEROUS CONTRABAND CLASS I NOT GUILTY
44-12-1001A VPO IAW KSA 21-5914 TRAFFICKING CONTRABAND IN A CORRECTIONAL FACILITY CLASS I NOT GUILTY
44-12-304 DISOBEYING ORDERS CLASS I NOT GUILTY
44-12-504 INTERFERENCE WITH CELL OPERATION & VISIBILITY CLASS I NOT GUILTY

MSG Mead was sworn in as the reporting officer. The hearing officer presented a photograph of the evidence. Inmate Edwards was sworn in as a witness. Makthepharak stated "It was in some legal mail that Edwards gave me. I didn't know it was in there." Edwards stated "I put that in some legal mail. He shouldn't get blamed for it. He didn't know it was there." Mead stated "I found it under his bed, plugged into a power strip." Makthepharak stated "You never gave me an order." Mead responded "Smith & I both gave you an order." Makthepharak replied "What order?" Mead responded "Get dressed & come out of your cell." That is the order we gave you. Then we told you we were going to shake you down." Mead stated "Then you closed the bed sheet and said you weren't coming out." Makthepharak replied "I don't know what you're talking about. I never got an order. I will plea to the 504, but not the rest. I got up & washed my face and got dressed. That was it."

Inmate MAKTEHPHARAK had no further comments and did not request staff assistance.

BASED UPON THE PREPONDERANCE OF THE EVIDENCE IN WHICH THE REPORTING OFFICER TESTIFIED THAT THE INMATE CLOSED THE BED SHEET OVER THE CELL AND THE PHONE CHARGER WAS FOUND UNDER THE BED, NOT INSIDE THE LEGAL WORK WHICH WOULD LEAD ANY REASONABLE PERSON TO BELIEVE THE INMATE KNEW OF THE CHARGER, IT IS MORE LIKELY THAN NOT, IN THE HEARING OFFICERS OPINION, TRUE THE INCIDENT DID HAPPEN AND THE FOLLOWING SANCTIONS WERE IMPOSED:

44-12-901 GUILTY 30 DSEG (CC)
44-12-1001A/21-5914 NOT GUILTY
44-12-304 NOT GUILTY
44-12-504 GUILTY $10 FINE (CS)

Attachment C, IMPP 11-119
Effective: 07/2007

# STAFF ASSISTANCE

| INMATE AND NUMBER: MAKTHEPHARAK, SASHADA #73697 | CASE NO: 19-05-311 |
|---|---|

The above-named inmate appeared before this Hearing Officer on the below date, and based on my personal observation and conversation with this inmate, I find that the inmate:

☐ IS ☒ IS NOT IN NEED OF STAFF ASSISTANCE IN ACCORDANCE WITH KAR 44-13-408.

If finding is that inmate is in need of staff assistance, specify the reason(s)

☐ The inmate incapable of self-representation due to physical or mental disability, whether temporary or permanent;

☐ The inmate is illiterate in the English language;

☐ The charge is too complex for the inmate to readily comprehend or defend against;

☐ There will be testimony or other evidence given either directly or indirectly, by a confidential inmate informant or witness;

☐ The inmate either refuses to attend, or has been removed from the hearing; or

☐ Any other circumstance exists that in the judgment of the hearing officer, substantially impairs the inmate's ability to participate meaningfully in the inmate's defense. Explain:

06/05/19
DATE

HEARING OFFICER'S SIGNATURE

☐ I Waive Staff Assistance Inmate's Signature ____________________

If the above box denoting the inmate REQUIRES assistance is checked, assistance shall be provided.

ASSISTED BY: ____________________

Attachment I, IMPP 11-119
Effective: 12-11-13

# ACKNOWLEDGMENTS/ INMATE WAIVER OF RIGHTS

| | |
|---|---|
| INMATE NAME: MAKTHEPHARAK SASHADA | CASE NO: 19-05-311 |
| NUMBER: 73697 | FACILITY: HCF |

## ACKNOWLEDGMENTS

- ☒ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.
- ☒ I submitted request for Witness Form within 48 hours after receipt of the Disciplinary report.
- ☒ I received at least 24 hour notice of the time of the hearing.
- ☐ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.
- ☒ I was advised as to the possible penalty involved with a plea or a finding of guilty.

## WAIVERS

☐ I Waive time limits or other procedure(s) as stated below: ☐ **Inmate's Initials**

Time limits Waiver or other procedure(s): ______________________

______________________

☐ I Waive reporting officer/reporting staff member testifying. Class I cases. ☐ **Inmate's Initials**

Inmate Signature: X [signature] No. 73697 Date: 6-5-19

Hearing Officer: [signature] CS II Date: 6/5/19

Attachment D1, IMPP 11-119
Effective 12-11-13

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: MAKTHEPHARAK SASHADA (INMATE NAME) 73697 (NUMBER) DATE: 5/28/2019

HOUSING UNIT/CELL: C2-227

CASE NO. 19-05-311

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: TBA

DATE: 6/5/2019

LOCATION: TBA

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: X [signature]

STAFF SIGNATURE: [signature] CSI

SERVED: 5/28/19 (DATE) 847 (TIME)

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**STAFF WITNESS SUMMONS**

**TO:** CSI MEAD (STAFF NAME) **DATE:** 6/3/2019

**SHIFT:** 11-7

**CASE NO:** 19-05-311

**CHARGED INMATE:** MAKTHEPHARAK (**NAME**) 73697 (**NUMBER**)

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS WITNESS IN THE ABOVE REFERENCED CASE.

**TIME:** W/C

**DATE:** 06/05/2019

**LOCATION:** TBA

IF YOU ARE UNABLE TO ANSWER THIS SUMMONS DUE TO ILLNESS OR OTHER REASONS CONTACT THE DISCIPLINARY ADMINISTRATOR BY PHONE OR IN WRITING PRIOR TO YOUR SCHEDULED APPEARANCE.

**FAILURE TO ANSWER THIS SUMMONS MAY RESULT IN DISMISSAL OF CHARGES**

SIGNATURE OF STAFF WITNESS: ______________________ DATE: __________

SUPERVISOR SIGNATURE: ______________________ DATE: __________

SIGN THE ORIGINAL SUMMONS AND RETURN TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. KEEP THE COPY FOR YOUR RECORDS.

**Inmate Name / No:** MAKTHEPHARAK SASHADA 73697
**Case No:** 19-05-311
**Facility:** HCF 6/5/2019

**INMATE REQUEST FOR WITNESS**

RECEIVED
MAY 30 2019
DISCIPLINARY

☐ I, ______, waive my right to request witness(es).

☒ I, MAKTHEPHARAK, SASHADA, request that the following person:

EDWARDS, DARRON (CJ-215) ☒ Inmate No: 50292 ☐ Staff

Title ______

The above named witness will testify as follows: MR. Edwards handed me the wrong legal envelope that hide the block charges. Because MR. Edwards was helping me with legal work and handed me a stack of papers in an envelope.

