

# INTERNAL MANAGEMENT POLICY & PROCEDURE

**Applicability:** <u>X</u> ADULT Operations Only   _ JUVENILE Operations Only   _ DEPARTMENT-WIDE

**IMPP #: 15-101A**                                                                 **PAGE #: 1 of 6**

**WORK RELEASE AND PRISON/NON PRISON BASED PRIVATE INDUSTRY: Work Release Selection Criteria and Placement Procedures**

**Original Date Issued:** 11-16-17   **Replaces IMPP Issued:** 07-10-18   **CURRENT EFFECTIVE DATE:** 04-14-22

**Approved By:** _[signature]_, Secretary   **Next Scheduled Review:** 07/2024

## POLICY

To reduce recidivism and facilitate reentry and transition to the community at release, it is the policy of the KDOC to prepare residents for, and provide access to, work release employment, when it is safe for the community and the resident has a need for such a program. Preparation includes planning with sufficient time for program participation prior to work release, including in particular employment and education programs; addressing community identification issues in place (critical for employment); and the expectation being that residents are referred in all cases, in the absence of a clear indication the placement is unsafe or at odds with the risk reduction and reentry plan.

## DEFINITIONS

<u>Clinical Services Report</u>: A report prepared by clinical professional staff that provides information about risk and need of potentially violent residents, including sex offenders.

<u>Director of Sex Offender Management</u>: A Central Office position that oversees the department's management of sex offenders, monitors the sex offender treatment program/contract, and administers the Multidisciplinary Team (MDT) and override process for sex offenders.

<u>Multidisciplinary Team</u>: Individuals selected by the Secretary of Corrections from a variety of state and private sources for the express purpose of assessing whether a person meets the definition of a sexually violent predator.

<u>Program Management Committee (PMC)</u>: The committee, consisting of the warden or designee and an administrative/supervisory representative from the Programs and the Security divisions of the facility responsible to review and approve or deny proposed classification exceptions, program placements including amendments to program plans, and transfer requests/recommendations.

<u>Sex Offender Program Team</u>: A group of staff in the Programs and Risk Reduction division made up of the Clinical Director, Programs Director, Sex Offender Assessors, and Sex Offender Program Supervisors.

<u>Sex Offender Specialist</u>: A position in Programs and Risk Reduction whose duties include screening those managed as sex offenders for program participation.

Vocational Rehabilitation:  A division of the Department of Children and Families and that assesses for eligibility and provides eligible persons with job training, placement, and support services.

Work Release/Work Release Program: Any work release programs as authorized by KSA 75-5267 and governed by KSA 75- 5268, applicable Internal Management Policies and Procedures, and facility general orders as approved by the Secretary of Corrections or designee, in a KDOC facility or county facility pursuant to an agreement with that county.

**PROCEDURES**

I. **Preparing Residents for Work Release**

   A. As part of ongoing case management, unit team staff shall review cases that are 30 months from release, to determine when to refer the resident to work release, and to ensure preparation is underway so the resident is ready to be referred.

      1. If the resident is an appropriate candidate for an industry job (private or correctional, prison or community-based), at any custody level, the plan shall be developed and implemented in a time frame that permits employment in an industry, to help build job skills and otherwise prepare for work release. If a resident works in an industry job inside a maximum or medium custody unit, and then achieves minimum custody, industry employment shall be considered anew, if time to serve permits this further preparation for work release. The timing of the work should factor in the value of working an industry job, and then moving into work release. Unit team should work with residents to help them follow this path.

