## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SASHADA MAKTHEPHARAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-2121-DDC-RES** |
| | ) | |
| **LAURA KELLY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Governor Laura Kelly, Secretary of Corrections Jeff Zmuda, and members of the Kansas Prisoner Review Board (KPRB) Jonathan Ogletree, Jeannie Wark and Mark Keating ("Defendants") submit this Reply in further support of their Motion for Summary Judgment (Doc. 47). Defendants assert that Plaintiff's Response (Doc. 62) fails to overcome the legal arguments in their Motion. Accordingly, Defendants' Motion should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Motion. (Doc. 47.) Defendants' Motion should be granted for the reasons previously stated.

Plaintiff's entire basis for his federal claims is based on an unsupported misinterpretation of state law. Plaintiff has no facts whatsoever to support the material allegations that he made in the Complaint, in the Amended Complaint, or in the Pretrial Order. Rather than admit this and drop the case, Plaintiff's counsel tried to avoid responding to Defendants' Motion entirely by moving to strike Defendant's Motion (Doc. 51) and repeatedly moving for an extension of time in an attempt to not have to file a Response (Doc. 60 at 2 (claiming it would be prudent for Plaintiff not to file a Response); Doc. 58 at 2 (same); Doc. 54 at 2 (same)) until the Court eventually said enough (Doc. 61). Now, Plaintiff is doubling down on his misinterpretation of

state law, claiming that if none of his factual allegations are actually true, that somehow proves his point because it would mean the state doesn't follow his misinterpretation of state law, which would in turn mean "the parole system is entirely *ad hoc*, with no actual standards whatsoever." (Doc. 62 at 2.) But what it actually shows is that Plaintiff's counsel failed to "independently conduct a reasonable investigation to ensure the accuracy of [the] pleaded facts." *IBT Employer Grp. Welfare Fund v. Compass Minerals Int'l, Inc.*, 706 F. Supp. 3d 1225, 1245 (D. Kan. 2023) (citing Fed. R. Civ. P. 11(b)). Plaintiff's case is now entirely built on a claim that Defendants are not following state law, and he seeks injunctive and declaratory relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

To rebut new factual claims raised in the Response, Defendants attach two new exhibits, Exhibit M (2nd Declaration of Mark Keating) and Exhibit N (summary of disciplinary reports).[1]

### Defendants' Statement of Material Facts

Plaintiff has wholly failed to respond to, and therefore has admitted, the following paragraphs in Defendants' Statement of Material Facts ("DSMF"): ¶¶ 1-7, 14, 16-17, 19-23, 26-41, 44-45, 47-48, 51-59, 61-82, 92-97, 99-103, 105-110, 130-32, and 136-39.

Plaintiff has not disputed, and therefore has admitted, the material portions of DSMF ¶¶ 8-11, 13, 15, 18, and 50.

Defendants respond to Plaintiff's arguments regarding other paragraphs below:

12 – Plaintiff does not dispute that no agreements under K.S.A. 75-5210a are made with inmates, that the KPRB does not deny parole due to lack of an agreement, that the KPRB has at

---

[1] Defendants recognize that a limited surreply may be permitted to address new evidence. *Green v. New Mexico*, 230 F.3d 1189, 1196 (10th Cir. 2005).

least purported to grant parole to inmates (including youthful offenders) despite the lack of an agreement under K.S.A. 75-5210a, and that those inmates have been treated as if they were granted parole (e.g., either they walked out of prison as a result and were subject to parole procedures rather than incarceration or they began serving a wholly separate, consecutive sentence of incarceration). Plaintiff's counsel just incorrectly believes that every single grant of parole in the state of Kansas is somehow illegal as a result of his misinterpretation of state law. Plaintiff also ignores Defendants' arguments about the plain language of the statute. And Plaintiff does not dispute that an inmate has to agree to an agreement for the agreement to exist.

24 – Plaintiff failed to dispute paragraph 23, and has therefore admitted that "Plaintiff has not been barred from moving to minimum security, although it would require a recommendation from the KPRB." Plaintiff's entire basis for disputing paragraph 24 is that Plaintiff is supposedly barred from moving to minimum security. As Plaintiff has admitted paragraph 23, it is nonsensical for him to make this argument regarding paragraph 24. Further, Plaintiff does not dispute that KDOC cannot sentence anyone to "community corrections," as the term is defined by KDOC. And Plaintiff does not dispute that the portions of Exhibit I that Defendants cited relate to work release, which makes those portions relevant under the alternative definition of "community corrections" mentioned in Exhibit J. Plaintiff has not provided any other definition of community corrections.