In lieu of personal appearance of witness,

☐ I hereby waive the above witness. [SM] Inmate's Initials ☐ see attached notarized witness testimony submitted: [ ] Inmate's Initials

Inmate Signed: [signature] Date: 5-29-19

Housing Unit Staff: [signature] Date: 29May19 Time: 1758

☒ Request Approved ☐ Request Disapproved Reason: (KAR 44-13-405a) ______

Signature: [signature] CSII Date: 6/4/19
Hearing Officer

INMATE REQUEST FOR WITNESS

☐ I, ______, waive my right to request witness(es).

☐ I, ______, request that the following person:

______ ☐ Inmate, No: ______ ☐ Staff

Title ______

The above named witness will testify as follows: ______

In lieu of personal appearance of witness,

☐ I hereby waive the above witness. [ ] Inmate's Initials ☐ see attached notarized witness testimony submitted: [ ] Inmate's Initials

Inmate Signed: ______ Date: ______

Housing Unit Staff: ______ Date: ______ Time: ______

☐ Request Approved ☐ Request Disapproved Reason: (KAR 44-13-405a) ______

Signature: ______ Date: ______
Hearing Officer

This form shall be completed and submitted to the Disciplinary Witness Box (or Housing Unit Staff, only if in segregation) within 48 hours of receipt of the Disciplinary Report .

TO:         Hearing Officer, Case No. 2019-05-311

FROM:      Darron Edwards #50292, C2 215

SUBJECT:   Witness statement by Darron Edwards

DATE:      Tuesday, May 29, 2019

Statement

I, Darron Edwards #50292, housed in C2-215, due swear upon my oath as follows:

1. I had unintentionally placed a cell phone battery charger in Mr. Makthepharak #73607 possession.

2. The battery charger was placed and stashed in my legal envelope, mixed with legal paper I provided to Mr. Makthepharak.

3. Mr. Makthepharak had no knowledge that I gave him the wrong envelope which contained my phone charges.

4. Mr. Makthepharak had no knowledge that I gave him the envelope which contained my phone charger.

5. Mr. Makthepharak should not be held responsible due to my negligence. I hope that my statement free an innocent inmate.

Respectfully submitted,

Darron Edwards

Darron Edwards #50292

# SHAKEDOWN & SEARCH REPORT

FROM: Officer Smith CSI / Mead CST Date 5/25/19

Time 0130 (am) pm

During my tour of duty this date I conducted a shakedown/search of the following cell / area. Listed below are the contraband found, etc.

Inmate's Name Makethepharak No. 73697 Cell No. 227

Living Unit C-2 Shop Voc Ed AM

| Items Seized | Disposition |
| --- | --- |
| cell phone USB charger | A |
| Nothing Else Taken | |

ELECTRONIC EQUIPMENT SEIZED

Make
Model
Serial No.
Color
Physical Description

DISPOSITION

Held For Evidence .......... A
Destroyed .......... B
Returned To Inmate .......... C
Other (explain) .......... D
Turned Over To Unit Team .......... E

J. Smith CSI / S. Mead CST
print name of staff person

[signature] CSI / [signature] CST
signature of staff person

White .......... Major/Intelligence & Investigation
Canary .......... Officer In Charge, Area Searched
Pink .......... Inmate - If Any Involved

P-118

05/25/2019

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 5

INMATE NAME & NO: Makthepharak, Sashada 73697

FACILITY LCF

CHARGING: LCF_Max

HEARING: LCF

CASE NO: 3208

HEARING DATE: 1/8/20

TIME: 1052

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 503 | II | | | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |

Reason: Reduced to SSC

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |

Reason:

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |

Reason:

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM |

Reason:

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |

Reason:

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason

Staff Assistant Assigned:

☐ Inmate Not Sworn In/Affirmed Explain

Inmate Testimony / Cross Examination (Attach Testimony)

Makthepharak, Sashada 73697 3208
A350

Page 2 of 3, Attachment L2, IMPP 11-119
Effective: 12-11-2013

☐ Witness(es) Sworn In/Affirmed ________ ________

________ ________ ________

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 503: 5$F c/s Imp

Reason for Sanctions: See Attached Waiver

Disposition of Evidence: N/A

☐ Inmate advised of right to Appeal, Have Inmate Initial ________

HEARING OFFICER SIGNATURE CSI [signature] DATE 1/8/20

FINAL ACTION BY FACILITY WARDEN:

- ☑ APPROVED
- ☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
- ☐ AMEND THE CHARGE
- ☐ DISAPPROVE/DISMISS
- ☐ REDUCE THE PENALTY
- ☐ SUSPEND ALL OR PART OF SENTENCE
- ☐ REMAND NEW HEARING
- ☐ CLARIFICATION OF RECORD

☒ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: 503: 5$F c/s Imp

[signature]
WARDEN/DESIGNEE SIGNATURE

1/9/2020
DATE

RECEIVED
JAN 15 2020
Lansing Correctional Facility
Disciplinary

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

[signature]
INMATE SIGNATURE

1-14-2020
DATE

I served a copy of the Hearing Record

[signature]
STAFF SIGNATURE

1-14-2020
DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**INMATE NAME/NUMBER:** **Makthepharak, Sashada 73697** **CASE NO. 3208**

ACKNOWLEDGMENTS

☐ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.

☐ I submitted request for Witness form within 48 hours after receipt of the Disciplinary report.

☐ I received at least 24 hour notice of the time of hearing.

☐ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.

☐ I was advised as to the possible penalty involved with a plea or a finding of guilty.

WAIVERS

☐ I waive time limits or other procedure(s) as stated below: Inmate's Initials ☐

Time limits Waiver or other procedure(s)________________________________________

☐ I waive reporting officer/reporting staff member testifying. Class I cases. Inmate's Initials ☐

Inmate Signature ________________________ No:________ Date:________

Hearing Officer: CSI K [signature] Date: 1/8/20

P-1528

Attachment G, IMPP 11-119
Effective: 07/2007

# DISCIPLINARY REPORT

LCF-Central
(FACILITY)

| | | |
|---|---|---|
| Case No. 3208 | Date of Alleged Violation: 12/24/19 | Time: 1930 A.M. / (P.M.) |
| Date This Report Written: | 12/24/19 | Time: 2010 A.M. (P.M.) |

Name of Inmate: Makthepharak (LAST) Sashada (FIRST) B (MI) No. 73697 Cell No: A2-350

Duty Assignment: UAA

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 44-12-503 Restricted Area (a) (CL 2)

FACTS: On the above date and approximate time, Reporting Officer was conducting an accountability check of A2-3 walk and noticed Inmate Makthepharak #73697 was not present in his cell. Inmate Makthepharak #73697 is assigned to red yard and was not on any callouts for the evening. Reporting Officer contacted the Max Yard office and notified the staff of Inmate Makthepharak's information. Shortly after Inmate Makthepharak was located on the Max Yard by COI McEvoy and sent back to the Unit. Inmate Makthepharak #73697 is in violation of 44-12-503 Restricted Area (a) a class two offense, for being present on an unassigned yard. - End of Report -

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: COI McEvoy

(Signature) [signature]