   B. Unit team shall ensure a case plan is in place, and progress is made, towards readiness for this referral. This includes addressing:

      1. Readiness, motivation and responsivity towards working the risk reduction plan;

      2. Barriers to minimum custody (such as detainers, disciplinary reports, other behavior issues, etc.);

      3. Job readiness (including skills and prepared portfolio), education, employment and Cognitive Based Intervention (CBI) programs;

      4. Use of EPICS tools; and any other issues necessary for the resident to be ready for work release.

II. **Determining Eligibility for Work Release**

   A. Every resident shall be screened to determine if s/he is a good candidate for work release placement, in time to place residents in work release six (6) to 18 months from release. Any resident is eligible for work release, provided:

      1. The resident does not have a diagnosis of pedophilia, or an Axis I diagnosis of not otherwise specified exhibitionism, fetishism, frotteurism, sexual masochism, sexual sadism, transvestic fetishism or voyeurism;

      2. The resident is managed as a sex offender who is not precluded by #1, and s/he has successfully completed sex offender programming as recommended by the Sex Offender Program assessment and program team, or has not been recommended for sex offender programming;

3. The resident is physically capable of seeking and maintaining employment, with reasonable and available assistance for any physical limitation which cannot be mitigated by services through Vocational Rehabilitation;

4. Any medical or behavioral health treatment needs can be adequately addressed in the work release setting, including the ability to access necessary medication;

5. The resident has no history of escapes from a secure facility in the last 10 years;

6. The resident has not been convicted of:

   a. A Rule 1 disciplinary infraction involving serious injury or property damage within the last five years that reflects recent and ongoing violent, assaultive, or dangerous behavior, or

   b. A Rule 2 infraction for arson, or dangerous contraband not involving a weapon or statutory violation (felony crime), within the last six (6) months.

7. The resident does not have a pending felony detainer or a misdemeanor detainer that it is known will require the resident to serve more than 60 days in a local jail after release from KDOC;

   a. The referral shall specifically reflect that unit team has done due diligence in identifying, addressing, and attempting to resolve any pending detainer, and ensure that the likelihood that the resident will serve more than 60 days on a misdemeanor detainer is well established.

8. There are no other indicators that a resident is too great a risk to the community if placed in a work release setting, including recent behavior, program summaries or a Clinical Services Report reflecting high risk for violent behavior within the last two (2) years, or otherwise.

9. The resident has a viable residence release plan to or near the location of the work release program, in consideration of county of conviction, pro-social influencers in the area, or an established employment opportunity in the area.

### III. Referring a Resident for Work Release Placement

A. Referrals shall be made timely and processed expeditiously, with the goal consistently being placement in work release.

B. Once the referral has been completed, and unit team has confirmed eligibility, it shall be processed as follows:

1. After completion of the screening process, the referral shall be sent to the Program Management Committee (PMC) to confirm eligibility, and to get any necessary input from medical and behavioral health.

2. Once the PMC confirms eligibility, the referral shall be sent to the administrative designee for the work release facility. The administrative designee shall complete the Victim Notification process.

3. If the resident is managed as a sex offender, the administrative designee shall send the referral to the Sex Offender Specialist

   a. The Sex Offender Specialist shall make a recommendation to approve

    or disapprove the referral for further processing, after considering the following:

     (1) Sex offending history;

     (2) Sex offender risk/need assessments;

     (3) Sex offender program participation and program participation summary;

     (4) Status current or potential as a sexually violent predator;

     (5) Relevant diagnoses;

     (6) Relevant parole violations;

     (7) Relevant institutional behavior; or

     (8) Any other information relevant to current risk for sexually reoffending.

  4. The Sex Offender Specialist may recommend approval subject to some specific conditions, and if so, those conditions shall be indicated with the approval, and shall become part of the rules the resident will follow if placed.

  5. The work release facility shall accept the referral into work release, in the absence of a definable objective safety concern, which the administrative designee shall raise and address with the referring facility to determine if it can be resolved.

  6. After the referral is accepted, the referring facility shall notify the resident and schedule the resident for transport or transfer.

**IV.** **Placement in Work Release**

 A. All residents placed in work release shall be required to do the following:

  1. The resident shall have been continuously housed in a minimum-security living area for at least 30 days, immediately preceding placement in work release.

  2. Complete an acknowledgement concerning work release placement, using Attachment B.

  3. Comply with all rules, general orders, policies and procedures of the program and department.

  4. Participate in any job readiness or other risk-reduction programming as required by his/her unit team counselor.

  5. Actively seek and maintain full time employment, in the time frame as directed by program staff and unit team counselor.

   a. If program and unit team staff determine the resident needs to complete some programming at the facility prior to full time employment that shall be reflected in the resident's case plan and his/her job search and employment requirement shall be tailored to this plan.

   b. Program and unit team staff shall ensure the resident is provided job

      readiness prior to work release participation as well as placement, and retention services.