25 – Plaintiff does not dispute that under the policy and practice of KDOC and the KPRB, paragraph 25 is true. (Plaintiff apparently believes that any arguments regarding the policies of KDOC and the KPRB are necessarily legal conclusions, which is strange because Plaintiff attached a policy as an exhibit to his Response and made factual arguments based on it.)

42-43 – Defendants did not refuse to provide evidence that would prove or disprove these

assertions. Defendants' objected but agreed to provide the evidence if Plaintiff paid the costs of responding to such a burdensome request. (Doc. 62-2 at 1.) Defendants even proposed an alternative scope to the request that would reduce costs to less than a third of the costs of the original request. (Doc. 62-2 at 1.) Plaintiff refused to pay the costs to gather the evidence he now complains he lacks, and he never filed a motion to compel contesting Defendants' objection. Further, Plaintiff should have known about these statistics since the time of Defendants' Answer (*see* Doc. 12 at ¶¶ 15(b)-(c), 31(n)-(o), 39(b)-(c), 44(b)-(c)), yet Plaintiff failed to ask about the basis for these statistics in either written discovery or depositions. What is more, although discovery is now closed, if Plaintiff truly thought he needed more evidence to respond to Defendants' motion, he could have filed a motion under Federal Rule of Civil Procedure 56(d). Under Federal Rule of Civil Procedure 56(d), a party can object to a motion for summary judgment if the party does not have access to evidence needed to respond effectively. "But relief under Rule 56(d) is not automatic." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Rather, to obtain relief under Rule 56(d), the movant must submit an affidavit explaining the "probable facts" that are unavailable, why they are unavailable, and how additional time for discovery "would allow for rebuttal of the adversary's argument for summary judgment." *Id.* "The protection afforded by Rule 56[d] is an *alternative* to a response in opposition to summary judgment . . . and is designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) (emphasis in original); *see also* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment (explaining changes in subsection numbering). "[W]hen the movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(c) or explain why it cannot yet do so under Rule

56(d)." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740 (4th ed. Supp. 2022). Failing to file an affidavit under Rule 56(d) waives any argument that summary judgment is improper due to insufficient discovery. *Ezell v. Hininger*, No. 23-7007, 2024 WL 1109057, at *1 (10th Cir. Mar. 14, 2024). So, because Plaintiff filed a Response under Rule 56(c) rather than an affidavit under Rule 56(d), Plaintiff has waived the right to seek additional evidence under Rule 56(d). In summary, Plaintiff failed to pay the costs of his request, failed to move to compel to contest the demand for payment of costs, failed to ask about the basis of the statistics in discovery, and waived any potential relief under Rule 56(d).

46 – Plaintiff flatly admits that he filed this lawsuit without any basis of knowledge for the claims that he has made. *Compare* Doc. 62 at 6 (admitting "Mr. Makthepharak's lack of knowledge") *with, e.g.,* Doc. 44 at 10 ("Kansas's parole scheme functions as a system of ad hoc clemency in which grants of release are exceptionally rare"). Plaintiff failed to directly ask in either written discovery or depositions whether these kinds of inmates were commonly granted parole. With regard to Plaintiff's belated objection to Defendants' objection to Plaintiff's request for production, Defendants refer to their response above regarding paragraphs 42-43. And Federal Rule of Evidence 701(a) permits non-expert opinion testimony when it is "rationally based on the witness's perception" (Keating has personally perceived parole hearings for numerous youthful offenders, *see* Doc. 47-6 at 3; Doc. 47-9 at ¶¶ 1, 23), "helpful to clearly understanding the witness's testimony or to determining a fact in issue" (Keating perception of this fact is helpful to understanding how often youthful offenders who committed homicide are granted parole), and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702" (Keating's statement is based on his personal experience, not on technical knowledge of the kind that would require expert testimony under Rule 702). And Plaintiff has

not submitted any admissible evidence to the contrary.

49 – Even under the greater deference afforded plaintiffs under the motion-to-dismiss standard, a court need not accept as true implausible, conclusory, or speculative allegations. *See Jimenez ex rel. Soto v. Bd. of Cnty. Comm'rs*, 748 F. App'x 790, 793 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Similarly, under the summary-judgment standard, "[i]nferences supported by conjecture or speculation will not defeat a motion for summary judgment." *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006). Here, Plaintiff's mere speculation that the order of the reasons listed on the action notice means anything about the primacy of either reason does not defeat Defendants' plain evidence that "disciplinary reports" was the primary reason.