CSI R. Pohr K208957 S/S
Printed Name and Title of Employee Writing Report

Approved by: [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 12/24/19 *Signature* CSI R. [signature] Pohr

I received a copy of this report on ________ (Date), ________ (Time), Refused copy [illegible] (Inmate Signature & No)

I served a copy of this report 12-24-19 (Date), 2100 (Time), COI Heron (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

White - Disciplinary Yellow - Inmate Pink - Imaging

503:5$ F 9/s /mp

Attachment K, IMPP 11-119
Effective: 12-11-13
P-1528n

*Reduce to SSC **PLEA OF:** ☒ **GUILTY** ☐ **NO CONTEST BY INMATE** *Reduce to SSC

**CASE #** 3208

**NAME:** Makthepharak **NUMBER:** 73697

**HEARING DATE:** 1/8/20 **HEARING OFFICER:** CSI K[illegible]

**RULE VIOLATION(S):** 503

**WAIVER:**

(To be read to inmate)
☑ YES ☑ NO

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☑ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☑ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | [initials] |
| ☑ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703(d)(1)(2)(3)? | [initials] |
| ☑ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | [initials] |
| ☑ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | [initials] |
| ☑ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | [initials] |
| ☑ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | [initials] |
| ☐ | ☑ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | [initials] |

CSI K[illegible] — 1/8/20
Hearing Officer/Unit Manager Signature — Date

[signature] 73697 — 1/8/20
Inmate Signature — Number — Date

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada — INMATE NAME
NUMBER: 73697
DATE: December 27, 2019

HOUSING UNIT/CELL: A350

CASE NO. 3208

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 6:00 a.m. or when called.

DATE: **TUESDAY 12/31/2019**

LOCATION: Max Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: [signature]

STAFF SIGNATURE: [signature]

SERVED: 12/27/19 (DATE) 2004 (TIME)

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada 73697 DATE: January 6, 2020
INMATE NAME NUMBER

HOUSING UNIT/CELL: A350

CASE NO. 3208

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 6:00 a.m. or when called.

DATE: **WEDNESDAY 1/8/2020**

LOCATION: Max Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: [signature]

STAFF SIGNATURE: CSI Barnett

SERVED: 01-06-2020 2146
DATE TIME

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 6

INMATE NAME & NO: Makthepharak, Sashada 73697

FACILITY LCF

CHARGING LCF_Ma

HEARING LCF

CASE NO: 4548

HEARING DATE: 3/12/2020

TIME: 1120

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 504 | I | | | ☐G ☑N/G ☐NC | ☑G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason

Staff Assistant Assigned:

☐ Inmate Not Sworn In/Affirmed Explain

Inmate Testimony / Cross Examination (Attach Testimony)

Max THU1 0600

SM

Makthepharak, Sashada 73697 4548
A350

☐ Witness(es) Sworn In/Affirmed

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 504! 30+/12 dls L82

Reason for Sanctions: See attached Notes

Disposition of Evidence: N/A

☑ Inmate advised of right to Appeal, Have Inmate Initial SM

HEARING OFFICER SIGNATURE [signature] DATE 3/12/2020

FINAL ACTION BY FACILITY WARDEN:

☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: [signature]

WARDEN/DESIGNEE SIGNATURE

DATE 4/15/2020

RECEIVED
MAY - 1 2020
Lansing Correctional Facility
Disciplinary

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

INMATE SIGNATURE [signature] DATE 4-30-20

I served a copy of the Hearing Record

STAFF SIGNATURE [signature] DATE 4.30.20

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**INMATE NAME/NUMBER: Makthepharak, Sashada 73697 CASE NO. 4548**

## ACKNOWLEDGMENTS

☒ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report. yes

☒ I submitted request for Witness form within 48 hours after receipt of the Disciplinary report. yes

☒ I received at least 24 hour notice of the time of hearing. yes

☒ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value. N/A

☒ I was advised as to the possible penalty involved with a plea or a finding of guilty. yes

## WAIVERS

☐ I waive time limits or other procedure(s) as stated below: Inmate's Initials

Time limits Waiver or other procedure(s)________________

☐ I waive reporting officer/reporting staff member testifying. Class I cases. Inmate's Initials

Inmate Signature [signature] No: 73697 Date: 3/12/2020

Hearing Officer: [signature] Date: 3/12/2020

Attachment B, IMPP 11-119
Effective: 12-11-13
P-1528

# DISCIPLINARY REPORT

LCF-C
(FACILITY)

Case No. 4548 Date of Alleged Violation: 3/7/20 Time: 0645 A.M. / P.M.

Date This Report Written: 3/7/2020 Time: 10:30 A.M. / P.M.

Name of Inmate: Makthepharak Sashada (LAST, FIRST, MI) No. 73697 Cell No: A350

Duty Assignment: Unit A Porter

Alleged Violation of Law or Rule (*Identify by Code No., Short Title, and Class*) 44-12-304-Interference with cell operation - class I

FACTS: On the above date and approximate time while performing a security check, I observed a light in my lock box that indicates that a door is not secured. I walked down to A350, where offender Makthepharak #73697 lives. I pull on the door to see if it was secure. The door opened to reveal a soda bottle cap taped on the inner portion of the door to stop the door from securing. This is the third time that I have taken things out of this offenders door.
E.O.R.

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: (Signature) [signature] SUN/MON

CSI Thorpe
Printed Name and Title of Employee Writing Report

Approved by: Lt. [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 3/7/2020 *Signature* [signature]

I received a copy of this report on 03/07/20 (Date), 1930 (Time), [signature] (Inmate Signature & No)

I served a copy of this report 03/07/20 (Date) 1930 (Time), CO1 Holloway (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

Attachment C, IMPP 11-119
Effective: 12-11-13
P-1528m

Inmate Name / No: MAKTHEPHARAK, CASHADA 73697 Case No: 4548 Facility: L.C.F.

INMATE REQUEST FOR WITNESS

☐ I, ______, waive my right to request witness(es).

☒ I, Makthepharak, Cashada, request that the following person: 115091 C224

Lance Todd (A2 321) ☒ Inmate No: ~~115019~~ ☐ Staff

Title ______

The above named witness will testify as follows: Mr. Todd put a Bottle cap on my door during H.S. and never told me he put it there, Because I was in the shower at night Because I'm a porter who showers late.

In lieu of personal appearance of witness,

☐ I hereby waive the above witness. SM Inmate's Initials ☐ see attached notarized witness testimony submitted: SM Inmate's Initials

Inmate Signed: Makthepharak Cashada Date: 3-8-20

Housing Unit Staff: Cory T Gay Date: 3/8/20 Time: 21:47 pm

☒ Request Approved ☐ Request Disapproved Reason: (KAR 44-13-405a) ______

Signature: [signature] Date: 3/12/2020
Hearing Officer

This form shall be completed and submitted to the Housing Unit Staff within 48 hours of receipt of the Disciplinary Report.

INMATE REQUEST FOR WITNESS

RECEIVED
MAR - 9 2020
Lansing Correctional Facility
Disciplinary

☐ I, ______, waive my right to request witness(es).