   6. Remain in the facility at all times except when going to/coming from work, or as approved, for job searching, job training or point-to-point passes.

     a. The facility shall develop, publish, post and make available information about how to request a pass; when passes will be granted; and methods for ensuring the passes are used for the purposes granted only.

 B. The Warden or Designee sh a l l maintain the following as a permanent record in the resident's file:

   1. Disbursement of the resident's earnings in accordance with IMPP 04-109A;

   2. The name, address, and telephone number of the employer;

   3. The job or position title in which the participant is employed;

   4. The rate of compensation and pay period interval; and

   5. The resident's regular work schedule.

 C. The Warden or designee shall provide information to the employer about the work release program including the physical address, telephone number, and email address of the facility.

**V.** **Termination and Removal Procedures**

 A. The Warden or Director of the work release facility, or designee, may terminate a resident's participation in a work release program for the reasons provided in the Resident Acknowledgement Concerning Work Release Placement (Attachment B).

   1. Work release staff shall ensure that all possible effective correctional practices and interventions have been deployed to stabilize the placement before termination.

 B. Residents may be transferred to another KDOC facility if extended hospitalization or treatment is recommended, or if the resident is financially unable to meet the cost of short-term hospitalization.

   1. After medical care is complete, the resident shall be returned to complete the work release program, in the absence of a significant barrier to doing so (such as time to release, medical/physical condition/needs).

 C. If a resident is terminated from a work release program, the reasons shall be documented, and the resident transferred from the facility. The documentation shall specifically reflect the interventions made to prevent removal.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents, offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents or offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared

by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure are not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS REQUIRED**

None.

**HISTORY**

11-16-17 Original
07-10-18 Revision 1
04-14-22 Revision 2

**REFERENCES**

K.S.A. 75-5267, 75-5268
KAR 44-12-328
IMPP 02-118D, 04-109A, 12-120A,

**ATTACHMENTS**

| Attachment | Title of Attachment | Page Total |
|---|---|---|
| A | Referral for Work Release | 5 page(s) |
| B | Resident Acknowledgement Concerning Work Release Placement | 1 page(s) |

Page 1 of 5, Attachment A, IMPP 15-101A
Effective 04-14-22

# REFERRAL FOR WORK RELEASE EMPLOYMENT

## *Initial Screening by Unit Team*

Resident Name & Number: _____   Date: _____

Unit Team Counselor Name & Phone # _____

Resident's release date (mandatory or released by PRB)? _____    To what county? _____

1. Does the resident have a diagnosis of pedophilia, or an Axis I diagnosis of not otherwise specified exhibitionism, fetishism, frotteurism, sexual masochism, sexual sadism, transvestic fetishism or voyeurism?
   ☐ Yes ☐ No    If **yes**, **not eligible** to proceed.

2. Is the resident managed as a sex offender, and has *not* completed sex offender treatment? ☐ Yes ☐ No    If **yes**, **not eligible** to proceed.

   *Note*: If this referral is for private industry, the warden may approve placement if the resident is in treatment and making progress, and after consulting with treatment provider. Please indicate status of treatment and feedback from provider if this referral is for private industry: _____
   _____

3. Is the resident physically capable of seeking and maintaining employment, with reasonable and available assistance for any physical limitation? ☐ Yes ☐ No If **no**, **not eligible** to proceed.

4. Does the resident have any medical or behavioral health treatment need that cannot be adequately addressed in the work release setting, including access to medication?
   ☐ Yes ☐ No If **yes**, **not eligible** to proceed.

5. Does the resident have a history of escape from a secure facility in the last 10 years? ☐ Yes ☐ No    If **yes**, **not eligible** to proceed*.*

6. Has the resident been convicted of a Rule 1 disciplinary infraction in the last five years that involved significant damage or property loss, showing current violent, assaultive, or dangerous behavior; or Rule 2 infraction for arson, or dangerous contraband not involving a weapon or statutory violation (felony crime) within the last six (6) months?