60 – As an initial matter, Plaintiff has admitted paragraph 101, which says that "Plaintiff's parole was not passed for other reasons" than those specified in paragraph 100. So at least with regard to his own 2021 parole hearing, Plaintiff has admitted that his parole was not denied based on the grounds in paragraph 60. (And Plaintiff has made no factual assertions regarding his 2024 parole hearing in his Response.) Further, the KPRB discussing with an inmate his criminal history and the circumstances of his underlying conviction naturally establishes context for how the inmate has matured (or may need to mature) over time. (*See* Doc. 47-9 at ¶¶ 16-17; Doc. 47-6 at ¶ 9.) It does not follow that because the KPRB discusses such matters with the inmate that the KPRB ultimately denies parole on any of the grounds in paragraph 60.

83-90 – Plaintiff's unrelated assertions do not contradict the facts in these paragraphs. Plaintiff does not dispute anything about written evidence. Plaintiff does not dispute that he did not have any additional evidence that he wanted to present, that *written* expert testimony is permitted, that he did not request any expert assistance or testimony, that he did not request to

introduce any other evidence, or that the KPRB has the authority to subpoena witnesses and documents if it deems them "necessary for the investigation of the issues before it."

91 – Plaintiff's argument is nonsensical here. He at no point argues that subpoenaed information is relevant to parole hearings. He says he disagrees that subpoenas are not necessary for parole hearings but then admits that the factors the KPRB is to consider for parole hearings do *not* involve subpoenaed information. He provides no other reasoning. Further, although not ultimately pertinent to Defendant's factual assertions in this particular paragraph, Ogletree clarified, in the very same discussion that Plaintiff cites, that the KPRB *does* consider factors outside of those in the statute in Exhibit I at 38:22-39:16. *See Cowley v. W. Valley City*, 782 F. App'x 712, 718 (10th Cir. 2019) (allowing later statements in the same deposition to clarify earlier statements).

98 – In the very same discussion that Plaintiff cites, Ogletree clarified that the KPRB *does* actually consider factors outside of those in the statute in Exhibit I at 38:22-39:16. *See Cowley v. W. Valley City*, 782 F. App'x 712, 718 (10th Cir. 2019) (allowing later statements in the same deposition to clarify earlier statements).

104 – Plaintiff did not dispute paragraph 61, and therefore admitted the following: "For youthful offenders, the inmate's youth at the time of the offense *is* considered when making the discretionary parole decision." In light of this admission, Plaintiff has no basis for disputing paragraph 104. Plaintiff does not even attempt to dispute that *Keating* considered Plaintiff's youth at the time of the offense. And the evidence for paragraph 61, a paragraph Plaintiff admitted, included testimony from *Ogletree* that the inmate's youth is considered. (Doc. 47 at 12 (citing Exhibit I at 38:22-39:6).) What is more, when making parole decisions, the KPRB has a full-board deliberation, which plainly would make both Keating and Ogletree privy to the mental

processes of their fellow board members regarding the deliberation and the eventual parole

decision. (Doc. 47-6 at 2-3.) Further, Plaintiff's youth at the time of the offense was even

discussed in the parole hearing itself. (*See, e.g.,* Doc. 47-9 at 15:5-25, 54:10-56:24.)

111-129 – An adverse inference due to loss of records legally requires a showing of bad

faith as opposed to "[m]ere negligence." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149

(10th Cir. 2009). Plaintiff has not met this burden. Further, in discovery, Plaintiff's counsel *did

not request any information or documents regarding Plaintiff's 2024 parole hearing* and

accordingly made no inquiry into the cause of the lost recording. (Plaintiff also made no

allegations of wrongdoing specific to his 2024 parole hearing and has waived the ability to do so.

(*See* Doc. 47 at 37 n.3.)) Plaintiff now attempts to make up for his lack of diligence in discovery

by grasping at straws but presents no admissible evidence to support an adverse inference.

Defendants also respond to Plaintiff's more specific objections to certain paragraphs:

- 113 – The audio recording *was* saved but was lost due to technical issues. (Doc. 47-9
  at ¶¶ 75-76.) Plaintiff has not presented any admissible evidence to the contrary.

- 114 – Plaintiff merely adds an additional fact that does not controvert this paragraph.