☐ I, ______, request that the following person:

______ ☐ Inmate, No: ______ ☐ Staff

Title ______

The above named witness will testify as follows: ______

In lieu of personal appearance of witness,

☐ I hereby waive the above witness. ☐ Inmate's Initials ☐ see attached notarized witness testimony submitted: ☐ Inmate's Initials

Inmate Signed: ______ Date: ______

Housing Unit Staff: ______ Date: ______ Time: ______

☐ Request Approved ☐ Request Disapproved Reason: (KAR 44-13-405a) ______

Signature: ______ Date: ______
Hearing Officer

This form shall be completed and submitted to the Housing Unit Staff within 48 hours of receipt of the Disciplinary Report.

Makthepaharak#73697
Case # 4548
R/O: CSI Thorpe
H/O: CSI Hunt
Date: March 12, 2020
Time: 1120

## TESTIMONY

I/M has not submitted any request for dismissal. The offender hasn't made any requests for dismissal or witness requests at the time of the hearing.

I/M advised of and understands the charges against him.

Witness forms submitted within 48 hours of the receipt of the disciplinary report, See attached witness forms for approval/denial and the reasons why.

I/M entered a plea of not guilty.

DR read into records.

R/O and I/M sworn in.

H/O to R/O: Do you have anything to add to your case or clarify at this time?
R/O: No.

R/O to I/M: Nothing further.

I/M to R/O: Nothing further.

H/O to R/O: This was found taped to the cell door keeping it from securing properly?
R/O to H/O: Yes
H/O to R/O: Nothing further.

H/O to I/M: Did you place this bottle cap in your cell door keeping it from securing properly?
I/M to H/O: No
H/O to I/M: Nothing further.

I/M closing statements: Nothing further

R/O closing statements: Nothing further

Hearing officer finds relevance in calling inmate Todd#115091 and is sworn in and the report read back into the record.

H/O to Wit: Did you place this item in inmate Makthepharak#73697 cell door?

Makthepaharak#73697
Case # 4548
R/O: CSI Thorpe
H/O: CSI Hunt
Date: March 12, 2020
Time: 1120

---

      Wit to H/O: Yes, I came out at HS and saw that he was his cell door, he didn't know it was in there.
H/O to Wit: What time did you do that?
      Wit to H/O: The night prior, I'm not sure what time they called HS.
Nothing further

The hearing officer viewed the video evidence that inmate Makthepharak verbally requested to be viewed which does not at any time show inmate Todd#115091 ever pl ace anything in the cell door of Makthepharak. This was advised to inmate Makthepharak.

Findings: Based on the provided testimony, report, and evidence concerning the violation of KAR 44-12-504 Interference with cell visibility/operation it is more likely true than not that inmate Makthepharak#73697 is guilty of the violation listed based on the testimony of the reporting officer stating that he found this bottle cap taped to the cell door track of inmate Makthepharak causing it not to secure.

Sanctions:     504-30 P/R S/S 180

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada 73697 DATE: March 10, 2020
INMATE NAME NUMBER

HOUSING UNIT/CELL: A350

CASE NO. 4548

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 6:00 a.m. or when called.

DATE: **THURSDAY 3/12/2020**

LOCATION: Max Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: [signature]

STAFF SIGNATURE: Miller

SERVED: 3-10-20
DATE TIME

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 7

INMATE NAME & NO: Makthepharak, Sashada 73697

FACILITY LCF

CHARGING: LCF_Max

HEARING: LCF

CASE NO: 1525

HEARING DATE: 11/12/2020

TIME: 0855

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 901 | I | | | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason_______________

Staff Assistant Assigned: _______________

☐ Inmate Not Sworn In/Affirmed Explain_______________

Inmate Testimony / Cross Examination (Attach Testimony)

Max FRI1 1400

SS

Makthepharak, Sashada 73697 1525
A3239

☐ Witness(es) Sworn In/Affirmed

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 90 RC 10 ₺ F 7s Emp

Reason for Sanctions: Sig a Haelterl Waiver

Disposition of Evidence: Dispose per KML

☐ Inmate advised of right to Appeal, Have Inmate Initial ____________

HEARING OFFICER SIGNATURE [signature] DATE 11/12/2020

FINAL ACTION BY FACILITY WARDEN:

☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

RECEIVED
NOV 30 2020
Lansing Correctional Facility
Disciplinary

Comments:

[signature]
WARDEN/DESIGNEE SIGNATURE

11/17/20
DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

[signature]
INMATE SIGNATURE

11-25-20
DATE

I served a copy of the Hearing Record

CCI Hall
STAFF SIGNATURE

11/25/2020
DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**INMATE NAME/NUMBER:** **Makthepharak, Sashada 73697** **CASE NO. 1525**

## ACKNOWLEDGMENTS

- ☐ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.
- ☐ I submitted request for Witness form within 48 hours after receipt of the Disciplinary report.
- ☐ I received at least 24 hour notice of the time of hearing.
- ☐ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.
- ☐ I was advised as to the possible penalty involved with a plea or a finding of guilty.

## WAIVERS

☐ I waive time limits or other procedure(s) as stated below: Inmate's Initials ☐

Time limits Waiver or other procedure(s)____________________

☐ I waive reporting officer/reporting staff member testifying. Class I cases. Inmate's Initials ☐

Inmate Signature __________ No:________ Date:________

Hearing Officer: [signature] Date: 11/12/2020

Attachment B, IMPP 11-119
Effective: 12-11-13

**DISCIPLINARY REPORT**

LCF-C
(FACILITY)

Case No. 1525 Date of Alleged Violation: 11/02/2020 Time: 1700 A.M. / P.M. (P.M. marked)

Date This Report Written: 11/02/2020 Time: 1817 A.M. / P.M. (P.M. marked)

Name of Inmate: Makthepharak, Saahada (LAST, FIRST, MI) No. 73697 Cell No: A3 # 239

Duty Assignment: Unit A Porter

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 44-12-901 Dangerous Contraband Class1

FACTS: On the above date and time, I, CO II Summers was doing an accountability check. I walked up to cell A3 #239, I heard a buzzing sound coming from the room. The window was covered up. I knocked on the winodw with the keys. Inmate Makthepharak #73697, was on the bed. Makthepharak #73697 was trying to hide things on his bed. I asked for him and his cell mate to come out of the cell. I asked for the AOIC to come to A3 #239. After coming to the cell, a search was performed on the bottom bunk area. There were several items recovered from that area.
I recovered a spoon with ink in it, 2 needles, an altered plug, brand knew tube of triple antibiotc ointment. an altered pin with a tool at the end of it. and several wires. Inmate Makthepharak #73697 is in direct violation of 44-12-901 Dangerous contraband class 1.------EOR

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: CO I Wagner 1400-2200 F/S

(Signature) Coll Summers
CO II Summers 1400-2200 S/S
Printed Name and Title of Employee Writing Report

Approved by: [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 11-02-2020 *Signature* Coll Summers

I received a copy of this report on 11/2/20 (Date), 1950 (Time), [signature] (Inmate Signature & No)