   ☐ Yes ☐ No    If **yes**, **not eligible** to proceed.

7. Does the resident have a pending felony     ☐ Yes ☐ No    If **yes**, **not eligible** to proceed.
   detainer that has been addressed with the
   jurisdiction and cannot be resolved?

   Describe/explain detainer: _____

8. Are there any other indicators that this resident shall great a risk to the community if placed in a work release setting, known to you? ☐ Yes    No☐ If **yes, not eligible** to proceed.
   Briefly describe: _____
   _____

**OAG000015**

**NOTE**: If the above answers (1 – 10) indicate that this resident **is not** eligible for work release, but for some reason you believe s/he should be considered, please explain why:

_____
_____
_____
_____
_____
_____
_____

**NOTE**: If the above answers (1 – 10) indicate that this resident **is** eligible for work release, but for some reason you believe s/he **should not** be considered, please explain why:

_____
_____
_____
_____
_____
_____
_____
_____

**OAG000016**

## *Referral to Work Release*

If after screening, unit team concludes a referral to work release is appropriate, complete the following:

Resident Name & Number: _____   Date: _____

Unit Team Counselor Name & Phone # _____ _____

Resident's release date (mandatory or released by PRB)? _____   To what county? _____

To which work release program is this referral being made?

**Choice #1**:  ☐ WWRF   ☐ HCF   ☐ Johnson County   ☐ TCF   ☐ LCF-East

☐ Other (describe) _____

**Choice #2**:  ☐ WWRF   ☐ HCF   ☐ Johnson County   ☐ TCF   ☐ LCF-East

☐ Other (describe) _____

A. <u>Employability</u>
   What is the resident's work history; LSIR education/employment score; and what job readiness classes hass/he done?
   **Completed Education Programming, Job Readiness, or work with a Job Specialist?**  ☐ Yes ☐ No
   **Risk level on education/employment:**  ☐ Low  ☐ Moderate  ☐ High
   **Comments:** _____

B. <u>Relevant substance abuse history</u> (e.g., recent use, treatment, impact on employment in the past, etc.)
   **Completed SARP or SAP?**   Yes ☐   No ☐   If yes, which one: _____
   **Has resident had past community treatment?** ☐ Yes ☐ No
   **Comments:** _____

C. If the resident is high or moderate risk for anti-social thinking, based on the LSCMI or LSIR attitudes/orientation, criminal history, companions and/or leisure time domains, what has been done to address this, if anything (e.g., completed a CBI program including Advanced Practice).
   **Attitudes & Orientation score:** _____
   **Completed a CBI Program?**  Yes ☐   No ☐
   **Comments:** _____

OAG000017

D.  What is the status of the resident's identification (driver's license, birth certificate, social security card); and if the resident was required to register for selective service, was this done/when? _____

**Note:** This issue should be addressed before sending the resident to work release.

**Has a birth certificate?** ☐ Yes ☐ No
**Has a social security card?** ☐ Yes ☐ No
**Has a valid driver's license?** ☐ Yes ☐ No
**Has a valid Kansas ID?** ☐ Yes ☐ No
**Has registered for selective service?** ☐ Yes ☐ No ☐ Not required to register
**Comments:** _____

E.  Is the resident eligible for employment assistance through vocational rehabilitation or veteran status? ☐ Yes ☐ No

F.  If there is a pending detainer (not felony)? If so, what has been done to address it, and what is the status?

**Pending non-felony detainer?** ☐ Yes ☐ No
**Comments:** _____

G.  Does this resident have a "pro-social" support person, *including a matched mentor,* and if so, who? Will the resident continue to have access to this support if s/he goes to work release?

**Has a support person?** ☐ Yes ☐ No
**Has a mentor?** ☐ Yes ☐ No
**Comments:** _____

H.  Is work release placement a goal in this resident's case plan and/or is this referral made at the recommendation of the Prisoner Review Board?