- 116 – Defendants appropriately listed Mark Keating as a potential witness in their
  disclosures. Defendants were not required to provide a list of all facts that he might
  testify to. The statement is admissible as a statement against interest. Despite having
  received three extensions of time to respond, Plaintiff has not even presented a
  declaration or affidavit disputing the claim as untrue. Accordingly, it is
  uncontroverted that this statement against interest occurred.

- 117 – Despite having received three extensions of time to respond, Plaintiff has not
  even presented a declaration or affidavit disputing the claim as untrue. Accordingly,

this paragraph is uncontroverted.

133 – Plaintiff does not dispute – and therefore admits – that Secretary Zmuda does not have authority over the KPRB's parole decisions. Additionally, the Secretary's power to appoint or remove members of the KPRB is administrative in nature since the Secretary has no authority over the KPRB's substantive decisions.

134-35 – Defendants object to foundation. Ogletree is not a trained attorney (Exhibit 47-8 at 7:15-17), and he admits to not having any personal knowledge of how the program-plan agreements are formed (Doc. 47-8 at 23:10-15). Ogletree's untrained legal conclusion that the relevant program-plan agreements fall under K.S.A. 75-5210a is not admissible. His interpretation of the statutes is irrelevant. Further, although Ogletree says he and the KPRB have seen and reviewed program-plan agreements (Exhibit 47-8 at 20:13-21:14), in the later part of that same discussion (while being repeatedly pressed by Plaintiff's counsel to provide untrained legal conclusion after untrained legal conclusion), he plainly stated – and repeatedly reiterated – that an inmate does *not* need to have successfully completed all of the conditions of the agreement to go before the board and be considered for parole (Exhibit 47-8 at 24:24-25:2, 25:20-27:20, 29:17-22). *See Cowley v. W. Valley City*, 782 F. App'x 712, 718 (10th Cir. 2019) (allowing later statements in the same deposition to clarify earlier statements). Ogletree's factual description of the agreements does not merit any legal conclusion that they fall under K.S.A. 75-5210a. Plaintiff is attempting to exploit an untrained lay person's lack of legal training to score points but has not presented admissible evidence to controvert Defendants' paragraphs 134-35.

**Defendants' Response to Plaintiff's Statement of Material Facts**

Defendants respond to Plaintiff's Statement of Material Facts ("PSMF") as follows:

1 – CONTROVERTED. As Defendants have already pointed out (in Doc. 47 at 23-26), Governor Kelly has only a "generalized responsibility for 'enforcement of the laws of this

state.'" *Day v. Sebelius*, 376 F. Supp. 2d 1022, 1031 (D. Kan. 2005) (quoting Kan. Const. art. 1, § 3) (cited approvingly by *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 966 (10th Cir. 2021).) She does not have the legal authority to enforce each and every law of the state of Kansas – for example, she does not have authority to enforce the parole scheme of Kansas – so she *cannot* have a legal *duty* to enforce the parole scheme of Kansas (since she cannot do so).

2 – ADMITTED.

3 – ADMITTED. However, Secretary Zmuda has never appointed a member of the KPRB. (*See* DSMF ¶ 132.)

4 – ADMITTED.

5 – CONTROVERTED. The KPRB has authority to parole the Plaintiff through not only K.S.A. 22-3717 but also K.S.A. 22-3709, -3712, -3713, 75-52,153(b), and 75-52,154(a).

6 – CONTROVERTED. Non-point-based items are also considered by default, including non-point-based item 10.14, which applies to Plaintiff. (DSMF ¶¶ 21-23; Doc. 47-2 at 26.)

7 – CONTROVERTED. The point-based custody level on reclassification will not be below Low-Medium unless the point-based score is less than *or equal to* 7. (Doc. 47-2 at 9-10 (discussing reclassification), 24 (providing a point-based custody-level table, with different thresholds for initial classification versus reclassification scores); Doc. 47-10 at ¶ 32 (discussing Plaintiff's "annual reclassification").) And classification exceptions are available. (Doc. 47-2 at 31-32.)

8 – CONTROVERTED. Negative scores are possible in the age and institutional adjustment categories, meaning a youthful offender serving a life sentence for murder[2] could

---

[2] Life sentences are not imposed for other homicide-related charges. *See, e.g.,* K.S.A. 21-5404 to -5407a, 21-5419(c), -5433, -6804, 65-6703(k), -6705(k), -6716(f), -6721(g), -6724(j), -6726(e).

have a score of 6. (Doc. 47-2 at 19-20.) For those of Plaintiff's current age, the lowest possible score would be 8.