I served a copy of this report 11/2/20 (Date), 1950 (Time), [signature] (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

901: 10 # F% IM

Attachment K, IMPP 11-119
Effective: 12-11-13
P-1528n

PLEA OF: ☒ GUILTY ☐ NO CONTEST BY INMATE

CASE # 1525

NAME: [handwritten name] NUMBER: 73697

HEARING DATE: 11/12/2020 HEARING OFFICER: [signature]

RULE VIOLATION(S): 901

WAIVER:

(To be read to inmate)

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☑ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☑ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | [initials] |
| ☑ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703(d)(1)(2)(3)? | [initials] |
| ☑ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | [initials] |
| ☑ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | [initials] |
| ☑ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | [initials] |
| ☑ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | [initials] |
| ☐ | ☑ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | [initials] |

[signature] 11/12/2020

Hearing Officer/Unit Manager Signature Date

[signature] 11/12/2020

Inmate Signature Number Date

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada — INMATE NAME
NUMBER: 73697
DATE: November 10, 2020

HOUSING UNIT/CELL: A3239

CASE NO. 1525

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 7:30 a.m. or when called.

DATE: **THURSDAY 11/12/2020**

LOCATION: A3 Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: [signature] 11-12-20

STAFF SIGNATURE: CO1 Wagner

SERVED: 11-10-2020 (DATE) 1522 (TIME)

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

P-1528a

Attachment B, IMPP 11-119
Effective: 07/2007

## CONTINUANCE/RECESS LOG

Inmate Name: Makthepharak No: 73697 Case No: 1525

Facility: LCF

| Inmate Request | Staff Request | SOC Extension | Date | 30 Day Review | Reason | Initial |
|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | 11-4-20 | ☐ | Lockdown | [illegible] |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| RECESS | | | | | | |
| RECESS | | | | | | |

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 8

**INMATE NAME & NO:** Makthepharak, Sashada 73697

**FACILITY** LCF

**CHARGING** LCF_seg

**HEARING** LCF

**CASE NO:** 1294

**HEARING DATE:** 10/6/21

**TIME:** 1115

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 901 | I | | | ☐G ☐N/G ☒NC | ☒G ☐N/G ☒DISM. |
| Reason: Dismissed due to duplicative of 211B | | | | | |
| 211B | I | | | ☒G ☐N/G ☒NC | ☒G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason ______

Staff Assistant Assigned: ______

☐ Inmate Not Sworn In/Affirmed Explain ______

Inmate Testimony / Cross Examination (Attach Testimony)

seg MON1 0730 SS

Makthepharak, Sashada 73697 1294
A4122

Page 2 of 3, Attachment L2, IMPP 11-119
Effective: 12-11-2013

☐ Witness(es) Sworn In/Affirmed ____________ ____________

____________ ____________ ____________

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 901: Dismiss due to duplicative of 211
211: 45 D/S 5/5/80, 60 P/R 4/5 Imp, 20 $F 4/5 Imp

Reason for Sanctions: See attached waiver

Disposition of Evidence: Dispose Per KAR

☐ Inmate advised of right to Appeal, Have Inmate Initial ____________

HEARING OFFICER SIGNATURE ____________ DATE 10/10/21

FINAL ACTION BY FACILITY WARDEN:

☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: ____________

WARDEN/DESIGNEE SIGNATURE

DATE 10/20/21

RECEIVED
OCT 25 2021
Lansing Correctional Facility
Disciplinary

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

Makthepharak, Sashada
INMATE SIGNATURE

DATE

I served a copy of the Hearing Record

CCI
STAFF SIGNATURE

10/22/2021
DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**INMATE NAME/NUMBER: Makthepharak, Sashada 73697 CASE NO. 1294**

## ACKNOWLEDGMENTS

☐ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.

☐ I submitted request for Witness form within 48 hours after receipt of the Disciplinary report.

☐ I received at least 24 hour notice of the time of hearing.

☐ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.

☐ I was advised as to the possible penalty involved with a plea or a finding of guilty.

## WAIVERS

☐ I waive time limits or other procedure(s) as stated below: Inmate's Initials ☐

Time limits Waiver or other procedure(s)____________________

☐ I waive reporting officer/reporting staff member testifying. Class I cases. Inmate's Initials ☐

Inmate Signature __________ No:________ Date:________

Hearing Officer: [signature] Date: 10/6/21

Attachment B, IMPP 11-119
Effective: 12-11-13

# DISCIPLINARY REPORT

LCF-C
(FACILITY)

| | |
|---|---|
| Case No. 1294 Date of Alleged Violation: 09/27/2021 | Time: 0835 A.M. / P.M. |
| Date This Report Written: 09/27/2021 | Time: 1130 A.M. / P.M. |

Name of Inmate: Makthepharak (LAST) Sashada (FIRST) (MI) No. 73697 Cell No: A4-122

Duty Assignment: UAA

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 44-12-901 ,Dangerous contraband,Class I, 44-12-211.B Telephones or other communication deviices. Class I,

FACTS: On the above date and time, CO1 M.Bellar and myself conducted a search of A3-239 where offenders Makthepharak 73697 & Louis 106652 reside. During this search 4 cleartune televisions were recovered, the televisions had seals and markings that were indicative of being tamperd with. The offender we spoke with could not explain why there 4 televisions with only 2 offenders living in the cell. I explained that we would take the televisions at this time and have the numbers cross-referenced with the property department to determine the rightful oweners . Before taking the televisions to property CO1 Bellar and myself ran the televisions through an x-ray machine to make sure the items had not been tampered with. The x-ray machine highlighted areas inside the televisions, indicating cell phones were present internally. The 4 televisions were taken apart, with all 4 having altered compartments made to hold cell phones. 3 of the 4 televisions contained cellphones inside ( 2 Galaxy S10 cell phones and 1 LG cell phone). Three cell phone adaptors were also found on offender Makthepharak during the initial entry of cell A3-239. These items along with the altering of the televisions places both Offenders in violation of 44-12-901 and 44-12-211B.

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: Co1 M. Bellar

(Signature) [signature]
Daniel E East CSII
Printed Name and Title of Employee Writing Report

Approved by: [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 9-27-2021 *Signature* CSII [signature]

I received a copy of this report on 9/28/21 (Date), 0952 (Time), I/M refused to sign, copy given (Inmate Signature & No)

I served a copy of this report 9/28/21 (Date) 0952 (Time), COI [signature] (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