**Work release is a goal in case plan?** ☐ Yes ☐ No
**Work release has been recommended by the Prisoner Review Board?** ☐ Yes ☐ No
**If "yes," please state specifically what recommendation the PRB made, and when.**
**Comments:** _____

I.  Is there any pending behavioral or medical health issue that work release should know about, and if so, what is the status?

**Pending behavioral and/or medical issue?** ☐ Yes ☐ No
**Comments:** _____

J.  Is there any other information you think would be useful to making the decision about whether to place this resident in work release, or about what case management and job assistance the inmate may require once at work release if admitted into the program?

**Comments:** _____

**OAG000018**

### *Referral for Work Release*

1. If the offender is **managed as a sex offender**, referral was sent to the Sex Offender Specialist and then Deputy Secretary of Facilities Management or designee?
   ☐ Yes ☐ No   Date: _____
   Comments/Result: _____

2. If the offender is not a sex offender, or after #1 above, referral was sent to Unit Team Manager for review?   ☐ Yes ☐ No   Date: _____
   Comments/Result: _____

3. The Unit Team Manager has reviewed the referral to confirm the resident is eligible, then forward to PMC?

   ☐   Reviewed and Eligible        ☐   Reviewed and Not Eligible for Reason Indicated

   Date and Reason: _____
   _____

4. PMC has confirmed eligibility and sought any additional input needed from medical or behavioral health?
   ☐ Yes  ☐ No   Date: _____

   Behavioral Health Input: _____

   Medical Input: _____

Attachment B, IMPP 15-101A
Effective 04-14-22

# **RESIDENT ACKNOWLEDGMENT CONCERNING WORK RELEASE PLACEMENT**

I,_____, #_____ have agreed to be placed in a work release program of the Kansas Department of Corrections at the following facility_____.
With respect to that placement, I fully understand, agree and acknowledge the following:

1. To remain in and be successful in this program, I shall:

    a. Complete this acknowledgement.
    b. Comply with all rules, general orders, policies and procedures of the department and program.
    c. Remain in the facility at all times except when going to/coming from work, or as approved for job searching, job training, or point-to-point passes. I will not leave the facility without proper authorization, and I will not fail to return to the facility as directed or scheduled.
    d. Work diligently towards getting and staying employed using all services available to me to support this effort; and maintain this employment, not being terminated for cause or for behavior that makes me a risk to the community.
    e. Recognize that if I am subject to disciplinary action for serious or repeated rules violations which creates disruption or risk I cannot remain in the program.
    f. Not participate in criminal activity, including any that causes me to be referred for prosecution.
    g. If I am managed as a sex offender, participate in any programming including advanced practice as directed. I understand if I behave in risky behavior related to sexually offending, I will be removed from the program. I also understand if I am determined to be high risk for referral for filing under the Sexually Violent Predator Act I will be removed from the program.
    h. Not engage in behavior that causes me to be a disruption at the work release facility, and I understand the work release team may review my case for removal if I do so.
    i. Understand that I may ask to be removed from the program.

2. That I have no due process protection against or upon termination from the program and am not entitled to a hearing of any type or sort prior to, after or in connection with my removal from work release.

3. That I have no due process protection against my personal property being controlled as per the provisions of IMPP 12-120A Control of Resident Personal Property.

4. That I have no due process protection against or upon being transferred to another facility if my termination from the program gives rise to the need to transfer me to another facility; and I am not entitled to a hearing of any type or sort prior to, after or in connection with my transfer to another facility.

5. If terminated from a work release program for disciplinary reasons I will be placed on Incentive Level I.

6. That if I am subject to a court order for restitution, regardless of whether such order makes restitution immediately payable, restitution payments will be deducted from my trust account in accordance with IMPP 04-109A.

7. That failure to agree to payment of court-ordered restitution in accordance with IMPP 04-109A will make me ineligible for assignment to traditional work release or private industry work release.

_____     _____     _____
Resident's Signature                           KDOC#                          Date

_____                                   _____
Witness' Signature                                                          Date

**OAG000020**