9 – CONTROVERTED. A security classification cannot "penalize" an inmate, as an inmate "has no liberty interest in any particular classification." *See Jackson v. Ward*, 159 F. App'x 39, 41 (10th Cir. 2005) (citing *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000)). Accordingly, an inmate "does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility." *Cox v. Zmuda*, No. 22-3154-SAC, 2022 WL 3646255, at *4 (D. Kan. Aug. 24 2022); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976). Regardless, the Security Classification Manual is not a parole manual, and inmates can be paroled regardless of their security classification. (*See* DSMF ¶ 25.)

10 – CONTROVERTED. Item 5 (Doc. 47-2 at 20) quite plainly relates to an inmate's maturity and rehabilitation. Regardless, the Security Classification Manual is not a parole manual, and inmates can be paroled regardless of their security classification. (*See* DSMF ¶ 25.)

11 – CONTROVERTED. *See* DSMF ¶¶ 23-24.

12 – CONTROVERTED. This is a legal conclusion and is addressed in Section III below.

13 – ADMITTED.

14 – CONTROVERTED. The report process in K.S.A. 22-3717(h), which was added to the statute in 1988, *see* L. 1988, ch. 115, § 1, requires only that the Secretary give the KPRB access to up-to-date information on any agreements, program plans, and programs completed or not completed by an inmate. *See* Doc. 12-3 at 2, 7, 10 (showing testimony from a representative of KDOC before the Kansas Senate's Judiciary Committee that the report procedure "[p]rovides for a more cohesive relationship between the parole board and DOC" and from a representative of the Kansas Parole Board that it would "provide better communications" between them). Since

the 2012 reorganization of the Kansas Parole Board into the KPRB, the Secretary effectively reports in a passive manner by allowing the KPRB direct access to KDOC information, although he no longer submits formal reports to the KPRB. (*See* Doc. 47-9 at ¶¶ 4-6.) The purpose of the "report" process – the transfer of information regarding any agreements, program plans, and programs completed or not completed by an inmate – is now effectively fulfilled (efficiently and reliably) without a formal report. Further, although formal reports have not occurred since the reorganization (Doc. 47-9 at ¶ 7; Doc. 47-11 at ¶¶ 12-13), no evidence has been presented that formal reports did not occur prior to that.

15 – CONTROVERTED. *See* response to PSMF ¶ 14 above.

16 – CONTROVERTED. One of the purposes of the factors is to help in determining whether the inmate has matured and been rehabilitated such as would make them safe to release into the public. (*See* 47-8 at 38:7-13.)

17 – CONTROVERTED. *See* DSMF ¶¶ 59-61.

18 – CONTROVERTED. *See* DSMF ¶ 25 and above response to PSMF ¶ 16.

19 – CONTROVERTED. In the very same discussion that Plaintiff cites, Ogletree clarified that the KPRB *does* actually consider factors outside of those in the statute in Exhibit I at 38:22-39:16. *See Cowley v. W. Valley City*, 782 F. App'x 712, 718 (10th Cir. 2019) (allowing later statements in the same deposition to clarify earlier statements).

20 – CONTROVERTED. "The members of the KPRB regularly attend the Association of Paroling Authorities International's (APAI) annual training conference to both receive and provide training on all aspects of the parole process, including training regarding residents who were juveniles at the time of their offense." (Doc. 47-6 at ¶ 8.)

21 – CONTROVERTED. *See* DSMF ¶¶ 59-61, 104, 127.

22 – ADMITTED.

23 – CONTROVERTED. "Informal in-house guidance was . . . provided years ago by Attorney General counsel when certain court decisions initially were released related to individuals who committed offenses while still juveniles. This information included brief descriptions of those decisions and recommended modifications to the KPRB hearing processes that were adopted and are in use today." (Doc. 47-6 at ¶ 8.)

24 – ADMITTED.

25 – CONTROVERTED. *See* response to PSMF ¶ 20.

26 – ADMITTED.

27 – ADMITTED.

28 – ADMITTED. But if the KPRB deems evidence necessary to decide the matter before it, it can use its subpoena authority to obtain that evidence. *See* DSMF ¶ 90.