SASHADA MAKTHEPARK
#73697 L.C.F.
P.O. BOX 2
LANSING KS 67043

FOREVER / USA

OUTGOING
10/03/2021

1545

64145

RECEIVED

OCT 05 2021

Lansing Correctional Facility
Disciplinary

RECEIVED

Lansing Correctional Facility
Disciplinary

HEY BABY GIRL, Im SURE BY THE you READ this. Im IN THE Hole FOR THE PHONE. Im A little BUTT HURT THAT I CAN'T talk to You 24-7. THINGS WERE getting A LOT BETTER BETWEEN US, I LOVE YOU BABY. Im IN THE HOLE with STEVE. HE'S TRYING to TAKE the Full RESPONSIBILITY FOR the PHONES, But I DON'T think They'll LET US. WE Lost OUR T.V.s, SO I'll HAVE to ORDER ANOTHER ONE. ON top OF that, WE CAN NEVER USE that SPOT AGAIN. So its Pointless to get ANOTHER. Im mostly Bummed Bout Losing my school classes. I was Hopeful that I Finished that. But I was Already well aware of the consequenses of Having the phone. I Have spoken to you Bout How soo many other people was using the same spot. On the bright side, Hopefully me And Steve only Down here for two weeks.. In the meantime, set-up the I.C. solution video visit. Steve said you can do it everyday. So I can still see you everyday. I Love You and miss you Baby. I sit in this bare cell, and you're all I think about. Don't worry that I got caught with a phone and it'll look bad in front of parole. I got plenty of time to work on myself. And more so that we have a lawyer willing to file paperwork for us.. As far as business, if your cousin wants to continue. He'll Have to talk to you, And you'll Have to talk to my Dad. Your Cousin owes 4500 And Drew suppose to give my Dad 1600. I need you to call Drew and make sure he already gave it to my Dad. Your Cousin can send it to you and I'll tell you wassup when I talk to you again. On the stuff coming from China: you can turn

it on [illegible] you'll figure out how to charge up that big ass battery. It's a special way you have to charge it. But in the meantime, plug it up and figure it out. I want you familiarize with it by the time I can call you. I'm not sure if we'll ever do anything with it. Which is fine with me. I can either sell it or save it for me when I come home and I'll play with it. LoL. Enough bout business. I fucking miss you baby. Just thinking bout you, makes me know I'll only choose you. No sexy pretty bitch can tell me shit when it comes to you. I'll be by your side every single day. These many years I have to be in prison, hurts me. Because I know I can show you everything I'm telling you bout. Because I'm the type of nigga to do what he says. I know I can be and will be a good man to you. And I know you'll be the same for me. I'm sorry you can't have me home. I'm sorry that you have to grow old with me in here. But the bright side is, we're both fighting hard to get me home early. I know we are going to be a great team together. We going to be fucking good and living good.. You only throw a tantrum because that's the only thing you're allowed to do. Because if I was home, you wouldn't have reasons to fight with me because I'll be everything you ever wanted. As I sit here with my thoughts. All I think about is how good I am going to be to you. There's hundreds of couples that holds their man down for years, even ten years. I'm afraid to go any where else, I don't want to be with another woman. It really scares the shit out of me if I'm not with you. I'm at the point where I will kill myself if we couldn't be together. But let's not think about

THAT PART, I LOVE you and I'm dedicated to you, all I wanna do is escape this place and be with you. I sit here, thinking I'm the worst and best man to you. There's soo many years left to do of this. And I'm soo sorry. I will forever be dedicated to be the best man I can be to you. I hate that it's soo long. I want our lawyer working more on what action they plan on filing. So it can give us higher hopes. Because I'm anxious to show you I'm everything you ever dreamed of in a man. That we're gonna live out our lives together. I'm soo determined to make us together forever. Thank you for loving me baby. I owe you a lot. There's a lot more I wanna show you. How I'm caring and loving in-person. I can tell you how I am, but its nothing like you seeing it for yourself. Just like when you was asking questions to Boker about me. You was getting proof of exactly how I am. There's no half-steps in who the fuck I am. I am determined to be loyal and faithful to you. I'm even going to go a step beyond that, and give you my mind body and soul. I don't want to move or think if it isn't about you. So from this day forward baby, my mind body and soul has to go through you. I will for now on call only you for my every needs. I will definitely start showing you, that I will only come to you for my every needs. There's a lot more I have to explain to you once I get out of the hole. But we're going to set it up to where you're my only option. I'm giving you my every thing because I trust you. I know you'll take care of my every needs. I love you again baby. Hopefully

STEVE ... VIDEO visit... Today is Wednesday and they said I don't have any visit. I want to see you everyday. My heart belongs to you and it hurts not being able to see and talk to you. I look at your pictures everyday and admire how beautiful you are and more admirable because how beautiful you are from the inside. You're not hard or difficult to love at all. It just takes a certain type of man to handle you. And I'm the perfect man for you. And you're the only perfect woman for me. I love to love and you're the only and exact person I wanna love. thank you for existing in my life baby. It's going to be a couple months before I'll be able to call with you everynight. And if I'm kicked out of school. I'll have all my time to you. Me and Steve sitting here wondering why we got hit. And we're working on to never get hit again. Someone ratted me out, but we not sure who and why. But that just gives me more reasons not to deal with anyone and stay more focus on being with you. I'm taking this as a lesson and turning it into a blessing. Because it allowes me to find a new spot and not deal with MFERS that might snitch me out. The only bum thing is, me getting kicked out of school. But there's more opportunities down the road. I got a multi millionaire mindset that goes beyond what any school can teach me. And all my mind has to offer, belongs to you. This is a short letter because I want to hurry and get it out. I only have 4 stamps and I'll write again as soon as I get a letter from you. I love you puppy. Daddy going to take good care of baby, always and forever.

Love Daddy.

901: DM
211:45 D/S 3/5 160 P/R C/S Imp, 20$ F S/S Imp

Attachment K, IMPP 11-119
Effective: 12-11-13
P-1528n

PLEA OF: ☐ GUILTY ☒ NO CONTEST BY INMATE

CASE # 1294

NAME: Mak thepharak NUMBER: 73697

HEARING DATE: 10/6/21 HEARING OFFICER: Goodman

RULE VIOLATION(S): 901

**WAIVER:**

(To be read to inmate)

☑ YES ☑ NO

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☑ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☑ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | [initials] |
| ☑ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703(d)(1)(2)(3)? | [initials] |
| ☑ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | [initials] |
| ☑ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | [initials] |
| ☑ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | [initials] |
| ☑ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | [initials] |
| ☐ | ☑ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | [initials] |

[signature]
Hearing Officer/Unit Manager Signature — Date: 10/6/21

[signature] 73697 — 10-6-21
Inmate Signature — Number — Date

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada (INMATE NAME) NUMBER 73697 DATE: October 4, 2021

HOUSING UNIT/CELL: A3228

CASE NO. 1294

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 7:30 a.m. or when called.