29-30 – CONTROVERTED. Plaintiff relies on solely on the inmates' location histories in their KASPER reports to determine whether and when they were paroled. But when an inmate is granted parole from an indeterminate sentence of incarceration to serve a consecutive sentence of incarceration, it does not result in a release of physical custody, so it does not appear in the location history contained in the inmate's KASPER report. (Exhibit M at ¶ 2.) This is a basic fact of parole that Plaintiff is aware of, since Plaintiff has a consecutive determinate sentence that he would parole to. (Doc. 44 at 2 (stipulation i); Doc. 47-9 at 52:22-54:9 (Plaintiff describing and discussing the consecutive sentence that he would parole to).) The six inmates that Plaintiff identifies as not having been paroled were in fact paroled to a consecutive determinate sentence. (Exhibit M at ¶¶ 3-6, 8-9.) And the inmate that Plaintiff identifies in his summary as having died (Doc. 62-3 at 7-8) did so while serving a consecutive determinate sentence after being paroled.

(Exhibit M at ¶ 7.) Defendants dispute the accuracy of Plaintiff's provided summary primarily due to these errors, due to it relying solely on the inmates' location histories for parole dates, and to the extent it conflicts with the underlying KASPER reports it attempts to summarize. Plaintiff stands out from the other inmates due to an aggressive infraction within eight months of each of his parole hearings. (*Compare* Doc. 47-10 at ¶¶ 75, 83 with Doc. 47-2 at 41-42; Doc. 44 at 2-3 (parole hearing dates).) For the other inmates, only four had a level 1 disciplinary report within nine months of the parole date purported by Plaintiff (which, if the date is correct, should generally be no more than about one month after the corresponding parole hearing, Doc. 47-6 at 2-3) or within eight months of the parole hearing date provided in Exhibit M. (Exhibit N at 1-2.) The four inmates who had a level 1 disciplinary report within those timeframes did not have an aggressive infraction or higher on the severity scale. (*Compare* Doc. 62-3 at 113-16, 155-57, 164-66, 229-32 with Doc. 47-2 at 41-42.) (And even if they did, the discretion afforded to the KPRB, which personally interviews the inmate, would not require the same result whenever disciplinary reports may look similar on paper.)

## ARGUMENTS AND AUTHORITIES

### I.    <u>Eleventh Amendment and Standing</u>

Plaintiff claims that this Court already denied Defendants' arguments regarding standing and Eleventh-Amendment immunity. This is incorrect for several reasons. The standard for standing differs at the summary-judgment stage from the motion-to-dismiss stage, and Plaintiff must meet a different burden. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (citing *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 329 (1999)). Defendants have not previously raised the argument that a plaintiff must have constitutional standing to raise the *Ex Parte Young* exception. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). (holding that arguments regarding subject-matter jurisdiction cannot be waived

and can be raised at any time). And the Court actually declined to rule on some of Defendants' standing arguments under the motion-to-dismiss standard earlier in the case. (Doc. 27 at 17.)

Plaintiff admits that he lacks constitutional standing to raise claims or seek relief on behalf of other inmates (Doc. 47 at 28).

Plaintiff fails to demonstrate how he has standing "for each form of relief sought." *See Friends of the Earth*, 528 U.S. at 185. Plaintiff ignores Defendants' specific arguments regarding each form of relief and instead sweepingly states a mere legal conclusion that he is "incarcerated under a life sentence without a realistic, meaningful opportunity for release due to the defendants' actions and inactions." But he does not specify how any actions or inactions by the Defendants caused any ongoing injury to him that would support any of the specific relief requested. No reasonable jury could find that he is entitled to any of the specific relief requested.

Plaintiff also fails to address Defendants' arguments that some of Plaintiff's requested relief exceeds the Court's authority to grant.

The *Howard* case is not binding on this Court, was decided under the motion-to-dismiss standard for standing, only addresses redressability for declaratory judgments (not the various injunctive relief Plaintiff has requested), and it involved allegations that the plaintiffs did not even receive a parole hearing at all, which is plainly inapposite to the facts here. 546 F. Supp. 3d at 1125-26 ("The Parole Commissioners never speak to or even see them.").

Regardless of which prong (or prongs) the "credible threat of enforcement" requirement directly applies to, the official enjoined must have a connection to the enforcement contemplated by the credible threat (*see* Doc. 47 at 32-33), which naturally relates to the causation prong. And Plaintiff has not only failed to controvert any part of Defendants' Statement of Material Facts, he has even admitted DSMF ¶ 139, which says Kelly and Zmuda do not "appear likely to personally

enforce any parole laws in the future with regard to Plaintiff or anyone else." (Doc. 47 at 22.)