DATE: **WEDNESDAY 10/6/2021**

LOCATION: A3 Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: Refused to sign, copy given

STAFF SIGNATURE: COI McCarter

SERVED: Oct 05, 2021 (DATE) 0252 (TIME)

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

P-1528a

Attachment B, IMPP 11-119
Effective: 07/2007

# CONTINUANCE/RECESS LOG

Inmate Name: Makthepharak    No: 73697    Case No: 1244

Facility: LCF-C

| Inmate Request | Staff Request | SOC Extension | Date | 30 Day Review | Reason | Initial |
|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | 10/4/21 | ☐ | Facility Lockdown | [initials] |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| ☐ | ☐ | ☐ | | ☐ | | |
| RECESS | | | | | | |
| RECESS | | | | | | |

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 9

**INMATE NAME & NO:** Makthepharak, Sashada 73697

**FACILITY** LCF

**CHARGING** LCF_Med

**HEARING** LCF

**CASE NO:** 0637

**HEARING DATE:** 8-30-23

**TIME:** 1328

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 211B | I | | | ☐G ☐N/G ☑NC | ☑G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐DISM. |
| Reason: | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Inmate Sworn in / Affirmed

☐ Hearing held Inabsentia Reason__________

Staff Assistant Assigned:__________

☐ Inmate Not Sworn In/Affirmed Explain__________

Inmate Testimony / Cross Examination (Attach Testimony)

Med WED2 1000 SMT

Makthepharak, Sashada 73697 0637
B1219

☐ Witness(es) Sworn In/Affirmed

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): 21b! 5$ F C/S Imp

Reason for Sanctions: See Attached Waiver

Disposition of Evidence: Dispose per KAR

☐ Inmate advised of right to Appeal, Have Inmate Initial ______

HEARING OFFICER SIGNATURE [signature] DATE 8-30-23

FINAL ACTION BY FACILITY WARDEN:

- ☒ APPROVED
- ☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
- ☐ AMEND THE CHARGE
- ☐ DISAPPROVE/DISMISS
- ☐ REDUCE THE PENALTY
- ☐ SUSPEND ALL OR PART OF SENTENCE
- ☐ REMAND NEW HEARING
- ☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

JUL - 9 2024

Comments: ______

[signature] WARDEN/DESIGNEE SIGNATURE

SEP 07 2023 DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

[signature] INMATE SIGNATURE

6/24/2024 DATE

I served a copy of the Hearing Record

[signature] STAFF SIGNATURE

6/24/2024 DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**INMATE NAME/NUMBER: Makthepharak, Sashada 73697 CASE NO. 0637**

## ACKNOWLEDGMENTS

☐ I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.

☐ I submitted request for Witness form within 48 hours after receipt of the Disciplinary report.

☐ I received at least 24 hour notice of the time of hearing.

☐ I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.

☐ I was advised as to the possible penalty involved with a plea or a finding of guilty.

## WAIVERS

☐ I waive time limits or other procedure(s) as stated below: Inmate's Initials ☐

Time limits Waiver or other procedure(s)____________________

☐ I waive reporting officer/reporting staff member testifying. Class I cases. Inmate's Initials ☐

Inmate Signature ______________ No:________ Date:________

Hearing Officer: CSI [signature] Date: 8-30-23

Attachment G, IMPP 11-119
Effective: 10-15-07

# DISCIPLINARY REPORT

Lansing Correctional Facility
(FACILITY)

| Case No. 0637 | Date of Alleged Violation: 8/26/2023 | Time: 2040 | A.M. / P.M. |
|---|---|---|---|
| Date This Report Written: | 8/26/2023 | Time: 2155 | A.M. / P.M. |

Name of Inmate: Makthepharak (LAST) Sashada (FIRST) ____ (MI) No. 73697 Cell No: B1-219

Duty Assignment: Lay-In

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) 44-12-211 (b) Telephones or Other Communications Device. Class I

FACTS: On above date and approximate I, COII Trapp and SST entered B1-219 to conduct a search. Strip searches were completed and both inmates were sent to the day room. While searching a box in the middle of the cell and on the floor I discovered a make shift area on the bottom of the box. When I opened it up I discovered 2 smartphones being stored in this small area. 1 being a blue Samsung A10 and the other being a blue Motorolla. Both items confiscated and sent to evidence.

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: COI Custer, COI Sandridge, COI Andich, COI Merrifield, CSII Jaworski

(Signature) [signature]

COII Trapp SST [illegible]

Printed Name and Title of Employee Writing Report

Approved by: CSII [signature]

(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* 8/26/2023 *Signature* [signature]

I received a copy of this report on 8/27/23, 0120, Refused to sign Copy given slide under door
(Date) (Time) (Inmate Signature & No)

I served a copy of this report 8/27/23, 0120, Lt. [signature]
(Date) (Time) (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

211b: 5$ Fee/5 Imp

Attachment K, IMPP 11-119
Effective: 12-11-13
P-1528n

**PLEA OF:** ☐ GUILTY ☑ NO CONTEST BY INMATE

**CASE #** 0637

**NAME:** MarktheSharak **NUMBER:** 73697

**HEARING DATE:** 8-30-23 **HEARING OFFICER:** CSI Leehliter

**RULE VIOLATION(S):** 211b

**WAIVER:**

(To be read to inmate)
☑ YES ☑ NO

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☑ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☑ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | [initials] |
| ☑ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703(d)(1)(2)(3)? | [initials] |
| ☑ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | [initials] |
| ☑ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | [initials] |
| ☑ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | [initials] |
| ☑ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | [initials] |
| ☐ | ☑ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | [initials] |

[signature: CSI ...] — Hearing Officer/Unit Manager Signature — Date: 8-30-23

MarktheSharak [signature] 73697 — Inmate Signature / Number — Date: 8-30-23

KANSAS DEPARTMENT OF CORRECTIONS
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO: Makthepharak, Sashada — INMATE NAME
73697 — NUMBER
DATE: August 28, 2023

HOUSING UNIT/CELL: B1219

CASE NO. 0637

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME: 7:30 a.m. or when called.

DATE: **WEDNESDAY 8/30/2023**

LOCATION: B1 Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: Inmate refused to sign copy given

STAFF SIGNATURE: [signature]

SERVED: 8/29/23 — DATE
0504 — TIME

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE. GIVE THE INMATE THE COPY FOR HIS RECORDS.

# DISPOSITION AND HEARING RECORD

Sub-Exhibit 10

Resident NAME & NO: Makthepharak, Sashada 73697 A1215

FACILITY LCF

CHARGING: LCF_Med

HEARING: LCF

CASE NO: 0018

HEARING DATE: 7-2-21

TIME: 12:40

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 211B | I | | | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM |
| Reason: | | | | | |
| | | | | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| Reason: | | | | | |

☐ Reporting Officer Sworn In / Affirmed ☐ Notarized Testimony Read into the Record

Staff Testimony / Cross Examination (Attach Testimony)

☐ Resident Sworn in / Affirmed

☐ Hearing held Inabsentia Reason____

Staff Assistant Assigned: ____

☐ Resident Not Sworn In/Affirmed Explain____

Resident Testimony / Cross Examination (Attach Testimony)

Med FRI2 ADM SS

Makthepharak, Sashada 73697 0018
~~A1215~~ A4 108

Page 2 of 3, Attachment L2, IMPP 11-119
Effective: 12-11-2013

☐ Witness(es) Sworn In/Affirmed

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include Resident testimony/ arguments on restitution

Sanction(s): 211B- 20 Ds cb mp, 30 Dm cb mp

Reason for Sanctions: [illegible]

Disposition of Evidence: Dispose per KOA

☐ Resident advised of right to Appeal, Have Resident Initial ______

HEARING OFFICER SIGNATURE [signature] DATE 7-3-24

FINAL ACTION BY FACILITY WARDEN:

- ☑ APPROVED
- ☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
- ☐ AMEND THE CHARGE
- ☐ DISAPPROVE/DISMISS
- ☐ REDUCE THE PENALTY
- ☐ SUSPEND ALL OR PART OF SENTENCE
- ☐ REMAND NEW HEARING
- ☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: ______

[signature]
WARDEN/DESIGNEE SIGNATURE

JUL 26 2024
DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

Refused to Sign
Resident SIGNATURE

9/17/24
DATE

I served a copy of the Hearing Record

[signature]
STAFF SIGNATURE

9/17/24
DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Attachment I, IMPP 11-119
Effective: 12-11-13
P-1528i

# ACKNOWLEDGMENTS/INMATE WAIVER OF RIGHTS

**Resident NAME/NUMBER: Makthepharak, Sashada 73697 CASE NO. 0018**

## ACKNOWLEDGMENTS

- [ ] I received a copy of the Disciplinary Report and was advised of the charge within 48 hours after issuance of the report.
- [ ] I submitted request for Witness form within 48 hours after receipt of the Disciplinary report.
- [ ] I received at least 24 hour notice of the time of hearing.
- [ ] I was advised at the beginning of the hearing of the amount of restitution proposed and had opportunity to submit contrary evidence regarding value.
- [ ] I was advised as to the possible penalty involved with a plea or a finding of guilty.

## WAIVERS

- [ ] I waive time limits or other procedure(s) as stated below: Resident Initials [ ]

Time limits Waiver or other procedure(s)______________________________

- [ ] I waive reporting officer/reporting staff member testifying. Class I cases. Resident Initials [ ]

Resident Signature ______________________ No:__________ Date:__________

Hearing Officer: ________ Date: 7-3-u

Attachment B, IMPP 11-119
Effective: 12-11-13

# DISCIPLINARY REPORT

LCF-Central
(FACILITY)

| Case No. 0018 | Date of Alleged Violation: July 1, 2024 | Time: 13:30 A.M. / P.M. (P.M. marked) |
|---|---|---|
| Date This Report Written: | July 1, 2024 | Time: 14:05 A.M. / P.M. (P.M. marked) |

Name of Inmate: Maktheparak, Sashada NMI (LAST / FIRST / MI) No. 0073697 Cell No: B3 234

Duty Assignment: SPM

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*) KAR 44-12-211(b) Telephones or other communication devicces, Class i

FACTS: On the afternoon of Monday, July 1, 2024, COI D. Boone conducted a search of Cell B3 234, assigned to Resident Sashada Maktheparak 0073697. At approximately 13:30, COI Boone recovered the following items: One (1) Cellular telephone "Red Magic" brand, one(1) charging device one(1) pair earbuds. Maktheparak did not have the permission of the Secretary of Corrections or the Warden of LCF to be in possession of these items. Items were marked as evidence and turned over to the LCF EAI Evidence Locker

(Attach Additional Sheet(s) if necessary)

Staff Witnesses: ____________ (Signature) [signature]

SA David Haehl, LCF EAI
Printed Name and Title of Employee Writing Report

Approved by: Lt. [signature]
(Shift Supervisor, Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

*Executed on* July 1, 2024 *Signature* [signature]

I received a copy of this report on 7/1/24, 1713 pm, Refuse To Sign Report Capt
(Date) (Time) (Inmate Signature & No)

I served a copy of this report 7/1/24 1713pm Sgt [signature]
(Date) (Time) (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

Attachment K, IMPP 11-119
Effective: 12-11-13
P-1528n

PLEA OF: ☑ GUILTY ☐ NO CONTEST BY INMATE

CASE # 0018

NAME: Mark [illegible] NUMBER: [illegible]

HEARING DATE: 7-3-[illegible] HEARING OFFICER: [illegible]

RULE VIOLATION(S): 2110 -

**WAIVER:**

(To be read to inmate)

| YES | NO | | | Inmate's Initials |
|---|---|---|---|---|
| ☑ | ☐ | 1. | Do you understand the charges against you? | [initials] |
| ☑ | ☐ | 2. | Do you understand the penalty or penalties the Hearing Officer may set for the rule violation(s) you are pleading to? (If answer is "NO", read the penalties for each violation from rule book.) | |
| ☑ | ☐ | 3. | Do you understand that with your plea, that you may be able to appeal under limited circumstance per 44-13-703(d)(1)(2)(3)? | |
| ☑ | ☐ | 4. | Do you understand that with your plea that you are waiving your right to a full hearing before a Hearing Officer? | |
| ☑ | ☐ | 5. | You waive your right to be confronted with the evidence against you? | |
| ☑ | ☐ | 6. | You waive your right to cross-examine the witness(es) against you? | |
| ☑ | ☐ | 7. | You waive your right to remain silent and to be presumed innocent until proven guilty by preponderance of the evidence? | |
| ☐ | ☑ | 8. | Have any promises, threats or inducements been made to you in exchange for your plea? | ☑ |

[signature] — Hearing Officer/Unit Manager Signature

7-3-[illegible] — Date

[signature] — Inmate Signature — Number

7-[illegible] — Date

Attachment B, IMPP 20-105A
Effective 05-13-22

Sub-Exhibit 11

## Kansas Department of Corrections
## Administrative Restrictive Housing Report

TO: Secretary of Corrections
FROM: Lansing Correctional Facility

Report Number: **01-25-0221**

Date This Report Filed 7/25/2024 Time of Report 08:00 ☒ a.m. ☐ p.m.

Date of Restrictive Housing Placement 7/25/2024 Time of Placement 08:00 ☒ a.m. ☐ p.m.

Resident Name: **Makthepharak, Sashada #73697**

Moved from Cell: **A4-108** to Restrictive Housing Cell #: **A4-108**

☐ Pre-Restrictive Housing hearing conducted

☒ Pre-Restrictive hearing NOT conducted (Explain

Reason(s) for Restrictive Housing (including Rule No. and Title)

IMPP 20-104A ; V. B. Other Security Risk

IMPP Choose an item.

Change from pre-hearing detention to other security risk

Facts:

Resident Makthephark, Sashada # 73697 is being changed from disciplinary segregation status to OSR (Other security risk) due to being being found guilty of being in posession of a cellular device. The restrictive housing review board agrees to hold resident Makthepharak in restrictive housing for one year. No medical clearance warranted based on this being a status change in restrictive housing.

☐ This placement is an Involuntary Protective Custody due to PREA Concerns (respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

What is the reason no alternative means of separation can be arranged?

[signature] 7/25/2024
Signature and Title of Reporting Officer Date

Approved By:
[signature] 7/25/24
Shift Supervisor or Restrictive Housing Unit Mgr. Date

Warden Authorization (if needed) Date

******************************************************************************

ACKNOWLEDGMENT:

I received a copy of this report on: Date 7/25/24 Time 1000 AM ☑ a.m. ☐ p.m.

[signature]
Resident Signature and Number #

[signature] CCI
Staff Witness and Title

Record this Document in Imaging
Original to Master File
Copy to: Warden
Resident
PCM

Dan East [handwritten]