The Western District of Oklahoma case, *Thomas v. Stitt*, 653 F.Supp.3d 1084 (W.D. Okla. 2023), is not binding on this Court, and it does not address the argument that constitutional standing is required to invoke the *Ex Parte Young* exception.

Plaintiff claims that Secretary Zmuda has a connection to the enforcement of the statutes on the sole basis that he is allegedly supposed to enter into agreements under K.S.A. 75-5210a. But this would only be relevant if Plaintiff was seeking relief requiring the Secretary to enter into such agreements. The Secretary's failure to enter into such agreements has not caused any injury to Plaintiff. In fact, such an agreement would only create an additional hurdle to parole. Secretary Zmuda does not have any causal connection to any injuries or any legal authority to have caused or to remedy any injuries actually alleged or proven such as would provide standing against him for any of Plaintiff's actual requested remedies.

Defendants already addressed *Petrella v. Brownback* in their Motion (Doc. 47 at 33.) And Plaintiff admits a governor's generalized duty to enforce state law is insufficient when enforcement power is explicitly vested in a body other than the governor, which is exactly what the Kansas statutes regarding parole do: they explicitly vest enforcement power in the KPRB, not in the Governor. Plaintiff claims that the KPRB is fully subject to the Governor's control, but this is incorrect factually and as a matter of state law as established in Defendants' Motion.

## II.    **Ripeness and Mootness**

Regarding ripeness, Plaintiff fails to address that he has not been denied parole at this point for any other reason than disciplinary reports. He merely subjectively believes that others who were granted parole had what he sees as worse disciplinary reports. Plaintiff does not even attempt to point to any specific conduct by Defendants that has caused him injury, merely resorting to his vague legal conclusion that he is experiencing "continuing incarceration without

being provided a meaningful and realistic opportunity to obtain release." Plaintiff fails to specify what has deprived him of a meaningful and realistic opportunity to obtain release. He cannot do so, because his parole has been denied solely due to his own bad behavior.

Ogletree does not currently have a successor that can be substituted as a party, and Plaintiff has not demonstrated a credible threat of enforcement by any potential future successor. Relief cannot be granted against a vacant position, but must be granted against an official.

**III.**    **Plaintiff's Failure to Meet His Burden to Establish an Eighth-Amendment Violation**

Defendants have controverted most of Plaintiff's various fact claims in the facts section above. (Plaintiff also appears at one point to mistakenly cite his paragraphs 8 and 9 instead of 9 and 10.) Not only have Defendants shown that additional factors are considered by the KPRB (*see* responses regarding DSMF ¶¶ 91, 98, 104 and regarding PSMF ¶ 19), including Plaintiff's status as a youthful offender (*see* DSMF ¶¶ 61, 104, 127), but Plaintiff even argues that his youthful offender status must be considered as a matter of law. Plaintiff has utterly failed to establish that the KPRB did not or cannot consider Plaintiff's status as a youthful offender.

Plaintiff fails to address the *Jones* case, which significantly limited the major holdings that Plaintiff cites, and which provides a presumption that youthful offender status is considered.

Plaintiff complains that the parole process lacks clear standards, but the parole board has clear grounds for when it may deny parole (*see* DSMF ¶ 60 (citing Exhibit G at ¶ 5 and Exhibit J at ¶¶ 13, 29).) Plaintiff has not contested any of those grounds as being improper or unclear.

The *Budder* case made its holding based on the sentence imposed, not parole procedures.

The *Thomas v. Stitt* case was decided at the dismissal stage, not at the summary judgment stage. Here, Plaintiff has utterly failed to establish any of his material allegations with evidence. And as Defendants said in their Motion:

The unpublished order in *Thomas* regarding a screening order involving

> Oklahoma officials is of limited persuasive value in this case involving a summary-judgment motion by Kansas officials raising arguments involving the peculiarities of Kansas law. Instead, the Court should base its decision on the uncontested evidence in this case and the binding and persuasive decisions cited in this motion.

(Doc. 47 at 36.)

The *Heredia* case did not involve executive clemency, so it is unsurprising that the case did not discuss it. This case also does not involve executive clemency. (*See* DSMF ¶ 109.)

Plaintiff again ignores Defendants' arguments regarding the plain meaning of the Kansas statutes, including that the language "any agreement" implies that an agreement need not exist.

The agreement process in K.S.A. 75-5210a is not mandatory upon the Secretary of Corrections, but is directory in nature. *See Payne v. Kan. Parole Bd.*, 20 Kan. App. 2d 301, 303-04, 887 P.2d 147 (1994) (saying the statute "directs the Secretary of Corrections to enter into program agreements"). Under Kansas law, "shall" is ambiguous and can be mandatory or directory based on (1) the legislative context and history, (2) substantive effects on a party's rights, (3) consequences for noncompliance, and (4) whether the subject matter is of critical importance like the requirements to hold an election or to give notice of potential criminal charges. *State v. Raschke*, 289 Kan. 911, Syl. ¶ 4, pgs. 920-21, 219 P.3d 481 (2009). All of these factors indicate the agreement process is not mandatory. Regarding the legislative context, the plain meaning of "agreement" indicates that both parties must agree, which plainly means it cannot be mandatory on either party. The legislative context also indicates an agreement need not exist. *See* K.S.A. 22-3717(g)(2) (referring to "any agreement," implying one may not exist), (h)(1) (same), (j)(1) (providing specific parole procedures for when "no agreement has been entered into with the inmate under K.S.A. 75-5210a"). The legislative history indicates an agreement need not exist. Doc. 12-3 at 2 (minutes and testimony from the Senate Judiciary

Committee, Apr. 5, 1988, including the question, "what if the prisoner refuses to sign this agreement?"). The substantive effect of an agreement is to add an additional hurdle for parole, requiring certain programs before an inmate can be paroled. Therefore, the substantive effect of not having an agreement is actually beneficial to the inmate. No consequences exist for noncompliance. In fact, in the same paragraph that Plaintiff quotes from *Pruitt v. Heimgartner*, 620 F. App'x 653, 654-65 (10th Cir. 2015), the Tenth Circuit noted that "Kansas regulations specify that an 'inmate shall not be penalized for refusal to participate in a formal program plan.'" This is consistent only with a directory requirement, not a mandatory one. And K.S.A. 75-5210a provides no consequences for noncompliance by the Secretary. Further, nothing indicates that the subject matter is of critical importance like the requirements to hold an election or to give notice of potential criminal charges. This is especially clear because lack of an agreement does not prevent parole from being granted. (*See* Exhibit G at ¶¶ 1-3, pg. 8; Exhibit I at 24:24-25:2; Exhibit J at ¶¶ 21-22, 24-28; Exhibit L at ¶¶ 7-10.) All of these factors point to the requirement being directory rather than mandatory.

The fact that the agreement process in K.S.A. 75-5201a does not apply to inmates incarcerated prior to its enactment does not mean that an agreement is mandatory for inmates incarcerated after its enactment.

In *Reed*, the Tenth Circuit held that a plaintiff could not bring an action based on the hypothetical application of the agreement requirement when he did not "come forth with evidence sufficient to survive defendants' motion for summary judgment by demonstrating that" his parole was denied due to it. *Reed v. McKune*, 298 F.3d 946, 954-55 (10th Cir. 2002).

Plaintiff cites the wrong Attorney General Opinion. The quote given is actually from Kan. Att'y Gen. Op. 89-9, 1989 WL 455601, at *2, and it says this quote only to establish that

the statutory provisions regarding parole-foreclosing agreements do not apply retroactively. The authority of the parole board is only restricted when such an agreement has been entered into.

The *Rainer* case did not hold that a separate board has to necessarily handle youthful offender cases. Similarly to the *Rainer* case, the parole procedures here differ for youthful offenders and the KPRB has discretion whether to grant parole.

Plaintiff says inmates have no right to obtain expert assistance or testimony, but written expert testimony is permitted and considered. (DSMF ¶¶ 86-87.)

## IV.    Comity

Plaintiff wildly misinterprets Defendants' comity argument, which merely stated that if the Court finds a violation, the Court should leave the details of how to correct any error to the state officials in the first instance. Plaintiff has requested highly specific injunctive relief (similar to the "intrusive and nearly unilateral remedy the lower court devised in *Lewis*," Doc. 62 at 35), which would be inappropriate to grant due to considerations of comity.

For these reasons and the reasons stated in Defendants' Motion (Doc. 47), Defendants request that the Court grant them summary judgment.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Jonathan Sternberg
Jonathan Sternberg, Attorney, PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108-2607
jonathan@sternberg-law.com
*Attorneys for Plaintiff*

*/s/ Matthew L. Shoger*
Matthew L. Shoger
Assistant Attorney General